# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| BELCALIS MARLENIS ALMÁNZAR,<br><br>                    Plaintiff,<br><br>    v.<br><br>LATASHA TRANSRINA KEBE a/k/a<br>LATASHA TRANSRINA HOWARD and<br>STARMARIE EBONY JONES,<br><br>                    Defendants. | Case No. 1-19-cv-01301-WMR |

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Belcalis Marlenis Almánzar ("Plaintiff") for her complaint against

Defendants Latasha Transrina Kebe a/k/a Latasha Transrina Howard ("Kebe") and

Starmarie Ebony Jones ("Jones") (collectively, "Defendants") alleges as follows:

### NATURE OF THE CASE

1.      This is a diversity action asserting Georgia state law claims for

slander per se, slander, libel per se, and defamation, as a result of Defendants'

publication of slanderous and defamatory statements regarding Plaintiff that are

false, harmful, and offensive to Plaintiff, as well as invasion of privacy – false light

and intentional infliction of emotional distress.

## PARTIES

2.     Plaintiff is a citizen and resident of the State of New York.

3.     Upon information and belief, Kebe is a citizen and resident of the State of Georgia, who resides at 1231 Dayspring Trace, Lawrenceville, GA 30045.

4.     Upon information and belief, Jones is a citizen and resident of the State of Georgia, who resides at 6701 Danforth Way, Stone Mountain, Georgia 30087.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as this is an action between Plaintiff who is a citizen of the State of New York and Defendants Kebe and Jones, who upon information and belief are citizens of the State of Georgia, and the amount in controversy exceeds seventy-five thousand dollars ($75,000).

6.     Upon information and belief, Kebe is subject to personal jurisdiction in the State of Georgia as she resides in and/or is domiciled in Georgia. In addition, upon information and belief, Kebe owns, uses, or possesses real property within the State of Georgia, regularly transacts business as described below within the State of Georgia, and committed a tortious act within the State of Georgia, including the torts of invasion of privacy – false light.

2

7.     Upon information and belief, Jones is subject to personal jurisdiction in the State of Georgia as she resides in and/or is domiciled in Georgia. In addition, upon information and belief, Jones owns, uses, or possesses real property within the State of Georgia, regularly transacts business as described below within the State of Georgia, and committed a tortious act within the State of Georgia, including the torts of invasion of privacy – false light.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Kebe and Jones are residents of this District and because upon information and belief the conduct complained of occurred in this District.

## FACTUAL BACKGROUND

9.     Plaintiff is a Grammy award-winning musical artist, songwriter, and television personality professionally known as "Cardi B."

10.     Since the release of her full-length debut mixtape in 2015, Plaintiff's musical works have reached peak positions on charts in the United States and around the world. As a result of the popularity of her music, Plaintiff has millions of fans in the United States and around the world who follow her work and her social media profiles.

11.     Plaintiff is also a mother of a young baby girl.

12.    In addition to her artistic endeavors, Plaintiff is well known for her volunteer work and philanthropic endeavors, which include helping families affected by gang violence and performing volunteer work in handing out coats to underprivileged persons.

13.    Upon information and belief, Jones is a natural person who claims to have known Plaintiff before her musical career.

14.    Upon information and belief, Jones currently conducts business in the nature of promoting anti-aging products.

15.    Upon information and belief, however, Jones' real aspiration is to have a career in the entertainment industry as an actress. Upon information and belief, in pursuit of this goal, Jones promotes herself and her entertainment endeavors through social media, where she has about ten thousand followers.

16.    Upon information and belief, Jones regularly posts information regarding her endeavors in the entertainment industry in and around Atlanta.

17.    Upon information and belief, Kebe produces, hosts, and publishes videos on YouTube entitled "unWinewithTashaK."

18.    Upon information and belief, while Kebe calls her site "a celebrity gossip site," the real purpose of "unWinewithTashaK" is to provide a platform for

Kebe to publish and spread malicious rumors, slanderous assertions, and false

information about celebrities, including Plaintiff, for her personal financial gain.

19.    Upon information and belief, Kebe does this to draw various

celebrities' social media followers to her site, including Plaintiff's social media

followers, so she can increase what she charges for advertising to third parties that

advertise with her.

20.    Upon information and belief, over the past year, Kebe targeted

Plaintiff and began making degrading statements regarding Plaintiff.

21.    Upon information and belief, while Plaintiff was pregnant, on or

around April 13, 2018, Kebe published a video where Kebe stated that as a result

of Plaintiff's actions, Plaintiff's then-unborn child may have intellectual

disabilities.

22.    Upon information and belief, in the past few months, Kebe has taken

her vitriol one step further by making blatantly defamatory statements regarding

Plaintiff.

