# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| BELCALIS MARLENIS ALMÁNZAR,<br><br>Plaintiff,<br>v.<br><br>LATASHA TRANSRINA KEBE a/k/a LATASHA TRANSRINA HOWARD and STARMARIE EBONY JONES,<br><br>Defendants. | Case No.<br><br>1:19-cv-1301-WMR |

## PLAINTIFF'S INITIAL DISCLOSURES

**(1)  State precisely the classification of the cause of action being filed, a brief factual outline of the case including plaintiff's contentions as to what defendant did or failed to do, and a succinct statement of the legal issues in the case.**

Plaintiff Belcalis Marlenis Almánzar ("Plaintiff") has asserted claims under Georgia law for slander *per se* pursuant to O.C.G.A. § 51-5-4(a)(2) (Count I); slander pursuant to O.C.G.A. § 51-5-4(a)(4) (Count II); libel *per se* pursuant to O.C.G.A. § 51-5-1 (Count III); invasion of privacy – false light (Count IV); intentional infliction of emotional distress (Count V); punitive damages pursuant to O.C.G.A. § 51-12-5.1 (Count VI); and attorneys' fees and litigation expenses pursuant to O.C.G.A. § 13-6-11 (Count VII).

Plaintiff, a citizen of the state of New York, is a Grammy award winning musical artist, songwriter, and television personality professionally known as "Cardi B." Plaintiff, who is the mother of a young baby girl, is also well known for her volunteer and philanthropic work, which includes assisting families affected by gang violence.

Kebe is a resident of the state of Georgia. Kebe is a blogger who operates a website and social media accounts, including but not limited to a YouTube account that Kebe refers to as a "celebrity gossip site." Kebe owns several accounts under the names "unWinewithTashaK" (on YouTube, on her website, and on Twitter) and "Tasha K" (on Facebook), as well as additional social media accounts (collectively, the "Gossip Sites"). Kebe produces, hosts and publishes videos on her YouTube channel. Kebe alleges that she generates income from advertisements on her Gossip Sites. Upon information and belief, Kebe's videos about Plaintiff attract substantially more viewers than most of her other videos, which is part of the reason she has repeatedly targeted Plaintiff.

Despite the fact that Plaintiff and Kebe have never met or communicated directly with each other in person, during a sixteen-month period, between April 13, 2018 and the filing of Plaintiff's Amended Complaint on June 12, 2019, Kebe posted at least twenty-eight videos regarding Plaintiff.

By way of one example, on April 13, 2018, Kebe published a video on her YouTube channel in which Kebe stated that Plaintiff's then unborn daughter may have intellectual disabilities as the result of Plaintiff's activities. By way of another example, on September 2, 2018, Kebe posted on her YouTube channel a video in which it was claimed that Cardi B "prostituted for a living."

Jones claims to have known Plaintiff prior to the time Plaintiff began her music career. Jones has aspirations to have a career in the entertainment industry and promotes herself and her entertainment endeavors on social media, where she has about ten thousand followers. On September 13, 2018, Jones published a video on Instagram, making malicious and defamatory statements about Plaintiff, such as, that Plaintiff has "herpes," that Plaintiff took molly and cocaine and that Plaintiff was engaging in prostitution (the "Jones Video").

On September 19, 2018, Kebe recorded a video in which Kebe interviewed Jones regarding the Jones Video (the "9/19 Video"). The 9/19 Video contains multiple defamatory statements about Plaintiff, such as that Plaintiff was a prostitute, that Plaintiff used molly and cocaine, and that Plaintiff has herpes.

Upon information and belief, Kebe knew that publishing a video regarding Plaintiff would draw substantially more viewers to her content than she typically garners. The 9/19 Video to date has had at least 3,000,000 views. By way of

comparison, upon information and belief, the last full-length video Kebe published prior to the 9/19 Video only garnered approximately 223,000 views. Upon information and belief, only nine of her approximately 236 videos published prior to the 9/19 Video garnered over one million views.

