UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BELCALIS MARLENIS ALMANZAR, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. |
| v. | * | 1:19-cv-01301-WMR |
| | * | |
| LATASHA TRANSRINA KEBE et al., | * | |
| | * | |
| Defendants. | * | |

**DEFENDANT KEBE'S RESPONSE WITH CITATIONS TO LEGAL AUTHORITY TO PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIMS OF DEFENDANT LATASHA TRANSRINA KEBE**

COMES NOW Latasha Kebe (hereinafter referred to as "Ms. Kebe"), by and through undersigned Counsel, and hereby files her Response to Plaintiff's Motion to Dismiss the Counterclaims of Defendant Latasha Transrina Kebe. Ms. Kebe provides the following responses, with citations to authority, to Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Dismiss Defendant Latasha Kebe's Counterclaims (hereinafter referred to as "Plaintiff's Memorandum"):

**PRELIMINARY STATEMENT**

The majority of the information recited in the Preliminary Statement of Plaintiff's Memorandum is false and, therefore, not relevant to the issues raised in the case at bar. The statement regarding Ms. Kebe's reasons for filing counterclaims

is conjecture and was included for the sole purpose of further attacking Ms. Kebe's good character and detracting from the legitimacy of her claims. Plaintiff is aware that the information included in the Preliminary Statement regarding Ms. Kebe is false and Plaintiff fails to cite to any legitimate source to substantiate those allegations.

## LEGAL STANDARD

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Ashcroft* at 678-79. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly* at 556.

## ARGUMENT

There is no dispute that the case at bar is a diversity action and is, therefore, governed by Georgia state law. *See generally Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938). Despite that indisputable fact, Plaintiff's Memorandum relies, almost exclusively, on federal law as legal authority that Ms. Kebe's counterclaims should be dismissed for failing to state viable claims. Plaintiff's failure to cite to proper legal authority in her Memorandum should result in the denial of Plaintiff's Motion to Dismiss Ms. Kebe's Counterclaims. Nevertheless, Ms. Kebe hereby responds to all the arguments for dismissal raised in Plaintiff's Memorandum.

**I.  MS. KEBE HAS STATED A CLAIM FOR SLANDER *PER SE* UPON WHICH RELIEF CAN BE GRANTED IN ACCORDANCE WITH GEORGIA LAW AND, THEREFORE, PLAINTIFF'S MOTION TO DISMISS MUST BE DENIED.**

In Georgia, words that are recognized as injurious on their face, without the aid of extrinsic proof, are categorized as slander *per se. See Cottrell v. Smith,* 299 Ga. 517, 523 (2016). "Making charges against another in reference to his trade, office, or position, calculated to injure him therein" is defined as slander *per se* under Georgia Law. *See* O.C.G.A. § 51-5-4(a)(3). Where the words are defamatory *per se*, damage is inferred and does not need to be proven. *See* O.C.G.A. § 51-5-4(b). As for defamation regarding a trade, profession, or office, the aspersion must be one

that is especially injurious to the claimant's reputation because of the particular demands or qualifications of his vocation. *See Cottrell* at 524.

In the very beginning of Ms. Kebe's Amended Counterclaims, she describes, with specificity, that she is an entertainment and celebrity news blogger, who spent the last several years building up her brand on various social media platforms. Ms. Kebe specified the number of subscribers she had on each of her platforms because that is how her brand, and ultimately Ms. Kebe, generates revenue. (*See* Amended Counterclaims ¶¶ 193-200). Ms. Kebe's brand has grown to be successful because of her veracity as a blogger and her ability to publish breaking entertainment news, ahead of all of her competitors.

Plaintiff is an international celebrity with tens of millions of followers on her various social media platforms. Though they have never been personal friends, Plaintiff and Ms. Kebe have been aware of each other for a couple of years and have had prior interactions on social media. (*See* Amended Counterclaims ¶¶ 193-201, 203-208). That is the reason Plaintiff sent Ms. Kebe a private message, after Ms. Kebe published the interview with Starmarie Jones, and tried to convince Ms. Kebe that Ms. Jones lied during that interview. (*See* Amended Counterclaims ¶ 207-208).

Because of the nature of Ms. Kebe's business, she notified Plaintiff that she was not interested in continuing a private conversation and offered Plaintiff the

opportunity to conduct a public interview, just like Starmarie Jones. Plaintiff continued to proclaim that Starmarie Jones was lying but declined Ms. Kebe's offer to be interviewed publicly. (*See* Amended Counterclaims ¶¶ 193-200).

