# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

BELCALIS MARLENIS ALMÁNZAR,

                   Plaintiff,

   v.

LATASHA TRANSRINA KEBE a/k/a
LATASHA TRANSRINA HOWARD and
KEBE STUDIOS LLC,

                 Defendants.

Case No. 1-19-cv-01301-WMR

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Belcalis Marlenis Almánzar ("Plaintiff") for her complaint against

Defendant Latasha Transrina Kebe a/k/a Latasha Transrina Howard ("Kebe") and

Defendant Kebe Studios LLC ("Kebe Studios") (collectively, "Defendants")

alleges as follows:

### NATURE OF THE CASE

1.    This is a diversity action asserting Georgia state law claims for

slander per se, slander, libel per se, and defamation, as a result of Defendants'

publication of slanderous and defamatory statements regarding Plaintiff that are

false, harmful, and offensive to Plaintiff, as well as invasion of privacy – false light and intentional infliction of emotional distress.

## PARTIES

2.      Plaintiff currently is a citizen and resident of the State of California.

3.      Upon information and belief, Kebe is and at all times during the pendency of this action has been a citizen and resident of the State of Georgia.

4.      Upon information and belief, Kebe Studios is a Georgia limited liability company with a principal office address of 3614 Janna Lane SW, Marietta, Georgia 30008.

5.      Upon information and belief, Kebe Studios was formed on April 14, 2018 as an alter ego or mere business conduit for Kebe's activities alleged herein.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as this is an action between citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000).

7.      Upon information and belief, Kebe is subject to personal jurisdiction in the State of Georgia as she resides in and/or is domiciled in Georgia. In addition, upon information and belief, Kebe owns, uses, or possesses real property within the State of Georgia, regularly transacts business as described below within the

State of Georgia, and committed a tortious act within the State of Georgia, including the torts of invasion of privacy – false light.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants are residents of this District and because, upon information and belief, the conduct complained of occurred in this District.

## FACTUAL BACKGROUND

9.     Plaintiff is a Grammy award-winning musical artist, songwriter, and television personality professionally known as "Cardi B."

10.     Since the release of her full-length debut mixtape in 2015, Plaintiff's musical works have reached peak positions on charts in the United States and around the world. As a result of the popularity of her music, Plaintiff has millions of fans in the United States and around the world who follow her work and her social media profiles.

11.     Plaintiff is also a mother of a young baby girl.

12.     In addition to her artistic endeavors, Plaintiff is well known for her volunteer work and philanthropic endeavors, which include helping families affected by gang violence and performing volunteer work in handing out coats to underprivileged persons.

13.     Upon information and belief, Starmarie Ebony Jones ("Jones") is a natural person who claims to have known Plaintiff before her musical career.

14.     Upon information and belief, Jones currently conducts business in the nature of promoting anti-aging products.

15.     Upon information and belief, however, Jones' real aspiration is to have a career in the entertainment industry as an actress. Upon information and belief, in pursuit of this goal, Jones promotes herself and her entertainment endeavors through social media, where she has about ten thousand followers.

16.     Upon information and belief, Jones regularly posts information regarding her endeavors in the entertainment industry in and around Atlanta.

17.     Upon information and belief, Kebe produces, hosts, and publishes videos on YouTube entitled "unWinewithTashaK."

18.     Upon information and belief, while Kebe calls her site "a celebrity gossip site," the real purpose of "unWinewithTashaK" is to provide a platform for Kebe to publish and spread malicious rumors, slanderous assertions, and false information about celebrities, including Plaintiff, for her personal financial gain.

19.     Upon information and belief, Kebe does this to draw various celebrities' social media followers to her site, including Plaintiff's social media

4

followers, so she can increase what she charges for advertising to third parties that advertise with her.

20.    Upon information and belief, in early 2018, Kebe targeted Plaintiff and began making degrading and harassing statements regarding Plaintiff.

21.    Upon information and belief, while Plaintiff was pregnant, on or around April 13, 2018, Kebe published a video where Kebe stated that as a result of Plaintiff's actions, Plaintiff's then-unborn child may have intellectual disabilities.

22.    Upon information and belief, in the months preceding the filing of this lawsuit, Kebe took her vitriol one step further by making blatantly defamatory statements regarding Plaintiff.

23.    Upon information and belief, Kebe became obsessed with slandering and harassing Plaintiff. In the sixteen months preceding the filing of this lawsuit, Kebe put out at least thirty-eight videos regarding Plaintiff.

24.    Upon information and belief, as set forth below, Kebe's videos about Plaintiff attract substantially more viewers than most of her other videos, which is part of the reason she has repeatedly targeted Plaintiff.

25.    Upon information and belief, to this end, Kebe has published in the past few months several videos with more false and defamatory statements about

Plaintiff, who has become the target of Kebe's malicious campaign to damage and destroy Plaintiff's reputation among her fans and the consuming public.

26.     Upon information and belief, on or around September 2, 2018, Kebe published a video (the "9/2/18 Video").

27.     The 9/2/18 Video contains at least one false and defamatory statement about Plaintiff.

28.     The 9/2/18 Video contains the false, malicious, and defamatory statement that Plaintiff "prostituted for a living." (9/2/18 Video at 5:50.)

29.     Upon information and belief, Kebe published the 9/2/18 Video to tens of thousands of individuals without privilege or justification.

