# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| BELCALIS MARLENIS ALMANZAR, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. |
| v. | * | 1:19-cv-01301-WMR |
| | * | |
| LATASHA TRANSRINA KEBE et al., | * | |
| | * | |
| Defendants. | * | |

## DEFENDANT KEBE'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND SECOND AMENDED COUNTERCLAIMS

COMES NOW Latasha Kebe (hereinafter referred to as "Ms. Kebe"), by and through undersigned Counsel, and hereby files her Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint and Second Amended Counterclaims, showing this Honorable Court as follows:

### FIRST DEFENSE

Plaintiff's Second Amended Complaint fails to state any claim upon which relief can be granted and, therefore, the same should be dismissed.

## SECOND DEFENSE

Plaintiff's Second Amended Complaint fails to plead each essential element for a viable claim of Slander *Per Se* under Georgia law and, therefore, the same should be dismissed.

## THIRD DEFENSE

Plaintiff's Second Amended Complaint fails to plead each essential element for a viable claim of Slander under Georgia law and, therefore, the same should be dismissed.

## FOURTH DEFENSE

Plaintiff's Second Amended Complaint fails to plead each essential element for a viable claim of Libel *Per Se* under Georgia law and, therefore, the same should be dismissed.

## FIFTH DEFENSE

Plaintiff's Second Amended Complaint fails to plead each essential element for a viable claim of Defamation under Georgia law and, therefore, the same should be dismissed.

## SIXTH DEFENSE

Plaintiff's Second Amended Complaint fails to plead each essential element for a viable claim of Invasion of Privacy - False Light under Georgia law and, therefore, the same should be dismissed.

## SEVENTH DEFENSE

Plaintiff's Second Amended Complaint fails to plead each essential element for a viable claim of Intentional Infliction of Emotional Distress under Georgia law and, therefore, the same should be dismissed.

## EIGHTH DEFENSE

Plaintiff's Second Amended Complaint fails to plead with particularity her entitlement to punitive damages, as required by O.C.G.A. § 51-12-5.1, and, therefore, Plaintiff is not entitled to, and should be prohibited from recovering, punitive damages.

## NINTH DEFENSE

Plaintiff's Second Amended Complaint fails to plead each essential element in order to recover an award of punitive damages under Georgia law and, therefore, the same should be dismissed.

## TENTH DEFENSE

Plaintiff's Second Amended Complaint fails to establish her entitlement to Attorneys' Fees, as required by O.C.G.A. § 13-6-11, and, therefore, Plaintiff is not entitled to, and should be prohibited from recovering, attorneys' fees.

## ELEVENTH DEFENSE

Plaintiff's Second Amended Complaint fails to establish her entitlement to Litigation Expenses, as required by O.C.G.A. § 13-6-11, and, therefore, Plaintiff is not entitled to, and should be prohibited from recovering, litigation expenses.

## TWELFTH DEFENSE

Plaintiff's claim for injunctive relief is not proper before this Court. Furthermore, Plaintiff's Second Amended Complaint fails to demonstrate the necessity for injunctive relief as required by Georgia law. For the foregoing reasons, Plaintiff's claim for injunctive relief should be dismissed.

## THIRTEENTH DEFENSE

Pursuant to O.C.G.A. § 51-5-6, "[t]he truth of the charge made may always be proved in justification of an alleged libel or slander."

## FOURTEENTH DEFENSE

Pursuant to O.C.G.A. § 51-5-7, the statements giving rise to this action, as alleged in Plaintiff's Second Amended Complaint, are privileged communications because Plaintiff is a public figure.

## FIFTEENTH DEFENSE

Plaintiff obtained Ms. Kebe's written consent to file a Second Amended Complaint. However, Plaintiff exceeded the scope of Ms. Kebe's written consent by impermissibly adding a new co-defendant, Kebe Studios LLC. Plaintiff was not entitled to add any new parties, or amend the existing parties, in this action. Plaintiff should be held accountable for exceeding the scope of Ms. Kebe's written consent and should be prohibited from making any amendments to this action that were not previously reduced to writing and agreed-upon by both parties.

## SIXTEENTH DEFENSE

Ms. Kebe incorporates all affirmative defenses herein.

## SEVENTEENTH DEFENSE

Without waving any of the foregoing defenses, Ms. Kebe answers the specific allegations of Plaintiff's Second Amended Complaint as follows:

## NATURE OF THE CASE

1.    Paragraph 1 contains conclusions of law regarding diversity jurisdiction, to which no response is required. To the extent a response is deemed required, Ms. Kebe denies.

## PARTIES

2.    Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 2 and, therefore, these allegations are denied as alleged.

3.    Ms. Kebe admits the allegations contained in Paragraph 3.

4.    Ms. Kebe is not the registered agent for Kebe Studios. Furthermore, Ms. Kebe was never personally served, as a representative of Kebe Studios, with Plaintiff's Second Amended Complaint. Plaintiff had absolutely no authority to add Kebe Studios as a party to this action and Plaintiff failed to perfect personal service of the Second Amended Complaint upon Kebe Studios. The Court lacks personal jurisdiction over Kebe Studios in this matter. Lastly, Ms. Kebe is not under any obligation to respond to allegations directed at Kebe Studios. Therefore, the allegations in Paragraph 4 are denied as alleged.

