## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

BELCALIS MARLENIS ALMÁNZAR,

                      Plaintiff,

    v.

LATASHA TRANSRINA KEBE a/k/a
LATASHA TRANSRINA HOWARD and
KEBE STUDIOS LLC,

                    Defendants.

Case No. 1:19-cv-01301-WMR

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT KEBE

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii

I.   INTRODUCTION .......................................................................... 1

II.  STATEMENT OF FACTS ............................................................... 1

   A.   Kebe's Defamatory Statements and Ongoing Malice. ................... 1

   B.   Kebe's Deficient Counterclaims. .............................................. 4

III. ARGUMENT ................................................................................ 5

   A.   Plaintiff Is Entitled to Partial Summary Judgment on Her Defamation *Per Se* Claims and Her Demand for Injunctive Relief. ................................ 6

      1.   Kebe's Statements Are False and Defamatory. ....................... 7

      2.   The Defamatory Statements Were Published and Unprivileged. ............ 9

      3.   Kebe's Statements Were Made with Actual Malice. ............... 10

      4.   The Defamatory Statements Are Defamation *Per Se*. ........... 16

      5.   Plaintiff Is Entitled to Injunctive Relief. ............................ 18

   B.   Plaintiff Is Entitled to Partial Summary Judgment on Her IIED Claim. ..... 19

   C.   Plaintiff Is Entitled to Summary Judgment on Kebe's Counterclaims. ..... 20

      1.   Kebe's Assault Counterclaim Fails as a Matter of Law. ......... 20

2.  Kebe's IIED Counterclaim Fails as a Matter of Law.............................. 22

3.  Kebe's Counterclaims for Relief Fail as a Matter of Law. ..................... 24

IV.  CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................... 6

*Atlanta Journal Co. v. Doyal*,
  60 S.E.2d 802 (Ga. Ct. App. 1950) ......................................... 10

*Augusta Chronicle Pub. Co v. Arrington*,
  157 S.E. 394 (Ga. Ct. App. 1931) ........................................... 14

*Brown v. Manning*,
  764 F. Supp. 183 (M.D. Ga. 1991) .......................................... 22

*Bullock v. Jeon*,
  487 S.E.2d 692 (Ga. Ct. App. 1997) ....................................... 21

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................... 6

*City of Fairbanks v. Rice*,
  20 P.3d 1097 (Alaska 2000) ..................................................... 18

*Cottrell v. Smith*,
  788 S.E.2d 772 (Ga. 2016) ....................................................... 17

*Eidson v. Berry*,
  415 S.E.2d 16 (Ga. Ct. App. 1992) ........................................... 7

*Fields v. Atlanta Indep. Sch. Sys.*,
  916 F. Supp. 2d 1348 (N.D. Ga. 2013) .................................... 19

*Freeman v. Wheeler*,
  627 S.E.2d 86 (Ga. Ct. App. 2006) .......................................... 25

iii

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ........................................................................ 10

*Gettner v. Fitzgerald*,
  677 S.E.2d 149 (Ga. Ct. App. 2009) ....................................... 7, 10, 11

*Golden Bear Distrib. Sys. of Texas, Inc. v. Chase Revel, Inc.*,
  708 F.2d 944 (5th Cir. 1983) (same), *abrogated on other grounds by Hiller v.*
    *Mfrs. Prod. Research Grp. of N. Am., Inc.*,
    59 F.3d 1514, 1520-21 (5th Cir. 1995) ............................................. 14

*Hallford v. Kelley*,
  360 S.E.2d 644 (Ga. Ct. App. 1987) ................................................. 21

*Hammer v. Slater*,
  20 F.3d 1137 (11th Cir. 1994) ........................................................... 24

*Herbert v. Lando*,
  441 U.S. 153 (1979) ........................................................................ 11

*Hunt v. Liberty Lobby*,
  720 F.2d 631 (11th Cir. 1983) .................................................... 11, 16

*Lee v. Christian*,
  221 F. Supp. 3d 1370 (S.D. Ga. 2016) ............................................. 21

*Moore-Sapp Investors v. Richards*,
  522 S.E.2d 739 (Ga. Ct. App. 1999) ................................................. 25

*Munson v. Gaylord Broad. Co.*,
  491 So. 2d 780 (La. Ct. App. 1986) ................................................. 17

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ........................................................................ 11

*Nolin v. Douglas Cty.*,
  903 F.2d 1546 (11th Cir. 1990), *overruled on other grounds*,
    *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) ............................ 23

iv

*Patterson v. State*,
    789 S.E.2d 175 (Ga. 2016) ..................................................................... 21

*Price v. State Farm Mut. Auto. Ins. Co.*,
    878 F. Supp. 1567 (S.D. Ga. 1995) ....................................................... 24

*Pyle v. City of Cedartown*,
    524 S.E.2d 7 (Ga. Ct. App. 1999) .......................................................... 19

*Quarles v. McDuffie Cty.*,
    949 F. Supp. 846 (S.D. Ga. 1996) .......................................................... 24

*Retail Credit Co. v. Russell*,
    218 S.E.2d 54 (Ga. 1975) ....................................................................... 18

*Rolleston v. Huie*,
    400 S.E.2d 349 (Ga. Ct. App. 1990) ...................................................... 24

*S. Bell Tel. and Tel. Co. v. Coastal Transmission Serv., Inc.*,
    307 S.E.2d 83 (Ga. Ct. App. 1983) ........................................................ 15

*Sec. & Exch. Comm'n v. Monterosso*,
    756 F.3d 1326 (11th Cir. 2014) ................................................................ 6

*Sewell v. Cancel*,
    759 S.E.2d 485 (2014) ............................................................................ 24

