## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

BELCALIS MARLENIS ALMÁNZAR,

       Plaintiff,

  v.

LATASHA TRANSRINA KEBE a/k/a
LATASHA TRANSRINA HOWARD and
KEBE STUDIOS LLC,

      Defendants.

Case No. 1:19-cv-01301-WMR

## STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT KEBE

In accordance with Rule 56 of the Federal Rules and Local Rule 56.1, Plaintiff Belcalis Marlenis Almánzar ("Plaintiff") respectfully submits this statement of material facts to which there is no genuine issue to be tried in support of her motion for summary judgment against Defendant Latasha Kebe ("Kebe").

1.  Plaintiff is a Grammy award-winning musical artist and songwriter professionally known as "Cardi B." (**Exhibit A**, Declaration of Belcalis Marlenis Almanzar ("Almanzar Decl.") ¶ 3; Plaintiff's Second Amended Complaint and Demand for Jury Trial, ECF No. 69, together with Defendant Kebe's Answer and

Affirmative Defenses to Plaintiff's Second Amended Complaint and Second

Amended Counterclaims, ECF No. 79 ("SAC") ¶ 9.)

2.      Since the release of her debut mixtape in 2015, Plaintiff's musical

works have reached peak positions on charts in the United States and around the

world and garnered her millions of fans. (Almanzar Decl. ¶¶ 4-5.)

3.      Plaintiff is a proud and loving mother of a young girl and has been

recognized for her philanthropic endeavors. (Almanzar Decl. ¶ 6.)

4.      Kebe hosts a celebrity gossip platform on social media websites under

the moniker "unWinewithTashaK." (SAC ¶ 17.)

5.      Kebe publishes sensational stories about celebrities with no regard for

their veracity. (**Exhibit B**, Excerpts of Transcript of November 19, 2020

Deposition of Defendant Kebe ("11/19 Dep.") 76:15-19 ("If they gave me

information that I deem entertainment news, I will disseminate it, whether it be

opinion or whether I believe it is true."), 266:23-67:7; *infra* ¶¶ 7, 9, 92.)

6.      According to Kebe's husband and business manager, Kebe is

indifferent to the truth because she runs "an entertainment gossip channel."

(**Exhibit C**, Excerpts of Transcript of November 29, 2020 Deposition of Cheickna

Kebe ("11/29 Dep.") 179:21-80:19.)

7.      Kebe and her husband and business manager assume the stories Kebe is putting out could be untrue. (**Exhibit D**, Excerpts of Transcript of November 30, 2020 Deposition of Defendant Kebe ("11/30 Dep.") 185:5-13 ("I assume every story could be not true, because of the nature in which most stories are brought to me. . . . [I]n the news world, because a lot of people will bring you things, maliciously, to, I guess, attack others; or to gain notoriety, and stuff like that."); 11/29 Dep. 180:16-81:2 (Q: "[A]re you saying, basically, you know there's a chance it's not true?" A: "Yes. Absolutely." . . . Q: "[Y]ou're sure [Kebe] is aware of that as well?" A: "I'm sure she would be aware of that.").)

8.      And Kebe admitted she would not hesitate to publish a knowingly false story. (11/19 Dep. 76:15-19, 266:23-67:7 (Q: "So it's okay for you to put out stories on your platform that you know are false, that defame my client, as long as someone else is the one that gave you the information?" A: "If I feel that a story is entertaining and what the public wants, I will put the story out in a manner in which I want to put it out, so it's my platform, yes.").)

9.      Kebe does not care if one of her stories is untrue because, in her words, "I sell drama." (11/30 Dep. 221:4-7, 223:24-24:8.)

10.     Kebe publishes stories to gain more viewers and followers to her social media channels and, as a result, more advertising revenue. (11/19 Dep. 126:4-11; 11/30 Dep. 220:13-24.)

11.     The more outrageous the gossip and high profile her target, the more likely it is to draw followers to Kebe's accounts where she makes money from advertising revenue. (*See infra* ¶¶ 29, 38-40, 52, 90.)

12.     As an example, Kebe recently posted graphic allegations about a prominent Georgia pastor having an affair with another man. (11/30 Dep. 225:11-26:19.)

