# Exhibit I
# (Second Supplemental Interrogatory Responses)

I-1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| BELCALIS MARLENIS ALMÁNZAR,<br><br>                Plaintiff,<br><br>v.<br><br>LATASHA TRANSRINA KEBE a/k/a<br>LATASHA TRANSRINA HOWARD and<br>STARMARIE EBONY JONES,<br><br>                Defendants. | Case No.<br><br>1:19-cv-1301-WMR |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## TO DEFENDANT LATASHA KEBE

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff

BELCALIS MARLENIS ALMÁNZAR ("Plaintiff") hereby requests that

Defendant LATASHA TRANSRINA KEBE ("Kebe") provide answers under oath

to the following interrogatories (the "Interrogatories") within thirty (30) days after

service of same.

## INSTRUCTIONS AND DEFINITIONS

1.　　In accordance with Rule 26 of the Federal Rules of Civil Procedure,

these Interrogatories are continuing in nature. Kebe is, therefore, requested to

provide, by way of supplementary answers or amendments thereto, such additional information as, Kebe, or any persons on Kebe's behalf may hereinafter obtain that would augment or modify the answers now given.

2.      In answering these Interrogatories, Kebe is requested to furnish all information that is available, including information in the possession of Kebe's employees, attorneys, agents, representatives, or anyone acting in cooperation or concert with Kebe, including any experts that have been consulted or retained.

3.      Kebe is also requested to identify separately for each Interrogatory all persons and documents consulted by it in preparing Kebe's answer thereto.

4.      The term "**Plaintiff**" shall refer to Plaintiff BELCALIS MARLENIS ALMÁNZAR.

5.      The term "**Kebe**" shall refer to Defendant LATASHA TRANSRINA KEBE a/k/a LATASHA TRANSRINA HOWARD and her present and former employees, servants, agents, attorneys, partners, associates, investigators, representatives, accountants, contractors, financial advisors, distributors, and any other person(s) acting on her behalf.

6.      The term "**Jones**" shall refer to Defendant STARMARIE EBONY JONES and her present and former employees, servants, agents, attorneys, partners, associates, investigators, representatives, accountants, contractors,

financial advisors, distributors, and any other person(s) acting on her behalf.

7.      The term "**Defendants**" shall refer to Defendants Kebe and Jones, collectively.

8.      The term "**Complaint**" shall refer to Plaintiff's Complaint dated March 21, 2019 (Doc. No. 1).

9.      The term "**Answer**" shall refer to Kebe's Answer to the Complaint dated May 8, 2019 (Doc. No. 5).

10.     The term "**Amended Complaint**" shall refer to Plaintiff's Amended Complaint dated June 12, 2019 (Doc. No. 11).

11.     The term "**Answer to the Amended Complaint**" shall refer to Kebe's Answer to Plaintiff's Amended Complaint dated July 7, 2019, 2019 (Doc. No. 12).

12.     The term "**Counterclaims**" shall refer to Kebe's amended counterclaims set forth in her Answer to the Amended Complaint, and any subsequent amendments or additions to these counterclaims.

13.     The term "**Social Media Platform**" shall refer to online or digital social media or networking platforms, which include but are not limited to services such as Facebook, Twitter, Instagram, YouTube, and LinkedIn.

14.     The term "**Social Media Account**" shall refer to an account on a Social Media Platform.

15.     The term "**Defendant Social Media Account**" shall refer to any Social Media Account currently or previously owned or controlled by Kebe or Jones.

16.     The term "**URL**" shall refer to the uniform resource locator for an Internet website, including but not limited to a Social Media Account.

17.     The term "**Website**" shall refer to any website (i.e. web pages and multimedia content associated with at least one domain name).

18.     The term "**Defendant Website**" shall refer to any Website owned or controlled by Kebe or Jones, which includes but is not limited to the Website located at the URL www.unWinewithTasha.com.

19.     The term "**Handle**" shall refer to the user identification name associated with a Social Media Account.

20.     The term "**9/2 Video**" shall have the same meaning as set forth in Paragraph 26 of the Amended Complaint.

21.     The term "**Jones Video**" shall have the same meaning as set forth in Paragraph 30 of the Amended Complaint.

22.     The term "**9/19 Video**" shall have the same meaning as set forth in Paragraph 36 of the Amended Complaint.

23.     The term "**9/21 Video**" shall have the same meaning as set forth in

Paragraph 54 of the Amended Complaint.