23.    Upon information and belief, Kebe has become obsessed with

slandering and harassing Plaintiff. In the last 16 months, Kebe has put out at least

twenty-eight videos regarding Plaintiff.

24.     Upon information and belief, as set forth below, Kebe's videos about Plaintiff attract substantially more viewers than most of her other videos, which is part of the reason she has repeatedly targeted Plaintiff.

25.     Upon information and belief, to this end, Kebe has published in the past few months several videos with more false and defamatory statements about Plaintiff, who has become the target of Kebe's malicious campaign to damage and destroy Plaintiff's reputation among her fans and the consuming public.

26.     Upon information and belief, on or around September 2, 2018, Kebe published a video entitled "Cardi B. DISRESPECTFUL Comedy Skit MOCKING Martin Luther Kings Extra Marital Affairs" (the "9/2 Video").

27.     The 9/2 Video contains at least one false and defamatory statement about Plaintiff.

28.     The 9/2 Video contains the false, malicious, and defamatory statement that Plaintiff "prostituted for a living." (9/2 Video at 5:50.)

29.     Upon information and belief, Kebe published the 9/2 Video to tens of thousands of individuals without privilege or justification.

30.     Upon information and belief, around that same time, on or around September 13, 2018, Jones published a video of herself to her Instagram followers making false, malicious, and defamatory statements regarding Plaintiff through

Instagram Live, which allows users to film live videos that can be watched either simultaneously by their followers or within 24 hours of their posting (the "Jones Video").

31.    The Jones Video contains multiple false and defamatory statements about Plaintiff.

32.    In the Jones Video, Jones made the false, malicious, and defamatory statement that "[Plaintiff] got herpes." (Jones Video at 9:38.)

33.    In the Jones Video, Jones also made the false, malicious, and defamatory statement that Plaintiff took molly and cocaine. Specifically, she stated, "the more molly pills she would be takin, the more cocaine she would be takin." (Jones Video at 14:24.)

34.    In the Jones Video, Jones also falsely stated that Plaintiff was engaging in prostitution. Specifically, she stated, referring to Plaintiff, "I guess they were supposed to have sex, exchange sex for money." (Jones Video at 15:50.)

35.    Shortly after Jones released the Jones Video, on or around September 13, 2018, Jones also published written comments on her Instagram account to third parties that Plaintiff is "just a Grammy Nominated Prostitute, running around spreading her herpes" (the "Instagram Comment").

36.     Upon information and belief, continuing her campaign of slander, and to capitalize on Jones' slander, on or around September 19, 2018, Kebe recorded and later published a video of herself interviewing Jones regarding the Jones Video on YouTube entitled "Exclusive: Cardi B's Ex-FRIEND ALLEGES Cardi B. Kept A Huge Box filled with MONlSTAT & REVEALS More!" (the "9/19 Video").

37.     Upon information and belief, Kebe knew that publishing a video regarding Plaintiff would draw substantially more viewers to her content than she typically garners.

38.     Upon information and belief, the 9/19 Video, to date, has garnered over three million views. By way of comparison, upon information and belief, the last full-length video Kebe published prior to the 9/19 Video only garnered approximately 223,000 views.

39.     Upon information and belief, only nine of her approximately 236 videos published prior to the 9/19 Video garnered over one million views.

40.     The 9/19 Video contains multiple false and defamatory statements about Plaintiff.

41.     The 9/19 Video contains the false, malicious, and defamatory statement that Plaintiff was a prostitute (0:40: "(Kebe) You said that Cardi B prostituted" "(Jones) Yes").

42.     The 9/19 Video contains the false, malicious, and defamatory statement that Plaintiff used cocaine and molly (0:40: "(Kebe) Was she a drug user?" "(Ms. Jones) Yes" "(Kebe) cocaine and molly to be specific" "(Jones) Yes").

43.     The 9/19 Video also contains the false, malicious, and defamatory statement that Plaintiff has herpes (0:48: "(Kebe) She has herpes?" "(Jones) Yes").

44.     The 9/19 Video contains the false, malicious, and defamatory statement that Plaintiff also had herpes outbreaks on her mouth in the past (17:25: "(Kebe) So you were living with her at the time and she had herpes outbreaks on her mouth?" "(Jones) Yes").

45.     Upon information and belief, Kebe published the 9/19 Video to millions of individuals without privilege or justification.

46.     None of the aforementioned statements about Plaintiff are true. Plaintiff was never a prostitute or a user of molly and cocaine. Plaintiff has never, and does not now, have herpes, nor has she had herpes outbreaks on her mouth.