Prior to September 19, 2018, Kebe was aware that Jones' claims regarding Plaintiff were not true. On one of Kebe's YouTube channels, Kebe acknowledged in a video that prior to publishing the 9/19 Video, Kebe was aware that Jones' statements may not be true. Kebe even stated that she published the 9/19 Video earlier than she had intended so that it would have an opportunity to trend (i.e., gain viewership) before people saw the information that would "debunk" Jones' statements.

Additionally, prior to September 19, 2018, Kebe had a telephone conversation with another blogger named Lovelyti (the "Lovelyti Call."). According to the Lovelyti Call, which was published on April 25, 2019 but was taped prior to the publication of the 9/19 Video and the 9/21 Video, Kebe acknowledged that she did not believe that all of the statements that Jones made were truthful. For example, Kebe stated that Jones "told some truths, she didn't tell all truths." In the Lovelyti Call, Kebe acknowledged that she was not sure about Plaintiff having herpes. Kebe stated "I still believe [Jones] . . . now as far as

4

the herpes and shit, I don't know." Kebe also stated "all these strippers are lying . . . ," referring to Jones who at one time performed as a stripper. The Lovelyti Call demonstrates that Kebe was aware of the likelihood that she was circulating false information and entertained serious doubts as to the truth of the statements she published.

On September 19, 2018, the same day Kebe published the 9/19 Video, one of Plaintiff's attorneys sent Kebe a cease and desist letter via email. The letter demanded the immediate removal of the 9/19 Video. Kebe received the letter, as she uploaded it to one of her social media accounts. In Kebe's post regarding the letter, Kebe stated regarding Plaintiff, "you're a clown and I'm loving it."

On September 21, 2018, Kebe published another video, in which Kebe stated that the 9/19 Video's contents were true (the "9/21 Video"). In the 9/21 Video, Kebe also stated "[e]verything that we said, that everything that [Jones] said was accurate." Kebe has continued to post Videos regarding Plaintiff as part of Kebe's campaign of defamation and harassment. As recently as January 25, 2019, Kebe tweeted that Plaintiff has herpes.

On February 28, 2019 Plaintiff sent a letter to Kebe, pursuant to O.C.G.A. §§ 51-5-11 and 51-5-12, demanding retraction and repudiation of alleged defamatory statements in several videos published on Kebe's YouTube channel,

5

including but not limited to the 9/19 Video and the 9/21 Video, and Kebe's January 25, 2019 tweet. Kebe failed to retract or repudiate the defamatory statements.

On or about March 25, 2019, hours after Plaintiff filed her initial complaint in this action, Kebe temporarily unlisted the 9/19 Video and the 9/21 Video from her YouTube channel. However, on March 26, 2019, Kebe re-listed the 9/19 Video and the 9/21 Video on her YouTube Channel, effectively re-publishing them.[1]

The legal issues relating to Plaintiff's Complaint, are as follows:

A.  Whether Kebe's oral statements are slander *per se*;

B.  Whether Kebe's oral statements are slander;

C.  Whether Kebe's written statements are libel *per se*;

D.  Whether Plaintiff is a general purpose public figure or limited purpose public figure under Georgia law such that Plaintiff must prove that Kebe made defamatory statements with actual malice;

E.  If Plaintiff is a general purpose public figure or a limited purpose public figure, whether Kebe made defamatory statements with actual malice;

---

[1] The facts are more fully set forth in Plaintiff's First Amended Complaint and are incorporated herein by reference to the extent not stated above.

F. Whether Plaintiff can prove special damages to the extent that any of the alleged defamatory statements made or published by Kebe do not constitute defamation *per se*;

G. Whether Kebe's conduct was intentional or reckless;

H. Whether Kebe's conduct was extreme and outrageous;

I. Whether Plaintiff suffered severe emotional distress;

J. Whether Plaintiff's emotional distress was caused by Kebe's conduct;

K. Whether the falsehoods published by Kebe concerning Plaintiff are highly offensive to a reasonable person;

L. Whether Kebe is liable to Plaintiff for compensatory damages;

M. Whether Kebe is liable to Plaintiff for punitive damages; and

N. Whether Kebe is liable to Plaintiff for her reasonable attorneys' fees and expenses of litigation.

**(2) Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.**

The applicable Georgia statutes and illustrative case law applicable to Plaintiffs' claims are as follows:

Slander and libel (Counts I to III): O.C.G.A. § 51-5-1, *et seq.*

Invasion of privacy – false light (Count IV): *Ass'n Servs., Inc. v. Smith,* 249

Ga. App. 629, 633 (2001)

Intentional infliction of emotional distress (Count V): *Cottrell v. Smith*, 299 Ga. 517, 521 (2016); *Griggs v. USAA Cas. Ins. Co.*, 263 F. Supp. 3d 1375, 1381 (N.D. Ga. 2017)

Punitive damages (Count VI): O.C.G.A. § 51-12-5.1

Attorneys' fees and litigation expenses (Count VII): O.C.G.A. § 13-6-11

The applicable statutes and illustrative case law applicable to Defendant Kebe's counterclaims are set forth in Plaintiff's pending motion to dismiss (Doc. 13).

**(3)  Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A.)**

See Attachment A.

**(4)  Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Responses to Initial Disclosures as Attachment B.)**

Plaintiff has not identified any expert witnesses who may testify at trial. If, and when, Plaintiff determines that she will present evidence pursuant to Rules 702, 703, or 705 of the Federal Rules of Evidence, she will supplement this response and comply with the applicable provisions of the Federal Rules of Civil

Procedure.

**(5)    Provide a copy of, or a description by category and location of, all documents, data compilations or other electronically stored information, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C.)**

See Attachment C. The identification of a document in Attachment C is not an agreement to produce such document if such document is deemed privileged, confidential, or otherwise not discoverable, or if production would be appropriate only after the entry of a protective order or other relevant court order.

**(6)    In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as under Fed. R. Civ. P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)**

As discovery in this action is ongoing, the exact amount of damages cannot be calculated at this time. Once Plaintiff has conducted sufficient discovery in this matter, she will supplement her response to the initial disclosures as required by the Federal Rules of Civil Procedure and the Local Rules.

**(7)    Attach for inspection and copying as under Fed. R. Civ. P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to**

9

satisfy the judgment. **(Attach copy of insurance agreement to Initial Disclosures as Attachment E.)**

Plaintiff does not believe this action to be covered by an insurance agreement meeting these standards. If Plaintiff subsequently determines that such an insurance agreement exists, she will supplement these disclosures.

**(8)    Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action set forth in plaintiffs cause of action and state the basis and extent of such interest.**

Not applicable.

Dated: August 26, 2019            Respectfully submitted,

/s/ Sarah M. Matz
Sarah M. Matz
(*admitted pro hac vice*)
Gary P. Adelman
(*pro hac vice application to be filed*)
ADELMAN MATZ P.C.
1173A Second Avenue, Suite 153
New York, New York 10065
Telephone: (646) 650-2207
E-mail: sarah@adelmanmatz.com
E-mail: g@adelmanmatz.com

Lisa F. Moore (Bar No. 419633)
W. Andrew Pequignot (Bar No. 424546)
MOORE PEQUIGNOT LLC
887 West Marietta Street, Suite M-102
Atlanta, Georgia 30318
Telephone: (404) 748-9596

E-mail: lisa@themoorefirm.com
E-mail: andrew@themoorefirm.com

*Attorneys for Plaintiff*

## ATTACHMENT A

1. **Belcalis Marlenis Almánzar**. Plaintiff may be contacted through Plaintiff's undersigned counsel. Plaintiff has knowledge concerning the following subjects:

   (a) The false and defamatory nature of the videos and posts and social media posts of Defendant Latasha Transrina Kebe ("Kebe") and Starmarie Ebony Jones ("Jones") regarding Plaintiff;

   (b) Plaintiff's efforts to have the aforesaid false and defamatory videos and social media posts removed and repudiated;

   (c) Plaintiff's statements, if any, regarding Kebe; and

   (d) Plaintiff's damages, including special damages to the extent that special damages are required to be proven.