Plaintiff, apparently, became enraged that Ms. Kebe declined to acquiesce to her demands, and decided to seek revenge. Plaintiff began publishing videos on her social media accounts, especially Instagram, telling tens of millions of her followers that she was going to make an example out of Ms. Kebe; specifically, by threatening to bankrupt Ms. Kebe. (*See* Amended Counterclaims ¶¶ 210-214). After that proclamation, Plaintiff began to publish more and more videos and telling millions of her followers that Ms. Kebe makes up fake stories all the time; that she does not have legitimate sources for the celebrity news stories she reports; that Ms. Kebe, knowing the content was false, only posted the Jones video because she wanted to use Plaintiff's name to attract more followers; and many other similar statements specifically attacking Ms. Kebe's veracity and professionalism as an entertainment and celebrity news blogger. (*See* Amended Counterclaims ¶¶ 210-214).

To constitute slander *per se*, "the words must either be spoken of the plaintiff in connection with his calling or they must be of such a nature such as to charge him with some defect of character or lack of knowledge, skill, or capacity as necessarily to affect his competency successfully to carry on his business, trade, or profession."

*Cottrell* at 524. That is exactly what Plaintiff did when she continued to publish videos, telling millions of people that Ms. Kebe was a liar and her blog should not be trusted as a source for legitimate entertainment and celebrity news. (*See* Amended Counterclaims ¶ 211-212).

The suggestion that Plaintiff was merely expressing her personal opinion about Ms. Kebe fails because each of Plaintiff's statements about Ms. Kebe were statements of fact that can be proved false. *See Cottrell* at 523 (explaining that "a defamation action will lie only for a statement of fact.").

Despite the fact that damage is inferred in an action for slander *per se,* Ms. Kebe still detailed the harm she suffered as a direct result of Plaintiff's defamatory statements, which included Ms. Kebe's Instagram account being deleted several times; Ms. Kebe losing thousands of subscribers and followers on her social media platforms; Ms. Kebe losing several third-party advertisers and revenue from her YouTube Channel. Not to mention the irreparable damage Plaintiff caused to Ms. Kebe's professional reputation, credibility, and brand. (*See* Amended Counterclaims ¶ 220, 223-227).

## II. MS. KEBE HAS STATED A CLAIM FOR ASSAULT UPON WHICH RELIEF CAN BE GRANTED IN ACCORDANCE WITH GEORGIA LAW AND, THEREFORE, PLAINTIFF'S MOTION TO DISMISS MUST BE DENIED.

Georgia law provides that an "[i]llegal attempt to commit a physical injury upon a person is a tort for which damages may be recovered." *See* O.C.G.A. § 51-1-14. "[A]n actual touching is not a necessary element of the tort of assault." *Wallace v. Stringer,* 250 Ga. App. 850, 853 (2001). To constitute an assault, there is no requirement to show an actual injury; it is only necessary to show "an intention to commit an injury, coupled with an apparent ability to do so." *See id.; see also Edwards v. Sabat,* 263 Ga. App. 852, 853 (2003).

In the fact section of Ms. Kebe's Amended Counterclaims, she clearly states that Plaintiff is a self-proclaimed member of the Bloods, a violent street-gang; that Plaintiff was initiated into the gang when she was sixteen years old, by her friend, named Skeemo. Ms. Kebe knew that Plaintiff had millions of followers on social media and that Plaintiff began to publish threats, directed at Ms. Kebe on her social media in December of 2018. Plaintiff went even further when she declared that she was going to make an example out of Ms. Kebe and published a private conversation between Plaintiff and Skeemo, where they discussed gathering information on Ms. Kebe. At that point, Ms. Kebe began to receive messages from numerous people,

alerting Ms. Kebe to violent messages and threats Skeemo was publishing on his social media, directed at Ms. Kebe. (*See* Amended Counterclaims ¶¶ 202, 212-217).

An assault occurs when all the apparent circumstances lead a person to reasonably apprehend a violent injury from the unlawful act of another. *See Everett v. Goodloe*, 268 Ga. App. 536 (2004); *see also Capitol T.V. Service, Inc. v. Derrick*, 163 Ga. App. 65, 65 (1982) ("It is the apprehension that gives rise to the cause of action of assault."). Ms. Kebe was clearly apprehensive of receiving a violent injury from Plaintiff and her gang-affiliated friends, which is why she contacted the FBI to report the ongoing situation. She was advised, by the FBI, that it would be in her best interest to find a new place to live, which is what she did. Ms. Kebe was living in fear for her safety and well-being, all while in the first trimester of her pregnancy. (*See* Amended Counterclaims ¶¶ 218-219, 221-222, 228-231).

The Plaintiff's reliance on the elements of assault, as stated in O.C.G.A. § 16-5-20, is completely erroneous because that statute defines the crime of simple assault, which has nothing to do with Ms. Kebe's assault claim in the foregoing civil action.

### III. MS. KEBE HAS STATED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UPON WHICH RELIEF CAN BE GRANTED IN ACCORDANCE WITH GEORGIA LAW AND, THEREFORE, PLAINTIFF'S MOTION TO DISMISS MUST BE DENIED.