30.     Upon information and belief, around that same time, on or around September 13, 2018, Jones published a video of herself to her Instagram followers making false, malicious, and defamatory statements regarding Plaintiff through Instagram Live, which allows users to film live videos that can be watched either simultaneously by their followers or within 24 hours of their posting (the "Jones Video").

31.     The Jones Video contains multiple false and defamatory statements about Plaintiff.

32.    In the Jones Video, Jones made the false, malicious, and defamatory statement that "[Plaintiff] got herpes." (Jones Video at 9:38.)

33.    In the Jones Video, Jones also made the false, malicious, and defamatory statement that Plaintiff took cocaine. (Jones Video at 14:24.)

34.    In the Jones Video, Jones also falsely stated that Plaintiff was engaging in prostitution. Specifically, she stated, referring to Plaintiff, "I guess they were supposed to have sex, exchange sex for money." (Jones Video at 15:50.)

35.    Shortly after Jones released the Jones Video, on or around September 13, 2018, Jones also published written comments on her Instagram account to third parties that Plaintiff is "just a Grammy Nominated Prostitute, running around spreading her herpes" (the "Instagram Comment").

36.    Upon information and belief, continuing her campaign of slander, and to capitalize on Jones' slander, on or around September 19, 2018, Kebe recorded and later published a video of herself interviewing Jones regarding the Jones Video on YouTube entitled "Exclusive: Cardi B's Ex-FRIEND ALLEGES Cardi B. Kept A Huge Box filled with MONlSTAT & REVEALS More!" (the "9/19/18 Video").

37.    Upon information and belief, Kebe knew that publishing a video regarding Plaintiff would draw substantially more viewers to her content than she typically garners.

38.     Upon information and belief, the 9/19/18 Video, has garnered over four million views. By way of comparison, upon information and belief, the last full-length video Kebe published prior to the 9/19/18 Video only garnered approximately 223,000 views.

39.     Upon information and belief, only nine of her approximately 236 videos published prior to the 9/19/18 Video garnered over one million views.

40.     The 9/19/18 Video contains multiple false and defamatory statements about Plaintiff.

41.     The 9/19/18 Video contains the false, malicious, and defamatory statement that Plaintiff was a prostitute (0:40: "(Kebe) You said that Cardi B prostituted" "(Jones) Yes").

42.     The 9/19/18 Video contains the false, malicious, and defamatory statement that Plaintiff used cocaine (0:40: "(Kebe) Was she a drug user?" "(Ms. Jones) Yes" "(Kebe) cocaine . . . to be specific" "(Jones) Yes").

43.     The 9/19/18 Video also contains the false, malicious, and defamatory statement that Plaintiff has herpes (0:48: "(Kebe) She has herpes?" "(Jones) Yes").

44.     The 9/19/18 Video contains the false, malicious, and defamatory statement that Plaintiff also had herpes outbreaks on her mouth in the past (17:25:

"(Kebe) So you were living with her at the time and she had herpes outbreaks on her mouth?" "(Jones) Yes").

45.     Upon information and belief, Kebe published the 9/19/18 Video to millions of individuals without privilege or justification.

46.     None of the aforementioned statements about Plaintiff are true. Plaintiff was never a prostitute or a user of cocaine. Plaintiff has never, and does not now, have herpes, nor has she had herpes outbreaks on her mouth.

47.     Upon information and belief, Kebe knew or should have known that the aforementioned statements were false.

48.     Upon information and belief, Kebe was subjectively aware of the probable falsity of the aforementioned statements at the time she published them.

49.     Upon information and belief, by way of example, on a second YouTube channel operated by Kebe, Kebe posted a video that acknowledges that she was aware, prior to her publishing the 9/19/18 Video, that the defamatory statements made by Jones may not have been true.

50.     Upon information and belief, Kebe further acknowledged and that she published the 9/19/18 Video a day earlier than she had planned to because information undermining Jones' credibility was about to be published and Kebe

wanted the 9/19/18 Video to have an opportunity to trend (i.e., gain viewership) before people saw the information that would "debunk" Jones' statements.

51.     Upon information and belief, the aforementioned defamatory statements were made and published by Kebe with actual malice, i.e., with knowledge that the statements were false or with reckless disregard for the fact that they were false.

52.     On or about September 19, 2018, shortly after Kebe published the 9/19/18 Video, Plaintiff, through her counsel, sent a cease and desist letter to Kebe that demanded immediate removal of the defamatory video.

53.     Upon information and belief, two days after receiving the letter, which she posted on social media rather than take the video down or issuing a retraction and/or repudiation, Kebe published a second video that falsely proclaimed the statements made in the 9/19/18 Video were true.

54.     Upon information and belief, on or around September 21, 2018, Kebe published a second video entitled "Actual PROOF Cardi B. Knew her Ex-Roommate, Drake, Funky Dineva vs Tamar, Beyonce Black Majic," where she unequivocally stated that everything said in the 9/19/18 Video was true (the "9/21/18 Video").

55.     The 9/21/18 Video also continued Kebe's campaign of defamation.

56.    Upon information and belief, in the 9/21/18 Video, Kebe claims that "Everything that we said, that everything that [Jones] said was accurate" (9/21/18 Video at 2:11); that Kebe was "the source" (9/21/18 Video at 4:38).

57.    Upon information and belief, Kebe even went so far as to falsely suggest that she was in possession of undisclosed facts that would support the prior statements when she further claimed that "[Jones] has shown me some stuff, I said, okay legit so I'm gonna go ahead and tell your story." (9/21/18 Video at 8:12.)