5.    Ms. Kebe is not the registered agent for Kebe Studios. Furthermore, Ms. Kebe was never personally served, as a representative of Kebe Studios, with

Plaintiff's Second Amended Complaint. Plaintiff had absolutely no authority to add Kebe Studios as a party to this action and Plaintiff failed to perfect personal service of the Second Amended Complaint upon Kebe Studios. The Court lacks personal jurisdiction over Kebe Studios in this matter. Lastly, Ms. Kebe is not under any obligation to respond to allegations directed at Kebe Studios. Therefore, the allegations in Paragraph 5 are denied as alleged.

## JURISDICTION AND VENUE

6.    Paragraph 6 contains conclusions of law regarding subject-matter jurisdiction, to which no response is required. To the extent a response is deemed required, Ms. Kebe denies.

7.    Ms. Kebe admits that she is subject to personal jurisdiction in the State of Georgia and denies the remaining allegations contained in Paragraph 7.

8.    Paragraph 8 contains conclusions of law regarding venue, to which no response is required. To the extent a response is deemed required, Ms. Kebe denies.

## FACTUAL BACKGROUND

9.    Ms. Kebe admits the allegations contained in Paragraph 9.

10.    Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 10 and, therefore, these allegations are denied as alleged.

11.     Ms. Kebe admits the allegations contained in Paragraph 11.

12.     Ms. Kebe denies the allegations contained in Paragraph 12.

13.     Ms. Kebe admits the allegations contained in Paragraph 13.

14.     Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 14 and, therefore, these allegations are denied as alleged.

15.     Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 15 and, therefore, these allegations are denied as alleged.

16.     Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 16 and, therefore, these allegations are denied as alleged.

17.     Ms. Kebe admits the allegations contained in Paragraph 17.

18.     Ms. Kebe denies the allegations contained in Paragraph 18.

19.     Ms. Kebe denies the allegations contained in Paragraph 19.

20.     Ms. Kebe denies the allegations contained in Paragraph 20.

21.     Ms. Kebe denies the allegations contained in Paragraph 21.

22.     Ms. Kebe denies the allegations contained in Paragraph 22.

23.     Ms. Kebe denies the allegations contained in Paragraph 23.

24.    Ms. Kebe denies the allegations contained in Paragraph 24.

25.    Ms. Kebe denies the allegations contained in Paragraph 25.

26.    Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 26 and, therefore, these allegations are denied as alleged.

27.    Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 27 and, therefore, these allegations are denied as alleged.

28.    Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 28 and, therefore, these allegations are denied as alleged.

29.    Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 29 and, therefore, these allegations are denied as alleged.

30.    Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 30 and, therefore, these allegations are denied as alleged.

31.    Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 31 and, therefore, these allegations are denied as alleged.

32.    Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 32 and, therefore, these allegations are denied as alleged.

33.    Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 33 and, therefore, these allegations are denied as alleged.

34.    Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 34 and, therefore, these allegations are denied as alleged.

35.    Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 35 and, therefore, these allegations are denied as alleged.

36.    Ms. Kebe only admits that she published a video on September 19, 2018, and denies the remaining allegations contained in Paragraph 36.

37.    Ms. Kebe denies the allegations contained in Paragraph 37.

38.     Ms. Kebe admits that the 9/19/18 Video has over four million views and denies the remaining allegations contained in Paragraph 38.

39.     Ms. Kebe denies the allegations contained in Paragraph 39.

40.     Ms. Kebe denies the allegations contained in Paragraph 40.

41.     Ms. Kebe denies the allegations contained in Paragraph 41.

42.     Ms. Kebe denies the allegations contained in Paragraph 42.

43.     Ms. Kebe denies the allegations contained in Paragraph 43.

44.     Ms. Kebe denies the allegations contained in Paragraph 44.

45.     Ms. Kebe denies the allegations contained in Paragraph 45.

46.     Ms. Kebe denies the allegations contained in Paragraph 46.

47.     Ms. Kebe denies the allegations contained in Paragraph 47.

48.     Ms. Kebe denies the allegations contained in Paragraph 48.

49.     Ms. Kebe denies the allegations contained in Paragraph 49.

50.     Ms. Kebe denies the allegations contained in Paragraph 50.

51.     Ms. Kebe denies the allegations contained in Paragraph 51.

52.     Ms. Kebe admits that she received a cease and desist letter and denies the remaining allegations contained in Paragraph 52.

53.     Ms. Kebe denies the allegations contained in Paragraph 53.

54.     Ms. Kebe admits publishing the 9/21/18 video and denies the remaining allegations contained in Paragraph 54.

55.     Ms. Kebe denies the allegations contained in Paragraph 55.

56.     Ms. Kebe denies the allegations contained in Paragraph 56.

57.     Ms. Kebe denies the allegations contained in Paragraph 57.

58.     Ms. Kebe denies the allegations contained in Paragraph 58.

59.     Ms. Kebe admits the allegations contained in Paragraph 59.

60.     Ms. Kebe denies the allegations contained in Paragraph 60.

61.     Ms. Kebe admits that on December 18, 2018, she posted a picture of Plaintiff with cold sores on her lips and referred to Plaintiff as Herpes B.