*Sossenko v. Michelin Tire Corp.*,
    324 S.E.2d 593 (Ga. Ct. App. 1984) ...................................................... 23

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ................................................................................ 11

*Stoploss Specialists, LLC v. Vericlaim, Inc.*,
    340 F. Supp. 3d 1334 (N.D. Ga. 2018) ..................................... 6, 7, 9, 17

*Tapley v. Collins*,

41 F. Supp. 2d 1366 (S.D. Ga. 1999), *rev'd in part on other grounds*,
211 F.3d 1210 (11th Cir. 2000) ........................................................................... 20

*Woodruff v. Miller*,
307 S.E.2d 176 (N.C. Ct. App. 1983).................................................................. 20

**Statutes**

O.C.G.A. § 13-6-11 ............................................................................................ 25

O.C.G.A. § 16-6-9 .............................................................................................. 17

O.C.G.A. § 16-13-20 .......................................................................................... 17

O.C.G.A. § 16-6-19 ............................................................................................ 18

O.C.G.A. § 51-5-8 .............................................................................................. 9

O.C.G.A. § 51-5-9 .............................................................................................. 9

O.C.G.A. § 51-5-7 .............................................................................................. 10

O.C.G.A. § 51-5-4 .............................................................................................. 17

O.C.G.A. § 51-1-14 ............................................................................................ 21

O.C.G.A. § 51-12-5.1 ......................................................................................... 25

**Rules**

Fed. R. Civ. P. 56(a) .......................................................................................... 5

**Other Authorities**

*Anti-Libel Injunctions*,
168 U. Pa. L. Rev. 73 (2019).............................................................................. 18

Restatement (Second) of Torts § 21 ................................................................... 21

*The Defamation Injunction Meets the Prior Restraint Doctrine*,
   56 San Diego L. Rev. 615 (2019).............................................................. 19

## I.   INTRODUCTION

Plaintiff filed this action because Defendant Kebe ("Kebe") refused to stop targeting her with defamatory lies. Despite being told on multiple occasions that the vile things she was saying about Plaintiff were untrue, ***and despite admitting that she knew they were untrue***, Kebe has continued her campaign of harassment unabated. Enough is enough. There is no genuine dispute of material fact keeping this Court from awarding summary judgment to Plaintiff as set forth below and putting an end to Kebe's malicious and outrageous behavior.

Plaintiff also seeks summary judgment on Kebe's remaining counterclaims. They were deficient at the outset of this case and stand no better off today. Kebe has no evidence to support her claims and they should be dismissed with prejudice.

## II.   STATEMENT OF FACTS

**A.   Kebe's Defamatory Statements and Ongoing Malice.**

Plaintiff is a Grammy award-winning musical artist and songwriter professionally known as "Cardi B." (SMF ¶ 1: Almanzar Decl. ¶ 3; SAC ¶ 9.)[1] Since the release of her debut mixtape in 2015, Plaintiff's musical works have reached peak positions on charts in the United States and around the world and

---

[1] Plaintiff's abbreviations to record evidence in her Statement of Material Facts ("SMF") are incorporated herein by reference.

garnered her millions of fans. (SMF ¶ 2: Almanzar Decl. ¶¶ 4-5.) Out of the spotlight, she is a proud and loving mother of a young girl and has been recognized for her philanthropic endeavors. (SMF ¶ 3: Almanzar Decl. ¶ 6.)

Kebe hosts a celebrity gossip platform on social media under the moniker "unWinewithTashaK." (SMF ¶ 4: SAC ¶ 17.) By her own admission, she publishes sensational rumors about celebrities with no regard for their veracity. (SMF ¶ 5: 11/19 Dep. 76:15-19, 266:23-67:7.) The more outrageous the gossip and high profile her target, the more likely it is to draw viewers to her accounts where she makes money from advertising revenue. (*See, e.g.*, SMF ¶ 40: CV4 at 6:44; RFA #4.) As an example, she recently posted graphic claims about a prominent Georgia pastor having an affair with another man. (SMF ¶ 12: 11/30 Dep. 225:11-26:19.) She knew the story was false but published the story anyway because she found it "entertaining" and she took issue with the pastor taking money from the community. (SMF ¶¶ 13-14: 11/30 Dep. 227:3-18.) As a result, in her words, publishing the defamatory story was a "win/win." (SMF ¶ 15: 11/30 Dep. 227:18.)

In 2018, by her own admission, Kebe began intentionally targeting Plaintiff on her platform. (SMF ¶ 16: 11/19 Dep. 155:12-14, 164:5-7.) On September 19, 2018, Kebe published a video interview on YouTube with an individual named Starmarie Jones that has been viewed over four million times. (SMF ¶ 19: CV20;

SAC ¶ 38; RFA #19.) In this interview, Jones falsely states that Plaintiff was a prostitute, that Plaintiff used cocaine, and that Plaintiff has herpes. (SMF ¶¶ 23-25: CV20 at 0:40; SAC ¶ 38; RFA #19.) Before Kebe published the video, she was told explicitly that some of Jones's statements were not true. (SMF ¶ 28: 11/30 Dep. 73:4-74:9; CV116 at 26:26; RFA #109.) But instead of holding the video until Kebe could investigate the claims, she hastened her release of the video so it would have an opportunity to trend and she would make money before Jones's statements were debunked. (SMF ¶ 29: 11/19 Dep. 280:22-82:13.)