13.     Kebe later acknowledged that she knew the story was false. (11/30 Dep. 227:3-18.)

14.     Kebe published the story anyway because she found it "entertaining" and she took issue with the pastor taking money from the community. (11/30 Dep. 227:3-18.)

15.     In her words, publishing the statements about the pastor was a "win/win." (11/30 Dep. 227:18.)

16.     Kebe has intentionally targeted Plaintiff on her platform. (11/19 Dep. 155:12-14, 164:5-7 (Q: "[Y]ou have intentionally targeted her. Right? A: Yeah, absolutely . . . .").)

4

17.     Kebe admits that she has published highly offensive statements about Plaintiff. (11/19 Dep. 155:7-11.)

18.     On September 2, 2018, Kebe published a video in which she stated that Plaintiff "prostituted for a living." (**Exhibit E (Video Exhibits)**, CARDI VIDEO ("CV") 16 at 5:50; **Exhibit F**, Plaintiff's First Requests for Admission to Defendant Kebe together with Defendant Kebe's Responses to Plaintiff's First Requests for Admission ("RFA") #15).

19.     On September 19, 2018, Kebe published a video interview on YouTube with an individual named Starmarie Jones ("Jones") that has been viewed over four million times (the "9/19/18 Video"). (Ex. 6 to Kebe Dep. (CV20); SAC ¶ 38; RFA #19.)

20.     Kebe's interview with Jones in the 9/19/18 Video was recorded before it was published. (11/19 Dep. 191:14-16.)

21.     Jones claimed in the 9/19/18 Video that she had information about Plaintiff because they were previously roommates. (Ex. 6 to Kebe Dep. (CV20) at 7:09; SAC ¶ 38; RFA #19.)

22.     Plaintiff and Jones were never roommates. (Almanzar Decl. ¶ 9.)

23.     In the 9/19/18 Video that Kebe published, Jones states that Plaintiff was a prostitute. (Ex. 6 to Kebe Dep. (CV20) at 0:40; SAC ¶ 38; RFA #19.)

24.     In the 9/19/18 Video that Kebe published, Jones states that Plaintiff used cocaine. (Ex. 6 to Kebe Dep. (CV20) at 0:40; SAC ¶ 38; RFA #19.)

25.     In the 9/19/18 Video that Kebe published, Jones states that Plaintiff has herpes. (Ex. 6 to Kebe Dep. (CV20) at 0:48; SAC ¶ 38; RFA #19.)

26.     Kebe started the interview to elicit the statements from Jones that Plaintiff was a prostitute, that Plaintiff used cocaine, and that Plaintiff has herpes because Jones had made those statements in prior video that went viral. (11/19 Dep. 209:8-12.)

27.     Each of these statements about Plaintiff is false. (Almanzar Decl. ¶ 8.)

28.     Before Kebe published the 9/19/18 Video, another celebrity gossip person that goes by the name "Lovelyti" told her that some of Jones's statements were not true. (11/30 Dep. 73:4-74:9; CV116 at 26:26 ("[S]he was just like hey, you know I received some receipts that the girl is lying. So I was like oh is going to be bad ass, so you know, I'll do the interview, you debunk that b**ch."); RFA #109.)

29.     Instead of holding the video until she could investigate the claims, she hastened her release of the video so it would have an opportunity to trend and she would make money before Jones's statements were debunked. (11/19 Dep. 280:22-82:13.)

30.     In a letter dated the same day, Plaintiff's prior counsel demanded

Kebe remove the video from YouTube. (**Exhibit G**, Declaration of Lisa Moore

("Moore Decl.") ¶ 11, Ex. 7 (CARDI315); SAC ¶ 52.)

31.     Kebe refused to remove the video. (Moore Decl. ¶ 10, Ex. 6

(CARDI313-14).)

32.     On September 21, 2018, Kebe published a video in which she referred

to the letter as a "fake cease and desist that I literally wiped my a** with" (the

"9/21/18 Video). (Ex. 11 to Kebe Dep. (CV21) at 39:23, 25:35 ("I wiped my

f***ing ass with that cease and desist. I get those bitches every week now, and my

lawyer tells me good job, and my agency says, keep my foot on their f***ing

necks. They got a problem? Let them take you to court. Wipe your ass with them

cease and desists."); SAC ¶ 54; RFA #20; 11/19 Dep. 229:10-13.)