24.     The term "**1/25 Tweet**" shall have the same meaning as set forth in Paragraph 58 of the Amended Complaint.

25.     The term "**Lovelyti Call**" shall have the same meaning as set forth in Paragraph 63 of the Amended Complaint.

26.     The term "**Video**" shall refer to any audio-visual recording created by, or caused to be created by, one or more Defendants that relate to or contain oral or written commentary about Plaintiff.

27.     The term "**Audio Recording**" shall refer to any audio recording created by, or caused to be created by, one or more Defendants that relate to or contain oral or written commentary about Plaintiff.

28.     The term "**Writing**" shall refer to any written text created by, or caused to be created by, one or more Defendants that relate to or contain commentary about Plaintiff, including but not limited to any comments, posts, replies, direct messages, or tweets on any Social Media Platform.

29.     The term "**Photograph**" shall refer to any photograph created by, or caused to be created by one or more Defendants, or posted on a Defendant Social Media Accounts or Defendant Website, that depict or purport to depict in any way Plaintiff.

30.     The term "**Content**" shall refer to any Video, Audio Recording, Writing, or Photograph.

31.     The terms "**Publication**" and "**Published**" shall include any display, dissemination, communication, transmittal, performance, or broadcast in any format and through any medium, including but not limited to on any Website or Social Media Platform.

32.     The term "**Published Content**" shall refer to all Content that has been Published, including but not limited to the 9/2 Video, the Jones Video, the 9/19 Video, the 9/21 Video, the 1/25 Tweet, and the Lovelyti Call, as well as the following: (i) the Videos Published on Kebe's unWinewithTashaK YouTube channel on January 5, 2018, February 15, 2018, April 13, 2018, April 19, 2018, May 17, 2018, September 2, 2018, September 4, 2018, September 8, 2018, September 18, 2018, September 19, 2018, September 21, 2108, October 5, 2018, October 29, 2018, November 7, 2018, November 19, 2018, December 5, 2018, December 14, 2018, December 17, 2018, December 18, 2018, January 4, 2019, February 12, 2019, March 26, 2019, March 28, 2109, April 23, 2019, July 8, 2019, July 20, 2019, and August 23, 2019; and (ii) the Videos Published on Kebe's Wino Gang Podcast (formerly Tasha K's Future Podcast Home) YouTube channel on September 19, 2018, September 29, 2018, November 13, 2018, and December 17,

2018.

33.    The term "**Unpublished Content**" shall refer to all Content that has

not been Published, including but not limited to any non-Published: (i) Video; (ii)

Audio Recordings from telephone conversations between any Defendant and any

person concerning Plaintiff that have not been Published; (iii) Writing; and  (iv)

draft communication or document concerning Plaintiff that has not been Published.

34.    The term "**First Requests**" refers to Plaintiff's First Requests to

Latasha Kebe for the Production of Documents and Things served concurrently

with these Interrogatories.

35.    The term "communication" refers to any act or instance whereby

messages, facts, data, or any other information is transmitted orally, visually, in

writing, electronically, or by any other means or media from one natural person or

entity to another.

36.    The term "document" is defined to be synonymous in meaning and

equal in scope to the usage of the term "documents or electronically stored

information" in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure. A draft

or non-identical copy is a separate document within the meaning of this term.

37.    The term "person" is defined as any natural person or any legal entity,

including, without limitation, any business or governmental entity or association.

38.     The terms "reflecting," "relating to**,**" and "referring to" shall each be construed to include "summarizing," "containing," "showing," "discussing," "describing," or "commenting upon."

39.     The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

40.     The term "evidencing" means demonstrating, showing, supporting, and/or tending to show the existence or lack thereof.

41.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

42.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

43.     The use of the singular form of any word includes the plural and vice versa.

44.     When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and phone numbers, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in respect to subsequent

8

discovery requesting the identification of that person.

45.     When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) the general subject matter; (iii) the date of the document; and (iv) author(s), addressee(s), and recipient(s).

46.     If Kebe is unable to respond to any Interrogatory fully, supply the information that is available and explain why Kebe's response is incomplete, the efforts made to obtain the information, and the source from which all responsive information may be obtained.

47.     If, for any reason other than a claim of privilege, Kebe refuses to respond to any Interrogatory herein, state the grounds upon which such refusal is based with sufficient particularity to permit a determination of the propriety of such refusal.