47.     Upon information and belief, Defendants knew or should have known that the aforementioned statements were false.

48.    Upon information and belief, Defendants were subjectively aware of the probable falsity of the aforementioned statements at the time they published them.

49.    Upon information and belief, by way of example, on a second YouTube channel operated by Kebe, Kebe posted a video that acknowledges that she was aware, prior to her publishing the 9/19 Video, that the defamatory statements made by Jones may not have been true.

50.    Upon information and belief, Kebe further acknowledged and that she published the 9/19 Video a day earlier than she had planned to because information undermining Jones' credibility was or was about to be published and Kebe wanted the 9/19 Video to have an opportunity to trend (i.e., gain viewership) before people saw the information that would "debunk" Jones' statements.

51.    Upon information and belief, the aforementioned defamatory statements were made and published by Defendants with actual malice, i.e., with knowledge that the statements were false or with reckless disregard for the fact that they were false.

52.    On or about September 19, 2018, shortly after Kebe published the 9/19 Video, Plaintiff, through her counsel, sent a cease and desist letter to Kebe that demanded immediate removal of the defamatory video.

53.    Upon information and belief, two days after receiving the letter, which she posted on social media rather than take the video down or issuing a retraction and/or repudiation, Kebe published a second video that falsely proclaimed the statements made in the 9/19 Video were true.

54.    Upon information and belief, on or around September 21, 2018, Kebe published a second video entitled "Actual PROOF Cardi B. Knew her Ex-Roommate, Drake, Funky Dineva vs Tamar, Beyonce Black Majic," where she unequivocally stated that everything said in the 9/19 Video was true (the "9/21 Video").

55.    The 9/21 Video also continued Kebe's campaign of defamation.

56.    Upon information and belief, in the 9/21 Video, Kebe claims that "Everything that we said, that everything that [Jones] said was accurate" (9/21 Video at 2:11); that Kebe was "the source" (9/21 Video at 4:38).

57.    Upon information and belief, Kebe even went so far as to falsely suggest that she was in possession of undisclosed facts that would support the prior statements when she further claimed that "[Jones] has shown me some stuff, I said, okay legit so I'm gonna go ahead and tell your story." (9/21 Video at 8:12.)

58.    Since then, Kebe has continued her campaign of defamation and harassment. Even as recently as January 25, 2019, Kebe Tweeted that Plaintiff had

herpes. Specifically, Tweeting at Plaintiff, Kebe wrote that Plaintiff had a "confirmed irritated p***y," which she followed with "#HerpesB" (the "1/25 Tweet").

59.     Upon information and belief, the 1/25 Tweet was published to Kebe's over six thousand followers.

60.     Upon information and belief, shortly after it was posted, knowing it was not true, Kebe deleted the post. However, as set forth below, she has failed and refused to repudiate and take down the other instances of defamatory statements in the above-described videos.

61.     Upon information and belief, on or around March 25, 2019, Kebe temporarily unlisted and/or took down the 9/19 and 9/21 Videos from her YouTube channel.

62.     Upon information and belief, on or around March 26, 2019, Kebe re-listed and/or re-posted the 9/19 and 9/21 Videos on her YouTube channel effectively re-publishing the 9/19 and 9/21 Videos.

63.     Upon information and belief, on or around April 25, 2019, Kebe published a recording of a phone call that Kebe had with another YouTube blogger named Lovelyti entitled "Exclusive Tasha K. LEAKS Private Call Proving Lovelyti Tasha K. PLANNED Starmarie Interview" (the "Lovelyti Call").

64.    Upon information and belief, the Lovelyti Call was originally recorded at least six months before it was published.

65.    Upon information and belief, the Lovelyti Call was originally recorded prior to the publication of the 9/19 and 9/21 Videos and prior to their re-publication.

66.    Upon information and belief, the Lovelyti Call demonstrates that Kebe was aware of the likelihood that she was circulating false information and entertained serious doubts as to the truth of the statements she published.

67.    Upon information and belief, in the Lovelyti Call, Kebe states that Jones "told some truths, she didn't tell all truths" (Lovelyti Call at 16:04).

68.    Upon information and belief, in the Lovelyti Call, Kebe states, "I still believe [Jones]…now as far as the herpes and shit, I don't know" (Lovelyti Call at 24:06).

69.    Upon information and belief, in the Lovelyti Call, Kebe states, "Cardi has an entire team to protect her, if people defame her or anything, that's Cardi's job…to shut that shit down." (Lovelyti Call at 10:17).

70.    Upon information and belief, in the Lovelyti Call, Kebe states, "…here's my thing, all of these strippers are lying…" referring to Jones, Plaintiff and a third party. (Lovelyti Call at 11:02).