2. **Latasha Transrina Kebe**. Kebe may be contacted through her counsel. Upon information and belief, Kebe has knowledge concerning the following subjects:

   (a) The false and defamatory videos and social media posts created by Kebe and Jones relating to Plaintiff;

(b) The number of people who viewed Kebe's false and defamatory video's and posts published by Kebe relating to Plaintiff;

(c) Kebe's failure to confirm the truth of the contents of the videos and other posts published by Kebe regarding Plaintiff;

(d) Facts supporting Kebe's actual malice;

(e) Kebe's failure to remove or repudiate the videos and social media posts published by Kebe, upon receipt of a cease and desist letter sent by Plaintiff's attorneys, dated September 19, 2018 and February 28, 2019 (the "Removal Letters"), regarding the removal and repudiation of content posted on Kebe's social media accounts concerning Plaintiff;

(f) Kebe's failure to confirm the truth of the contents of the videos and other posts published by Kebe regarding Plaintiff, upon her receipt of each of the Removal Letters;

(g) Communications with third parties;

(h) Facts supporting that Kebe's and Jones' actions were extreme and outrageous;

  (i) Facts supporting that Kebe's and Jones' actions were intended to cause Plaintiff humiliation, mental anguish and emotional distress;

  (j) Facts supporting that Kebe's actions were intended to benefit Kebe financially and socially based off of Plaintiff's emotional distress, and that the viewership of Kebe's videos substantially increased as a direct result;

  (k) The alleged statements or actions by Plaintiff or non-parties, that are the basis of Kebe's counterclaims against Plaintiff (the "Counterclaims");

  (l) That Kebe sustained no damages, including special damages, as the result of any alleged acts or statements by Plaintiff.

3. **Starmarie Ebony Jones.**  It is believed that Ms. Jones may be contacted via electronic communication at Iamlovedstarmarie@yahoo.com.  Upon information and belief, Ms. Jones has knowledge concerning the following subjects:

  (a) The false and defamatory videos and social media posts by Kebe and Jones relating to Plaintiff;

(b)  Jones' failure to confirm the truth of the contents of the videos and other posts published by Jones regarding Plaintiff;

(c)  Kebe's failure to confirm the truth of the contents of the videos and other posts published by Kebe regarding Plaintiff;

(d)  Jones's failure to remove and repudiate the videos identified in a letter to Jones dated February 28, 2019;

(e)  Communications with third parties;

(f)  Facts supporting that Kebe's and Jones' actions were extreme and outrageous;

(g)  Facts supporting that Kebe's and Jones' actions were intended to cause Plaintiff humiliation, mental anguish and emotional distress; and

(h)  Kebe's failure to confirm the truth of the contents of the videos and posts published by Kebe regarding Plaintiff.

## ATTACHMENT C

1. Some of the videos and posts, and at least one audio recording, uploaded and or published by Kebe, relating to Plaintiff. These materials are in the possession of Plaintiff and Plaintiff's aforementioned representatives.

2. Some of the videos and posts uploaded and or published by Jones, relating to Plaintiff. These materials are in the possession of Plaintiff and Plaintiff's aforementioned representatives.

3. Communications sent on behalf of Plaintiff to Kebe and Jones regarding the removal, repudiation, and retraction of defamatory videos and posts from their social media accounts and websites. These communications are in the possession of Plaintiff's aforementioned representatives.

4. Documents concerning damages sustained by Plaintiff, including but not limited to legal costs. These documents are in the possession of Plaintiff and Plaintiff's aforementioned representatives.

Plaintiff reserves the right to supplement this list of documents, data compilations and tangible things as discovery progresses, and specifically also reserves the right to utilize any other documents, data compilations, and tangible things that are in the possession, custody, or control of Defendant and/or non-parties.

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2019, I electronically filed the foregoing PLAINTIFF'S INITIAL DISCLOSURES with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all of the attorneys of record.

/s/ W. Andrew Pequignot
W. Andrew Pequignot
Georgia Bar No. 424546