In Georgia, in order to recover for intentional infliction of emotional distress, the following four elements must be present: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *See Turnage v. Kasper,* 307 Ga. App. 172 (2010); *Kuritzky v. Emory University*, 294 Ga. App. 370 (2008). "This conduct must be of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress." *Turnage* at 182.

Plaintiff's conduct, which Ms. Kebe described with specificity (*see* Amended Counterclaims ¶¶ 202, 212, 213-219, 221-222, 232-236) exhibits all four elements of intentional infliction of emotional distress. Plaintiff, who is an international celebrity and a self-proclaimed gang member, decided to focus all of her energy on intimidating Ms. Kebe, so Plaintiff's conduct was definitely intentional. Plaintiff used her social media platforms to incite millions of her fans, as well as some fellow gang members, to harass, intimidate, and threaten Ms. Kebe. Certainly, that is

9

conduct that, as a society, we find extreme, outrageous, and intolerable. Plaintiff knew that Ms. Kebe was pregnant while she was engaging in this outrageous conduct; she even commented on Ms. Kebe's age and pregnancy on some of her social media platforms. (*See id.*).

As a direct result of Plaintiff's conduct, Ms. Kebe experienced severe emotional distress and anxiety for her safety, as well as the safety of her family; Ms. Kebe was placed on mandatory bed rest by her physician; Ms. Kebe experienced anxiety, panic, stress, high blood pressure, insomnia, humiliation, and depression. (*See* Amended Counterclaims ¶ 221-222).

### IV. MS. KEBE IS ENTITLED TO SPECIFICALLY PRAY FOR AN AWARD OF PUNITIVE DAMAGES PURSUANT TO O.C.G.A. § 51-12-5.1.

Plaintiff's claim that Ms. Kebe is not entitled to punitive damages because she has failed to meet her burden of proof by clear and convincing evidence is premature. Ms. Kebe has met all the preliminary requirements of O.C.G.A. § 51-12-5.1, in order to later seek an award for punitive damages. At the appropriate time and proceeding, Ms. Kebe will be prepared to prove by clear and convincing evidence that she is entitled to an award of punitive damages. Because Plaintiff's motion to dismiss Ms. Kebe's claim for punitive damages is not ripe, it must be dismissed.

## V. MS. KEBE IS ENTITLED TO SPECIFICALLY PLEAD AND PRAY FOR AN AWARD OF EXPENSES OF LITIGATION, INCLUDING ATTORNEYS' FEES, PURSUANT TO O.C.G.A. § 13-6-11.

Plaintiff's claim that Ms. Kebe is not entitled to attorneys' fees because Plaintiff did not act in bad faith is premature. Ms. Kebe has met all the preliminary requirements of O.C.G.A. § 13-6-11, in order to later seek an award for expenses of litigation, including attorneys' fees. At the appropriate time and proceeding, Ms. Kebe will be prepared to prove that she is entitled to an award of expenses of litigation, including attorneys' fees. Because Plaintiff's motion to dismiss Ms. Kebe's claim for litigation expenses and attorneys' fees is not ripe, it must be dismissed.

## CONCLUSION

Assuming all the allegations in the Amended Counterclaims are true, Ms. Kebe has satisfied the plausibility standard and shown this Court that her claims are entitled to proceed. In fact, Plaintiff's objections to Ms. Kebe's counterclaims and arguments in Plaintiff's Memorandum deal primarily with the underlying substantive merits of the case and, therefore, cannot be decided by this Court on a motion to dismiss.

WHEREFORE, Ms. Kebe respectfully requests that this Honorable Court enter an Order denying Plaintiff's Motion to Dismiss the Counterclaims of Latasha

Transrina Kebe and granting Ms. Kebe such other and further relief as the Court deems just and proper.

## CERTIFICATION AS TO FONT

In accordance with Local Rule 7.1(D), the undersigned certifies that the foregoing document was prepared with Times New Roman 14 point, a font and point selection approved by the Court in Local Rule 5.1(C).

Respectfully submitted this 26th day of August, 2019.

*/s/Olga Izmaylova*
olga@silawatl.com
Georgia State Bar No. 666858


*/s/Sadeer Sabbak*
ssabbak@silawatl.com
Georgia State Bar No. 918493

SABBAK & IZMAYLOVA, P.C.   *Attorneys for Latasha Kebe*
1875 Old Alabama Road
Suite 760
Roswell, Georgia 30076
p. (404) 793-7773
f. (678) 878-4911

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2019, I electronically filed the foregoing DEFENDANT KEBE'S RESPONSE WITH CITATIONS TO AUTHORITY TO PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIMS OF DEFENDANT LATASHA TRANSRINA KEBE with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all of the attorneys of record.

*/s/Olga Izmaylova*
olga@silawatl.com
Georgia State Bar No. 666858

SABBAK & IZMAYLOVA, P.C.
1875 Old Alabama Road
Suite 760
Roswell, Georgia 30076
p. (404) 793-7773
f. (678) 878-4911

13