58.    Since then, Kebe has continued her campaign of defamation and harassment.

59.    Upon information and belief, on or around December 18, 2018, Kebe published a video on YouTube entitled "Tasha K. RESPONDS To Cardi B's Diffimation SUIT & Offset's Dad calling Cardi B. OUT & more" (the "12/18/18 Video").

60.    The 12/18/18 Video contains the false and defamatory statement that Plaintiff "f***** herself with beer bottles on f****** stripper stages." (12/18/18 Video at 10:10.)

61.    Upon information and belief, on or around December 18, 2018, Kebe published a post on Facebook referring to Plaintiff as "Herpes B" (the "12/18/18 Facebook Post").

11

62.     Upon information and belief, on or around January 4, 2019, Kebe published a video on YouTube entitled "Exclusive | Cardi's Cousin ANGRY! Diddy & Cassie, Toni & Birdman, Tiffany Haddish, R. Kelly & More." (the "1/4/19 Video").

63.     The 1/4/19 Video contains the false and defamatory statement that Plaintiff was a prostitute. (1/4/19 Video at 41:35.)

64.     On or around January 25, 2019, Kebe Tweeted that Plaintiff had herpes (the "1/25/19 Tweet").

65.     Upon information and belief, the 1/25/19 Tweet was published to Kebe's over six thousand followers.

66.     Upon information and belief, shortly after it was posted, knowing it was not true, Kebe deleted the post. However, as set forth below, she has failed and refused to repudiate and take down the other instances of defamatory statements in the above-described videos.

67.     Upon information and belief, on or around March 25, 2019, Kebe temporarily unlisted and/or took down the 9/19/18 Video and 9/21/18 Video from her YouTube channel.

68.     Upon information and belief, on or around March 26, 2019, Kebe re-listed and/or re-posted the 9/19/18 Video and 9/21/18 Video on her YouTube channel effectively re-publishing them.

69.     Upon information and belief, on or around April 23, 2019, Kebe published a video on YouTube entitled "Tasha K. RESPONDS to Cardi B.'s #MUTEBLACKBLOGS Agenda! Cardi CALLS Shade Room Owner a Water Buffalo" (the "4/23/19 Video").

70.     The 4/23/19 Video contains a false and defamatory statement that Plaintiff "stuck beer bottles up her vagina, she actually took beer bottles from pedestrians. This is on video, she took the beer bottle from the pedestrian . . . stuck it in her cooch, drank the beer bottle and gave it back to him." (4/23/19 Video at 22:40.)

71.     Upon information and belief, on or around April 25, 2019, Kebe published a recording of a phone call that Kebe had with another YouTube blogger named Lovelyti entitled "Exclusive Tasha K. LEAKS Private Call Proving Lovelyti Tasha K. PLANNED Starmarie Interview" (the "Lovelyti Call").

72.     Upon information and belief, the Lovelyti Call was originally recorded at least six months before it was published.

73.     Upon information and belief, the Lovelyti Call was originally recorded prior to the publication of the 9/19/18 Video and 9/21/18 Video and prior to their re-publication.

74.     Upon information and belief, the Lovelyti Call demonstrates that Kebe was aware of the likelihood that she was circulating false information and entertained serious doubts as to the truth of the statements she published.

75.     Upon information and belief, in the Lovelyti Call, Kebe states that Jones "told some truths, she didn't tell all truths" (Lovelyti Call at 16:04).

76.     Upon information and belief, in the Lovelyti Call, Kebe states, "I still believe [Jones] . . . now as far as the herpes and shit, I don't know." (Lovelyti Call at 24:06.)

77.     Upon information and belief, in the Lovelyti Call, Kebe states, "Cardi has an entire team to protect her, if people defame her or anything, that's Cardi's job . . . to shut that shit down." (Lovelyti Call at 10:17.)

78.     Upon information and belief, in the Lovelyti Call, Kebe states, ". . . here's my thing, all of these strippers are lying . . ." referring to Jones, Plaintiff and a third party. (Lovelyti Call at 11:02.)

79.     Upon information and belief, on or around July 19, 2019, Kebe published a video on YouTube entitled "Exclusives| Lala & Carmelo, Cardi &

14

Offset, Megan The Stallion, Dwight Howard, Kevin Spacey & More!" (the "7/19/19 Video").

80.     The 7/19/19 Video contains a false and defamatory statement that Plaintiff engaged in prostitution. (7/19/19 Video at 45:40.)

81.     Upon information and belief, on or around November 8, 2019, Kebe published a video on YouTube entitled "Exclusive I New R.Kelly ENABLERS REVEALED, Whitney Houston, Ti, Evelyn & O.G., Cardi B., & more!" (the "11/8/19 Video").

82.     The 11/8/19 Video contains a false and defamatory statement that Plaintiff engaged in prostitution. (11/8/19 Video at 58:45.)

83.     Upon information and belief, on or around December 30, 2019, Kebe published a video on YouTube entitled "Cardi's Husband allegedly CONTACTED his EX GIRLFRIEND Jade" (the "12/30/19 Video").

84.     The 12/30/19 Video contains a false and defamatory statement that Plaintiff "was sitting on beer bottles, she was taking pedestrian's beer bottles, they was drinking and they could have had some cold sores and she sat on the f****** beer bottles." (12/30/19 Video at 7:00.)