62.     Ms. Kebe admits the allegations contained in Paragraph 62.

63.     Ms. Kebe denies the allegations contained in Paragraph 63.

64.     Ms. Kebe denies the allegations contained in Paragraph 64.

65.     Ms. Kebe admits the allegations contained in Paragraph 65.

66.     Ms. Kebe admits to deleting the 1/25/19 Tweet and denies the remaining allegations contained in Paragraph 66.

67.     Ms. Kebe admits the allegations contained in Paragraph 67.

68.     Ms. Kebe admits that she made the 9/19/18 Video and 9/21/18 video public again and denies the remaining allegations contained in Paragraph 68.

69.   Ms. Kebe admits the allegations contained in Paragraph 69.

70.   Ms. Kebe denies the allegations contained in Paragraph 70.

71.   Ms. Kebe admits the allegations contained in Paragraph 71.

72.   Ms. Kebe admits the allegations contained in Paragraph 72.

73.   Ms. Kebe denies that the Lovelyti Call was originally recorded prior to

the publication of the 9/19/18 Video and 9/21/18 Video and admits that the Lovelyti

Call was originally recorded prior to their re-publication.

74.   Ms. Kebe denies the allegations contained in Paragraph 74.

75.   Ms. Kebe admits the allegations contained in Paragraph 75.

76.   Ms. Kebe admits the allegations contained in Paragraph 76.

77.   Ms. Kebe admits the allegations contained in Paragraph 77.

78.   Ms. Kebe admits the allegations contained in Paragraph 78.

79.   Ms. Kebe admits the allegations contained in Paragraph 79.

80.   Ms. Kebe denies the allegations contained in Paragraph 80.

81.   Ms. Kebe admits the allegations contained in Paragraph 81.

82.   Ms. Kebe denies the allegations contained in Paragraph 82.

83.   Ms. Kebe admits the allegations contained in Paragraph 83.

84.   Ms. Kebe denies the allegations contained in Paragraph 84.

85.   Ms. Kebe admits the allegations contained in Paragraph 85.

86.     Ms. Kebe denies the allegations contained in Paragraph 86.

87.     Ms. Kebe admits to live streaming a video on YouTube entitled "Exclusive | Cardi's NEW LOVER amid Divorce?, Kylie Jenner, Andrew Gillum, August Alsina, Nicki Minaj" on September 19, 2020.

88.     Ms. Kebe denies the allegations contained in Paragraph 88.

89.     Ms. Kebe admits the allegations contained in Paragraph 89.

90.     Ms. Kebe denies the allegations contained in Paragraph 90.

91.     Ms. Kebe  denies the allegations contained in Paragraph 91.

92.     Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 92 and, therefore, these allegations are denied as alleged.

93.     Ms. Kebe denies the allegations contained in Paragraph 93.

94.     Ms. Kebe denies the allegations contained in Paragraph 94.

95.     Ms. Kebe admits that she received a demand letter from Plaintiff's attorneys on February 28, 2019. The remainder of Paragraph 95 contains conclusions of law regarding demands for retraction and repudiation, to which no response is required. To the extent a response is deemed required, Ms. Kebe denies.

96.     Ms. Kebe admits that, through her attorneys, she received a demand letter from Plaintiff's attorneys on October 2, 2020. The remainder of Paragraph 96

contains conclusions of law regarding demands for retraction and repudiation, to which no response is required. To the extent a response is deemed required, Ms. Kebe denies.

97.    Ms. Kebe admits that at least seven (7) days have passed since she received the 2/28/19 and 10/2/20 demand letters and denies the remaining allegations contained in Paragraph 97.

98.    Ms. Kebe admits that she has not issued any retraction or repudiation and denies the remaining allegations contained in Paragraph 98.

**COUNT I**
**(Slander Per Se Against Defendants)**

99.    Ms. Kebe incorporates as if fully set forth herein her responses to Paragraphs 1 through 98 of Plaintiff's Second Amended Complaint.

100.   Ms. Kebe denies the allegations contained in Paragraph 100.

101.   Ms. Kebe denies the allegations contained in Paragraph 101.

102.   Ms. Kebe denies the allegations contained in Paragraph 102.

103.   Ms. Kebe denies the allegations contained in Paragraph 103.

104.   Ms. Kebe denies the allegations contained in Paragraph 104.

105.   Ms. Kebe denies the allegations contained in Paragraph 105.

106.   Ms. Kebe denies the allegations contained in Paragraph 106.

107.   Ms. Kebe denies the allegations contained in Paragraph 107.

108.   Ms. Kebe admits the allegations contained in Paragraph 108.

109.   Ms. Kebe admits that she made the 9/19/18 Video and 9/21/18 Video public again and denies the remaining allegations contained in Paragraph 109.

110.   Ms. Kebe denies the allegations contained in Paragraph 110.

111.   Ms. Kebe denies the allegations contained in Paragraph 111.

112.   Ms. Kebe denies the allegations contained in Paragraph 112.

113.   Ms. Kebe denies the allegations contained in Paragraph 113.

114.   Ms. Kebe denies the allegations contained in Paragraph 114.

115.   Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 115 and, therefore, these allegations are denied as alleged.