Plaintiff's prior counsel immediately demanded Kebe take down the video. (SMF ¶ 30: Moore Decl. ¶ 11, Ex. 7; SAC ¶ 52.) She refused. (SMF ¶ 31: Moore Decl. ¶ 10, Ex. 6.) Instead, on September 21, 2018, despite having received this cease and desist letter and having information that contradicted Jones's statements, Kebe shockingly published a video in which she stated that "everything that [Jones] said was accurate." (SMF ¶ 34: CV21 at 2:11; SAC ¶ 54; RFA #20.) She claimed to have information supporting the veracity of Jones's defamatory statements. (SMF ¶ 36: CV21 at 8:12; SAC ¶ 54; RFA #20.) She acknowledged in her deposition that was not true. (SMF ¶ 37: 11/19 Dep. 251:14-21.)

On February 28, 2019, Plaintiff's counsel sent Kebe a second demand to take down these videos and retract the defamatory statements. (SMF ¶ 41: Moore

3

Decl. ¶ 7, Ex. 3; SAC ¶ 95.) Instead of retracting, Kebe doubled down and has

continued to publish many videos about Plaintiff. On October 2, 2020, Plaintiff's

counsel sent Kebe's counsel a third letter outlining *twenty* additional defamatory

statements that had been identified during discovery both pre-dating and post-

dating the filing of this action. (SMF ¶ 53: Moore Decl. ¶ 8, Ex. 4; SAC ¶ 96.)

All together, between September 2018 and the filing of this motion, Kebe

has falsely published that Plaintiff has herpes; that Plaintiff has HPV; that Plaintiff

uses or has used cocaine; that Plaintiff engaged in a debasing act with a beer bottle;

that Plaintiff committed infidelity; and that Plaintiff was or is a prostitute (the

"Defamatory Statements"). (*See infra.*) The Defamatory Statements are patently

false (SMF ¶ 91; Almanzar Decl. ¶¶ 11-16.), and Kebe knew they were false when

she published them (*see infra*). Kebe has nonetheless maintained her steadfast

refusal to discontinue, remove, or retract the Defamatory Statements from her

social media channels. (SMF ¶¶ 93-94: SAC ¶ 98; 11/30 Dep. 98:22-99:5; CV45 at

3:05, 27:00; CV46 at 4:15; CV88 at 18:25; CV85 at 4:10; RFA #43, 44, 82, 85.)

## B.    Kebe's Deficient Counterclaims.

Kebe previously asserted counterclaims for slander *per se* (Count I), assault

(Count II), intentional infliction of emotional distress (Count III), punitive

damages (Count IV), and expenses of litigation (Count V). (ECF No. 12.) Given

Kebe's speculative allegations in support of her claims, Plaintiff filed a motion to dismiss for failure to state a claim. (ECF No. 13.) This Court denied the motion but warned Kebe "that if this is the best I get on a motion for summary judgment, the defense is going to lose. There's got to be specificity." (Tr. at 56 (ECF No. 32).)

Nearly two years into this case, she has provided no more specificity. Her claims depend entirely on baseless conjecture. The unspecified threats she allegedly received that form the basis of her counterclaims are mostly by unidentified "Cardi fans" with no support other than Kebe's vague, inadmissible, and self-serving recollection. (SMF ¶ 102: 11/19 Dep. 184:12-14.) The alleged threats by an individual named Skeemo Holmes are also inadmissible and rely on multiple unsupported inferences. (*Id*.) And most importantly, Kebe has not come forward with any evidence whatsoever to support her allegation that Plaintiff directed or otherwise had any involvement with any alleged threats against her.[2] (SMF ¶¶ 97, 103: 11/19 Dep. 166:2-13, 184:23-85:7.)

### III.   ARGUMENT

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[2] Kebe recently dismissed her slander claim after finally admitting that the claim was entirely meritless (ECF No. 79) (and only *after* putting Plaintiff to the expense of filing a motion to dismiss and litigating the claim throughout discovery).

R. Civ. P. 56(a). A dispute is only "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes concerning nonmaterial or *de minimis* matters do not preclude an award of summary judgment. *Id.*

Once a motion for summary judgment has been properly supported, the burden then shifts to the nonmovant to establish that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Speculation or conjecture cannot create a genuine issue of material fact, and a 'mere scintilla of evidence' in support of the nonmoving party cannot overcome a motion for summary judgment." *Sec. & Exch. Comm'n v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014) (per curium; citation omitted)

## A.   Plaintiff Is Entitled to Partial Summary Judgment on Her Defamation *Per Se* Claims and Her Demand for Injunctive Relief.

Defamation requires four elements: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Stoploss Specialists, LLC v. Vericlaim, Inc.*, 340 F. Supp. 3d 1334, 1346 (N.D. Ga. 2018). There is no genuine dispute of material fact as to each of these elements, and Plaintiff therefore is entitled to summary judgment on her defamation *per se* claims.

6

## 1.      Kebe's Statements Are False and Defamatory.

Defamation arises where a statement is false and conveys a fact about a person instead of an opinion. There is no genuine dispute that the Defamatory Statements are false. (SMF ¶ 91; Almanzar Decl. ¶¶ 11-16.) As to the second requirement, "[w]hether the statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court." *Stoploss Specialists*, 340 F. Supp. 3d at 1347. Even when a statement is couched as an opinion, it still is actionable if the statement could reasonably be interpreted as implying defamatory facts about a person. *Id*. at 1347; *see also Gettner v. Fitzgerald*, 677 S.E.2d 149, 154 (Ga. Ct. App. 2009) (noting a defendant "cannot avoid liability solely by labeling the [statement] an 'opinion'"); *Eidson v. Berry*, 415 S.E.2d 16, 17 (Ga. Ct. App. 1992) ("The pivotal questions are whether defendant Berry's statements can reasonably be interpreted as stating or implying defamatory facts about plaintiff and, if so, whether the defamatory assertions are capable of being proved false.").