33.     She repeated this in an Instagram post ("I'm gonna wipe my f***ing

ass with this piece of paper!"), in which she also stated, "what [Jones] is saying

about you must be true." (Moore Decl. ¶ 12, Ex. 8 (CARDI324).)

34.     In the 9/21/18 Video, Kebe stated, "everything that [Jones] said was

accurate" (the "9/21/18 Video"). (Ex. 11 to Kebe Dep. (CV21) at 2:11; SAC ¶ 54;

RFA #20.)

35.   Kebe testified that she was "not at all" concerned about stating that everything Jones said in the 9/19/18 Video was accurate even though she had received a letter from Plaintiff's counsel asking her to take the video down because it was defamatory. (11/19 Dep. 251:14-52:5.)

36.   Kebe claimed in the 9/21/18 Video to have information supporting the veracity of Jones's defamatory statements. (Ex. 11 to Kebe Dep. (CV21) at 8:12 ("[Jones] has shown me some stuff, I said, okay legit so I'm gonna go ahead and tell your story."); SAC ¶ 54; RFA #20.)

37.   That was not true. Kebe did not have evidence to support Jones's defamatory statements. (11/19 Dep. 251:14-21.)

38.   Kebe "convinced [Jones] to do [the interview] because [she] knew that the interview would bring ratings." (11/19 Dep. 193:5-7.)

39.   Kebe's decision to publish the Jones interview was based on making money and getting the highest ratings. (11/19 Dep. 282:9-13.)

40.   On or around November 13, 2018, Kebe published a video on YouTube confirming that this was her motivation:

> Now we [LovelyTi and I] exploited Star. We wanted those views, those clicks, money, whatever. . . . I wanted the money. I have an agency that's watching me, they want to see certain numbers every month, certain productivity, great work, I put it out there guys okay. Not afraid. This is business, this is called ratings.

8

(CV4 at 6:44; RFA #4.)

41.     On February 28, 2019, Plaintiff's counsel sent Kebe a demand to take down the 9/19/18 Video and the 9/21/18 Video and retract the defamatory statements contained in the videos. (Moore Decl. ¶ 7, Ex. 3 (CARDI363-66); SAC ¶ 95.)

42.     In response to this demand, Kebe did not take down the 9/19/18 Video and the 9/21/18 Video or retract the defamatory statements contained in the videos. (CV7 at 0:25 ("You want to come after me [with a cease and desist] because you think you are going to be able to intimidate me with this sh**, but I'm here to tell you b**ch unless you send me court papers to tell me to show up at a court, b**ch there's nothing you can say to me to make me take down those mother****** YouTube videos. I said what I f***ing said.").)

43.     On March 21, 2019, Plaintiff filed this action. (Complaint, ECF No. 1.)

44.     On or around March 25, 2019, Kebe temporarily unlisted and/or took down the 9/19/18 Video and 9/21/18 Video from her YouTube channel. (SAC ¶ 67.)

45.     On or around March 26, 2019, Kebe re-published the 9/19/18 Video and 9/21/18 Video by making them public again on her YouTube channel. (SAC ¶ 68; 11/19 Dep. 257:9-20.)

46.     On April 25, 2019, Kebe published a recording of a phone call that she had with Lovelyti (the "Lovelyti Recorded Call"). (Ex. 12 to Kebe Dep. (CV6); Moore Decl. ¶ 9, Ex. 5 (CARDI207); SAC ¶ 71; RFA #6.)

47.     The Lovelyti Recorded Call was recorded prior to this lawsuit being filed and prior to Kebe re-publishing the 9/19/18 Video and 9/21/18 Video by making them public again. (SAC ¶¶ 72-73.)

48.     In the Lovelyti Recorded Call, Kebe states that Jones "told some truths, she didn't tell all truths." (Ex. 12 to Kebe Dep. (CV6) at 16:04; SAC ¶ 75; RFA #6.)