48.     "Describe" means to:

        a.     provide all relevant details, to the extent required by applicable rules and practice, concerning the item to be described, including dates, where applicable;

        b.     identify all documents concerning the item described, giving the general subject matter, date, and author(s), addressee(s), and recipient(s) of the documents;

   c. identify all communications concerning the item described, giving the general subject matter, date, and participants in the communications; and

   d. identify all persons with knowledge of the item described, giving the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.

  49. If, in answering these Interrogatories, Kebe claims that any Interrogatory, or a definition or instruction applicable thereto, is ambiguous, do not use such claim as a basis for refusing to respond, but rather set forth as a part of the response the language you claim is ambiguous and the interpretation you have used to respond to the individual Interrogatory.

  50. Each paragraph herein shall be construed independently and not with reference to any other paragraph for the purpose of limitation.

  51. Each of the foregoing definitions and instructions is hereby incorporated by reference into, and shall be deemed a part of, each and every other definition and instruction contained herein as well as each specific Interrogatory set forth below.

## INTERROGATORIES

**Interrogatory No. 1.**     Identify each person with personal knowledge concerning the allegations, affirmative defenses, and Counterclaims in this action, as set forth in the Complaint, the Amended Complaint, the Answer, and the Answer to the Amended Complaint, and any subsequent amended pleadings, and the subjects of each person's knowledge.

**Interrogatory No. 2.**     Identify each item of Content (including both Published Content and Unpublished Content) and the person(s) who participated in the creation of the Content (including but not limited to each person who appeared in the Content and each person who recorded or produced the Content).

**Interrogatory No. 3.**     Identify each Defendant Website and Defendant Social Media Account and the person(s) who have owned or controlled the Defendant Website from January 1, 2018 to present.

**Interrogatory No. 4.**     Identify the custodian location of any documents (including but not limited to any communications) that are responsive to any requests for production of documents served on Kebe by Plaintiff (including the First Requests and any subsequent requests).

**Interrogatory No. 5.**     If any documents (including but not limited to any communications) responsive to Plaintiff's requests for production of documents

(including the First Requests and any subsequent requests) are no longer in the possession, custody, or control of Kebe, identify each such document  and describe when, how, and why the document was destroyed or came to no longer be in Kebe's possession, custody, or control.

**Interrogatory No. 6.**　　Identify each Defendant Social Media Account and provide the name of the Social Media Platform, each Handle used by each Defendant on the Social Media Platform, the URL, and the name of each person who has had login credentials for each account from January 1, 2018 until present.

**Interrogatory No. 7.**　　For each item of Published Content, identify the format and medium(s) where the Publication occurred (including but not limited to any Website or Social Media Platform), the person(s) responsible for the Publication, and the date range(s) that the Content appeared on each medium.

**Interrogatory No. 8.**　　Identify each person who has provided Kebe with information concerning Plaintiff, describe the information that was provided by such person, and identify any documents reflecting the communication of the information to Kebe.

**Interrogatory No. 9.**　　Identify each statement allegedly made by Plaintiff that Kebe contends constitutes slander (including the verbatim quotation), which includes but is not limited to the statements alleged in Paragraph 211 of the

Counterclaims, the date Plaintiff allegedly made such statement, and describe any Publication of the statement (including but not limited to the applicable Social Media Account, including but not limited to the specific Handle for each Social Media Account, and/or any Website, used by Plaintiff allegedly  to communicate the statement).

**Interrogatory No. 10.**     Describe the alleged threats made against Kebe as alleged in Paragraphs 216, 221, 229, 233, and 234 of the Counterclaims, including: (i) the identity of each person who allegedly made a threat; (ii) a description of each threat made by each person; (ii) how the threat was made, e.g., in person in the vicinity of Kebe, by telephone, or on a Social Media Account; (iii) the date each threat was made; (iv) if Kebe was informed of the threat by another person, the identity of such person, including but not limited to the sources alleged in Paragraph 217 of the Counterclaims, and the contact information for each such person; and (v) if an alleged threat was made by someone other than Plaintiff, Kebe's basis for believing the alleged threat was made at Plaintiff's direction.

**Interrogatory No. 11.**     Describe Kebe's computation of each category of damages alleged by Kebe in the Counterclaims, which shall include identifying any documents that Kebe relied upon to compute the damages.

**Interrogatory No. 12.**     Describe how each category of damages alleged by

Kebe in the Counterclaims was caused by a statement or action by Plaintiff, which shall include identifying the specific statement or action by Plaintiff that caused the alleged harm and how the statement or action by Plaintiff caused the specified damages.