71.     The aforementioned defamatory statements published by Jones have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, and emotional distress.

72.     The aforementioned defamatory statements distributed, published, and repeated by Kebe have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, and emotional distress.

73.     The aforementioned defamatory statements published by Jones have also caused damage to Plaintiff's reputation and character within her profession and industry, including but not limited to among her fans and with prospective business relations.

74.     The aforementioned defamatory statements distributed, published, and repeated by Kebe have also caused damage to Plaintiff's reputation and character within her profession and industry, including but not limited to among her fans and with prospective business relations.

75.     Pursuant to O.C.G.A. §§ 51-5-11 and 51-5-12, on February 28, 2019, Plaintiff sent demands for retraction and repudiation to Kebe and Jones demanding a retraction and repudiation of the aforementioned defamatory statements.

76.     Despite due written demand and the passing of at least seven (7) days, Kebe and Jones have as of the date of filing of this Complaint failed and refused to retract and/or repudiate the aforementioned defamatory statements.

77.     As of this day, neither Kebe, nor Jones, have issued any sort of retraction or repudiation of the defamatory statements.

## COUNT I
### (Slander Per Se Against Defendants)

78.     Plaintiff repeats and realleges by reference the allegations in paragraphs 1 through 77 as if fully set forth herein.

79.     Upon information and belief, Kebe published the 9/2 Video on or around September 2, 2018.

80.     Upon information and belief, Jones published the Jones Video in or around September 13, 2018.

81.     Upon information and belief, Kebe published the 9/19 Video on or around September 19, 2018.

82.     Upon information and belief, as set forth above, the 9/2 Video and 9/19 Videos published by Kebe contain multiple false and defamatory statements about Plaintiff, including that Plaintiff was a prostitute and a user of cocaine and molly, that Plaintiff had and still has herpes, and that Plaintiff has had herpes outbreaks on her mouth.

83.    Upon information and belief, as set forth above, the Jones Video published by Jones contains multiple false and defamatory statements about Plaintiff, including that Plaintiff was a prostitute and a user of cocaine and molly, and that Plaintiff has herpes.

84.    None of the aforementioned statements about Plaintiff in the Jones Video, 9/2 Video, or the 9/19 Video are true.

85.    Upon information and belief, Defendants knew these statements to be false at the time they published them, or Defendants were subjectively aware of the probable falsity of the aforementioned statements at the time they respectively published them.

86.    Upon information and belief, by way of example, on a second YouTube channel operated by Kebe, Kebe posted a video that acknowledges she was aware, prior to her publishing the 9/19 Video, that the defamatory statements made by Jones may not have been true.

87.    Upon information and belief, Kebe further acknowledged and that she published the 9/19 Video a day earlier than she had planned to because information undermining Jones' credibility was or was about to be published and Kebe wanted the 9/19 Video to have an opportunity to trend (i.e., gain viewership) before people saw the information that would "debunk" Jones' statements.

16

88.     Nevertheless, upon information and belief, after receiving a cease and desist letter demanding she take down the defamatory statements about Plaintiff in the 9/19 Video, Kebe published another video on September 21, 2018 that referred to the 9/19 Video and the Jones Video and falsely stated that "Everything that we said, that everything that [Jones] said was accurate" (9/21 Video at 2:11); that Kebe was "the source" (9/21 Video at 4:38).

89.     Upon information and belief, neither Jones nor Kebe made reasonable attempts to verify the false and defamatory statements that were made about Plaintiff before the 9/2 Video, Jones Video, 9/19 Video, or 9/21 Video (collectively, the "Defamatory Videos") were published.

90.     Upon information and belief, Kebe knew prior to publication that there was a likelihood that shew was circulating false information and/or entertained serious doubts as to the truth of the statements that were published in the Defamatory Videos.

91.     Upon information and belief, on or around March 25, 2019 Kebe temporarily unlisted and/or took down the 9/19 and 9/21 Videos from her YouTube channel.

92.     Upon information and belief, on or around March 26, 2019, Kebe re-listed and/or re-posted the 9/19 and 9/21 Videos on her YouTube channel effectively re-publishing the 9/19 and 9/21 Videos.

93.     Upon information and belief, Jones knew the statements made in the Jones Video and the 9/19 Video were false or Jones acted with reckless disregard of whether they were true or not.

94.     Upon information and belief, Kebe knew the statements made in the Defamatory Videos were false or Kebe acted with reckless disregard of whether they were true or not.

95.     Upon information and belief, Defendants published these false statements via YouTube and Instagram and identified Plaintiff by her professional name, her occupation, and showed photos of Plaintiff during the videos so that individuals who watched them would know the statements made in the videos were about Plaintiff.