85.     Upon information and belief, on or around April 24, 2020, Kebe published a video on YouTube entitled "This is Why I CANT WERK!" (the "4/24/20 Video").

86.     The 4/24/20 Video contains a false and defamatory statement that Plaintiff has herpes. (4/24/20 Video at 1:00:23.)

87.     Upon information and belief, on or around September 18, 2020, Kebe published a video on YouTube entitled "Exclusive | Cardi's NEW LOVER amid Divorce?, Kylie Jenner, Andrew Gillum, August Alsina, Nicki Minaj" (the "9/18/20 Video").

88.     The 9/18/20 Video contains the following false and defamatory statements that Plaintiff was a prostitute (1:07:50), that Plaintiff has HPV (1:16:11), and that Plaintiff committed infidelity (1:15:37, 1:16, 1:16:29, 1:19:17, 1:19:45, 1:21:31).

89.     Upon information and belief, on or around September 21, 2020, Kebe published a video on YouTube entitled "Cardi BABY girl. I MEAN baby Bird!" (the "9/21/20 Video").

90.     The 9/21/20 Video contains the false and defamatory statements that Plaintiff was a prostitute (7:10) and that Plaintiff is engaging in adultery (7:54).

91.     In the 9/21/20 Video, she acknowledged on multiple occasions that she knew her stories about Plaintiff were false and she published them anyway. ("You know what's funny, I make up stories out of thin air, Tasha just makes up stories." (2:20); "I knew the sh** was fake." (3:24); "I knew they was m*********** fake— I told Kyle 'I'm going to put the bull**** out anyway.'" (6:40); "I knew it was fake, I still made that s*** go m*********** viral okay." (8:38); ""If you continue to send me fake stories on you, I'm going to air them as they are hoe." (10:50);  "So keep sending me the lies, and I'm going to keep putting them the f*** out b****." (11:35).)

92.     The aforementioned defamatory statements published by Jones have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, and emotional distress.

93.     The aforementioned defamatory statements distributed, published, and repeated by Kebe have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, and emotional distress.

94.     The aforementioned defamatory statements distributed, published, and repeated by Kebe have also caused damage to Plaintiff's reputation and character within her profession and industry, including but not limited to among her fans and with prospective business relations.

95.     Pursuant to O.C.G.A. §§ 51-5-11 and 51-5-12, on February 28, 2019, Plaintiff sent a demand for retraction and repudiation to Kebe demanding a retraction and repudiation of defamatory statements.

96.     Pursuant to O.C.G.A. §§ 51-5-11 and 51-5-12, on October 2, 2020, Plaintiff sent an additional demand for retraction and repudiation to Kebe demanding a retraction and repudiation of the other subsequently discovered defamatory statements.

97.     Despite written demands for repudiation and the passing of at least seven (7) days in each instance, Kebe has as of the date of filing of this Complaint failed and refused to retract and/or repudiate the aforementioned defamatory statements.

98.     As of this day, Kebe has not issued any sort of retraction or repudiation of the defamatory statements.

## COUNT I
### (Slander Per Se Against Defendants)

99.     Plaintiff repeats and realleges by reference the allegations in paragraphs 1 through 98 as if fully set forth herein.

100.    Upon information and belief, as set forth above, Kebe published multiple false and defamatory statements about Plaintiff, including that Plaintiff was a prostitute, that Plaintiff was a user of cocaine, that Plaintiff had and still has

herpes, that Plaintiff has had herpes outbreaks on her mouth, that Plaintiff had and

still has HPV, that Plaintiff engaged in a debasing act with a beer bottle, and that

Plaintiff committed infidelity.

101.   None of the aforementioned defamatory statements about Plaintiff are

true.

102.   Upon information and belief, Kebe knew these statements to be false

at the time she published them, or Kebe was subjectively aware of the probable

falsity of the aforementioned statements at the time she published them.

103.   Upon information and belief, by way of example, on a second

YouTube channel operated by Kebe, Kebe posted a video that acknowledges she

was aware, prior to her publishing the 9/19/18 Video, that the defamatory

statements made by Jones may not have been true.

104.   Upon information and belief, Kebe further acknowledged that she

published the 9/19/18 Video a day earlier than she had planned to because

information undermining Jones' credibility was about to be published and Kebe

wanted the 9/19/18 Video to have an opportunity to trend (i.e., gain viewership)

before people saw the information that would "debunk" Jones' statements.

105.   Nevertheless, upon information and belief, after receiving a cease and

desist letter demanding she take down the defamatory statements about Plaintiff in

the 9/19/18 Video, Kebe published another video on September 21, 2018 that referred to the 9/19/18 Video and the Jones Video and falsely stated that "Everything that we said, that everything that [Jones] said was accurate" (9/21/18 Video at 2:11); that Kebe was "the source" (9/21/18 Video at 4:38).

106.   Upon information and belief, Kebe did not make reasonable attempts to verify the false and defamatory statements that were made about Plaintiff before the videos containing those statements (collectively, the "Defamatory Videos") were published.

107.   Upon information and belief, prior to publication, Kebe was aware of the likelihood that she was circulating false information and/or she entertained serious doubts as to the truth of the statements that were published in the Defamatory Videos.

108.   Upon information and belief, on or around March 25, 2019, Kebe temporarily unlisted and/or took down the 9/19/18 Video and 9/21/18 Video from her YouTube channel.