116.   Ms. Kebe admits the allegations contained in Paragraph 116.

117.   Ms. Kebe admits that the 9/19/18 Video and 9/21/18 Video are still available to be viewed by the public. Ms. Kebe lacks knowledge or information sufficient to form a belief about the truth of the allegations as they pertain to the 9/2/18 Video and, therefore, these allegations are denied as alleged. Ms. Kebe denies the remaining allegations contained in Paragraph 117.

118.   Ms. Kebe denies the allegations contained in Paragraph 118.

119.   Ms. Kebe denies the allegations contained in Paragraph 119.

120.   Ms. Kebe denies the allegations contained in Paragraph 120.

121.   Ms. Kebe denies the allegations contained in Paragraph 121.

122.   Ms. Kebe denies the allegations contained in Paragraph 122.

123.   Ms. Kebe denies the allegations contained in Paragraph 123.

124.   Ms. Kebe denies the allegations contained in Paragraph 124.

125.   Ms. Kebe denies the allegations contained in Paragraph 125.

126.   Ms. Kebe denies the allegations contained in Paragraph 126.

127.   Ms. Kebe denies the allegations contained in Paragraph 127.

## COUNT II
### (Slander Against Defendants)

128.   Ms. Kebe incorporates as if fully set forth herein her responses to Paragraphs 1 through 127 of Plaintiff's Second Amended Complaint.

129.   Ms. Kebe denies the allegations contained in Paragraph 129.

130.   Ms. Kebe denies the allegations contained in Paragraph 130.

131.   Ms. Kebe denies the allegations contained in Paragraph 131.

132.   Ms. Kebe denies the allegations contained in Paragraph 132.

133.   Ms. Kebe denies the allegations contained in Paragraph 133.

134.   Ms. Kebe denies the allegations contained in Paragraph 134.

135.   Ms. Kebe denies the allegations contained in Paragraph 135.

136.   Ms. Kebe denies the allegations contained in Paragraph 136.

137.   Ms. Kebe denies the allegations contained in Paragraph 137.

138.   Ms. Kebe denies the allegations contained in Paragraph 138.

139.   Ms. Kebe denies the allegations contained in Paragraph 139.

140.   Ms. Kebe denies the allegations contained in Paragraph 140.

## COUNT III
### (Libel Per Se Against Defendants)

141.   Ms. Kebe incorporates as if fully set forth herein her responses to Paragraphs 1 through 140 of Plaintiff's Second Amended Complaint.

142.   Ms. Kebe admits the allegations contained in Paragraph 142.

143.   Ms. Kebe denies the allegations contained in Paragraph 143.

144.   Ms. Kebe admits the allegations contained in Paragraph 144.

145.   Ms. Kebe denies the allegations contained in Paragraph 145.

146.   Ms. Kebe denies the allegations contained in Paragraph 146.

147.   Ms. Kebe denies the allegations contained in Paragraph 147.

148.   Ms. Kebe denies the allegations contained in Paragraph 148.

149.   Ms. Kebe denies the allegations contained in Paragraph 149.

150.   Ms. Kebe denies the allegations contained in Paragraph 150.

151.   Ms. Kebe admits the allegations contained in Paragraph 151.

152.   Ms. Kebe admits the allegations contained in Paragraph 152.

153.   Ms. Kebe denies the allegations contained in Paragraph 153.

154.   Ms. Kebe denies the allegations contained in Paragraph 154.

155.   Ms. Kebe denies the allegations contained in Paragraph 155.

156.   Ms. Kebe denies the allegations contained in Paragraph 156.

157.   Ms. Kebe denies the allegations contained in Paragraph 157.

158.   Ms. Kebe denies the allegations contained in Paragraph 158.

159.   Ms. Kebe denies the allegations contained in Paragraph 159.

160.   Ms. Kebe denies the allegations contained in Paragraph 160.

161.   Ms. Kebe denies the allegations contained in Paragraph 161.

162.   Ms. Kebe denies the allegations contained in Paragraph 162.

**COUNT IV**
**(Invasion of Privacy – False Light Against Defendants)**

163.   Ms. Kebe incorporates as if fully set forth herein her responses to Paragraphs 1 through 162 of Plaintiff's Second Amended Complaint.

164.   Ms. Kebe denies the allegations contained in Paragraph 164.

165.   Ms. Kebe denies the allegations contained in Paragraph 165.

166.   Ms. Kebe denies the allegations contained in Paragraph 166.

167.   Ms. Kebe denies the allegations contained in Paragraph 167.

168.   Ms. Kebe denies the allegations contained in Paragraph 168.

169.   Ms. Kebe denies the allegations contained in Paragraph 169.

170.   Ms. Kebe denies the allegations contained in Paragraph 170.

171.   Ms. Kebe denies the allegations contained in Paragraph 171.

172.   Ms. Kebe denies the allegations contained in Paragraph 172.

173.   Ms. Kebe denies the allegations contained in Paragraph 173.

174.   Ms. Kebe denies the allegations contained in Paragraph 174.

175.   Ms. Kebe denies the allegations contained in Paragraph 175.

176.   Ms. Kebe denies the allegations contained in Paragraph 176.

177.   Ms. Kebe denies the allegations contained in Paragraph 177.

178.   Ms. Kebe denies the allegations contained in Paragraph 178.

## COUNT V
### (Intentional Infliction of Emotional Distress)

179.   Ms. Kebe incorporates as if fully set forth herein her responses to Paragraphs 1 through 178 of Plaintiff's Second Amended Complaint.