Kebe cannot credibly argue that the Defamatory Statements were mere "opinions" and not statements of fact as that clearly is not true. Below are only a handful of the Defamatory Statements that plainly state or imply defamatory facts:

*Defamatory Statements that Plaintiff Engaged in Prostitution* (SMF ¶ 88)

7

- **Plaintiff "prostituted for a living"** (CV16 at 5:50; RFA #15.)

- **"I cosigned everything that [Jones] said, that she's a whole prostitute."** (CV101 at 1:07:50; SAC ¶ 87; RFA #98.)

- **"She's mad because I called her a prostitute - b**** you sold p***y!"** (CV85 at 7:15; SAC ¶ 89; RFA #82.)

*Defamatory Statements that Plaintiff has Herpes and HPV* (SMF ¶¶ 56, 64)

- **"(Kebe) She has herpes?" "(Jones) Yes."** (CV20 at 0:48; SAC ¶ 38; RFA #19.)

- **"I thought we left you and your confirmed irritated p***y in 2018. . . . #HerpesB."** (Moore Decl. ¶ 14, Ex. 10; 11/19 Dep. 144:17-20; SAC ¶ 65.)

- **"I know you got HPV."** (CV101 at 1:16:11; SAC ¶ 87; RFA #98; 11/30 Dep. 163:22-64:5.)

*Defamatory Statements that Plaintiff Used Cocaine* (SMF ¶ 70)

- **"(Kebe) Was she a drug user?" "(Jones) Yes" "(Kebe) cocaine . . . to be specific" "(Jones) Yes")** (CV20 at 0:40; SAC ¶ 38; RFA #19.)

*Defamatory Statements About Debasing Act with a Beer Bottle* (SMF ¶ 73)

- **Plaintiff "actually took beer bottles from pedestrians. This is on video, she took the beer bottle from the pedestrian . . . stuck it in her cooch, drank the beer bottle and gave it back to him."** (CV88 at 22:40; SAC ¶ 69; RFA #85.)

- **Plaintiff "was taking pedestrian's beer bottles, they was drinking and they could have had some cold sores and she sat on the f****** beer bottles."** (CV63 at 7:00; SAC ¶ 83; RFA #61.)

*Defamatory Statements that Plaintiff Committed Infidelity* (SMF ¶ 85)

8

- **"[Plaintiff is] f****** someone else too."** (CV101 at 1:15:37; SAC ¶ 87; RFA #98.)

- **"Now [Plaintiff]'s f****** somebody else."** (CV85 at 8:00; SAC ¶ 89; RFA #82.)

The Defamatory Statements are false statements of fact. There is no genuine dispute of material fact on the first element of Plaintiff's defamation *per se* claims.

### 2. The Defamatory Statements Were Published and Unprivileged.

The Defamatory Statements were published because they were posted on social media and have been viewed millions of times (and counting). And they are not privileged. There are two types of privilege: absolute and conditional. Statements subject to an absolute privilege—e.g., certain statements made in court (*see* O.C.G.A. § 51-5-8)—generally cannot support a defamation claim. *Stoploss Specialists*, 340 F. Supp. 3d at 1347. Conversely, statements that are only conditionally privileged are actionable if they were spoken with malice. *Id.* at 1348; *see also* O.C.G.A. § 51-5-9 (statements are actionable "if the privilege is used merely as a cloak for venting private malice"). Georgia law limits the conditional privilege to nine specific categories of speech. *See* O.C.G.A. § 51-5-7.

Kebe claims the Defamatory Statements are conditionally privileged but has refused even to identify which category of privilege she claims to qualify for. (SMF ¶¶ 97-98: 11/19 Dep. 166:2-13; Moore Decl. ¶ 15, Ex. 11; 11/19 Dep.

168:25-70:8; 2d Supp. #10.) Regardless, the issue is moot for purposes of summary judgment because Plaintiff has demonstrated actual malice. *Atlanta Journal Co. v. Doyal*, 60 S.E.2d 802, 813 (Ga. Ct. App. 1950) ("The only effect of privilege is to require the plaintiff to prove actual malice."). Thus, there is no genuine dispute of material fact on the second element of Plaintiff's defamation *per se* claims.

### 3.   Kebe's Statements Were Made with Actual Malice.

The requisite level of fault required to prove defamation depends on whether Plaintiff is deemed an all-purpose or a limited-purpose public figure. *Gettner v. Fitzgerald*, 677 S.E.2d 149, 154 (Ga. Ct. App. 2009); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974) ("Absent clear evidence of general fame or notoriety in the community and pervasive involvement in ordering the affairs of society, an individual should not be deemed a public figure for all aspects of his life."). If Plaintiff is the former, she must demonstrate Kebe acted with actual malice. *Gettner*, 677 S.E.2d at 154. If she is the latter, negligence would be sufficient for liability because the Defamatory Statements are wholly unrelated to the areas of her life that are reasonably subject to public discourse. *Id.* This Court

10

need not resolve this issue for purpose of summary judgment because Kebe acted

with actual malice and thus is liable under either standard.[3]

Actual malice exists where the defamatory statement was made with

knowledge that it was false or with reckless disregard for whether it was true or

false. *Hunt v. Liberty Lobby*, 720 F.2d 631, 642 (11th Cir. 1983) (citing *N.Y. Times

Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). A defendant acts with reckless

disregard for the truth "where there are obvious reasons to doubt the veracity of the

informant or the accuracy of his reports." *St. Amant v. Thompson*, 390 U.S. 727,

732 (1968); *see also Hunt*, 720 F.2d at 644 ("A publisher cannot feign ignorance or

profess good faith when there are clear indications present which bring into

question the truth or falsity of defamatory statements.") (quotation marks and

citations omitted). Actual malice can be proven either through direct evidence,

such as the defendant's testimony, circumstantial evidence, or a combination of

both. *Id*. at 643; *see generally Herbert v. Lando*, 441 U.S. 153 (1979) (finding

direct evidence of editorial process admissible to prove actual malice). Kebe's

numerous admissions in her deposition together with the indisputable direct and

circumstantial evidence of her motives amply demonstrate actual malice.