49.     In the Lovelyti Recorded Call, Kebe states, "I still believe [Jones] . . . now as far as the herpes and shit, I don't know." (Ex. 12 to Kebe Dep. (CV6) at 24:06; SAC ¶ 76; RFA #6.)

50.     In the Lovelyti Recorded Call, Kebe states, "Cardi has an entire team to protect her, if people defame her or anything, that's Cardi's job . . . to shut that shit down." (Ex. 12 to Kebe Dep. (CV6) at 10:16; SAC ¶ 77; RFA #6.)

10

51.     In the Lovelyti Recorded Call, Kebe states, ". . . here's my thing, all of these strippers are lying . . ." referring to Jones, Plaintiff and a third party. (Ex. 12 to Kebe Dep. (CV6) at 11:02; SAC ¶ 78; RFA #6; 11/19 Dep. 265:4-66:3.)

52.     In the Lovelyti Recorded Call, Kebe also noted the agency she works with had praised the ratings she was getting on her recent videos about Plaintiff: "I got a message today from my agency, they said good f***ing work, keep those numbers coming in." (Ex. 12 to Kebe Dep. (CV6) at 35:40; SAC ¶ 78; RFA #6.)

53.     On October 2, 2020, Plaintiff's counsel sent Kebe's counsel a third letter outlining additional defamatory statements that had been identified during discovery both pre-dating and post-dating the filing of this action and demanding that Kebe remove and retract the defamatory statements. (Moore Decl. ¶ 8, Ex. 4 (CARDI368-70); SAC ¶ 96.)

54.     Kebe admitted she did not even read the October 2, 2020 letter because she had no intention of taking down or retracting any statements. (11/30 Dep. 95:9-16.)

55.     Instead, she told her counsel to respond to Plaintiff's counsel with a "f**k off." (11/30 Dep. 96:8-10.)

56.     Between September 2018 and December 30, 2020, Kebe published that Plaintiff has herpes at least five times, including:

11

**"(Kebe) She has herpes?" "(Jones) Yes"** (Ex. 6 to Kebe Dep. (CV20) (9/19/18 Video) at 0:48; SAC ¶ 38; RFA #19.)

**"(Kebe) So you were living with her at the time and she had herpes outbreaks on her mouth?" "(Jones) Yes"** (Ex. 6 to Kebe Dep. (CV20) (9/19/18 Video) at 17:25; SAC ¶ 38; RFA #19.)

**"Herpes B. See u in court!"** (Moore Decl. ¶ 13, Ex. 9 (CARDI478) (the "12/18/18 Facebook Post"); SAC ¶ 61; 11/19 Dep. 141:9-13 (Q: "So the, so the reference to herpes – the use of "Herpes B" was a reference to our client? A: Yes.").)

**"[Skeemo] apparently gave [Plaintiff] herpes"** (Ex. 24 to Kebe Dep. (CV132) (the "4/24/20 Video") at 1:00:23; SAC ¶ 85; **Exhibit H**, Plaintiff's Second Requests for Admission to Defendant Kebe together with Defendant Kebe's Responses to Plaintiff's Second Requests for Admission ("Second RFA") #123.)

**"I thought we left you and your confirmed irritated p\*\*\*y in 2018. . . . #HerpesB."** (Moore Decl. ¶ 14, Ex. 10 (CARDI488) (the "1/25/19 Tweet"); 11/19 Dep. 144:17-20 ("Q: And the implication here is that you're saying that our client has herpes. Correct? A: Correct."); SAC ¶ 65.)

57.     The reference to "Herpes B" in the 12/18/18 Facebook Post was used by Kebe to drive viewers to the post and her social media channels. (11/19 Dep. 141:21-42:13.)

58.     Kebe admitted during her deposition that she uses hashtags such as #coldsoreB and #herpesB in posts that have nothing to do with Plaintiff to draw traffic to her posts and channels. (11/19 Dep. 115:22-117:9, 141:9-142:13.)

59.     Kebe used the hashtag "#HerpesB" in the 1/25/19 Tweet because "it irritates [Plaintiff]." (11/19 Dep. 145:3-14.)

60.     Kebe used the hashtag "#HerpesB" and tagged Plaintiff in the 1/25/19 Tweet intentionally to upset Plaintiff. (11/19 Dep. 145:3-14, 159:24-60:8.)