**Interrogatory No. 13.**     Describe the facts evidencing Kebe's allegation that Plaintiff acted "with actual malice and total disregard for the truth," as alleged in Paragraph 225 of the Counterclaims.

**Interrogatory No. 14.**     Describe the facts evidencing how Plaintiff's conduct "was intentional, willful, malicious, wanton and exhibited a conscious indifference to consequences," as alleged in Paragraphs 227, 231, and 239 of the Counterclaims.

**Interrogatory No. 15.**     Describe the facts evidencing how Plaintiff's conduct was "intentional, extreme, outrageous, and egregious," as alleged in Paragraph 234 of the Counterclaims.

**Interrogatory No. 16.**     Describe the facts evidencing Kebe's allegation that Plaintiff has "acted in bad faith, been stubbornly litigious, and has caused Ms. Kebe unnecessary trouble and expense," as alleged in Paragraph 242 of the Counterclaims.

**Interrogatory No. 17.**     Describe the facts evidencing or relating to Kebe's

Twelfth Affirmative Defense that Kebe's statements are privileged.

Dated: October 4, 2019                    Respectfully submitted,


                                          /s/ Sarah M. Matz
                                          Sarah M. Matz (admitted *pro hac vice*)
                                          Gary P. Adelman (admitted *pro hac vice*)
                                          ADELMAN MATZ P.C.
                                          1173A Second Avenue, Suite 153
                                          New York, New York 10065
                                          Telephone: (646) 650-2207
                                          E-mail: sarah@adelmanmatz.com
                                          E-mail: g@adelmanmatz.com

                                          Lisa F. Moore (Bar No. 419633)
                                          W. Andrew Pequignot (Bar No. 424546)
                                          MOORE PEQUIGNOT LLC
                                          887 West Marietta Street, Suite M-102
                                          Atlanta, Georgia 30318
                                          Telephone: (404) 748-9596
                                          E-mail: lisa@themoorefirm.com
                                          E-mail: andrew@themoorefirm.com

                                          *Attorneys for Plaintiff*

To:   Olga Izmaylova, Esq.
      Sadeer Sabbak, Esq.
      SABBAK & IZMAYLOVA, P.C.
      1875 Old Alabama Road
      Suite 760
      Roswell, Georgia 30076
      Telephone: (404) 793-7773
      Facsimile: (678) 878-4911
      E-mail: olga@silawatl.com
      E-mail: ssabbak@silawatl.com
      *Attorneys for Latasha Kebe*

I-2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BELCALIS MARLENIS ALMANZAR,　　*
　　　　　　　　　　　　　　　　*
　　　　　　Plaintiff,　　　　　*
　　　　　　　　　　　　　　　　*　　　　Civil Action No.
　　　v.　　　　　　　　　　　*　　　　1:19-cv-01301-WMR
　　　　　　　　　　　　　　　　*
LATASHA TRANSRINA KEBE et al.,　*
　　　　　　　　　　　　　　　　*
　　　　　　Defendants.　　　　*

## DEFENDANT KEBE'S SECOND SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT LATASHA KEBE

COMES NOW, LATASHA KEBE, the Defendant in the above-styled civil action, and, after conferring with Plaintiff's Counsel, submits the second set of supplemental responses to Plaintiff's First Set of Interrogatories. Ms. Kebe incorporates her initial objections, initial responses, and first supplemental responses herein.

### Supplemental Response to Interrogatory No. 8

Ms. Kebe still does not have access to her @unwinewithtasha Instagram account and therefore cannot provide copies of the direct messages she received regarding the threats Plaintiff and Skeemo Holmes were making about Ms. Kebe's safety and well-being. Ms. Kebe referenced the document production because those

documents contain the information Ms. Kebe received about Plaintiff. Again, Ms. Kebe does not have access to the remaining documents that contain information about Plaintiff.

### Supplemental Response to Interrogatory No. 9

(1) To prove her slander counterclaim, Ms. Kebe intends to use statements, like the ones Plaintiff made during a tirade on her Instagram Live video, which has been produced as Kebe 006. The relevant statements begin at the 6-minute mark, when Skeemo Holmes posted a comment on Plaintiff's live stream. Below is a quote from a portion of Plaintiff's live stream.