96.     Upon information and belief, Defendants' false stories were generated and communicated with actual malice, total disregard for the truth, and in the complete absence of any special privilege.

97.     Upon information and belief, Kebe had no basis for in the 9/21 Video claiming that the statements previously made were true.

98.    Upon information and belief, the 9/2 Video has been viewed by tens of thousands of people.

99.    Upon information and belief, the Jones Video has been viewed by thousands of people.

100.   Upon information and belief, the 9/19 and 9/21 Videos have been viewed by hundreds of thousands of people.

101.   Upon information and belief, the 9/2, 9/19, and 9/21 Videos are still available to be viewed by the public.

102.   Upon information and belief, these actions constitute actionable slander per se under O.C.G.A. § 51-5-4(a)(2).

103.   Upon information and belief, Defendants' false and defamatory statements made and published in the Defamatory Videos were disparaging and have produced damage to Plaintiff and to Plaintiff's name, character, and reputation.

104.   The aforementioned defamatory statements made and published by Jones have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, and emotional distress.

105.   The aforementioned defamatory statements made, published, and distributed by Kebe have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, and emotional distress.

106.   The aforementioned defamatory statements made and published by Jones have also caused damage to Plaintiff's reputation and character within her profession and industry, including but not limited to among her fans and with prospective business relations.

107.   The aforementioned defamatory statements made, published, and distributed by Kebe have also caused damage to Plaintiff's reputation and character within her profession and industry, including but not limited to among her fans and with prospective business relations.

108.   Upon information and belief, the actions or omissions of Defendants set forth in this Complaint demonstrate malice, egregious defamation, and insult.

109.   Upon information and belief, such actions or omissions by Defendants were undertaken with reckless disregard of the falsity of the speech and its effects on Plaintiff.

110.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial.

111.   Plaintiff is entitled to general and special damages for the following harm: embarrassment, humiliation, mental anguish, and emotional distress and impairment to her name, character, and reputation.

112.   Additionally, Plaintiff requests an award of punitive damages and attorneys' fees and litigation expenses beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Defendants' conduct.

113.   Additionally, as a direct and proximate result of the foregoing, Plaintiff is entitled to an order permanently enjoining Defendants and all their respective agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Kebe and/or Jones, or in concert or participation with Kebe and/or Jones, and each of them, from: making, disseminating, broadcasting, or publishing any statements that Plaintiff has or had herpes; that Plaintiff uses or has used cocaine and/or molly; and/or that Plaintiff was or is a prostitute, as well as an order requiring Kebe and Jones to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding Plaintiff.

**COUNT II**
**(Slander Against Defendants)**

114.   Plaintiff repeats and realleges by reference the allegations in paragraphs 1 through 113 as if fully set forth herein.

21

115.   Upon information and belief, Defendants' above actions constitute actionable slander under O.C.G.A. § 51-5-4(a)(4).

116.   Upon information and belief, Defendants' false and defamatory statements made during the above-referenced videos were disparaging, and have produced damage to Plaintiff, and to Plaintiff's name, character, and reputation.

117.   Upon information and belief, Defendants were subjectively aware of the probable falsity of the statements made during the above-referenced videos at the time they published them.

118.   Upon information and belief, the actions or omissions of Defendants set forth in this Complaint demonstrate malice, egregious defamation, and insult.

119.   Upon information and belief, such actions or omissions by Defendants were undertaken with reckless disregard of the falsity of the speech and its effects on Plaintiff.

120.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial.

121.   The aforementioned defamatory statements made and published by Jones have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, and emotional distress.

122.   The aforementioned defamatory statements made, published, and distributed by Kebe have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, and emotional distress.

123.   The aforementioned defamatory statements made and published by Jones have also caused damage to Plaintiff's reputation and character within her profession and industry, including but not limited to among her fans and with prospective business relations.

124.   The aforementioned defamatory statements made, published, and distributed by Kebe have also caused damage to Plaintiff's reputation and character within her profession and industry, including but not limited to among her fans and with prospective business relations.

125.   Plaintiff is entitled to general and special damages for the following harm: embarrassment, humiliation, mental anguish, and emotional distress and impairment to her name, character, and reputation.

126.   Additionally, Plaintiff requests an award of punitive damages and attorneys' fees and litigation expenses beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Defendants' conduct.