109.   Upon information and belief, on or around March 26, 2019, Kebe re-listed and/or re-posted the 9/19/18 Video and 9/21/18 Video on her YouTube channel effectively re-publishing them.

110.   Upon information and belief, Kebe knew the statements made in the Defamatory Videos were false or Kebe acted with reckless disregard of whether they were true or not.

111.   Indeed, in the 9/21/20 Video, she acknowledged on multiple occasions that she knew her stories about Plaintiff were false and she published them anyway. ("You know what's funny, I make up stories out of thin air, Tasha just makes up stories." (2:20); "I knew the sh** was fake." (3:24); "I knew they was m*********** fake— I told Kyle 'I'm going to put the bull**** out anyway.'" (6:40); "I knew it was fake, I still made that s*** go m*********** viral okay." (8:38); ""If you continue to send me fake stories on you, I'm going to air them as they are hoe." (10:50);  "So keep sending me the lies, and I'm going to keep putting them the f*** out b****." (11:35).)

112.   Upon information and belief, Kebe published these false statements via YouTube and identified Plaintiff by her professional name, her occupation, and showed photos of Plaintiff during the videos so that individuals who watched them would know the statements made in the videos were about Plaintiff.

113.   Upon information and belief, Kebe's false stories were generated and communicated with actual malice, total disregard for the truth, and in the complete absence of any special privilege.

114.   Upon information and belief, Kebe had no basis for in the 9/21/18 Video claiming that the statements previously made were true.

115.   Upon information and belief, the 9/2/18 Video has been viewed by tens of thousands of people.

116.   Upon information and belief, the 9/19/18 Video and 9/21/18 Video have been viewed by hundreds of thousands of people.

117.   Upon information and belief, the 9/2/18 Video, 9/19/18 Video, and 9/21/18 Video and the other Defamatory Videos are still available to be viewed by the public.

118.   Upon information and belief, these actions constitute actionable slander per se under O.C.G.A. § 51-5-4(a)(1)-(2).

119.   Upon information and belief, Kebe's false and defamatory statements made and published in the Defamatory Videos were disparaging and have produced damage to Plaintiff and to Plaintiff's name, character, and reputation.

120.   The aforementioned defamatory statements made, published, and distributed by Kebe have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, and emotional distress.

121.   The aforementioned defamatory statements made, published, and distributed by Kebe have also caused damage to Plaintiff's reputation and character

22

within her profession and industry, including but not limited to among her fans and with prospective business relations.

122.   Upon information and belief, the actions or omissions of Kebe set forth in this Complaint demonstrate malice, egregious defamation, and insult.

123.   Upon information and belief, such actions or omissions by Kebe were undertaken with reckless disregard of the falsity of the speech and its effects on Plaintiff.

124.   As a direct and proximate result of Kebe's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

125.   Plaintiff is entitled to general and special damages against Defendants for the following harm: embarrassment, humiliation, mental anguish, and emotional distress and impairment to her name, character, and reputation.

126.   Additionally, Plaintiff requests against Defendants an award of punitive damages and attorneys' fees and litigation expenses beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Kebe's conduct.

127.   Additionally, as a direct and proximate result of the foregoing, Plaintiff is entitled to an order permanently enjoining Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all

other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, from: making, disseminating, broadcasting, or publishing any statements that Plaintiff has or had herpes or HPV; that Plaintiff uses or has used cocaine; that Plaintiff engaged in a debasing act with a beer bottle; that Plaintiff committed infidelity; and/or that Plaintiff was or is a prostitute, as well as an order requiring Defendants to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding Plaintiff.

## COUNT II
### (Slander Against Defendants)

128.   Plaintiff repeats and realleges by reference the allegations in paragraphs 1 through 127 as if fully set forth herein.

129.   Upon information and belief, Kebe's above actions constitute actionable slander under O.C.G.A. § 51-5-4(a)(4).

130.   Upon information and belief, Kebe's false and defamatory statements made during the Defamatory Videos were disparaging, and have produced damage to Plaintiff, and to Plaintiff's name, character, and reputation.

131.   Upon information and belief, Kebe was subjectively aware of the probable falsity of the statements made during the above-referenced videos at the time they published them.

132.    Upon information and belief, the actions or omissions of Kebe set forth in this Complaint demonstrate malice, egregious defamation, and insult.

133.    Upon information and belief, such actions or omissions by Kebe were undertaken with reckless disregard of the falsity of the speech and its effects on Plaintiff.

134.    Indeed, in the 9/21/20 Video, she acknowledged on multiple occasions that she knew her stories about Plaintiff were false and she published them anyway. ("You know what's funny, I make up stories out of thin air, Tasha just makes up stories." (2:20); "I knew the sh** was fake." (3:24); "I knew they was m*********** fake— I told Kyle 'I'm going to put the bull**** out anyway.'" (6:40); "I knew it was fake, I still made that s*** go m*********** viral okay." (8:38); ""If you continue to send me fake stories on you, I'm going to air them as they are hoe." (10:50);  "So keep sending me the lies, and I'm going to keep putting them the f*** out b****." (11:35).)

135.    As a direct and proximate result of Kebe's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

136.    The aforementioned defamatory statements made, published, and distributed by Kebe have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, and emotional distress.

137.   The aforementioned defamatory statements made, published, and distributed by Kebe have also caused damage to Plaintiff's reputation and character within her profession and industry, including but not limited to among her fans and with prospective business relations.