180.   Ms. Kebe denies the allegations contained in Paragraph 180.

181.   Ms. Kebe denies the allegations contained in Paragraph 181.

182.   Ms. Kebe denies the allegations contained in Paragraph 182.

183.   Ms. Kebe denies the allegations contained in Paragraph 183.

184.   Ms. Kebe denies the allegations contained in Paragraph 184.

185.   Ms. Kebe denies the allegations contained in Paragraph 185.

186.   Ms. Kebe denies the allegations contained in Paragraph 186.

187.   Ms. Kebe denies the allegations contained in Paragraph 187.

188.   Ms. Kebe denies the allegations contained in Paragraph 188.

189.   Ms. Kebe denies the allegations contained in Paragraph 189.

190.   Ms. Kebe denies the allegations contained in Paragraph 190.

191.   Ms. Kebe denies the allegations contained in Paragraph 191.

192.   Ms. Kebe denies the allegations contained in Paragraph 192.

193.   Ms. Kebe denies the allegations contained in Paragraph 193.

## COUNT VI
## (Punitive Damages Pursuant to O.C.G.A. § 51-12-5.1)

194.   Ms. Kebe incorporates as if fully set forth herein her responses to Paragraphs 1 through 193 of Plaintiff's Second Amended Complaint.

195.   Ms. Kebe denies the allegations contained in Paragraph 195.

196.   Ms. Kebe denies the allegations contained in Paragraph 196.

197.   Ms. Kebe denies the allegations contained in Paragraph 197.

198.   Ms. Kebe denies the allegations contained in Paragraph 198.

## COUNT VII
## (Attorneys' Fees and Litigation Expenses Pursuant to O.C.G.A. § 13-6-11)

199.   Ms. Kebe incorporates as if fully set forth herein her responses to Paragraphs 1 through 198 of Plaintiff's Second Amended Complaint.

200.   Ms. Kebe denies the allegations contained in Paragraph 200.

201.   Ms. Kebe denies the allegations contained in Paragraph 201.

## **PRAYER FOR RELIEF**

The remainder of Plaintiff's Second Amended Complaint contains the Plaintiff's Prayer for Relief, to which no response is required. To the extent this paragraph is deemed to contain factual allegations, Ms. Kebe denies those allegations contained in subparagraphs (a) through (g) and denies that Plaintiff is entitled to any relief whatsoever.

**WHEREFORE**, having fully answered, Ms. Kebe requests judgment and relief against Plaintiff as follows:

(a) that this Court hold Plaintiff accountable for exceeding the scope of Ms. Kebe's written consent when Plaintiff filed the Second Amended Complaint;

(b) that this Court prohibit Plaintiff from making any amendments to this action that were not previously reduced to writing and agreed-upon by both parties;

(c) that this Court strike all amendments Plaintiff made to this action that were not previously reduced to writing and agreed-upon by both parties, such as adding a brand new co-defendant, Kebe Studios LLC;

(d) that this Court dismiss Plaintiff's Second Amended Complaint with prejudice;

(e) that this Court order Plaintiff to pay for all of Ms. Kebe's costs, expenses, and attorneys' fees in defending this action;

(f) that Ms. Kebe have a trial by jury; and

(g) for such other and further relief as this Court deems just and proper.

## LATASHA KEBE'S SECOND AMENDED COUNTERCLAIMS AGAINST BELCALIS ALMANZAR FOR ASSAULT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, PUNITIVE DAMAGES, AND EXPENSES OF LITIGATION AND ATTORNEYS' FEES

COMES NOW, Defendant Latasha Kebe (hereinafter referred to as "Ms. Kebe"), by and through undersigned Counsel, and files her second amended counterclaims for Assault, Intentional Infliction of Emotional Distress, Punitive Damages, and Expenses of Litigation and Attorneys' Fees against Belcalis Almanzar (hereinafter referred to as "Cardi B") and demand for jury trial, and shows this Honorable Court as follows:

## FACTUAL ALLEGATIONS AND CLAIMS

193. Ms. Kebe is an entertainment and celebrity news blogger.

194. Ms. Kebe's brand is unWinewithTashaK.

195. Ms. Kebe is the owner, producer, and host of a YouTube Channel called unWinewithTashaK.

196. Ms. Kebe publishes a variety of videos on her YouTube Channel: (i) sometimes, Ms. Kebe publishes breaking stories about a myriad of celebrities; (ii)

other times, Ms. Kebe provides comedic commentary on celebrity stories, that have already been published by other bloggers and media outlets; (iii) frequently, Ms. Kebe hosts a segment called Happy Hour, where she responds to questions from her viewers; (iv) occasionally, Ms. Kebe conducts exclusive interviews; and (v) every once in a while, Ms. Kebe hosts guests during her weekly Friday night Live Stream.