---

[3] Plaintiff does not concede she is an all-purpose public figure.

Simply stated, Kebe is in the business of spreading salacious rumors about celebrities for profit. She has no concern for whether the stories she publishes are true. (*See, e.g.*, SMF ¶ 5: 11/19 Dep. 76:15-19, 266:23-67:7.) Ambivalence gives her too much credit though because she assumes the stories she puts out could be untrue. (SMF ¶ 7: 11/30 Dep. 185:5-13; 11/29 Dep. 180:16-81:2.) And Kebe admitted she would not hesitate to publish a knowingly false story: "If I feel that a story is entertaining and what the public wants, I will put the story out in a manner in which I want to put it out, so it's my platform, yes." (SMF ¶ 8: 11/19 Dep. 76:15-19, 266:23-67:7.) In her words, "I sell drama" (SMF ¶ 9: 11/30 Dep. 221:4-7, 223:24-24:8), and she does not let the truth get in her way.

Kebe admits she has intentionally targeted Plaintiff for her disgusting brand of "drama." (SMF ¶ 16: 11/19 Dep. 155:12-14, 164:5-7.) Like her stories about other celebrities, she published defamatory lies about Plaintiff knowing they are untrue because they would grow her platform, increase her subscribers, and bring in more ad revenue. (SMF ¶ 10: 1/19 Dep. 126:4-11; 11/30 Dep. 220:13-24.) For example, she "convinced [Jones] to do [the interview] because [she] knew that the interview would bring ratings." (SMF  38: 11/19 Dep. 193:5-7; *see also* SMF ¶ 40: CV4 at 6:44; RFA #4 (confessing she "exploited" Jones for "views, those clicks, money").) She followed that video up with a video in which she proclaimed

12

everything said by Jones during the interview was true and claimed she had proof, which she made up to get even more viewers. (SMF ¶¶ 34, 36-37: CV21 at 2:11, 8:12; SAC ¶ 54; RFA #20; 11/19 Dep. 251:14-21.)

The evidence is clear and undisputed that Kebe knew the Defamatory Statements were fabricated when she published them. For example, in a call she recorded with "Lovelyti," she admitted to knowing that Jones was lying and to not knowing whether Plaintiff had herpes. (SMF ¶¶ 48-49: CV6 at 16:04, 24:06; SAC ¶ 75; RFA #6.) Similarly, in a September 21, 2020 video Kebe published on YouTube, she admitted that her stories about Plaintiff committing a debasing act with a beer bottle, engaging in infidelity, and having HPV were all "fake" and that she put them out anyway because she knew they would go viral and draw viewers. (SMF ¶ 90: CV85 at 2:20, 3:24, 6:40, 8:38, 10:50, 11:35; RFA #82; 11/30 Dep. 196:23-98:22, 220:13-23)

Plaintiff also notified Kebe that the Defamatory Statements were untrue. In letters dated September 19, 2018, February 28, 2019, and October 2, 2020, Plaintiff's current and former counsel demanded Kebe remove and retract the Defamatory Statements. (SMF ¶¶ 30, 41, 53: Moore Decl. ¶¶ 7, 8, 11, Exs. 3, 4, 7; SAC ¶¶ 52, 95, 96.) In response to the first letter, Kebe published a video in which she referred to the letter as a "fake cease and desist that I literally wiped my a**

13

with." (SMF ¶ 32: CV21 at 39:23, 25:35; SAC ¶ 54; RFA #20; 11/19 Dep. 229:10-13.) She repeated this in an Instagram post ("I'm gonna wipe my f*ucking ass with this piece of paper!"), in which she also stated, "what [Jones] is saying about you must be true." (SMF ¶ 33: Moore Decl. ¶ 12, Ex. 8.)

She also took no actions in response to the second letter, and she admitted she did not even read the third letter because she had no intention of retracting any statements. (SMF ¶ 54: 11/30 Dep. 95:9-16.) Instead, she told her counsel to respond to Plaintiff's counsel with a "f**k off." (SMF ¶ 55: 11/30 Dep. 96:8-10.) These actions further support a finding of actual malice. *See Augusta Chronicle Pub. Co v. Arrington*, 157 S.E. 394, 396 (Ga. Ct. App. 1931) (finding refusal to retract supported finding of actual malice); *see also Golden Bear Distrib. Sys. of Texas, Inc. v. Chase Revel, Inc.*, 708 F.2d 944, 950 (5th Cir. 1983) (same), *abrogated on other grounds by Hiller v. Mfrs. Prod. Research Grp. of N. Am., Inc.*, 59 F.3d 1514, 1520-21 (5th Cir. 1995).

In addition, the Defamatory Statements remain accessible on her social media accounts. After being served with this lawsuit, Kebe temporarily unlisted or removed the defamatory videos that initially formed the basis of Plaintiff's claims. (SMF ¶ 44: SAC ¶ 67.) The next day, however, she re-published them despite knowing that they contained Defamatory Statements. (SMF ¶ 45: SAC ¶ 68; 11/19

14

Dep. 257:9-20.) These actions provide even more evidence of actual malice. *See S. Bell Tel. and Tel. Co. v. Coastal Transmission Serv., Inc.*, 307 S.E.2d 83, 88 (Ga. Ct. App. 1983) (affirming finding of punitive damages for defamatory statements where the defendant continued to distribute them with knowledge of their falsity).