61.     Kebe explained, when describing why she likes to upset Plaintiff, "it's personal." (11/19 Dep. 160:4-8; *see also* CV45 (10/7/19 Video) at 37:50 ("It brings me joy to expose a b**ch like this. It brings me joy to bring bad news to a b**ch who don't give a f*** about nobody but herself. Cardi- Cold Sore B, I'm sorry Cold Sore B, that's her name."), at 39:15 ("Well b**ch you're my mother****** content, if it gets me paid I'm going to expose your ass, especially if I don't like you, I don't like what you stand for, I'm doing it. I just happen to have a personal vendetta against you b**ch, so I take pride in this shit."); RFA #43.)

62.     Kebe admits to not knowing whether Plaintiff has herpes even though she published these statements of fact. (11/19 Dep. 114:22-25 ("I don't know if she has herpes."); 11/30 Dep. 45:15-20.)

63.     Plaintiff does not have herpes. (Almanzar Decl. ¶ 11; Moore Decl. ¶¶ 3-4, Ex. 1.)

64.     Between September 2018 and December 30, 2020, Kebe published that Plaintiff has HPV at least one time, including:

> **"I know you got HPV."** (Ex. 25 to Kebe Dep. (CV101) (the "9/18/20 Video") at 1:16:11; SAC ¶ 87; RFA #98; 11/30 Dep. 163:22-64:5.)

65.     Kebe admits to not knowing whether Plaintiff has HPV even though she published this statement of fact. (11/19 Dep. 279:6-9 ("I don't know for sure if she has HPV.").)

66.     According to Kebe, it's funny to say people have highly stigmatic diseases and infections. (11/30 Dep. 164:15-17.)

67.     Kebe published her statement that Plaintiff has HPV because she thought it was amusing. (11/19 Dep. 279:16-25.)

68.     Kebe also published her statement that Plaintiff has HPV because she knew it would upset Plaintiff and, in her words, "I don't like her." (11/19 Dep. 280:2-9.)

69.     Plaintiff does not have HPV. (Almanzar Decl. ¶ 12; Moore Decl. ¶¶ 5-6, Ex. 2.)

70.     Between September 2018 and December 30, 2020, Kebe published that Plaintiff used cocaine at least one time, including:

> **"(Kebe) Was she a drug user?" "(Jones) Yes" "(Kebe) cocaine . . . to be specific" "(Jones) Yes")** (Ex. 6 to Kebe Dep. (CV20) (9/19/18 Video) at 0:40; SAC ¶ 38; RFA #19.)

71.     Kebe admits to not knowing whether Plaintiff used cocaine even though she published this statement of fact. (11/19 Dep. 111:12 ("I did not know of your client doing cocaine.").)

72.     Plaintiff has never used cocaine. (Almanzar Decl. ¶ 13.)

73.     Between September 2018 and December 30, 2020, Kebe published that Plaintiff engaged in a debasing act with a beer bottle at least three times, including:

> **Plaintiff "f***** herself with beer bottles on f****** stripper stages."** (Ex. 17 to Kebe Dep. (CV33) (the "12/18/18 Video") at 10:10; SAC ¶ 59; RFA #32.)
>
> **Plaintiff "stuck beer bottles up her vagina, she actually took beer bottles from pedestrians. This is on video, she took the beer bottle from the pedestrian . . . stuck it in her cooch, drank the beer bottle and gave it back to him."** (Ex. 21 to Kebe Dep. (CV88) (the "4/23/19 Video") at 22:40; SAC ¶ 69; RFA #85.)
>
> **Plaintiff "was sitting on beer bottles, she was taking pedestrian's beer bottles, they was drinking and they could have had some cold sores and she sat on the f****** beer bottles."** (Ex. 23 to Kebe Dep. (CV63) (the "12/30/19 Video") at 7:00; SAC ¶ 83; RFA #61.)

74.     Kebe posted the false story about Plaintiff committing a debasing act with a beer bottle in the 12/18/18 Video in retaliation for Plaintiff threatening to sue her. (11/30 Kebe Dep. 91:19-92:11.)