"My boy, Skeemo, just fucking wrote on my shit right now. Let me tell you something about my boy, Skeemo. Alright, so there's this blogger lady that fucking hates the shit out of me and I'm gonna sue her ass because I'm tired of her making up fake stories, harassing all of my friends. Like, this lady constantly stalk me, everybody that she see that I'm close to or like comment back on the pictures, like she literally stalks them. And then she goes and claim that people are giving her information about me. Said some disgusting things about me and my homeboy Skeemo. Let me tell you something about Skeemo. Skeemo is the n***a that turned me hat when I was sixteen years old and I've been friends with that n***a for a long time. That n***a seen me going in and out of relationship with n***as and I see him

going in and out of relationship with females. Shut up about me and my friends, you

dumb ass bitch. I'm gonna sue you for defamation of character. Cause it's like, you

know what, I let that bitch play and talk shit about me, but when you talk shit about

my daughter, that's when I have a fucking issue with you. And that's the type of shit,

like you be letting these YouTube bloggers talk mad shit and you let it, but when

they get outta line, it's like you know what I'm just gonna take legal action because

I'm sick of people. Like I'm really sick of people. Like da fuck. Anybody that she

think I'm close with, she got a fucking story to tell. Like how do you think that I'm

close with some girl, then you gonna go ahead and make up stories about her, talking

about she's a crackhead and everything. This woman got three kids that are active

on social media. Like people just wanna make up stories about people and talk shit

about people. Try to, because, you know, using my name you get automatic clickbait

and shit. And it's like, when they don't have a story to say about me, they will just

make a story up or they will make a story up about my friends and I'm sick of it.

Like I'm just sick of it. It's like I know, I get it that I'm famous and people are gonna

harass me. But when you harass my friends and talk shit about my friends. And when

you put my daughter in your fucking mouth, that's when I have a fucking problem.

Cause I will bury a fucking block for my child. Bitch, I'll go to jail for fucking life

for my kid. So, don't even ever try it. And I'm gonna sue that blogger cause I'm sick

of it. Gathering all my fucking information, bitch. Wanna keep harassing me, you wanna keep harassing my friends, you wanna keep making shit up. Aight then bitch. I'm gonna take all your fucking bread. You think I'm fucking playing then. So crazy. I hate being famous cause I can't put my hands on people, like people really be fucking trying me and I just gotta sit there and eat it up. Like, I'm sick of it. Bitch gonna put a whole fucking disease on me. Like, bitch, is you crazy? I kiss and love on my daughter and because you so thirsty for clickbait, you gonna put mad sick shit on me and then make shit up about my child? And then on top of that, I haven't even seen Skeemo who's like one of my best friends for like three, four years, but we always talk cause that's somebody that I know since I was a kid. That somebody that get it poppin for me. People be buggin. I swear to god, yo, I really don't like this fame shit. Y'all people sick. Y'all people is weird. Weird as fuck. This bitch literally be stalking and stalking my friends. Bitch, you a whole fucking weirdo. A bitch that's forty years old and pregnant too. And then all you can do is talk shit about me, hoe. Fuck outta here."

(2) To prove her slander counterclaim, Ms. Kebe intends to use the caption Plaintiff wrote when she published a private conversation between Plaintiff and Skeemo Holmes, which has been produced as Kebe 262 and Kebe 263. Specifically,

Plaintiff posted: "Bitch saw that I always reply to my bro under the comments and then made a bullshit lie."

(3) There were other live streams and posts that Plaintiff made on her Instagram account, which included similar accusations that Ms. Kebe was a liar, a stalker, and that Plaintiff was going to sue Ms. Kebe to teach her a lesson. However, Ms. Kebe did not have the chance to preserve all of Plaintiff's Instagram posts and Plaintiff has refused to provide, in discovery, Plaintiff's Instagram Data Download. Therefore, Ms. Kebe cannot provide any more verbatim quotes of Plaintiff slandering Ms. Kebe at this time because she does not have access to the necessary evidence, which is in Plaintiff's possession and control.

### Supplemental Response to Interrogatory No. 10

(1) To prove her assault counterclaim, Ms. Kebe intends to use statements, like the ones Plaintiff made during a tirade on her Instagram Live video, which has been produced as Kebe 006. The relevant statements begin at the 6-minute mark, when Skeemo Holmes posted a comment on Plaintiff's live stream. Below, are the statements Plaintiff made during her live stream, broken up with Skeemo Holmes' written comments as they appear during the live stream.