127.   Additionally, as a direct and proximate result of the foregoing, Plaintiff is entitled to an order permanently enjoining Defendants and all their

respective agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Kebe and/or Jones, or in concert or participation with Kebe and/or Jones, and each of them, from: making, disseminating, broadcasting, or publishing any statements that Plaintiff has or had herpes; that Plaintiff uses or has used cocaine and/or molly; and/or that Plaintiff was or is a prostitute, as well as an order requiring Kebe and Jones to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding Plaintiff.

## COUNT III
### (Libel Per Se Against Defendants)

128.   Plaintiff repeats and realleges by reference the allegations in paragraphs 1 through 127 as if fully set forth herein.

129.   Upon information and belief, Jones published the Instagram Comment on or around September 13, 2018.

130.   Upon information and belief, Jones published these false statements via Instagram.

131.   Upon information and belief, Kebe published the 1/25 Tweet on or around January 25, 2019.

132.   Upon information and belief, Kebe published this false statement via Twitter.

133.   As set forth above, the statements made in the Instagram Comment and the 1/25 Tweet contain false, defamatory, and libelous statements regarding Plaintiff, including Plaintiff having been a prostitute and having herpes.

134.   None of the aforementioned statements about Plaintiff in the Instagram Comment or the 1/25 Tweet are true.

135.   Upon information and belief, Defendants knew these statements to be false at the time they respectively published them or acted with reckless disregard of whether they were true or not.

136.   Upon information and belief, Defendants were subjectively aware of the probable falsity of the aforementioned statements at the time they each published them.

137.   Upon information and belief, Defendants' false stories were generated and communicated with actual malice, total disregard for the truth, and in the complete absence of any special privilege.

138.   Upon information and belief, Defendants had no basis for claiming the aforementioned statements were true.

139.   Upon information and belief, the Instagram post containing the Instagram Comment has been viewed by thousands of people.

140.   Upon information and belief, the 1/25 Tweet was published to Kebe's over six thousand Twitter followers.

141.   Upon information and belief, these actions constitute actionable libel per se under O.C.G.A. § 51-5-1.

142.   Upon information and belief, Defendants' false and defamatory statements made in the Instagram Comment and 1/25 Tweet were disparaging and have produced damage to Plaintiff and to Plaintiff's name, character, and reputation.

143.   The aforementioned defamatory statements made and published by Defendants have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, and emotional distress.

144.   The aforementioned defamatory statements published by Defendants have also caused damage to Plaintiff's reputation and character within her profession and industry, including but not limited to among her fans and with prospective business relations.

145.   Upon information and belief, the actions or omissions of Defendants set forth in this Complaint demonstrate malice, egregious defamation, and insult.

146.  Upon information and belief, such actions or omissions by Defendants were undertaken with reckless disregard of the falsity of the speech and its effects on Plaintiff.

147.  As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial.

148.  Plaintiff is entitled to general and special damages for the following harm: embarrassment, humiliation, mental anguish, and emotional distress and impairment to her name, character, and reputation.

149.  Additionally, Plaintiff requests an award of punitive damages and attorneys' fees and litigation expenses beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Defendants' conduct.

150.  Additionally, as a direct and proximate result of the foregoing, Plaintiff is entitled to an order permanently enjoining Defendants and all their respective agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Kebe and/or Jones, or in concert or participation with Kebe and/or Jones, from: making, disseminating, broadcasting, or publishing any statements that Plaintiff has or had herpes and/or that Plaintiff was or is a prostitute, as well as an

order requiring Kebe and Jones to retract, remove, and repudiate in full all

defamatory and disparaging statements made regarding Plaintiff.

**COUNT IV**
**(Invasion of Privacy – False Light Against Defendants)**

151.   Plaintiff repeats and realleges by reference the allegations in

paragraphs 1 through 150 as if fully set forth herein.

152.   Upon information and belief, by publishing the false statements in the

manner described above, Defendants portrayed Plaintiff in a false light intending to

cause Plaintiff injury.

153.   Upon information and belief, Jones and Kebe knew these statements

to be false.

154.   Upon information and belief, Jones and Kebe made no attempt to

verify the veracity of any statements made regarding Plaintiff.

155.   Upon information and belief, Jones knew the statements made in the

Jones Video, 9/19 Video, and the Instagram Comment were false.

156.   Upon information and belief, Kebe knew the statements made in the

9/2 Video, 9/19 Video, 9/21 Video, and the 1/25 Tweet were false.

157.   Upon information and belief, Jones was subjectively aware of

probable falsity of the statements made in the Jones Video, 9/19 Video, and the

Instagram Comment were false at the time she published them.

158.   Upon information and belief, Kebe was subjectively aware of probable falsity of the statements made in the 9/2 Video, 9/19 Video, 9/21 Video, and the 1/25 Tweet at the time she published them.