138.   Plaintiff is entitled to general and special damages against Defendants for the following harm: embarrassment, humiliation, mental anguish, and emotional distress and impairment to her name, character, and reputation.

139.   Additionally, Plaintiff requests against Defendants an award of punitive damages and attorneys' fees and litigation expenses beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Kebe's conduct.

140.   Additionally, as a direct and proximate result of the foregoing, Plaintiff is entitled to an order permanently enjoining Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, from: making, disseminating, broadcasting, or publishing any statements that Plaintiff has or had herpes or HPV; that Plaintiff uses or has used cocaine; that Plaintiff engaged in a debasing act with a beer bottle; that Plaintiff committed infidelity; and/or that

Plaintiff was or is a prostitute, as well as an order requiring Defendants to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding Plaintiff.

## COUNT III
### (Libel Per Se Against Defendants)

141.   Plaintiff repeats and realleges by reference the allegations in paragraphs 1 through 140 as if fully set forth herein.

142.   Upon information and belief, Kebe published the 12/18/18 Facebook Post on or around December 18, 2018.

143.   Upon information and belief, Kebe published this false statement via Facebook

144.   Upon information and belief, Kebe published the 1/25/19 Tweet on or around January 25, 2019.

145.   Upon information and belief, Kebe published this false statement via Twitter.

146.   As set forth above, the statements made in the 12/18/18 Facebook Post and the 1/25/19 Tweet that Plaintiff has herpes is false, defamatory, and libelous.

147.   Upon information and belief, Kebe knew these statements to be false at the time she published them or acted with reckless disregard of whether they were true or not.

148.   Upon information and belief, Kebe was subjectively aware of the probable falsity of the aforementioned statements at the time she published them.

149.   Upon information and belief, Kebe's false stories were generated and communicated with actual malice, total disregard for the truth, and in the complete absence of any special privilege.

150.   Upon information and belief, Kebe had no basis for claiming the aforementioned statements were true.

151.   Upon information and belief, the 12/18/18 Facebook Post was published to Kebe's thousands of Facebook followers.

152.   Upon information and belief, the 1/25/19 Tweet was published to Kebe's over six thousand Twitter followers.

153.   Upon information and belief, Kebe's actions constitute actionable libel per se under O.C.G.A. § 51-5-1.

154.   Upon information and belief, Kebe's false and defamatory statements made in the 12/18/18 Facebook Post and the 1/25/19 Tweet were disparaging and

have produced damage to Plaintiff and to Plaintiff's name, character, and reputation.

155.   The aforementioned defamatory statements made and published by Kebe have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, and emotional distress.

156.   The aforementioned defamatory statements published by Kebe have also caused damage to Plaintiff's reputation and character within her profession and industry, including but not limited to among her fans and with prospective business relations.

157.   Upon information and belief, the actions or omissions of Kebe set forth in this Complaint demonstrate malice, egregious defamation, and insult.

158.   Upon information and belief, such actions or omissions by Kebe were undertaken with reckless disregard of the falsity of the speech and its effects on Plaintiff.

159.   As a direct and proximate result of Kebe's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

160.   Plaintiff is entitled to general and special damages against Defendants for the following harm: embarrassment, humiliation, mental anguish, and emotional distress and impairment to her name, character, and reputation.

161.   Additionally, Plaintiff requests against Defendants an award of punitive damages and attorneys' fees and litigation expenses beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Kebe's conduct.

162.   Additionally, as a direct and proximate result of the foregoing, Plaintiff is entitled to an order permanently enjoining Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, from: making, disseminating, broadcasting, or publishing any statements that Plaintiff has or had herpes or HPV; that Plaintiff uses or has used cocaine; that Plaintiff engaged in a debasing act with a beer bottle; that Plaintiff committed infidelity; and/or that Plaintiff was or is a prostitute, as well as an order requiring Defendants to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding Plaintiff.

## COUNT IV
### (Invasion of Privacy – False Light Against Defendants)

163.   Plaintiff repeats and realleges by reference the allegations in paragraphs 1 through 162 as if fully set forth herein.

164.   Upon information and belief, by publishing the false statements in the manner described above, Kebe portrayed Plaintiff in a false light intending to cause Plaintiff injury.

165.   Upon information and belief, Kebe knew these statements to be false.

166.   Upon information and belief, Kebe made no attempt to verify the veracity of any statements made regarding Plaintiff.

167.   Upon information and belief, Kebe knew the statements made in the 9/2/18 Video, 9/19/18 Video, 9/21/18 Video, and the other Defamatory Videos, and the 1/25/19 Tweet, were false.

168.   Upon information and belief, Kebe was subjectively aware of probable falsity of the statements made in the 9/2/18 Video, 9/19/18 Video, 9/21/18 Video, and the other Defamatory Videos, and the 1/25/19 Tweet, at the time she published them.

169.   Upon information and belief, Kebe's false statements were generated and communicated with actual malice, total disregard for the truth, and in the complete absence of any special privilege.

170.   Indeed, in the 9/21/20 Video, she acknowledged on multiple occasions that she knew her stories about Plaintiff were false and she published them anyway. ("You know what's funny, I make up stories out of thin air, Tasha

just makes up stories." (2:20); "I knew the sh** was fake." (3:24); "I knew they

was m************ fake— I told Kyle 'I'm going to put the bull**** out

anyway.'" (6:40); "I knew it was fake, I still made that s*** go m************

viral okay." (8:38); ""If you continue to send me fake stories on you, I'm going to

air them as they are hoe." (10:50);  "So keep sending me the lies, and I'm going to

keep putting them the f*** out b****." (11:35).)