197.   Ms. Kebe's style is unique because even when she is discussing humorless topics, she always manages to incorporate a few jokes. Ms. Kebe is hilariously entertaining, which is the reason many viewers are drawn to her YouTube channel.

198.   Although she began her entertainment career in the strip clubs, Cardi B is now an international celebrity, famous for being a hip hop artist.

199.   Cardi B has a YouTube Channel (Cardi B) with 15.5 million subscribers.

200.   Cardi B operates a Twitter account (@iamcardib) with 15.4 million followers.

201.   Cardi B operates an Instagram account (@iamcardib) with 78.4 million followers.

202.   Cardi B is engrossed in social media and frequently posts on her Twitter and Instagram accounts.

203.   Cardi B uses her social media accounts to communicate with her friends and her fans. Cardi B also uses her social media accounts to pick fights with people, she does not like, or people, who have angered her for whatever reason.

204.   Cardi B is also a self-proclaimed "big time Blood". The Bloods are a notorious, violent street-gang.

205.   Cardi B constantly boasts about being a member of Brim, which is a set of the Blood gang. Brim is also known as the Hat Gang. Members of Brim are notorious for committing brutal acts of violence, including murder. In fact, 11 Brim members (including Star Brim) were recently indicted in New York on murder and other felony offenses.

206.   Cardi B admitted that she was initiated into the Brim set by one of her closest friends, Skeemo Holmes, when she was just sixteen years old.

207.   Skeemo Holmes is a fellow gang member, as are many of Cardi B's close friends, like Remy Roja and Star Brim.

208.   On September 19, 2018, Ms. Kebe published, on her YouTube Channel, a video of an interview she conducted with a woman named Starmarie Jones (hereinafter referred to as "Ms. Jones").

209.   Ms. Jones proclaimed that she knew Cardi B, she worked with Cardi B at a strip club, and she even lived with Cardi B in New York for a brief period of time.

210.   Shortly after the interview with Ms. Jones was published, Cardi B reached out to Ms. Kebe via private messages to discuss the content of that interview. Cardi B was angry that Ms. Kebe published the interview because Ms. Jones revealed some personal details about her.

211.   Cardi B requested that Ms. Kebe remove the interview from her YouTube channel, but Ms. Kebe informed Cardi B that she was not interested in conversation via Instagram Direct Messages and told Cardi B to come on her channel and "tell her truth" in a public interview, just like Ms. Jones did.

212.   Although Cardi B proclaimed that she did not know Ms. Jones and that Ms. Jones lied about everything during the interview, Cardi B declined to give a public interview and share her "side of the story" on Ms. Kebe's YouTube Channel. Instead, Cardi B went on a rampage on her Instagram account, publishing numerous Instagram Live videos about Ms. Jones and the information that came out during her interview with Ms. Kebe

213.   In her Instagram Live videos, Cardi B began to publicly trash Ms. Kebe, alleging that Ms. Kebe always makes up fake stories; harasses all of Cardi B's

friends; constantly stalks Cardi B; uses Cardi B's name for "click bait"; and many similar accusations. Cardi B published these videos to tens of millions of fans.

214.   Unfortunately, things took a turn for the worse in December of 2018, when Cardi B started changing her tone in her Instagram Live videos from irritated to extremely angry. Cardi B began to issue threats to Ms. Kebe and seemed quite entertained when others (whether her friends or her fans) joined in.

215.   In those Instagram Live videos, Cardi B called Ms. Kebe a "dumb ass bitch" and "hoe" and threatened to retaliate with litigation, not because Cardi B was being defamed, but because people were "talking shit about her friends" and she was "sick of it." Right after proclaiming that she was initiated into a gang at the age of sixteen, Cardi B threatened to bankrupt Ms. Kebe by stating, "alright then, bitch, I'm gonna take all your fucking bread." Cardi B publicly threatened that she was going to make an example out of Ms. Kebe.

216.   As Cardi B was complaining that her newfound fame prevented her from being able to physically attack Ms. Kebe, Skeemo Holmes, and thousands of others, were publicly commenting how they are "looking into" Ms. Kebe, trying to find out where she lives, so they can "take care" of her or "handle" her.

217.   Cardi B also published, on her Instagram Stories, a private conversation between her and Skeemo, where they discussed how Skeemo is "gathering info on

that bitch" (referring to Ms. Kebe). Then, Skeemo took to his own Instagram page to post violent comments and cryptic threats directed at Ms. Kebe. Immediately, random Instagram users began tagging Ms. Kebe in Cardi B's and Skeemo's Instagram posts.

218.   From mid-December of 2018 until approximately February of 2019, Ms. Kebe was constantly getting tagged in threatening posts; she was receiving threats from random Instagram users (whose profile names suggested they were Cardi B fans) in her Instagram inbox; unknown numbers were calling her cell phone and harassing her; and, to make matters worse, somehow her home address got leaked to the public. Ms. Kebe was constantly being alerted that her safety, and the safety of her family, was in danger.

219.   Ms. Kebe was so shaken up by all the threats and cyber stalking, that she began to legitimately fear for her safety and well-being, as well as the safety and well-being of her family. Ms. Kebe was so afraid that she called the FBI field office in Atlanta to seek their protection and guidance. After discussing her situation with an FBI Agent, Ms. Kebe was advised that it would be in her best interest to find a new place to live.