Kebe readily acknowledges her outright disregard for the truth to advance her own dual personal motives of harassing Plaintiff and monetizing the Defamatory Statements. When asked about her statements that Plaintiff has herpes and HPV, she admitted not knowing if either statement was true. (SMF ¶¶ 62, 65: 11/19 Dep. 114:22-25, 279:6-9; 11/30 Dep. 45:15-20.) (They are not, as confirmed by medical tests. (Moore Decl. ¶¶ 3-6.)) She nonetheless published them because "it irritates [Plaintiff]" and drives viewers to her platform. (SMF ¶¶ 58-60: 11/19 Dep. 115:22-117:9, 141:9-142:13, 145:3-14, 159:24-60:8.) According to her, it is funny to say people have highly stigmatic and contagious diseases and infections. (SMF ¶ 66: 11/30 Dep. 164:15-17.) And she admittedly made these statements about Plaintiff intentionally to upset her. (SMF ¶¶ 60-61: 11/19 Dep. 145:3-14, 159:24-60:8, CV45 at 37:50, 39:15 (calling it a "personal vendetta"); RFA #43.) ***She even tags Plaintiff in her posts for this very purpose***. (SMF ¶¶ 58-60: *supra*.)

Similarly, she posted the false story about Plaintiff committing a debasing act with a beer bottle admittedly in retaliation for Plaintiff threatening to sue her.

(SMF ¶ 74: 11/30 Kebe Dep. 91:19-92:11.) She ignored evidence that the video she referred to did not depict Plaintiff. (SMF ¶¶ 75-81: 11/30 Dep. 79:17-88:21, 92:12-17, 109:10-10:2, 116:2-18:2; Moore Decl. ¶ 16, Ex. 12; Almanzar Decl. ¶ 15.) *See Hunt*, 720 F.2d at 643 (finding actual malice where the investigation was "grossly inadequate" the source of the information was dubious). As usual, however, Kebe was not concerned with whether she was posting accurate information. (SMF ¶ 82: 11/30 Dep. 88:18-21.) She falsely stated on multiple occasions that Plaintiff appeared in the video to upset Plaintiff and "make [her] audience laugh at [Plaintiff]." (SMF ¶ 83: 11/30 Dep. 102:6-19.) Kebe explained, when describing her continuing harassment of Plaintiff, "it's personal." (SMF ¶ 61: 11/19 Dep. 160:4-8; CV45 at 37:50, at 39:15 ("I just happen to have a personal vendetta against you b**ch, so I take pride in this sh**."); RFA #43.)

The overwhelming evidence of Kebe's malevolent intentions is so clear and one-sided that actual malice has been demonstrated as a matter of law.

### 4.    The Defamatory Statements Are Defamation *Per Se*.

Each of the Defamatory Statements fall within *per se* categories and thus are actionable without proof of special damages. The categories of defamation *per se* include "imputing to another a crime punishable by law" or "charging a person with having some contagious disorder or with being guilty of some debasing act

16

which may exclude him from society." O.C.G.A. § 51-5-4; *Cottrell v. Smith*, 788 S.E.2d 772, 780-81 (Ga. 2016) (categories apply both to slander and libel). In evaluating whether a statement is defamatory *per se*, "courts consider their natural and obvious meanings and look to the plain import of the words." *Stoploss Specialists*, 340 F. Supp. 3d at 1351 (punctuation and citation omitted).

The Defamatory Statements squarely fall within the following categories:

• The Defamatory Statements that Plaintiff engaged in prostitution impute to Plaintiff a crime punishable by law. *See* O.C.G.A. § 16-6-9; *see also Munson v. Gaylord Broad. Co.*, 491 So. 2d 780, 782 (La. Ct. App. 1986).

• Defamatory Statements that Plaintiff has herpes and HPV charge Plaintiff with having a contagious disorder.

• Defamatory Statements that Plaintiff used cocaine impute to Plaintiff a crime punishable by law. *See* O.C.G.A. § 16-13-20, et sq.; *see also Narcisse v. Turner Indus. Grp., LLC*, No. 11-2659, at 11 (E.D. La. Apr. 30, 2012).

• Defamatory Statements about Plaintiff use of a beer bottle charge Plaintiff with being guilty of a debasing act that may exclude her from society.[4]

---

[4] Georgia law does not define the types of "debasing acts" governed by the statute. Nevertheless, there should be no reasonable doubt that the actions Plaintiff was falsely accused of (i.e., "f****** herself with a beer bottle") easily qualify.

17

- Defamatory Statements that Plaintiff committed infidelity impute to Plaintiff a crime punishable by law. *See* O.C.G.A. § 16-6-19; *see also City of Fairbanks v. Rice*, 20 P.3d 1097, 1107 (Alaska 2000).

Accordingly, Plaintiff is entitled to summary judgment on her defamation *per se* claims (Counts I and III).

### 5. Plaintiff Is Entitled to Injunctive Relief.

A jury will determine the amount of damages to award Plaintiff for the Defamatory Statements. In the meantime, this Court should enjoin Kebe's current publications of the Defamatory Statements (which remain on her social media accounts) and any future publications of the same statements.

The Georgia Supreme Court has recognized that enjoining the statements found to be defamatory is an appropriate remedy for continuing and repetitive defamatory statements. *Retail Credit Co. v. Russell*, 218 S.E.2d 54, 62-63 (Ga. 1975); *see also generally* Eugene Volokh, *Anti-Libel Injunctions*, 168 U. Pa. L. Rev. 73 (2019) (surveying the law and explaining the constitutionality of targeted injunctions); Doug Rendleman, *The Defamation Injunction Meets the Prior Restraint Doctrine*, 56 San Diego L. Rev. 615 (2019) (same). Here, Kebe has continued to repeat the same lies about Plaintiff over and over again despite knowing they are untrue because she enjoys harassing Plaintiff and profiting off

18

her name. And Kebe has made clear that she has no intention of stopping unless forced to by this Court. (SMF ¶ 94: 11/30 Dep. 98:22-99:5; CV45 at 3:05, 27:00; CV46 at 4:15; CV88 at 18:25; CV85 at 4:10; RFA #43, 44, 82, 85.) To this day, the Defamatory Statements remain accessible on Plaintiff's social media accounts and continue to damage Plaintiff's reputation. Upon finding Plaintiff is entitled to judgment as a matter of law on Kebe's liability for defamation, this Court should enjoin the Defamatory Statements to prevent further harm to Plaintiff.