75.     Kebe made no good faith effort to investigate whether the video she referred to actually depicted Plaintiff. (11/30 Dep. 79:17-88:21.)

76.     Kebe obtained the video from a pornography website called PornHub that she acknowledged does not verify the contents of videos. (11/30 Dep. 79:17-88:21.)

77.     Kebe testified that she did a Google search for the video to determine its accuracy and clicked on some of the results "to see if Plaintiff had responded to it." (11/30 Dep. 109:10-10:2.)

78.     A similar Google search reveals a story published in May 2018, long prior to the time Kebe was searching for the video, debunking Kebe's claim as the first search result. (Moore Decl. ¶ 16, Ex. 12 (Ex. 20 to Kebe Dep.); 11/30 Dep. 116:2-18:2.)

79.     Plaintiff had already put out public statements making clear that the video did not depict her, and Kebe could have easily found it had she looked. (Almanzar Decl. ¶ 15.)

80.     Because Kebe evidently follows Plaintiff's social media accounts, she likely was aware of these statements. (Almanzar Decl. ¶ 15.)

81.     Kebe admitted that Plaintiff never said it was her in the video. (11/30 Dep. 92:12-17.)

82.     Kebe admits to not knowing whether the person depicted in the video she described was Plaintiff. (11/30 Dep. 88:18-21.)

16

83.     Kebe falsely stated on multiple occasions that Plaintiff appeared in the video to upset Plaintiff and "make [her] audience laugh at [Plaintiff]." (11/30 Dep. 102:6-19.)

84.     Plaintiff was not the person depicted in the video described by Kebe nor has she engaged in that debasing act. (Almanzar Decl. ¶ 14.)

85.     Between September 2018 and December 30, 2020, Kebe published that Plaintiff committed infidelity at least seven times, including:

> **"[Plaintiff is] f****** someone else too."** (Ex. 25 to Kebe Dep. (CV101) (9/18/20 Video) at 1:15:37; SAC ¶ 87; RFA #98.)

> **"She said you [Cardi] have been f****** someone."** (Ex. 25 to Kebe Dep. (CV101) (9/18/20 Video) at 1:16:00; SAC ¶ 87; RFA #98.)

> **"She also said that you f****** somebody too high profile and that's the reason you are done"** (Ex. 25 to Kebe Dep. (CV101) (9/18/20 Video) at 1:16:29; SAC ¶ 87; RFA #98.)

> **"I tried to call [the caller] back, she ain't picking up the phone so that means you either got to that b****, or you got to that b****."** (Ex. 25 to Kebe Dep. (CV101) (9/18/20 Video) at 1:19:17; SAC ¶ 87; RFA #98.)

> **"Being that you got some transition d***, you got a little bit bolder."** (Ex. 25 to Kebe Dep. (CV101) (9/18/20 Video) at 1:19:45; SAC ¶ 87; RFA #98.)

> **"Enjoy your transition d***, that's the only thing that gave her balls, somebody is licking her p****."** (Ex. 25 to Kebe Dep. (CV101) (9/18/20 Video) at 1:21:31; SAC ¶ 87; RFA #98.)

17

> **"Cardi's sleeping with somebody else."** [producer off camera] "You don't know that." **Kebe: "But I do, my source told me that, when have my sources lied to me? When, I'm waiting."** (CV83 at 24:30; RFA #80)

> **"Now [Plaintiff]'s f****** somebody else."** (Ex. 28 to Kebe Dep. (CV85) (the "9/21/20 Video") at 8:00; SAC ¶ 89; RFA #82.)

86.     Kebe admits to not knowing whether Plaintiff committed infidelity even though she published these statements of fact. (11/19 Dep. 243:4-10.)

87.     Plaintiff has never committed infidelity. (Almanzar Decl. ¶ 16.)

88.     Between September 2018 and December 30, 2020, Kebe published that Plaintiff was a prostitute at least eight times, including:

> Plaintiff **"prostituted for a living."** (CV16 (9/2/18 Video) at 5:50; RFA #15.)

> **"(Kebe) You said that Cardi B prostituted" "(Jones) Yes"** (Ex. 6 to Kebe Dep. (CV20) (9/19/18 Video) at 0:40; SAC ¶ 38; RFA #19.)