Plaintiff began: "My boy, Skeemo, just fucking wrote on my shit right now. Let me tell you something about my boy, Skeemo. Alright, so there's this blogger

lady that fucking hates the shit out of me and I'm gonna sue her ass because I'm tired of her making up fake stories, harassing all of my friends. Like, this lady constantly stalk me, everybody that she see that I'm close to or like comment back on the pictures, like she literally stalks them. And then she goes and claim that people are giving her information about me. Said some disgusting things about me and my homeboy Skeemo. Let me tell you something about Skeemo. Skeemo is the n***a that turned me hat when I was sixteen years old and I've been friends with that n***a for a long time. That n***a seen me going in and out of relationship with n***as and I see him going in and out of relationship with females. Shut up about me and my friends, you dumb ass bitch. I'm gonna sue you for defamation of character. Cause it's like, you know what, I let that bitch play and talk shit about me, but when you talk shit about my daughter, that's when I have a fucking issue with you." Skeemo Holmes commented: "Talk about it".

Plaintiff continued: "And that's the type of shit, like you be letting these YouTube bloggers talk mad shit and you let it, but when they get outta line, it's like you know what I'm just gonna take legal action because I'm sick of people. Like I'm really sick of people. Like da fuck. Anybody that she think I'm close with, she got a fucking story to tell. Like how do you think that I'm close with some girl, then you gonna go ahead and make up stories about her, talking about she's a crackhead

and everything. This woman got three kids that are active on social media. Like people just wanna make up stories about people and talk shit about people. Try to, because, you know, using my name you get automatic clickbait and shit. And it's like, when they don't have a story to say about me, they will just make a story up or they will make a story up about my friends and I'm sick of it. Like I'm just sick of it. It's like I know, I get it that I'm famous and people are gonna harass me. But when you harass my friends and talk shit about my friends. And when you put my daughter in your fucking mouth, that's when I have a fucking problem."

Skeemo Holmes commented: "Deadass".

Plaintiff continued: "Cause I will bury a fucking block for my child. Bitch, I'll go to jail for fucking life for my kid. So, don't even ever try it. And I'm gonna sue that blogger cause I'm sick of it. Gathering all my fucking information, bitch."

Skeemo Holmes commented: "Bury all them".

Plaintiff continued: "Wanna keep harassing me, you wanna keep harassing my friends, you wanna keep making shit up. Aight then bitch. I'm gonna take all your fucking bread. You think I'm fucking playing then. So crazy."

Skeemo Holmes commented: "We gonna get her dum ass".

Plaintiff continued: "I hate being famous cause I can't put my hands on people, like people really be fucking trying me and I just gotta sit there and eat it up. Like, I'm sick of it."

Skeemo Holmes commented: "I can tho".

Plaintiff continued: "Bitch gonna put a whole fucking disease on me. Like, bitch, is you crazy? I kiss and love on my daughter and because you so thirsty for clickbait, you gonna put mad sick shit on me and then make shit up about my child? And then on top of that, I haven't even seen Skeemo who's like one of my best friends for like three, four years, but we always talk cause that's somebody that I know since I was a kid. That somebody that get it poppin for me. People be buggin. I swear to god, yo, I really don't like this fame shit. Y'all people sick. Y'all people is weird. Weird as fuck."

Skeemo Holmes commented: "Facts any day u know I got u".

Plaintiff continued: "This bitch literally be stalking and stalking my friends. Bitch, you a whole fucking weirdo. A bitch that's forty years old and pregnant too. And then all you can do is talk shit about me, hoe. Fuck outta here."

(2) To prove her assault counterclaim, Ms. Kebe intends to use the private conversation between Plaintiff and Skeemo Holmes that Plaintiff shared to all of her Instagram followers, which has been produced as Kebe 262 and Kebe 263.

Specifically, Plaintiff posted: "Bitch saw that I always reply to my bro under the comments and then made a bullshit lie. I been brimming with my bro for 13 years." In the private conversation, Skeemo Holmes told Plaintiff: "I'm already gathering info on that bitch. Cus if she think she gonna drag u my niece n me threw the mud then she fucking bugging. On brim." Plaintiff responded: "Right bitch is sick in the head. I'm telling you people will make anything up." Skeemo replied: "I was so disgusted.. I haven't even seen my niece yet or my friend but she think she can make shit up about us. Like who she think she is. I started to resort to old ways of handling things but Imma do this the right way. Don't wanna get nobody in trouble." It is abundantly clear that the conversation is about Ms. Kebe as illustrated in Kebe 262, where random Instagram users are tagging Ms. Kebe to let her know Skeemo Holmes and Plaintiff are talking about her.