159.   Upon information and belief, Defendants' false statements were generated and communicated with actual malice, total disregard for the truth, and in the complete absence of any special privilege.

160.   Upon information and belief, as set forth above Defendants have intentionally intruded upon the solitude and/or seclusion of Plaintiff and her private affairs and/or concerns, and this intrusion, which falsely portrays Plaintiff having a loathsome, contagious, or infectious disease, is highly offensive to a reasonable person.

161.   Upon information and belief, Defendants have also intentionally intruded upon the solitude and/or seclusion of Plaintiff and her private affairs and/or concerns, and this further intrusion, which falsely portrays Plaintiff as being a former prostitute and a user of cocaine and/or molly, is highly offensive to a reasonable person.

162.   Upon information and belief, Defendants knew or should have known the statements alleged herein would create a false impression about Plaintiff and acted in reckless disregard of the truth.

163.   Upon information and belief, Defendants did not engage in any of the aforementioned conduct out of any sincere or proper motive, or in any manner governed by reasonable and ministerial conduct according to any job duty, but did so knowingly, willfully, and oppressively, with full knowledge of the adverse effects that their actions would have on Plaintiff, and with willful and deliberate disregard for the consequences. Accordingly, Plaintiff is entitled to recover punitive damages from Defendants in an amount to be determined at trial.

164.   Upon information and belief, the actions or omissions of Defendants set forth in this Complaint demonstrate malice, egregious defamation, and insult. Such actions or omissions by Defendants were undertaken with reckless disregard of the falsity of the speech and its effects on Plaintiff.

165.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial.

166.   Plaintiff is entitled to general and special damages for the following harm: embarrassment, humiliation, mental anguish, and emotional distress and impairment to her name, character, and reputation.

167.   Additionally, Plaintiff requests an award of punitive damages and attorneys' fees and litigation expenses beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Defendants' conduct.

168.   Additionally, as a direct and proximate result of the foregoing, Plaintiff is entitled to an order permanently enjoining Defendants and all their respective agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Kebe and/or Jones, or in concert or participation with Kebe and/or Jones, and each of them, from: making, disseminating, broadcasting, or publishing any statements that Plaintiff has or had herpes; that Plaintiff uses or has used cocaine and/or molly; and/or that Plaintiff was or is a prostitute, as well as an order requiring Kebe and Jones remove in full all defamatory and disparaging statements made regarding Plaintiff.

## COUNT V
### (Intentional Infliction of Emotional Distress)

169.   Plaintiff repeats and realleges by reference the allegations in paragraphs 1 through 168 as if fully set forth herein.

170.   Upon information and belief, by making and publishing the statements, and campaign of harassing videos, including but not limited to other videos Defendants published about Plaintiff as described above, Defendants were intending to cause Plaintiff emotional distress.

171.   Upon information and belief, Defendants' conduct was intentional, as Defendants knew these statements were false and made no attempt to verify the truth of any statements made regarding the Plaintiff.

172.   Upon information and belief, Jones knew the statements made in the Jones Video, 9/19 Video, and the Instagram Comment were extreme and outrageous and would cause the Plaintiff emotional distress.

173.   Upon information and belief, Kebe knew the statements made in the 9/2 Video, 9/19 Video, 9/21 Video, and the 1/25 Tweet were extreme and outrageous and would cause Plaintiff emotional distress.

174.   Upon information and belief, Kebe has published over twenty-eight videos in her campaign against the Plaintiff, including the Defamatory Videos, which were intended to cause humiliation, mental anguish and emotional distress in the Plaintiff.

175.   Upon information and belief, Defendants' conduct was extreme and outrageous as Defendants' purposely published statements that they knew would cause severe emotional distress, including but not limited to stating that Plaintiff's then-unborn child would have mental deficiencies, had herpes, used cocaine and/or molly and that Plaintiff is or was a prostitute.

176.   Upon information and belief, Defendants' conduct was intentional as Defendants' intended to benefit financially and socially from Plaintiff's emotional distress.

177.   Upon information and belief, since Kebe began her campaign against Plaintiff, her viewership has substantially increased from hundreds of thousands of views to millions of views for videos of comparable length.

178.   Upon information and belief, Kebe conduct was intentional as Kebe intended to increase what she could charge from advertisers, and, as a result of her campaign of outrageous and harassing conduct against the Plaintiff, has now been able to do so.

179.   Upon information and belief, Jones began her campaign against the Plaintiff to gain popularity in the public eye and increase the likelihood that she could have a career in the entertainment industry.

180.   Upon information and belief, Jones conduct was intentional as Jones is relatively well known, at least now, for her statements made about the Plaintiff.