171.   Upon information and belief, as set forth above Kebe has intentionally

intruded upon the solitude and/or seclusion of Plaintiff and her private affairs

and/or concerns, and this intrusion, which falsely portrays Plaintiff in a manner

that is highly offensive to a reasonable person, including that Plaintiff was a

prostitute, that Plaintiff was a user of cocaine, that Plaintiff had and still has

herpes, that Plaintiff has had herpes outbreaks on her mouth, that Plaintiff had and

still has HPV, that Plaintiff engaged in a debasing act with a beer bottle, and that

Plaintiff committed infidelity.

172.   Upon information and belief, Kebe knew or should have known the

statements alleged herein would create a false impression about Plaintiff and acted

in reckless disregard of the truth.

173.   Upon information and belief, Kebe did not engage in any of the

aforementioned conduct out of any sincere or proper motive, or in any manner

governed by reasonable and ministerial conduct according to any job duty, but did so knowingly, willfully, and oppressively, with full knowledge of the adverse effects that their actions would have on Plaintiff, and with willful and deliberate disregard for the consequences. Accordingly, Plaintiff is entitled to recover punitive damages from Kebe in an amount to be determined at trial.

174.   Upon information and belief, the actions or omissions of Kebe set forth in this Complaint demonstrate malice, egregious defamation, and insult. Such actions or omissions by Kebe were undertaken with reckless disregard of the falsity of the speech and its effects on Plaintiff.

175.   As a direct and proximate result of Kebe's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

176.   Plaintiff is entitled to general and special damages against Defendants for the following harm: embarrassment, humiliation, mental anguish, and emotional distress and impairment to her name, character, and reputation.

177.   Additionally, Plaintiff requests against Defendants an award of punitive damages and attorneys' fees and litigation expenses beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Kebe's conduct.

178.   Additionally, as a direct and proximate result of the foregoing, Plaintiff is entitled to an order permanently enjoining Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, from: making, disseminating, broadcasting, or publishing any statements that Plaintiff has or had herpes or HPV; that Plaintiff uses or has used cocaine; that Plaintiff engaged in a debasing act with a beer bottle; that Plaintiff committed infidelity; and/or that Plaintiff was or is a prostitute, as well as an order requiring Defendants to retract, remove, and repudiate in full all defamatory and disparaging statements made regarding Plaintiff.

## COUNT V
### (Intentional Infliction of Emotional Distress)

179.   Plaintiff repeats and realleges by reference the allegations in paragraphs 1 through 178 as if fully set forth herein.

180.   Upon information and belief, by making and publishing the statements, and campaign of harassing videos, including the Defamatory Videos, Defendants were intending to cause Plaintiff emotional distress.

181.   Upon information and belief, Kebe's conduct was intentional, as Kebe knew these statements were false and made no attempt to verify the truth of any statements made regarding the Plaintiff.

182.   Upon information and belief, Kebe knew the statements made in the 9/2/18 Video, 9/19/18 Video, 9/21/18 Video, and the other Defamatory Videos, and the 1/25/19 Tweet, were extreme and outrageous and would cause Plaintiff emotional distress.

183.   Indeed, in the 9/21/20 Video, she acknowledged on multiple occasions that she knew her stories about Plaintiff were false and she published them anyway. ("You know what's funny, I make up stories out of thin air, Tasha just makes up stories." (2:20); "I knew the sh** was fake." (3:24); "I knew they was m*********** fake— I told Kyle 'I'm going to put the bull**** out anyway.'" (6:40); "I knew it was fake, I still made that s*** go m*********** viral okay." (8:38); ""If you continue to send me fake stories on you, I'm going to air them as they are hoe." (10:50);  "So keep sending me the lies, and I'm going to keep putting them the f*** out b****." (11:35).)

184.   Upon information and belief, Kebe has published over thirty videos in her campaign against the Plaintiff, including the Defamatory Videos, which were

intended to cause humiliation, mental anguish and emotional distress in the Plaintiff.

185.   Upon information and belief, Kebe's conduct was extreme and outrageous as Kebe purposely published statements that she knew would cause severe emotional distress, including but not limited to stating that Plaintiff's then-unborn child would have mental deficiencies, that Plaintiff was a prostitute, that Plaintiff was a user of cocaine, that Plaintiff had and still has herpes, that Plaintiff has had herpes outbreaks on her mouth, that Plaintiff had and still has HPV, that Plaintiff engaged in a debasing act with a beer bottle, and that Plaintiff committed infidelity.

186.   Upon information and belief, Kebe's conduct was intentional as Kebe intended to benefit financially and socially from Plaintiff's emotional distress.

187.   Upon information and belief, since Kebe began her campaign against Plaintiff, her viewership has substantially increased from hundreds of thousands of views to millions of views for videos of comparable length.

188.   Upon information and belief, Kebe conduct was intentional as Kebe intended to increase what she could charge from advertisers, and, as a result of her campaign of outrageous and harassing conduct against the Plaintiff, has now been able to do so.

189.   As a proximate result of Kebe's actions and the consequences proximately cause by them, as hereinabove alleged, Plaintiff suffered severe humiliations, mental anguish, and emotional distress.