220.   Ms. Kebe took the advice of the FBI Agent to heart, found a new home, broke her current lease, and moved her family to an entirely different city and

county. Ms. Kebe kept receiving calls from unknown numbers, and even though she blocked the callers, her phone kept ringing. Ultimately, Ms. Kebe had to change her phone number.

221.   Due to her family's abrupt relocation, Ms. Kebe incurred a number of unexpected expenses, such as early lease termination fees, new security deposit fees, early termination fees for her daughter's private school contract, expenses associated with packing and moving her entire family to a new home, purchasing security cameras for her new home, and many other unexpected expenses.

222.   One of the worst facts about this nightmare was that Ms. Kebe was dealing with a high-risk pregnancy the entire time she was receiving these threats and enduring the harassment. A pregnancy that Cardi B knew about, and even commented on, in one of her Instagram Live videos. However, it comes as no surprise that knowledge of Ms. Kebe's pregnancy did not prevent Cardi B from engaging in this horrid behavior because this is not the first time Cardi B instigated an altercation with a blogger.

223.   Ever since Cardi B became famous for her music, any time a blogger or another media outlet reports negatively about her, she bombards them with Instagram direct messages, demanding that the post or story she takes issue with, be removed immediately. If that tactic does not work, Cardi B often escalates to

threatening them (sometimes with litigation, other times with physical violence). If all else fails, Cardi B summons her millions of fans and directs them to report the unfavorable post, or even the entire page, until the post is removed, or the page is deleted. Cardi B has bullied many bloggers, including Ms. Kebe, using these tactics.

224.   Ms. Kebe has been diagnosed with anxiety and depression for well over a decade and has been regularly attending counseling and therapy sessions, which assist in managing her stress and anxiety levels, as well as her depression. Unfortunately, since mid-December of 2018, Ms. Kebe's previously manageable stress, anxiety, and depression became exacerbated, which resulted in her having to attend counseling more often than before.

225.   To date, Ms. Kebe regularly deals with extreme anxiety and finds herself checking her surroundings because she cannot shake the feeling that someone is constantly surveilling her. Frequently, Ms. Kebe wakes up in the middle of the night, worrying about a potential intruder in her home. Ms. Kebe does not recall ever experiencing these feelings, prior to mid-December of 2018.

226.   As a direct result of Cardi B's (her fans and fellow gang members') threats and harassment: Ms. Kebe continues to experience severe stress and anxiety for her safety, as well as the safety of her family; Ms. Kebe lives with the constant fear that strangers are watching her; at one point during her pregnancy, Ms. Kebe

was placed on mandatory bed rest by her physician; Ms. Kebe incurred unnecessary and unexpected moving expenses; Ms. Kebe was completely unable to work for several weeks and experienced a decline in her productivity for months after her abrupt move; and Ms. Kebe suffered many other financial and emotional harms, some of which she continues to experience today.

227.   As a direct result of Cardi B's intentional conduct and actions, Ms. Kebe (who was dealing with a high-risk pregnancy throughout this entire ordeal) has experienced (and continues to experience) severe emotional distress, anxiety, panic, stress, high blood pressure, insomnia, paranoia, humiliation, and depression.

## COUNT I - ASSAULT

228.   Ms. Kebe repeats and realleges by reference the allegations in Paragraphs 1 through 227 as if fully set forth herein.

229.   Cardi B intended to commit a violent injury to Ms. Kebe when she intentionally directed threats at Ms. Kebe, encouraged her fellow gang members to locate and "handle" Ms. Kebe, and solicited her fans to threated and harass Ms. Kebe.

230.   Cardi B had the apparent ability to commit a violent injury to Ms. Kebe, given her apparent gang affiliation, abundant financial resources, millions of willing fans, and a number of close friends, who publicly discussed various ways to "handle"

Ms. Kebe and unequivocally offered their help. Not to mention, Cardi B's direct ties to the State of Georgia, where she and her husband own property.

231.   Ms. Kebe, without a doubt, believed that her safety and well-being was in danger, which was exemplified by the phone call to the FBI Atlanta Field Office, during which Ms. Kebe discussed the threats she was receiving and requested guidance on how she should proceed. Ms. Kebe's apparent fear for her safety became crystal clear when she paid to break her residential lease and relocated her entire family to a new city and county; all while dealing with a high-risk pregnancy.

232.   As a direct and proximate result of Cardi B's intentional conduct and actions, Ms. Kebe suffered financial, physical, and mental harm, and damages in an amount to be proven at trial. Ms. Kebe is entitled to recover general and special damages from Cardi B.

233.   Cardi B acted with the specific intent to cause harm to Ms. Kebe when she engaged in her typical pattern of atrocious behavior, which consists of unreasonable demands, threats of litigation, threats of physical violence, and inciting the participation of her fans, friends, and fellow gang members.

234.   Because Cardi B's actions showed willful misconduct, malice, wantonness, oppression, and exhibited a conscious indifference to consequences, Ms. Kebe is entitled to an award of punitive damages in an amount to be determined

by the enlightened conscience of the jury, but not less than one million dollars ($1,000,000.00).

## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

235.   Ms. Kebe repeats and realleges by reference the allegations in Paragraphs 1 through 234 as if fully set forth herein.

236.   Cardi B, her fans, her friends, and her fellow gang members engaged in a pattern of intimidation and harassment when they directed threats of physical violence at Ms. Kebe; published cryptic, private messages on their Instagram profiles, in which Ms. Kebe's whereabouts and "payback" were discussed, and which Ms. Kebe was tagged in; made countless phone calls to Ms. Kebe's cell phone from unlisted numbers, until the moment she change her phone number; and published Ms. Kebe's residential address on the internet, forcing her to relocate her entire family, while she was dealing with a high-risk pregnancy. All these actions were carried out with the sole purpose of intimidating, harassing, and threatening Ms. Kebe.

237.   Cardi B's conduct when she encouraged her fans to harass Ms. Kebe and when she discussed ways to "handle" Ms. Kebe with her friends and fellow gang members was intentional, extreme, outrageous, and egregious. Cardi B acted without provocation or justification. Seeing a video on YouTube, during which your former

co-worker and friend, makes negative remarks about you certainly does not entitle you to engaged in this "gangster" behavior. Cardi B's intentional conduct went beyond all possible bounds of decency, is atrocious, and is utterly intolerable in a civilized society.

238.   As a direct and proximate result of Cardi B's intentional, extreme, outrageous, and egregious conduct and actions, Ms. Kebe suffered severe emotional distress and damages to be proven at trial. Ms. Kebe is entitled to recover general and special damages from Cardi B.

239.   Cardi B acted with the specific intent to cause harm to Ms. Kebe when she engaged in her typical pattern of atrocious behavior, which consists of unreasonable demands, threats of litigation, threats of physical violence, and inciting the participation of her fans, friends, and fellow gang members.

240.   Because Cardi B's actions showed willful misconduct, malice, wantonness, oppression, and exhibited a conscious indifference to consequences, Ms. Kebe is entitled to an award of punitive damages in an amount to be determined by the enlightened conscience of the jury, but not less than one million dollars ($1,000,000.00).

## COUNT III – PUNITIVE DAMAGES

241.  Ms. Kebe repeats and realleges by reference the allegations in Paragraphs 1 through 240 as if fully set forth herein.

242.  Ms. Kebe has made a showing, in Counts I and II above, that she is entitled to recover from Cardi B compensatory damages, resulting from the assault and intentional infliction of emotional distress.

243.  Cardi B's conduct was intentional, willful, malicious, wanton, and exhibited a conscious indifference to consequences, thereby justifying the imposition of punitive damages, in an amount to be determined by the enlightened conscience of the jury, in accordance with O.C.G.A. § 51-12-5.1.

244.  Cardi B's conduct was undertaken with the specific intent to cause harm to Ms. Kebe. Therefore, pursuant to O.C.G.A. § 51-12-5.1(f), there shall be no limitation regarding the amount which may be awarded as punitive damages.

## COUNT IV – EXPENSES OF LITIGATION AND ATTORNEYS' FEES

245.  Ms. Kebe repeats and realleges by reference the allegations in Paragraphs 1 through 244 as if fully set forth herein.

246.  Ms. Kebe is prepared to prove that, throughout this litigation, Cardi B has acted in bad faith, been stubbornly litigious, and has caused Ms. Kebe unnecessary trouble and expense.

247.   Ms. Kebe is entitled to recover from Cardi B expenses of litigation, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11, in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

Ms. Kebe hereby demands that this matter be tried by a jury of competent and impartial persons.

WHEREFORE, Ms. Kebe respectfully requests that this Honorable Court enter an Order granting the following relief:

(a) Dismissal of Plaintiff's Second Amended Complaint with prejudice;

(b) Judgment in favor of Ms. Kebe and against Plaintiff on all counts of this Second Amended Counterclaims, including, but not limited to, for actual and compensatory damages for all past and present injury, as well as all past, present, and future pain and suffering in an amount to be proven at trial;

(c) Judgment in favor of Ms. Kebe and against Plaintiff for all costs and expenses, including reasonable attorneys' fees, incurred in connection with this litigation;

(d) An award of punitive damages in an amount to be determined by the enlightened conscience of the jury; and

(e) Awarding Ms. Kebe such other and further relief as this Court deems just

and proper.

Respectfully submitted this 13th day of December, 2020.

*/s/Olga Izmaylova*
olga@silawatl.com
Georgia State Bar No. 666858


*/s/Sadeer Sabbak*
ssabbak@silawatl.com
Georgia State Bar No. 918493

SABBAK & IZMAYLOVA, P.C.          *Attorneys for Latasha Kebe*
1875 Old Alabama Road
Suite 760
Roswell, Georgia 30076
p. (404) 793-7773
f. (678) 878-4911

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2020, I electronically filed the foregoing DEFENDANT KEBE'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND SECOND AMENDED COUNTERCLAIMS with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all of the attorneys of record.


*/s/Olga Izmaylova*
olga@silawatl.com
Georgia State Bar No. 666858

SABBAK & IZMAYLOVA, P.C.
1875 Old Alabama Road
Suite 760
Roswell, Georgia 30076
p. (404) 793-7773
f. (678) 878-4911