**B.    Plaintiff Is Entitled to Partial Summary Judgment on Her IIED Claim.**

A claim for intentional infliction of emotional distress has four elements: "(1) intentional or reckless conduct (2) which is extreme and outrageous and (3) caused the emotional distress (4) which is severe." *Pyle v. City of Cedartown*, 524 S.E.2d 7, 9 (Ga. Ct. App. 1999) (citation omitted). "Whether a claim rises to the requisite level of outrageousness and egregiousness is a question of law to be determined by the court." *Fields v. Atlanta Indep. Sch. Sys.*, 916 F. Supp. 2d 1348, 1374 (N.D. Ga. 2013). There is no genuine dispute that Kebe's conduct towards Plaintiff has been both intentional and sufficiently outrageous to support this claim.

Kebe has intentionally targeted Plaintiff for online harassment. (SMF ¶ 16: 11/19 Dep. 155:12-14, 164:5-7.) Kebe admits publishing highly offensive and outrageous statements about Plaintiff because she enjoys harassing her and it

19

increases her bottom line. (SMF ¶ 17: 11/19 Dep. 155:7-11.) She did so without

any regard for whether they were true or not. (*See supra*.) Her "personal" attacks

on Plaintiff are intended to retaliate, upset her, and make people laugh at her. (*See*

*supra*.) This verbal tormenting by Kebe is extreme and outrageous as a matter of

law. *See, e.g.*, *Woodruff v. Miller*, 307 S.E.2d 176, 178 (N.C. Ct. App. 1983)

(finding actionable conduct based on "persistent plan to disturb, humiliate, harass,

and ruin plaintiff for no purpose but defendant's own spiteful satisfaction")

This barrage of vile slurs Kebe has directed at Plaintiff has been ongoing for

years. Repeated and ongoing harassment provides even more support for a finding

extreme and outrageous conduct. *Tapley v. Collins*, 41 F. Supp. 2d 1366, 1382

(S.D. Ga. 1999) (noting that extreme and outrageous conduct could be established

through a singularly outrageous act or "a sustained course of aggravated conduct

aimed directly at a plaintiff"), *rev'd in part on other grounds*, 211 F.3d 1210 (11th

Cir. 2000). Plaintiff is entitled to partial summary judgment on the first two

elements of her claim for intentional infliction of emotional distress.

## C.    Plaintiff Is Entitled to Summary Judgment on Kebe's Counterclaims.

### 1.    Kebe's Assault Counterclaim Fails as a Matter of Law.

A claim for assault arises from a "violent injury or illegal attempt to commit

a physical injury upon a person." O.C.G.A. § 51-1-14; *see also Hallford v. Kelley*,

360 S.E.2d 644, 646 (Ga. Ct. App. 1987) (explaining that "assault occurs when all the apparent circumstances, reasonably viewed, are such as to lead a person reasonably to apprehend a violent injury from the unlawful act of another") (quotation marks and citation omitted). There must be reasonable apprehension of an *imminent* injury. *Lee v. Christian*, 221 F. Supp. 3d 1370, 1381 (S.D. Ga. 2016) ("Under Georgia law, an assault is the apprehension of an imminent harmful or offensive contact."); *see also Patterson v. State*, 789 S.E.2d 175, 181-82 (Ga. 2016) (Blackwell, J., dissenting) (describing the history of the tort of assault); Restatement (Second) of Torts § 21 (defining assault as "acts intending to cause a harmful or offensive contact . . . or an imminent apprehension of such contact").

After discovery, we are at the same exact place we were when Plaintiff filed her motion to dismiss. Kebe has not identified a single threat to injure Kebe that was made by Plaintiff. (SMF ¶ 99.) *See Bullock v. Jeon*, 487 S.E.2d 692, 696 (Ga. Ct. App. 1997) (no assault claim where defendant "did not threaten or attempt violently to injure" plaintiff and "never touched or attempted to touch him"). The only "threat" that she has identified is single message thread Plaintiff had with a non-party named Skeemo Holmes that was posted online. (SMF ¶ 98: Moore Decl. ¶ 15, Ex. 11; 11/19 Dep. 168:25-70:8; 2d Supp. #10.) But nothing said by Plaintiff in this message thread could reasonably be construed as a threat to injure Kebe.

(SMF ¶ 99: Moore Decl. ¶ 15, Ex. 11; *cf.* CV21 at 46:30.)

Kebe also relies on Instagram posts made by Holmes and alleges, without any evidence, she received threats from unidentified phone callers and unidentified commenters on Instagram. (SMF ¶ 102: 11/19 Dep. 184:12-14.) These allegations are inadmissible and do not even purport to describe the type of threat of imminent injury that could give rise to an assault claim. In addition, the vague threats allegedly received by Kebe (if any) were not made by Plaintiff and ***Kebe admits she has no evidence that Plaintiff directed those threats or otherwise had any involvement in making them***. (SMF ¶ 103: 11/19 Dep. 184:23-85:7.) *See Brown v. Manning*, 764 F. Supp. 183, 186-87 (M.D. Ga. 1991) (threatening telephone calls could not support assault claim as there was no evidence the threats were made by the defendant). Kebe's assault claim fails as a matter of law.