> **"These gang members got [Plaintiff] into drugs and prostitution"** (CV34 (the "1/4/19 Video") at 41:35; SAC ¶ 62; RFA #33.)

> **"I didn't have to sell no tw*t" (referring to Plaintiff).** (CV43 (the "7/19/19 Video") at 45:40; SAC ¶ 79; RFA #41.)

> **"I do know this, for her to come out here and say that she's never sold p***y, that's a lie. That's a m******** lie."** (Ex. 22 to Kebe Dep. (CV80) (the "11/8/19 Video") at 58:45; SAC ¶ 81; RFA #78.)

> **"I do know, you being a stripper, you say you ain't a prostitute, I have yet to meet a stripper who was not prostituting."** (CV47) (12/30/19 Video) at 6:04; RFA #45.)

> **"I cosigned everything that [Jones] said, that she's a whole prostitute."** (Ex. 25 to Kebe Dep. (CV101) (9/18/20 Video) at 1:07:50; SAC ¶ 87; RFA #98.)

> **"She's mad because I called her a prostitute - b**** you sold p***y!"** (Ex. 28 to Kebe Dep. (CV85) (9/21/20 Video) at 7:15; SAC ¶ 89; RFA #82.)

The defamatory statements set forth in Paragraphs 56 (herpes), 64 (HPV), 70 (cocaine), 73 (debasing act with beer bottle), 85 (infidelity), and 88 (prostitution) are defined as the "Defamatory Statements."

89.   Plaintiff has never been a prostitute. (Almanzar Decl. ¶ 17.)

90.   In the 9/21/20 Video, Kebe admitted that her stories about Plaintiff committing a debasing act with a beer bottle, engaging in infidelity, and having HPV were all "fake" and that she put them out anyway because she knew they would go viral and draw viewers. (Ex. 28 to Kebe Dep. (CV85) (9/21/20 Video) at 2:20 ("You know what's funny, I make up stories out of thin air, Tasha just makes up stories."); at 3:24 ("I knew the sh** was fake."); at 6:40 ("I knew they was m*********** fake— I told Kyle 'I'm going to put the bull**** out anyway.'"); at 8:38 ("I knew it was fake, I still made that s*** go m*********** viral okay."); at 10:50 (""If you continue to send me fake stories on you, I'm going to air them as they are hoe."); at 11:35 ("So keep sending me the lies, and I'm going

to keep putting them the f*** out b****."); RFA #82; 11/30 Dep. 196:23-98:22, 220:13-23 ("[M]y intentions are to, of course, bring traffic.").)

91.     The Defamatory Statements are patently false. (*See infra* ¶¶ 63, 69, 72, 84, 87, & 89.)

92.     Kebe published the Defamatory Statements about Plaintiff knowing they are untrue because they would grow her platform, increase her subscribers, and bring in more ad revenue. (*See infra* ¶¶ 5, 7, 9, 29, 38-40, 52, 90.)

93.     Kebe has not issued any sort of retraction or repudiation of the Defamatory Statements. (SAC ¶ 98.)

94.     The videos published by Kebe containing the Defamatory Statements are still available to be viewed by the public, and Kebe has made it abundantly clear that she has no intention of removing or retracting any of the Defamatory Statements or stopping from making the Defamatory Statements. (11/30 Dep. 98:22-99:5; CV45 (10/7/19 Video) at 3:05 ("What's the hashtag? Cold Sore B! We're going to be talking about Cold Sore B tonight b**ch. Since y'all should have had a mother****** gag order, we'll see b**ch."), at 27:00 (""Now, on to Cold Sore B. Y'all should have had a gag order on me, I was just waiting for the right time, and the right mother****** receipts to strike again, b**ch."); CV46 (11/11/19 Video) at 4:15 ("She wants me to delete videos. Well b**ch you need to

20

give me a check. You want me to delete these videos you better give me the money that I was supposed to make off of the videos. Or more. Because it's residual income. . . . You want s*** down on my platform, you got to pay for that."); CV88 (4/23/19 Video) at 18:25 ("You want to shut me up? Let me tell you how to shut me up. Pay me b**ch."); CV85 (9/21/20 Video) at 4:10 ("I don't care if they put a gag order on me, the reason the b**ch is mad—I know y'all going to put a gag order on me, I don't give a f***, it's going to be an injunction, I don't give a f***."); RFA #43, 44, 82, 85.)