(3) To prove her assault counterclaim, Ms. Kebe intends to use Skeemo Holmes' Instagram posts and comments, which have been produced as Kebe 089-092. Skeemo Holmes posted: "Don't ever violate & think you safe with me!!" on December 17, 2018, and a user commented "say it louder for the bloggers in the back". On December 18, 2018, Skeemo Holmes wrote: "Deadass…one shot kill from the golden gun..memories", and a user commented and tagged Ms. Kebe: "Please tune into this bitch live @iamunwinewithtashak at 7".

(4) After Plaintiff published the video, which has been produced as Kebe 006, and posted the private conversation between her and Skeemo Holmes, which has been produced as Kebe 262 and Kebe 263, Ms. Kebe began to receive numerous threats on her Instagram page via Direct Messages from Plaintiff's fans. Ms. Kebe also had tons of Instagram users tag Ms. Kebe to Plaintiff's Instagram posts and Skeemo Holmes' Instagram posts. Ms. Kebe no longer has access to that Instagram account because it was shut down by Instagram and, therefore, Ms. Kebe cannot provide verbatim quotes of the threats she received.

In addition to all the threats Ms. Kebe received on Instagram, Ms. Kebe also began to receive several calls per day from unknown numbers. The callers made violent threats to Ms. Kebe, including threats to kill Ms. Kebe. These calls began right after Plaintiff published Kebe 006, Kebe 262, and Kebe 263 on her Instagram page. Ms. Kebe kept blocking the numbers, but the calls continued.

(5) Due to the fact that the Instagram account Ms. Kebe was using at that time was blocked by Instagram and Plaintiff has refused to provide, in discovery, Plaintiff's Instagram Data Download, Ms. Kebe cannot provide any more verbatim quotes of Plaintiff threatening Ms. Kebe at this time because she does not have access to the necessary evidence, which is in Plaintiff's possession and control.

## Supplemental Response to Interrogatory No. 11

At this time, Ms. Kebe has the following estimates of the damages she incurred as a result of Plaintiff's conduct:

(1) Slander Per Se – Ms. Kebe notes that, under the law, damage is inferred in this case. Nevertheless, Ms. Kebe's current estimated damages for Slander Per Se are approximately $110,000.00.

(2) Assault – Ms. Kebe notes that, under the law, damage is inferred in this case. Nevertheless, Ms. Kebe's current estimated damages for Assault are approximately $732,000.00.

(3) Intentional Infliction of Emotional Distress - Ms. Kebe notes that, under the law, damage is inferred in this case. Nevertheless, Ms. Kebe's current estimated damages for Intentional Infliction of Emotional Distress are approximately $700,000.00.

(4) Punitive Damages – Ms. Kebe notes that punitive damages shall be determined by the jury. Nevertheless, Ms. Kebe intends to seek a minimum of $1,000,000.00 in punitive damages at trial.

(5) Costs of Litigation – Ms. Kebe does not have a figure for all costs and expenses, including attorneys' fees, incurred in connection with this lawsuit. This figure will be provided at a later date.

## Supplemental Response to Interrogatory No. 12

(1) Slander Per Se – Ms. Kebe incurred the estimated damages, described in Supplemental Response to Interrogatory No. 11, when Ms. Kebe lost thousands of followers, third-party advertisers, and social media profiles, as a direct result of Plaintiff's false allegations that Ms. Kebe was a stalker and a liar. Plaintiff's allegations that Ms. Kebe committed the crime of stalking and Plaintiff's attacks on Ms. Kebe's credibility as a blogger caused her to lose followers and advertisers. Additionally, Plaintiff and Plaintiff's fans continuously flagged Ms. Kebe's social media profiles, which resulted in Ms. Kebe constantly having to rebuild her profiles and followers from scratch. All of these actions by Plaintiff directly caused Ms. Kebe to incur the estimated damages described in Supplemental Response to Interrogatory No. 11.

(2) Assault – As a direct and proximate result of receiving violent threats from Plaintiff, Plaintiff's deranged fans, Skeemo Holmes, and other members of the Blood Gang, Ms. Kebe had to relocate her entire family to a new location, which caused Ms. Kebe to incur unexpected moving costs. As a result of the move, Ms. Kebe also spent at least 3 weeks away from work, which resulted in loss of income. Additionally, Ms. Kebe was experiencing a high-risk pregnancy during this time, which caused her unnecessary anxiety and severe

emotional distress. All the threats directed at Ms. Kebe, which were initiated and perpetuated by Plaintiff, caused Ms. Kebe to incur the estimated damages described in Supplemental Response to Interrogatory No. 11.