181.   As a proximate result of defendant's actions and the consequences proximately cause by them, as hereinabove alleged, Plaintiff suffered severe humiliations, mental anguish, and emotional distress.

182.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial.

183.   Plaintiff is entitled to general and special damages for the following harm: embarrassment, humiliation, mental anguish, and emotional distress.

184.   Additionally, Plaintiff requests an award of punitive damages and attorneys' fees and litigation expenses beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Defendants' conduct.

185.   Additionally, as a direct and proximate result of the foregoing, Plaintiff is entitled to an order permanently enjoining Defendants and all their respective agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Kebe and/or Jones, or in concert or participation with Kebe and/or Jones, and each of them, from: making, disseminating, broadcasting, or publishing any harassing statements about the Plaintiff that have caused emotional distress, as well as an order requiring Kebe and Jones remove in full all such previously made statements.

## COUNT VI
### (Punitive Damages Pursuant to O.C.G.A. § 51-12-5.1)

186.   Plaintiff repeats and realleges by reference the allegations in paragraphs 1 through 185 as if fully set forth herein.

187.   Defendants' actions demonstrate willful misconduct, malice, fraud, wantonness, oppression, and conscious indifference to the consequences of their actions.

188.   Upon information and belief, Defendants acted with a specific intent to cause harm to Plaintiff.

189.   Plaintiff seeks punitive damages pursuant to O.C.G.A. § 51-12-5.1 to punish, penalize, and deter Defendants' actions in an amount that exceeds $250,000.

## COUNT VII
**(Attorneys' Fees and Litigation Expenses Pursuant to O.C.G.A. § 13-6-11)**

190.   Plaintiff repeats and realleges by reference the allegations in paragraphs 1 through 189 as if fully set forth herein.

191.   Defendants have acted in bad faith by publishing defamatory statements they knew to be false and would cause harm to Plaintiff and have been stubbornly litigious and have caused Plaintiff unnecessary trouble and expense by refusing to retract such statements.

192.   Plaintiff seeks her attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests the Court to enter judgment in her favor and against Defendants, each of them jointly and severally, as follows:

(a)     Awarding Plaintiff damages in amounts pertaining to each to be determined at trial, but not less than $75,000, including general, special, consequential, actual, and punitive damages;

(b)     Awarding an accounting to Plaintiff for the gains and profits of Defendants arising from the unlawful conduct;

(c)     Permanently enjoining Defendants and their respective partners, agents, representatives, successors, assigns and employees, and any and all persons in active convert or participation with Defendants, and each of their executors, administrators, successors, licensees, assigns, subsidiaries, parents, affiliates, divisions, co-venturers, partners, officers, directors, employees, agents, shareholders, managers, representatives, consultants, and any and all other persons, corporations, or other entities acting under the supervision, direction, control, or on behalf of any of the foregoing, and each of them, from: making, disseminating, broadcasting, or publishing any statements that Plaintiff has or had herpes; that Plaintiff uses or has used cocaine and/or molly; and/or that Plaintiff was or is a prostitute;

(d)     Issuing an order requiring Kebe to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding Plaintiff;

(e)     Issuing an order requiring Jones to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding Plaintiff;

(f)     Awarding Plaintiff's attorneys' fees and costs;

(g)     Pre-judgment and post-judgment interest; and

(h)     Granting Plaintiff such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all claims for relief and issues triable by jury.

[signature block on following page]

Dated: June 12, 2019                    Respectfully submitted,


                                        /s/ Sarah M. Matz
                                        Gary P. Adelman
                                        (*pro hac vice application to be filed*)
                                        Sarah M. Matz
                                        (*admitted pro hac vice*)
                                        ADELMAN MATZ P.C.
                                        1173A Second Avenue, Suite 153
                                        New York, New York 10065
                                        Telephone: (646) 650-2207
                                        E-mail: g@adelmanmatz.com
                                        E-mail: sarah@adelmanmatz.com

                                        Lisa F. Moore (Bar No. 419633)
                                        W. Andrew Pequignot (Bar No. 424546)
                                        MOORE PEQUIGNOT LLC
                                        887 West Marietta Street, Suite M-102
                                        Atlanta, Georgia 30318
                                        Telephone: (404) 748-9596
                                        E-mail: lisa@themoorefirm.com
                                        E-mail: andrew@themoorefirm.com

                                        *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2019, I electronically filed the foregoing

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL with the

Clerk of the Court using the CM/ECF system, which will automatically send email

notification of such filing to all of the attorneys of record.


/s/ W. Andrew Pequignot
W. Andrew Pequignot
Georgia Bar No. 424546