190.   As a direct and proximate result of Kebe's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

191.   Plaintiff is entitled to general and special damages against Defendants for the following harm: embarrassment, humiliation, mental anguish, and emotional distress.

192.   Additionally, Plaintiff requests against Defendants an award of punitive damages and attorneys' fees and litigation expenses beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Kebe's conduct.

193.   Additionally, as a direct and proximate result of the foregoing, Plaintiff is entitled to an order permanently enjoining Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, from: making, disseminating, broadcasting, or publishing any statements that Plaintiff has or had herpes or HPV; that Plaintiff uses or has used cocaine; that Plaintiff engaged in a

debasing act with a beer bottle; that Plaintiff committed infidelity; and/or that

Plaintiff was or is a prostitute, as well as an order requiring Defendants to retract,

remove, and repudiate in full all defamatory and disparaging statements made

regarding Plaintiff.

## COUNT VI
### (Punitive Damages Pursuant to O.C.G.A. § 51-12-5.1)

194.   Plaintiff repeats and realleges by reference the allegations in

paragraphs 1 through 193 as if fully set forth herein.

195.   Kebe's actions demonstrate willful misconduct, malice, fraud,

wantonness, oppression, and conscious indifference to the consequences of their

actions.

196.   Indeed, in the 9/21/20 Video, she acknowledged on multiple

occasions that she knew her stories about Plaintiff were false and she published

them anyway. ("You know what's funny, I make up stories out of thin air, Tasha

just makes up stories." (2:20); "I knew the sh** was fake." (3:24); "I knew they

was m*********** fake— I told Kyle 'I'm going to put the bull**** out

anyway.'" (6:40); "I knew it was fake, I still made that s*** go m***********

viral okay." (8:38); ""If you continue to send me fake stories on you, I'm going to

air them as they are hoe." (10:50);  "So keep sending me the lies, and I'm going to

keep putting them the f*** out b****." (11:35).)

197.   Upon information and belief, Kebe acted with a specific intent to cause harm to Plaintiff.

198.   Plaintiff seeks punitive damages pursuant to O.C.G.A. § 51-12-5.1 to punish, penalize, and deter Defendants' actions in an amount that exceeds $250,000.

## COUNT VII
## (Attorneys' Fees and Litigation Expenses Pursuant to O.C.G.A. § 13-6-11)

199.   Plaintiff repeats and realleges by reference the allegations in paragraphs 1 through 198 as if fully set forth herein.

200.   Kebe has acted in bad faith by publishing defamatory statements she knew to be false and would cause harm to Plaintiff and has been stubbornly litigious and has caused Plaintiff unnecessary trouble and expense by refusing to retract such statements.

201.   Plaintiff seeks her attorneys' fees and expenses of litigation against Defendants pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests the Court to enter judgment in her favor and against Defendants, each of them jointly and severally, as follows:

(a)     Awarding Plaintiff damages in amounts pertaining to each to be determined at trial, but not less than $75,000, including general, special, consequential, actual, and punitive damages;

(b)     Awarding an accounting to Plaintiff for the gains and profits of Defendants arising from the unlawful conduct;

(c)     Permanently enjoining Defendants and their respective partners, agents, representatives, successors, assigns and employees, and any and all persons in active convert or participation with Defendants, and each of their executors, administrators, successors, licensees, assigns, subsidiaries, parents, affiliates, divisions, co-venturers, partners, officers, directors, employees, agents, shareholders, managers, representatives, consultants, and any and all other persons, corporations, or other entities acting under the supervision, direction, control, or on behalf of any of the foregoing, and each of them, from: making, disseminating, broadcasting, or publishing any statements that Plaintiff has or had herpes or HPV; that Plaintiff uses or has used cocaine; that Plaintiff engaged in a debasing act with a beer bottle; that Plaintiff committed infidelity; and/or that Plaintiff was or is a prostitute;

(d)     Issuing an order requiring Defendants to retract, remove, and

repudiate in full all defamatory and disparaging statements made regarding

Plaintiff;

(e)     Awarding Plaintiff's attorneys' fees and costs;

(f)     Pre-judgment and post-judgment interest; and

(g)     Granting Plaintiff such other and further relief as the Court deems just

and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all claims for relief and issues

triable by jury.

Dated: November 29, 2020          Respectfully submitted,

/s/ Lisa F. Moore
Gary P. Adelman
(*admitted pro hac vice*)
Sarah M. Matz
(*admitted pro hac vice*)
ADELMAN MATZ P.C.
1173A Second Avenue, Suite 153
New York, New York 10065
Telephone: (646) 650-2207
E-mail: g@adelmanmatz.com
E-mail: sarah@adelmanmatz.com

Lisa F. Moore (Bar No. 419633)

W. Andrew Pequignot (Bar No. 424546)
MOORE PEQUIGNOT LLC
887 West Marietta Street, Suite M-102
Atlanta, Georgia 30318
Telephone: (404) 748-9596
E-mail: lisa@themoorefirm.com
E-mail: andrew@themoorefirm.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 29, 2020, I electronically filed the

foregoing SECOND AMENDED COMPLAINT AND DEMAND FOR JURY

TRIAL with the Clerk of the Court using the CM/ECF system, which will

automatically send email notification of such filing to all of the attorneys of record.


/s/ Lisa F. Moore
Lisa F. Moore
Georgia Bar No. 419633