### 2.   Kebe's IIED Counterclaim Fails as a Matter of Law.

This counterclaim fails for the same reason as Kebe's assault claim: Plaintiff did not engage in any of the conduct that Kebe alleges caused her emotional distress. Specifically, Kebe claims she received threats that caused her to fear for her safety and caused her emotional distress (SMF ¶ 101: 2d Supp. #10) but she has no evidence to support her allegations that these unspecified threats from unnamed people actually occurred (SMF ¶ 102: 11/19 Dep. 184:12-14).

Even putting that aside, where as here the claim is based on alleged threats, Kebe "must introduce evidence such that the threats can be attributed to defendants." *Nolin v. Douglas Cty.*, 903 F.2d 1546, 1554 (11th Cir. 1990) (affirming directed verdict on claim where there was no evidence that alleged threats were attributable to the defendant), *overruled on other grounds*, *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994); *see also Sossenko v. Michelin Tire Corp.*, 324 S.E.2d 593, 595 (Ga. Ct. App. 1984) (affirming grant of summary judgment because "without additional evidence identifying the caller with appellee, this alleged threat [over the telephone] cannot be attributed to appellee"). ***Kebe admittedly has no evidence Plaintiff directed or otherwise had any role in making these threats***. (SMF ¶ 103: 11/19 Dep. 184:23-85:7.)

To the extent Kebe is suggesting that Plaintiff's online statements that Kebe publishes made up lies (she admittedly does) and that Plaintiff was going to sue her for defamation (she did) provide a basis for this claim, she plainly is mistaken as a matter of law. *See Price v. State Farm Mut. Auto. Ins. Co.*, 878 F. Supp. 1567, 1570 (S.D. Ga. 1995) ("[B]eing called a 'liar,' without more, simply is not tortious."); *Rolleston v. Huie*, 400 S.E.2d 349, 352 (Ga. Ct. App. 1990) ("Since the actual filing of a lawsuit, standing alone, does not give rise to a viable claim for the intentional infliction of emotional distress, the mere 'threat' to file a lawsuit

certainly does not.") (citation omitted), *overruled in part on other grounds*, *Sewell v. Cancel*, 759 S.E.2d 485, 488 n.2 (2014); *see also Hammer v. Slater*, 20 F.3d 1137, 1144 (11th Cir. 1994) (citing *Rolleston* with approval).

Finally, Kebe has not produced in this case evidence sufficient to support a finding of severe emotional distress. She produced no records to demonstrate that her alleged high-risk pregnancy was caused by alleged threats she received. She also produced no records with a mental health professional to demonstrate she had cognizable anxiety or depression or, if she did, that alleged threats caused it. *See Gordon v. Marks*, No. 1:13-cv-2262-TWT, at 13 (N.D. Ga. Nov. 7, 2014) (awarding summary judgment on IIED claim where plaintiff provided no evidence that event caused any severe emotional distress); *Quarles v. McDuffie Cty.*, 949 F. Supp. 846, 855-56 (S.D. Ga. 1996) (granting summary judgment where plaintiff "produced no evidence beyond her own assertions to support her claim that she has suffered *severe* emotional distress, as the law requires"). For all these reasons, Kebe's intentional infliction of emotional distress claim fails as a matter of law.

### 3. Kebe's Counterclaims for Relief Fail as a Matter of Law.

Kebe's claims for punitive damages pursuant to O.C.G.A. § 51-12-5.1 and for attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 both depend on finding of liability on one of Kebe's tort claims. *See Moore-Sapp*

24

*Investors v. Richards*, 522 S.E.2d 739, 742 (Ga. Ct. App. 1999) (punitive damages); *Freeman v. Wheeler*, 627 S.E.2d 86, 90 (Ga. Ct. App. 2006) (attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11). Because Kebe's assault and intentional infliction of emotional distress claims fail as a matter of law, summary judgment should also be awarded on these claims for relief.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court grant her motion for summary judgment.

Dated: December 30, 2020               Respectfully submitted,

/s/ W. Andrew Pequignot
Lisa F. Moore (Bar No. 419633)
W. Andrew Pequignot (Bar No. 424546)
MOORE PEQUIGNOT LLC
887 West Marietta Street, Suite M-102
Atlanta, Georgia 30318
Telephone: (404) 748-9596
E-mail: lisa@themoorefirm.com
E-mail: andrew@themoorefirm.com

Sarah M. Matz (admitted *pro hac vice*)
Gary P. Adelman (admitted *pro hac vice*)
ADELMAN MATZ P.C.
1173A Second Avenue, Suite 153
New York, New York 10065
Telephone: (646) 650-2207
E-mail: sarah@adelmanmatz.com
E-mail: g@adelmanmatz.com

*Attorneys for Plaintiff*

25

## <u>CERTIFICATION AS TO FONT</u>

In accordance with Local Rule 7.1(D), the undersigned certifies that the

foregoing document was prepared with Times New Roman 14, a font and point

selection approved by the Court in Local Rule 5.1(C).

DATED: December 30, 2020

/s/ W. Andrew Pequignot
W. Andrew Pequignot

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

BELCALIS MARLENIS ALMÁNZAR,

                 Plaintiff,

    v.

LATASHA TRANSRINA KEBE a/k/a
LATASHA TRANSRINA HOWARD and
KEBE STUDIOS LLC,

                 Defendants.

Case No. 1:19-cv-01301-WMR

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2020, I electronically filed the

foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S

MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT KEBE with

the Clerk of the Court using the CM/ECF system, which will automatically send

email notification of such filing to all of the attorneys of record

                           /s/ W. Andrew Pequignot
                           W. Andrew Pequignot