95.     Kebe claims the Defamatory Statements are conditionally privileged. (ECF No. 79, Fourteenth Affirmative Defense.)

96.     Kebe has refused even to identify which category of privilege she claims to qualify for. (**Exhibit I**, Plaintiff's First Set of Interrogatories to Defendant Latasha Kebe together with Defendant Kebe's Second Supplemental Responses to Plaintiff's First Set of Interrogatories to Defendant Latasha Kebe ("2d Supp.") #17.)

97.     Kebe has not identified a single threat to injure Kebe that was made by Plaintiff. (11/19 Dep. 166:2-13.)

98.    The only "threat" that she has identified is single message thread

Plaintiff had with a non-party named Skeemo Holmes that was posted online.

(Moore Decl. ¶ 15, Ex. 11 (Kebe 262-63); 11/19 Dep. 168:25-70:8; 2d Supp. #10.)

99.    Nothing said by Plaintiff in this message thread could reasonably be

construed as a threat to injure Kebe. (Moore Decl. ¶ 15, Ex. 11 (Ex. 5 to Kebe

Dep., Kebe 262-63); *cf.* (Ex. 11 to Kebe Dep. (CV21) at 46:30 ("No I'm not going

to fight Cardi, I'm just saying if I run into Cardi, ain't going to be no

mother****** security that's all I can say. I'm a god damn cross fitter I don't need

to fight, hit your ass one time, you're good.".).)

100.   Kebe also relies on Instagram posts made by Holmes and alleges,

without any evidence, that she received threats from unidentified phone callers and

unidentified commenters on Instagram that she speculates are "Cardi fans." (2d

Supp. #10; 11/19 Dep. 183:10-84:14.)

101.   Kebe claims she received threats that caused her to fear for her safety

and caused her emotional distress. (2d Supp. #10.)

102.   She has no evidence to support her allegations that these unspecified

threats from unnamed people actually occurred. (11/19 Dep. 184:12-14 (Q: "But

you don't have any records of any of these death threats?" A: "I don't, no.").)

103.    Kebe admits that she has no evidence that Plaintiff directed those

threats or otherwise had any involvement in making them. (11/19 Dep. 184:23-

85:7 (Q: "Do you have any evidence that Cardi directed any of this to happen as

opposed to people maybe not being fans of you targeting Cardi, taking it upon

themselves to send you threats and other things?" A: "I can't speak on that. I don't

know." Q: "You don't have any evidence?" A: "No, I don't have any evidence,

no.").)


Dated: December 30, 2020                Respectfully submitted,

                                        /s/ W. Andrew Pequignot
                                        Lisa F. Moore (Bar No. 419633)
                                        W. Andrew Pequignot (Bar No. 424546)
                                        MOORE PEQUIGNOT LLC
                                        887 West Marietta Street, Suite M-102
                                        Atlanta, Georgia 30318
                                        Telephone: (404) 748-9596
                                        E-mail: lisa@themoorefirm.com
                                        E-mail: andrew@themoorefirm.com

                                        Sarah M. Matz (admitted *pro hac vice*)
                                        Gary P. Adelman (admitted *pro hac vice*)
                                        ADELMAN MATZ P.C.
                                        1173A Second Avenue, Suite 153
                                        New York, New York 10065
                                        Telephone: (646) 650-2207
                                        E-mail: sarah@adelmanmatz.com
                                        E-mail: g@adelmanmatz.com

                                        *Attorneys for Plaintiff*
                                        23

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

BELCALIS MARLENIS ALMÁNZAR,

                        Plaintiff,

     v.

LATASHA TRANSRINA KEBE a/k/a
LATASHA TRANSRINA HOWARD and
KEBE STUDIOS LLC,

                    Defendants.

Case No. 1:19-cv-01301-WMR

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 30, 2020, I electronically filed the foregoing STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT KEBE with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all of the attorneys of record

                    /s/ W. Andrew Pequignot
                    W. Andrew Pequignot