(3) Intentional Infliction of Emotional Distress – Plaintiff specifically targeted Ms. Kebe with her threats. Plaintiff invited her fellow gang members and her millions of followers to harass and threaten Ms. Kebe. Plaintiff knew that Ms. Kebe was pregnant. The only reason Plaintiff began threatening Ms. Kebe was because Plaintiff did not like that Ms. Kebe was reporting about Plaintiff. However, Plaintiff's behavior and conduct went beyond all bounds of decency and was extremely disproportionate. Plaintiff published threats directed at Ms. Kebe with the specific intent to retaliate. The emotional distress Ms. Kebe suffered, while pregnant, was a direct result of Plaintiff's egregious conduct and caused Ms. Kebe to incur the estimated damages described in Supplemental Response to Interrogatory No. 11.

(4) Punitive Damages – The jury is entitled to find that Plaintiff's conduct was intentional, willful, malicious, wanton, and exhibited a conscious indifference to consequences. Furthermore, Plaintiff's conduct was undertaken with the specific intent to cause harm to Ms. Kebe. Upon such finding, the jury will be entitled to determine the amount of punitive damages, while taking into

consideration the conduct at hand, Plaintiff's financial situation, and Plaintiff's celebrity status.

(5) Costs of Litigation – When Ms. Kebe's counterclaims prove successful, Ms. Kebe will be entitled to recover expenses of litigation, including reasonable attorneys' fees, from Plaintiff.

### Supplemental Response to Interrogatory No. 13

Ms. Kebe referenced the document production in her original response because those documents corroborate the information contained in Ms. Kebe's original response to Interrogatory No. 13.

### Supplemental Response to Interrogatory No. 14

Ms. Kebe referenced the document production in her original response because those documents corroborate the information contained in Ms. Kebe's original response to Interrogatory No. 14.

### Supplemental Response to Interrogatory No. 15

Ms. Kebe referenced the document production in her original response because those documents corroborate the information contained in Ms. Kebe's original response to Interrogatory No. 15.

### Supplemental Response to Interrogatory No. 16

Ms. Kebe still does not have access to her @unwinewithtasha Instagram account and Plaintiff has refused to provide, in discovery, Plaintiff's Instagram Data Download, therefore Ms. Kebe cannot provide copies of the direct messages she received from Plaintiff. To date, Ms. Kebe has produced all relevant evidence, in response to this Interrogatory, that Ms. Kebe possesses. Ms. Kebe referenced the document production in her original response because those documents corroborate the information contained in Ms. Kebe's original response to Interrogatory No. 16.

### Supplemental Response to Interrogatory No. 17

Ms. Kebe intends to rely on O.C.G.A. § 51-5-7, and relevant caselaw, as grounds for her privilege defense.

## **CERTIFICATION PURSUANT TO FRCP RULE 26(g)(1)(B)**

Pursuant to Rule 26(g)(1)(B) of the Federal Rules of Civil Procedure, the undersigned certifies that Defendant Kebe's First Supplemental Responses to Plaintiff's First Set of Interrogatories are: (i) consistent with the Federal Rules of Civil Procedure and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Respectfully submitted this 18th day of November, 2020.

*/s/Olga Izmaylova*
olga@silawatl.com
Georgia State Bar No. 666858

*/s/Sadeer Sabbak*
ssabbak@silawatl.com
Georgia State Bar No. 918493

SABBAK & IZMAYLOVA, P.C.          *Attorneys for Latasha Kebe*
1875 Old Alabama Road
Suite 760
Roswell, Georgia 30076
p. (404) 793-7773
f. (678) 878-4911

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

BELCALIS MARLENIS ALMANZAR,          *
                                      *
          Plaintiff,                  *
                                      *
                                      *          Civil Action No.
     v.                               *          1:19-cv-01301-WMR
                                      *
LATASHA TRANSRINA KEBE et al.,        *
                                      *
          Defendants.                 *

## <u>VERIFICATION OF LATASHA KEBE</u>

PERSONALLY APPEARED before me, Latasha Kebe, the Defendant, who first being duly sworn, deposes and states that she has read Plaintiff's First Set of Interrogatories to Defendant Latasha Kebe and submitted the foregoing Supplemental Responses. To the best of her knowledge, information, and belief, her supplemental responses to Plaintiff's First Set of Interrogatories to Defendant Latasha Kebe are true and correct.

By: _____
     Latasha Kebe, Defendant

Sworn to and subscribed before me
this 18<u>th</u> day of November, 2020.

_____
NOTARY PUBLIC
My Commission Expires: 5/9/21