# EXHIBIT 4

To Declaration of S. Matz

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BELCALIS MARLENIS ALMANZAR,    *
                               *
          Plaintiff,           *
                               *
                               *          Civil Action No.
     v.                        *          1:19-cv-01301-WMR
                               *
LATASHA TRANSRINA KEBE et al., *
                               *
          Defendants.          *

### DEFENDANT KEBE'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT LATASHA KEBE

COMES NOW, LATASHA KEBE, the Defendant in the above-styled civil action, and makes the following objections and responses to Plaintiff's First Set of Interrogatories:

### Objection to Interrogatory No. 1

In accordance with the required disclosures, described in Rule 26(a)(1)(A)(i) of the Federal Rules of Civil Procedure, Ms. Kebe will provide the name and, if known, the address and telephone number of each individual with personal knowledge concerning this litigation, and the subject of each person's knowledge. However, Ms. Kebe objects to providing each person's present or last known place of employment on the grounds that the Federal Rules of Civil Procedure do not

require that she provide that information; that information is not readily available to Ms. Kebe; ascertaining each person's employment history would be unduly burdensome for Ms. Kebe; the burden of obtaining that information far outweighs any benefit that information may have because it is not relevant to any party's claim or defense in the foregoing action.

### Response to Interrogatory No. 1

Ms. Kebe is still in the process of attempting to identify certain individuals' full names and contact information; therefore, certain individuals listed below will only be identified by their social media handles. At the beginning of this litigation, a preservation request was mailed to Instagram and Facebook, notifying them that Ms. Kebe will be requesting the production of electronically stored information for certain Instagram accounts, identifying each one by the user's handle. Ms. Kebe's attorneys received a letter from Instagram, responding to the preservation request. Please refer to Ms. Kebe's response to Plaintiff's Requests for Production No. 5 for copies of the aforementioned correspondence with Facebook and Instagram regarding the preservation of evidence pertaining to certain Instagram accounts.

Upon Ms. Kebe's receipt of more specific, identifying information for these individuals, she will supplement her response to this Interrogatory in accordance with Rule 26(e) of the Federal Rules of Civil Procedure. At this time, Ms. Kebe lists

the following individuals, who may have personal knowledge concerning the issues in the foregoing litigation and the subject of that knowledge:

1. **Latasha Kebe** – Defendant in the above-styled civil action.

<u>Contact Info</u>: 1231 Dayspring Trace, Lawrenceville, GA 30045; (404) 516-7420

<u>Subject of Knowledge</u>: Ms. Kebe was the target of Plaintiff's revenge plan, which resulted in this litigation. Ms. Kebe was threatened and intimidated by Plaintiff and Plaintiff's gang-member friends, which gave rise to Ms. Kebe's counterclaims. Ms. Kebe has personal knowledge and information pertaining to all the facts stated in her Amended Counterclaims; all of the damages (both monetary and emotional) she has suffered as a result of Plaintiff's intentional and malicious conduct; and all of the revenue she lost as a result of Plaintiff's intentional and malicious conduct. Furthermore, Ms. Kebe has personal knowledge and information pertaining to all of her affirmative defenses in response to the allegations raised in Plaintiff's Amended Complaint.

2. **Starmarie Jones** – Plaintiff's former friend, coworker, and roommate; a named co-defendant in the above-styled civil action.

<u>Contact Info</u>: Ms. Kebe does not have any current contact information for Starmarie Jones and does not have any information as to Ms. Jones' current whereabouts.

<u>Subject of Knowledge</u>: Ms. Jones used to be Plaintiff's personal friend, coworker, and roommate. After posting a video on her Instagram Live, Ms. Jones agreed to be interviewed by Ms. Kebe. During that interview, Ms. Jones divulged some facts she learned about the Plaintiff during a time when they lived together. Ms. Jones also talked about some of her experiences while she and the Plaintiff were dancers at the same strip club. All of the stories Ms. Jones shared occurred prior to Plaintiff becoming an internationally recognized persona. In summary, Ms. Jones has knowledge and information pertaining to Plaintiff's allegations of defamation and Ms. Kebe's affirmative defense of truth, as well as Ms. Kebe's claim of defamation.

3. **Cheickna Kebe** – Ms. Kebe's husband and Business Manager.

<u>Contact Info</u>: 1231 Dayspring Trace, Lawrenceville, GA 30045; (404) 441-6082

<u>Subject of Knowledge</u>: Mr. Kebe has information regarding the monetary damages Ms. Kebe suffered, as a direct result of Plaintiff's actions; knowledge pertaining to any ailments or complications during Ms. Kebe's pregnancy; and knowledge pertaining to the physical and emotional distress Ms. Kebe suffered, as a direct result of Plaintiff's actions. Mr. Kebe also has knowledge and information pertaining to the daily operations of Ms. Kebe's business; Ms. Kebe's social media accounts and online presence; the number of Ms. Kebe's subscribers and online followers; revenue Ms. Kebe generates from YouTube advertisements and third-party advertisements; total revenue that is generated by Ms. Kebe's brand; and the creation and preservation of Ms. Kebe's Content. Furthermore, Mr. Kebe has knowledge and information pertaining to Ms. Kebe's emergency relocation of her family's permanent residence, monetary damages resulting from the relocation, and monetary damages resulting from the need for increased security measures at Ms. Kebe's new residence; all of which was directly caused by Plaintiff's threats, and the violent threats of Plaintiff's associate gang members, directed at Ms. Kebe and her family. In summary, Mr. Kebe has knowledge and information pertaining to Ms. Kebe's affirmative defenses and her claims of assault, intentional infliction of emotional distress, the monetary and emotional damages Ms. Kebe sustained, as well as her physical and mental condition during the periods of time relevant to this litigation.

4. **Belcalis Almanzar** – Plaintiff in the above-styled civil action.

<u>Subject of Knowledge</u>: Ms. Almanzar initiated this litigation, so she has personal knowledge concerning all aspects of her claims, as well as her defenses to Ms. Kebe's counterclaims. As the Plaintiff, she had the duty to preserve all evidence in anticipation of this litigation and, therefore, Ms. Almanzar must be in possession of the necessary evidence to substantiate and prove all the allegations contained in her Amended Complaint. Furthermore, Ms. Almanzar must be in possession of evidence that nullifies all of Ms. Kebe's counterclaims and invalidates each of Ms. Kebe's affirmative defenses. Additionally, Ms. Almanzar must be in possession of evidence that demonstrates the monetary and emotional damages she claims to have suffered, as a direct and proximate result of Ms. Kebe's alleged actions. Finally, Ms. Almanzar must be in possession of evidence that will substantiate each and every one of the twenty-two affirmative defenses she raised in her Answer to Ms. Kebe's Amended Counterclaims.

5. **Skeemo Holmes** – Plaintiff's childhood friend and fellow Blood gang member.

Contact Info: Instagram Handle = @itsyaboiiskeemo is the only contact information Ms. Kebe has for Mr. Holmes at this time. However, Ms. Kebe expects to be able to supplement this information once she receives Plaintiff's discovery responses.

Subject of Knowledge: Mr. Holmes has knowledge and information regarding Plaintiff's membership in the Blood gang, a violent street gang. Additionally, Mr. Holmes has knowledge and information regarding the threats and intimidation Ms. Kebe suffered at the hands of himself and the Plaintiff. Mr. Holmes published a number of posts, which contained threatening and violent messages, on his Instagram account, that were clearly directed at Ms. Kebe. Mr. Holmes has knowledge and information regarding Plaintiff's requests that someone find Ms. Kebe and teach her a lesson. Mr. Holmes has knowledge about his private text conversations with Plaintiff pertaining to locating and physically hurting Ms. Kebe. In summary, Mr. Holmes has knowledge and information pertaining to Plaintiff's allegations of defamation and Ms. Kebe's claims of assault, intentional infliction of emotional distress, and the damages Ms. Kebe sustained as a direct result of Plaintiff's intentional conduct and malicious actions.

6. **Rashad Haughton** – Plaintiff's friend of almost 15 years.

Contact Info: haughton22@yahoo.com is the only contact information Ms. Kebe has for Mr. Haughton at this time. However, Ms. Kebe expects to be able to supplement this information once she receives Plaintiff's discovery responses.

Subject of Knowledge: Mr. Haughton has knowledge and information regarding Plaintiff's membership in the Blood gang; Plaintiff's sexual relationship with Skeemo Holmes; that Plaintiff contracted herpes from Skeemo Holmes; that Plaintiff prostituted her body; that Skeemo Holmes and Plaintiff exchanged private text messages, discussing their plan to locate Ms. Kebe and cause her physical harm; and that Mr. Haughton alerted Ms. Kebe about Plaintiff's plan to harm her. In summary, Mr. Haughton has knowledge and information pertaining to Ms. Kebe's affirmative defenses and Ms. Kebe's claims of assault, intentional infliction of emotional distress, and the damages Ms. Kebe sustained as a direct result of Plaintiff's intentional conduct and malicious actions.

7. **Camila Marianat** – Plaintiff's cousin, who used to live in New York, but currently lives in the Dominican Republic.

Contact Info: dwamegdm@gmail.com is the only contact information Ms. Kebe has for Ms. Marianat at this time. However, Ms. Kebe expects to be able to supplement this information once she receives Plaintiff's discovery responses.

Subject of Knowledge: Ms. Marianat has knowledge and information regarding Plaintiff's affiliation with gang members; Plaintiff's consumption of illegal drugs; Plaintiff being a prostitute; Plaintiff's relationship with Skeemo Holmes; and the death threats Ms. Marianat's family received from gang members, after Plaintiff began to associate with a gang. In summary, Ms. Marianat has knowledge and information pertaining to Ms. Kebe's affirmative defenses and Ms. Kebe's claims of assault, intentional infliction of emotional distress, and the damages Ms. Kebe sustained as a direct result of Plaintiff's intentional conduct and malicious actions.

8. **Remy Roja** – Plaintiff's friend and fellow Blood gang member.

Contact Info: Instagram Handle = @remyrojalaperla is the only contact information Ms. Kebe has for Ms. Roja at this time. However, Ms. Kebe expects to be able to supplement this information once she receives Plaintiff's discovery responses.

Subject of Knowledge: Ms. Roja has knowledge and information regarding Plaintiff's membership in the Blood Gang. Also, Ms. Roja sent Ms. Kebe (via Instagram direct messages to @unwinewithtasha) private messages, stating that Plaintiff was requesting to know where Ms. Kebe lived in Atlanta, so that Plaintiff could locate and physically fight Ms. Kebe. In summary, Ms. Roja has knowledge and information pertaining to Ms. Kebe's affirmative defenses and Ms. Kebe's claims of assault, intentional infliction of emotional distress, and the damages Ms. Kebe sustained as a direct result of Plaintiff's intentional conduct and malicious actions.

9. **Candice Pelham** – Owner of a YouTube Channel called Daytime Tea Time.

Contact Info: (678) 749-0563; daytimeteatime@gmail.com is the only contact information Ms. Kebe has for Ms. Pelham at this time.

<u>Subject of Knowledge</u>: Ms. Pelham put together a video and published it to her YouTube channel (Daytime Tea Time), which contained screenshots of the direct messages Plaintiff's friends sent to Ms. Kebe on Instagram to @unwinewithtasha (Ms. Kebe's account that has since been deactivated by Instagram). Those direct messages corroborated the fact that Plaintiff knew Ms. Jones and called into doubt all the allegations in Plaintiff's Amended Complaint. Ms. Kebe never requested that Ms. Pelham create any content or publish any videos pertaining to the subject matter of the foregoing litigation. Ms. Pelham, on her own volition, gathered evidence, created a video, and published it on her YouTube channel. At this time, Ms. Pelham's video is the only memorialization of the communications between Ms. Kebe and Plaintiff's friends that is accessible to Ms. Kebe, because Ms. Kebe no longer has access to the @unwinewithtasha Instagram account. In summary, Ms. Pelham has knowledge and information regarding  Ms. Kebe's affirmative defenses to Plaintiff's defamation claim.

10. **Kia Wright-Jackson** – Ms. Kebe's former assistant, who resigned from that position in November of 2018.

<u>Contact Info</u>: (720) 244-0691; Ms. Wright-Jackson recently moved, so once Ms. Kebe obtains her new address, she will supplement this response in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

<u>Subject of Knowledge</u>: Ms. Wright-Jackson was Ms. Kebe's assistant up until November of 2018. Ms. Wright-Jackson was the person, who reached out to Starmarie Jones, to schedule a date and time for the recorded interview that was ultimately published on Ms. Kebe's YouTube channel. During the course of her employment, Ms. Wright-Jackson had login information and access to all of Ms. Kebe's social media profiles, except for Ms. Kebe's main YouTube channel (unWinewithTashaK). In summary, Ms. Wright-Jackson has knowledge and information pertaining to Ms. Kebe's affirmative defenses and Ms. Kebe's claim of defamation and the damages Ms. Kebe sustained as a direct result of Plaintiff's intentional conduct and malicious actions.

11. **Shanae Wiggins** – Employee of Tricon American Homes, Ms. Kebe's former leasing agent.

<u>Contact Info</u>: 2889 Darrah Ct. SW, Atlanta, GA 30331; (844)874-2661; swiggins@triconah.com.

<u>Subject of Knowledge</u>: Ms. Wiggins was the person Ms. Kebe contacted to break the lease of her home in Cobb County. Ms. Wiggins has knowledge and information pertaining to the start date and end date of Ms. Kebe's lease; the number of years Ms. Kebe has been leasing the home in Cobb County; the date on which Ms. Kebe sent her request to terminate the lease early; and all the penalty fees Ms. Kebe had to pay for early termination of the lease. In summary, Ms. Wiggins has knowledge and information pertaining to the monetary damages Ms. Kebe sustained when she abruptly terminated her lease in Cobb County.

12. **Amy Bortman** – Employee at Re/Max Preferred, Ms. Kebe's current leasing agent.

<u>Contact Info</u>: 3910 Hwy 81, Loganville, GA 30052; (770) 466-7653.

<u>Subject of Knowledge</u>: Ms. Bortman is the person, who helped Ms. Kebe execute a new lease for her current home in Gwinnett County. Ms. Bortman has knowledge pertaining to the start date of Ms. Kebe's current lease; the security deposit Ms. Kebe had to pay; and any other expenses Ms. Kebe sustained in the process of leasing and taking possession of her current home. In summary, Ms. Bortman has knowledge and information pertaining to the monetary damages Ms. Kebe suffered for having to quickly find a new home and relocate her family.

13. **Tope Solaja** – Owner of a YouTube channel called Lovelyti TV; Ms. Kebe used to collaborate with Ms. Solaja every once in a while, but no longer maintains any communications with her.

<u>Contact Info</u>: (818) 824-2778; Instagram Handle = @lovelyti2002 is the only contact information Ms. Kebe has for Ms. Solaja at this time. However, Ms. Kebe expects to be able to supplement this information once she receives Plaintiff's discovery responses.

<u>Subject of Knowledge</u>: Ms. Solaja was the person, who saw Starmarie Jones' Instagram Live video about the Plaintiff, published it on her YouTube channel (Lovelyti TV), and made the video viral. Ms. Solaja and Ms. Kebe had an established working relationship at that time, so they communicated and decided to collaborate on the Jones interview. Ms. Kebe and Ms. Solaja planned and promoted the Jones interview together, in order to bring traffic to both of their YouTube channels. Shortly after Ms. Kebe published the Jones interview, Ms. Solaja was contacted by

Plaintiff, who convinced Ms. Solaja to attack the credibility of Ms. Jones and Ms. Kebe, effectively ending the working relationship between Ms. Solaja and Ms. Kebe. In summary, Ms. Solaja has knowledge and information pertaining to Ms. Kebe's affirmative defenses and Ms. Kebe's claim of defamation and the damages Ms. Kebe sustained as a direct result of Plaintiff's intentional conduct and malicious actions.

14. **Robert Dourron** – Ms. Kebe's OB/GYN

<u>Contact Info</u>: 4961 Buford Hwy, Suite 202, Chamblee, GA 30341; (770) 458-7074

<u>Subject of Knowledge</u>: Dr. Dourron has knowledge and information pertaining to Ms. Kebe's previous miscarriage; Ms. Kebe's most recent pregnancy; complications Ms. Kebe experienced during her pregnancy; the fact that Ms. Kebe's pregnancy was deemed high-risk; ailments for which Ms. Kebe was treated during her pregnancy; any specialists Ms. Kebe was referred to during her pregnancy; the physical and emotional strains Ms. Kebe experience during her pregnancy; and any other pertinent information regarding Ms. Kebe's medical treatment and diagnoses throughout her pregnancy. Additionally, Dr. Dourron has knowledge and information pertaining to the duration of Ms. Kebe's pregnancy, physical and mental symptoms that were detrimental to Ms. Kebe's pregnancy, as well as any emotional distress Ms. Kebe experienced during her pregnancy. In summary, Dr. Dourron has knowledge and information which is extremely pertinent to determining the severity and extent of the physical and mental damages Ms. Kebe suffered during her pregnancy, as a direct result of Plaintiff's intentional conduct and malicious actions.

15. **Ernest Eglen** – Ms. Kebe's Psychotherapist

<u>Contact Info</u>: 3155 Roswell Road NE, #140, Atlanta, GA 30305; (404) 931-1425

<u>Subject of Knowledge</u>: Mr. Eglen has knowledge and information pertaining to Ms. Kebe's stress, anxiety, childhood trauma, emotional distress, and PTSD. Mr. Eglen also has knowledge and information regarding Ms. Kebe's mental health treatment and therapy. In summary, Mr. Eglen has knowledge and information which is extremely pertinent to determining the severity and extent of emotional distress Ms. Kebe suffered, as a direct result of Plaintiff's intentional conduct and malicious actions.

16. **Lisa Bloom** – An attorney with whom Ms. Kebe consulted regarding Plaintiff's threats.

<u>Contact Info</u>: 20700 Venture Blvd, Suite 301, Woodland Hills, CA 91364; (818) 914-7317; lisa@thebloomfirm.com.

<u>Subject of Knowledge</u>: Ms. Kebe contacted Lisa Bloom seeking advice and representation, upon hearing that Plaintiff was making public threats against Ms. Kebe and that Plaintiff and Skeemo Holmes were gathering information on Ms. Kebe. In her email, Ms. Kebe described the situation in some detail, mentioned the fact that she contacted the FBI, and attached several screen shots from Instagram posts to corroborate her information. The date, tone, and urgency of the email clearly demonstrate Ms. Kebe's frightened state of mind and sincere belief that her safety and well-being were in danger. In summary, Lisa Bloom has knowledge and information pertaining to Ms. Kebe's claims of assault and intentional infliction of emotional distress, and the damages Ms. Kebe sustained as a direct result of Plaintiff's intentional conduct and malicious actions.

17. **Female, who goes by "Prestigious Doll"**

<u>Contact Info</u>: Ms. Kebe does not currently have any contact information for this person. However, Ms. Kebe expects to be able to supplement this information once she receives Plaintiff's discovery responses.

<u>Subject of Knowledge</u>: Ms. Kebe was notified that this female knows Skeemo Holmes. On one particular occasion, in December of 2018, while Mr. Holmes and "Prestigious Doll" were hanging out, Mr. Holmes fell asleep and "Prestigious Doll" noticed that Mr. Holmes' cell phone kept buzzing because he was receiving text messages from a person, believed to have been the Plaintiff. "Prestigious Doll" scrolled through the previous messages in the thread and there was an ongoing discussion about locating Ms. Kebe's residence and employing a third party to cause physical harm to Ms. Kebe and her family. In summary, "Prestigious Doll" has knowledge and information regarding the Plaintiff's connection with Skeemo Holmes, their plan to cause Ms. Kebe physical and financial harm, and Ms. Kebe's claims for assault, intentional infliction of emotional distress, and the damages Ms. Kebe sustained, as a direct result of Plaintiff's intentional conduct and malicious actions.

18. **@ashcash_legit** – Plaintiff's friend and former coworker from the strip club.

<u>Contact Info</u>: Instagram Handle = @ashcash_legit  is the only contact information Ms. Kebe has for this person at this time. However, Ms. Kebe expects to be able to supplement this information once she receives Plaintiff's discovery responses.

<u>Subject of Knowledge</u>: @ashcash_legit has knowledge and information regarding Plaintiff's former friendship with Starmarie Jones and Plaintiff's former occupation as a stripper. Additionally, @ashcash_legit sent Ms. Kebe private messages on Instagram to @unwinewithtasha, containing information about the Plaintiff and Ms. Jones' former friendship, shortly after Ms. Kebe published the Jones video on her YouTube channel. In summary, @ashcash_legit knowledge and information pertaining to Ms. Kebe's affirmative defenses and Ms. Kebe's claim of defamation and the damages Ms. Kebe sustained as a direct result of Plaintiff's intentional conduct and malicious actions.

19. **@spotlight_1010 (Sophia)** - Plaintiff's friends and former coworker from the strip club.

<u>Contact Info</u>: Instagram Handle = @spotlight_1010 (Sophia) is the only contact information Ms. Kebe has for this person at this time. However, Ms. Kebe expects to be able to supplement this information once she receives Plaintiff's discovery responses.

<u>Subject of Knowledge</u>: @spotlight_1010 has knowledge and information regarding Plaintiff's former friendship with Starmarie Jones and Plaintiff's former occupation as a stripper. Furthermore, @spotlight_1010 sent Ms. Kebe private messages on Instagram to @unwinewithtasha, admitting that she punched Ms. Jones in the face and information about Ms. Jones and the Plaintiff when they all worked at the strip club together. Ms. Kebe received these private messages from @spotlight_1010 shortly after she published the Jones video on her YouTube channel. In summary, @spotlight_1010 has knowledge and information pertaining to Ms. Kebe's affirmative defenses and Ms. Kebe's claim of defamation and the damages Ms. Kebe sustained as a direct result of Plaintiff's intentional conduct and malicious actions.

20. **@shawntaloran** – Plaintiff's friend and make-up artist.

Contact Info: Instagram Handle = @shawntaloran  is the only contact information Ms. Kebe has for this person at this time. However, Ms. Kebe expects to be able to supplement this information once she receives Plaintiff's discovery responses.

Subject of Knowledge: @shawntaloran has knowledge and information regarding Plaintiff's former friendship with Starmarie Jones; their roommate arrangement; and Plaintiff's former occupation as a stripper. Additionally, @shawntaloran sent Ms. Kebe private messages on Instagram to @unwinewithtasha, discussing that Plaintiff always helped Ms. Jones out and stuck up for Ms. Jones when the other strippers were picking on her. Ms. Kebe received these messages from @shawntaloran shortly after she published the Jones video on her YouTube channel. In summary, @shawntaloran has knowledge and information pertaining to Ms. Kebe's affirmative defenses and Ms. Kebe's claim of defamation and the damages Ms. Kebe sustained as a direct result of Plaintiff's intentional conduct and malicious actions.

21. **@kingofallshade_** - Random Instagram user.

Contact Info: Instagram Handle = @kingofallshade_  is the only contact information Ms. Kebe has for this person at this time.

Subject of Knowledge: This is one of the random Instagram users that re-posted the private conversation between Plaintiff and Skeemo Holmes, where they discuss finding Ms. Kebe and teaching her a lesson. Ms. Kebe was tagged in this user's post, which is how Ms. Kebe gained knowledge about this post. In summary, @kingofallshade_ has knowledge and information pertaining to Ms. Kebe's claims of assault and intentional infliction of emotional distress, as a direct result of Plaintiff's intentional conduct and malicious actions.

22. **@chowmalick** – Random Instagram user.

Contact Info: Instagram Handle = @chowmalick  is the only contact information Ms. Kebe has for this person at this time.

Subject of Knowledge: This is one of the random Instagram users, who tagged Ms. Kebe in a post, containing Plaintiff's conversation with Skeemo Holmes about locating Ms. Kebe and harming her. In summary, @chowmalick has knowledge and

information pertaining to Ms. Kebe's claims of assault and intentional infliction of emotional distress, as a direct result of Plaintiff's intentional conduct and malicious actions.

23. **Dennis Byron** – Ms. Kebe's stalker.

Contact Info: 115 Biscayne Drive NW, F9, Atlanta, GA 30309; (678) 581-9101
Facebook Profile = https://www.facebook.com/dennisbyron

Subject of Knowledge: Mr. Byron began stalking Ms. Kebe back in 2018 because she declined his offer to be her agent and help her build her brand. Since then, Mr. Byron has spread endless lies about Ms. Kebe; harassed her former neighbors while trying to gather personal information about her and her family; attempted to have Ms. Kebe arrested when she was eight months pregnant; and harassed Ms. Kebe by seeking to obtain a Protective Order against her in the State of Virginia. All of Mr. Byron's attempts to harass and inconvenience Ms. Kebe have ultimately ended in failure on his part. Due to his history of harassment, Ms. Kebe believes that Mr. Byron got in contact with Plaintiff and provided Plaintiff with Ms. Kebe's new address (shortly after she moved away from Cobb County because she feared for her safety as a result of Plaintiff's threats). In summary, Mr. Byron has knowledge and information pertaining to Ms. Kebe's claims of assault, intentional infliction of emotional distress, and the damages Ms. Kebe sustained as a direct result of Plaintiff's intentional conduct and malicious actions.

### Response to Interrogatory No. 2

Ms. Kebe does not have any Unpublished Content. Although they do not always create Content together, Ms. Kebe and Mr. Kebe are the only two persons that have ever participated in the creation of any of Ms. Kebe's Content.

In accordance with Rule 33(d) of the Federal Rules of Civil Procedure, the remaining answers to this Interrogatory may be determined by examining the

electronically stored information, which will be produced as described in Ms. Kebe's

responses to Plaintiff's Requests for Production Numbers 1; 2; 6; 11; and 51.

### Response to Interrogatory No. 3

Ms. Kebe does not possess any knowledge or information about Starmarie

Jones in relation to the information sought in Interrogatory No. 3. Consequently, Ms.

Kebe's responses to this interrogatory pertain solely to her and not to Ms. Jones.

From January 1, 2018, until now, Ms. Kebe has been affiliated with the

following websites:

(1) Ms. Kebe's Main Website:
https://www.unwinewithtashak.com
- Owned and controlled by Ms. Kebe; created via Square Space.

(2) Ms. Kebe's Current Merchandise Page:
https://www.amazon.com/shop/unwinewithtashak
- This merchandise account is set up with, and owned by, Amazon. Mr. Kebe has login credentials to access the account and post items for sale. However, Amazon has the absolute right to freeze this account if Amazon's terms and conditions for merchandise sales are violated.

(3) Ms. Kebe's Previous Merchandise Page:
https://streamlabs.com/unwinewithtashak/merch
- The page is on Streamlab's platform. Mr. Kebe has the login credentials to access this account and post items for sale. However, Ms. Kebe and Mr. Kebe no longer promote this online merchandise store, even though the link is still active.

(4) Ms. Kebe's Main YouTube Channel (unWinewithTashaK):
https://www.youtube.com/channel/UCeh2lG0oUUMk8B6-
l5ctB6w/featured
- YouTube owns the channel; however, the content is owned and controlled by Ms. Kebe.

(5) Ms. Kebe's Second YouTube Channel (Wino Gang Podcast):
https://www.youtube.com/channel/UCant8s3U2uPZz-6p7lvU9MQ
- YouTube owns the channel; however, the content is owned and controlled by Ms. Kebe.
- Until April of 2019, this YouTube Channel was called unWinewithTashaK Live, when the channel's name changed to Wino Gang Podcast. Despite the name change, the previously published content remains available on the Wino Gang Podcast YouTube channel.

From January 1, 2018, until now, Ms. Kebe has been affiliated with the

following Social Media Accounts:

(1) Facebook - @unwinewithtashak
https://www.facebook.com/unwinewithtashak

(2) Facebook – Tasha Kebe
https://www.facebook.com/tashakebe

(3) Twitter - @unwinewithtasha
https://twitter.com/unwinewithtasha

(4) Instagram - @unwinewithtashak (reactivated by Instagram on 10/7/19)
https://www.instagram.com/unwinewithtashak
- This account was deactivated by Instagram on or around 8/10/18, after false reports that it was a "Spam Account". Over the past year, Ms. Kebe made numerous attempts to reactive this account to no avail. During the time this account was deactivated, Ms. Kebe had no access to the account, or any content associated with this account. On 10/7/19,

Instagram finally reactivated this account and granted Ms. Kebe access to all of her previously published content.

(5) Instagram - @wineisthenewtea (secondary account; currently active)
https://www.instagram.com/wineisthenewtea
- This is Ms. Kebe's most recent Instagram account because all of her other accounts kept getting deactivated by Instagram. Currently, this account and @unwinewithtashak are both active, and Ms. Kebe typically publishes the exact same content to both accounts.

(6) Instagram - @unwinewithtashakofficial (deactivated by Instagram)
https://www.instagram.com/unwinewithtashakofficial
- This account was deactivated by Instagram, after false reports that it was a "Spam Account". The previously published content is no longer available for viewing and Ms. Kebe cannot gain access into this account in order to retrieve her content and communications. Instagram has declined to grant Ms. Kebe access into this particular account and has also declined to reactivate it.

(7) Instagram - @thewinebloggerlady (deactivated by Instagram)
https://www.instagram.com/thewinebloggerlady
- This account was deactivated by Instagram, after false reports that it was a "Spam Account". The previously published content is no longer available for viewing and Ms. Kebe cannot gain access into this account in order to retrieve her content and communications. Instagram has declined to grant Ms. Kebe access into this particular account and has also declined to reactivate it.

(8) Instagram - @iamunwinewithtashak (deactivated by Instagram)
https://www.instagram.com/iamunwinewithtashak
- This account was deactivated by Instagram, after false reports that it was a "Spam Account". The previously published content is no longer available for viewing and Ms. Kebe cannot gain access into this account in order to retrieve her content and communications. Instagram has declined to grant Ms. Kebe access into this particular account and has also declined to reactivate it.

(9) Instagram - @unwinewithtasha (deactivated by Instagram)
https://www.instagram.com/unwinewithtasha

- This account was deactivated by Instagram, after false reports that it was a "Spam Account". The previously published content is no longer available for viewing and Ms. Kebe cannot gain access into this account in order to retrieve her content and communications. Instagram has declined to grant Ms. Kebe access into this particular account and has also declined to reactivate it. This is the account Ms. Kebe was using when Plaintiff was sending direct messages, asking Ms. Kebe to take down the Starmarie Jones interview. This is also the account Ms. Kebe had when Plaintiff's stripper friends sent Ms. Kebe direct messages regarding Starmarie Jones and Plaintiff's relationship. Additionally, Ms. Kebe received direct messages from random Instagram users, alerting her to the threats Plaintiff and Skeemo Holmes were making about Ms. Kebe's safety and well-being.

(10)  Instagram - @tashakunwined (deactivated by Instagram)
https://www.instagram.com/tashakunwined

- This account was deactivated by Instagram, after false reports that it was a "Spam Account". The previously published content is no longer available for viewing and Ms. Kebe cannot gain access into this account in order to retrieve her content and communications. Instagram has declined to grant Ms. Kebe access into this particular account and has also declined to reactivate it.

**Response to Interrogatory No. 4**

The custodian location for documents that are responsive to Plaintiff's

Requests for Production of Documents is the Law Office of Sabbak & Izmaylova,

P.C. at 1875 Old Alabama Road, Suite 760, Roswell, GA 30076.

**Response to Interrogatory No. 5**

Ms. Kebe's deactivated Instagram accounts (and all the published content and communications from those accounts), detailed in Response to Interrogatory No. 3, are the only sources of potentially relevant evidence that Ms. Kebe can no longer access. Ms. Kebe's inability to access her deactivated Instagram accounts is due solely to the fact that Instagram refuses to reactivate those accounts and refuses to grant her access to the content and communications from those accounts.

The most important deactivated account is @unwinewithtasha because that is where Plaintiff, Plaintiff's friends, and random Instagram users sent Ms. Kebe direct messages regarding the subject matter of this litigation. In the unlikely event that Instagram grants Ms. Kebe access to her deactivated accounts, she will supplement her response to this Interrogatory in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

Additionally, Ms. Kebe no longer possesses the raw footage for any pre-recorded videos that are not accompanied by raw footage in Ms. Kebe's responses to Plaintiff's Requests for Production. When Ms. Kebe first began to publish pre-recorded Content on her YouTube channel, she would delete the raw footage as soon as the edited Content was uploaded. Ms. Kebe's sole reason for deleting raw footage of pre-recorded Content was to preserve memory and storage space on her computer.

Any deletions of raw footage occurred before Ms. Kebe knew, or should have known, about the prospect of this litigation. Furthermore, prior to receiving notice of this litigation, Ms. Kebe and Mr. Kebe implemented new procedures for preserving all pre-recorded Content (raw and edited), which prevents the deletion of raw footage.

### Response to Interrogatory No. 6

Ms. Kebe does not possess any knowledge or information about the Social Media Accounts of Starmarie Jones. Furthermore, Ms. Kebe has no way of obtaining said information, as Ms. Kebe has absolutely no information regarding Ms. Jones' current contact information or whereabouts. Consequently, Ms. Kebe cannot provide any responses regarding the Social Media Accounts of Ms. Jones.

From January 1, 2018, until now, Ms. Kebe has had a total of 10 Social Media Accounts. Ms. Kebe, Mr. Kebe, and Kia Wright-Jackson (Ms. Kebe's former assistant) had login credentials to all of Ms. Kebe's then-existing social media accounts until Ms. Wright-Jackson's resignation in November of 2018. Immediately thereafter, all the login credentials were updated, and only Ms. Kebe and Mr. Kebe have the current login credentials to Ms. Kebe's social media accounts. All social media accounts that Ms. Kebe has had since January 1, 2018, until now, are listed below:

(1) Facebook - @unwinewithtashak
   https://www.facebook.com/unwinewithtashak

(2) Facebook – Tasha Kebe
   https://www.facebook.com/tashakebe

(3) Twitter - @unwinewithtasha
   https://twitter.com/unwinewithtasha

(4) Instagram - @unwinewithtashak (reactivated by Instagram on 10/7/19)
   https://www.instagram.com/unwinewithtashak

(5) Instagram - @wineisthenewtea (secondary account; currently active)
   https://www.instagram.com/wineisthenewtea

(6) Instagram - @unwinewithtashakofficial (deactivated by Instagram)
   https://www.instagram.com/unwinewithtashakofficial

(7) Instagram - @thewinebloggerlady (deactivated by Instagram)
   https://www.instagram.com/thewinebloggerlady

(8) Instagram - @iamunwinewithtashak (deactivated by Instagram)
   https://www.instagram.com/iamunwinewithtashak

(9) Instagram - @tashakunwined (deactivated by Instagram)
   https://www.instagram.com/tashakunwined

(10)   Instagram - @unwinewithtasha (deactivated by Instagram)
   https://www.instagram.com/unwinewithtasha

**Response to Interrogatory No. 7**

Although they do not always create and publish Content together, Ms. Kebe

and Mr. Kebe are the only two persons that have ever participated in the creation, or

publication, of any of Ms. Kebe's Content.

In accordance with Rule 33(d) of the Federal Rules of Civil Procedure, the remaining answers to this Interrogatory may be determined by examining the electronically stored information, which will be produced as described in Ms. Kebe's responses to Plaintiff's Requests for Production No. 1.

### Response to Interrogatory No. 8

The following persons have provided Ms. Kebe with information concerning the Plaintiff:

(1) Starmarie Jones
(2) The Plaintiff
(3) Tope Solaja
(4) Instagram user with the handle: @ashcash_legit
(5) Instagram user with the handle: @spotlight_1010
(6) Instagram user with the handle: @shawntaloran
(7) Instagram user with the handle: @kingofallshade_
(8) Instagram user with the handle: @chowmalick
(9) Remy Roja
(10)  Rashad Haughton
(11)  Camila Marianat
(12)  Candice Pelham

In addition to the above-listed persons, Ms. Kebe received approximately a dozen private (or direct) messages from random Instagram users to her @unwinewithtasha Instagram account (which has since been deactivated by Instagram) regarding the threats Plaintiff and Skeemo Holmes were making about Ms. Kebe's safety and well-being. Please refer to Ms. Kebe's answers to

Interrogatory No. 1 for a summary of the information provided by each of the above-listed persons.

In accordance with Rule 33(d) of the Federal Rules of Civil Procedure, the remaining answers to this Interrogatory may be determined by examining the electronically stored information, which will be produced as described in Ms. Kebe's responses to Plaintiff's Requests for Production Numbers 1; 3; 11; 16; 17; 26; 27; 28; 29; 37; 43; 44; 45; and 51.

### Response to Interrogatory No. 9

In accordance with Rule 33(d) of the Federal Rules of Civil Procedure, the answers to this Interrogatory may be determined by examining the electronically stored information, which will be produced as described in Ms. Kebe's responses to Plaintiff's Requests for Production Numbers 25 and 51.

### Response to Interrogatory No. 10

In accordance with Rule 33(d) of the Federal Rules of Civil Procedure, the answers to this Interrogatory may be determined by examining the electronically stored information, which will be produced as described in Ms. Kebe's responses to Plaintiff's Requests for Production Numbers 26; 27; 28; 29; 30; 43; 44; and 51.

### Response to Interrogatory No. 11

In accordance with Rule 33(d) of the Federal Rules of Civil Procedure, the answers to this Interrogatory may be determined by examining the electronically stored information, which will be produced as described in Ms. Kebe's responses to Plaintiff's Requests for Production Numbers 10; 12; 13; 14; 15; 19; 20; 21; 22; 23; 24; 32; 33; 34; 38; 39; 41; 42; 46; and 51.

### Response to Interrogatory No. 12

Please refer to Ms. Kebe's responses to Interrogatories Numbers 9, 10, and 11 above. In accordance with Rule 33(d) of the Federal Rules of Civil Procedure, the remaining answers to this Interrogatory may be determined by examining the electronically stored information, which will be produced as described in Ms. Kebe's responses to Plaintiff's Requests for Production Numbers 10; 12; 13; 14; 15; 19; 20; 21; 22; 23; 24; 25; 26; 27; 28; 29; 30; 31; 32; 33; 34; 35; 37; 38; 39; 41; 42; 43; 44; 45; 46; and 51.

### Response to Interrogatory No. 13

Plaintiff is a self-proclaimed member of the Blood gang, a notorious and extremely violent street gang. Plaintiff also happens to be an internationally known celebrity, with millions of die-hard fans and social media followers. Plaintiff's world-wide fame and notoriety places her in the public figure category. Plaintiff

became familiar with Ms. Kebe's name long before the commencement of this litigation and Plaintiff knew that Ms. Kebe was a celebrity news reporter with a hugely popular YouTube channel (unWinewithTashaK). Ms. Kebe earns a living by breaking celebrity news stories, so Ms. Kebe's credibility is vital to her continued professional success as a celebrity news reporter.

Plaintiff is well-aware that every time she posts on social media, her words reach tens of millions of people all over the world. Knowing how influential her opinions can be, Plaintiff decided to record and publish a number of videos attacking Ms. Kebe's credibility, calling her all sorts of names, and threatening her livelihood. Plaintiff launched this defamatory attack on Ms. Kebe because Plaintiff was upset that Ms. Kebe released a story about her and refused to take it down, even after Plaintiff, privately, reached out to Ms. Kebe and asked her to remove the story.

Ms. Kebe's refusal to acquiesce to Plaintiff's demands really infuriated Plaintiff, so even though Ms. Kebe's story was true (and Plaintiff knew it was true), Plaintiff continued to create more posts and videos, specifically attacking Ms. Kebe's credibility, with the sole purpose of destroying Ms. Kebe's career and livelihood.

Plaintiff knew that Ms. Kebe's publication was truthful, yet Plaintiff still decided to abuse her celebrity status and unlimited resources to strong-arm Ms. Kebe

into removing those truthful stories, about Plaintiff, from her YouTube channel. Plaintiff acted with actual malice when she threatened to make an example out of Ms. Kebe by filing suit and bankrupting her with litigation costs and attorneys' fees, even though Ms. Kebe was simply doing her job and reporting the truth. Plaintiff called Ms. Kebe a liar and intentionally published that slanderous statement on all of Plaintiff's social media accounts, where she knew tens of millions of people would see it and, most likely, believe it.

In accordance with Rule 33(d) of the Federal Rules of Civil Procedure, the remaining answers to this Interrogatory may be determined by examining the electronically stored information, which will be produced as described in Ms. Kebe's responses to Plaintiff's Requests for Production Numbers 25 and 51.

### Response to Interrogatory No. 14

Plaintiff, who is a known member of the Blood gang, with tens of millions of fans, recorded and published numerous videos attacking Ms. Kebe's credibility, calling her all sorts of names, threatening her livelihood and her personal safety. Plaintiff continued to create and publish these videos for a period of time. Plaintiff's goal was to intimidate Ms. Kebe and frighten her to the point where Ms. Kebe would agree to remove certain content, about Plaintiff, from Ms. Kebe's social media accounts. Plaintiff knew that Ms. Kebe was a celebrity news reporter, so it was Ms.

Kebe's job to report on celebrity news. Plaintiff also knew that Ms. Kebe was pregnant, even referencing Ms. Kebe's pregnancy in some of Plaintiff's revenge videos. Despite knowing that information, Plaintiff still decided to publicly call upon her fellow gang members to find out personal information about Ms. Kebe and retaliate against Ms. Kebe for doing her job and publishing a truthful story about Plaintiff.

Plaintiff's conduct was not the result of a misunderstanding or accident. Plaintiff intentionally sought to threaten and scare Ms. Kebe, and Plaintiff succeeded in her mission. But Ms. Kebe did not deserve to be victimized by the Plaintiff because she had done nothing wrong. Plaintiff's plot to retaliate against a reporter, with threats of violence, for publishing a truthful story goes beyond all bounds of decency. Our society does not allow its citizens to intentionally retaliate against one another for any type of conduct, especially not conduct that is protected by our Constitution. In short, Plaintiff (a public figure and known gang member) summoned her fellow gang members to intimidate, threaten, and commit violent acts upon a pregnant reporter, who is essentially a stranger to Plaintiff, for simply doing her job and publishing a truthful story about Plaintiff.

Plaintiff's aforementioned conduct was intentional, willful, malicious, and exhibited a complete disregard for consequences. Plaintiff thought that, because of

her celebrity status, abundant resources, and gang affiliation, she could treat Ms. Kebe however she wanted, without ever facing any real consequences for her vicious actions. Not once did Plaintiff even consider that she could be held liable for the litany of public threats she was making to Ms. Kebe's safety and well-being. Plaintiff must be punished for her malicious conduct, so that, hopefully, she will think twice before unleashing her tyranny on another innocent victim like Ms. Kebe.

In accordance with Rule 33(d) of the Federal Rules of Civil Procedure, the remaining answers to this Interrogatory may be determined by examining the electronically stored information, which will be produced as described in Ms. Kebe's responses to Plaintiff's Requests for Production No. 51.

### Response to Interrogatory No. 15

Plaintiff, who is a self-proclaimed member of the Blood gang, with millions of social media fans, recorded and published numerous videos attacking Ms. Kebe's credibility, calling her all sorts of names, threatening her livelihood, and her personal safety. Plaintiff continued to create and publish these posts for a period of time. Plaintiff's goal was to intimidate Ms. Kebe and frighten her to the point where Ms. Kebe would agree to remove certain content, about Plaintiff, from Ms. Kebe's social media accounts. Plaintiff knew that Ms. Kebe was a celebrity news reporter, so it was Ms. Kebe's job to report on celebrity news. Plaintiff also knew that Ms. Kebe

was pregnant, even referencing Ms. Kebe's pregnancy in some of Plaintiff's videos. Despite knowing that information, Plaintiff still decided to publicly call upon her fellow gang members to find out personal information about Ms. Kebe and retaliate against Ms. Kebe for reporting about Plaintiff.

Plaintiff's conduct was not the result of a misunderstanding or an accident. Plaintiff intentionally sought to threaten and scare Ms. Kebe, and Plaintiff succeeded in her mission. However, Ms. Kebe did not deserve to be victimized by the Plaintiff because Ms. Kebe did nothing wrong. Plaintiff's plot to retaliate against a reporter, with threats of violence, for publishing a truthful story about Plaintiff goes beyond all bounds of decency. Our society does not accept retaliation for any conduct and this case is no exception. In short, Plaintiff (a self-proclaimed gang member) summoned other known gang members to intimidate, threaten, and commit violent acts upon a pregnant reporter, who is essentially a stranger to Plaintiff. The type of conduct exhibited by Plaintiff is the prime example of extreme, outrageous, and egregious conduct, for which Plaintiff must be held liable.

In accordance with Rule 33(d) of the Federal Rules of Civil Procedure, the answers to this Interrogatory may be determined by examining the electronically stored information, which will be produced as described in Ms. Kebe's responses to Plaintiff's Requests for Production Numbers 26; 27; 28; 29; 43; 44; 45 and 51.

### Response to Interrogatory No. 16

Plaintiff has filed this civil action because she wanted to "make an example" out of Ms. Kebe. Throughout the years, Plaintiff has, at one point or another, admitted to stripping at a club; exchanging sexual favors for certain benefits to herself and, sometimes, outright selling her body; getting cold sores on her lips; drugging and robbing men; using drugs and alcohol; being a gang member; living a very risqué life; and doing whatever else she had to do to survive. All of those admissions have been memorialized and published on Plaintiff's social media platforms by, none other than, the Plaintiff. Despite knowing that she was the person, who discussed committing all the above-mentioned acts, Plaintiff filed this suit against Ms. Kebe for defamation, claiming that Ms. Kebe made up lies about Plaintiff.

After filing her frivolous claims against Ms. Kebe, Plaintiff refused to allow her attorneys to engage in any serious settlement negotiations, thereby pushing this litigation forward into the discovery phase. All of Plaintiff's actions have caused Ms. Kebe unnecessary trouble and expense because Ms. Kebe was forced to retain attorneys to defend herself against Plaintiff's baseless claims.

In accordance with Rule 33(d) of the Federal Rules of Civil Procedure, the remaining answers to this Interrogatory may be determined by examining the

electronically stored information, which will be produced as described in Ms. Kebe's responses to Plaintiff's Requests for Production Numbers 46 and 51.

## Response to Interrogatory No. 17

Pursuant to O.C.G.A. § 51-5-7, as it relates to defamation, a report about a public figure is considered a privileged communication. There is no dispute that the Plaintiff is an internationally known personality, with millions of fans, which makes her a public figure for purposes of defamation claims. First off, the information Ms. Kebe published about Plaintiff (which Plaintiff alleges is defamatory) is, in fact, the truth. Additionally, because Plaintiff is a public figure, Ms. Kebe's publication of the aforementioned truthful information is privileged under Georgia Law.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| BELCALIS MARLENIS ALMANZAR, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. |
| v. | * | 1:19-cv-01301-WMR |
| | * | |
| LATASHA TRANSRINA KEBE et al., | * | |
| | * | |
| Defendants. | * | |

## <u>VERIFICATION OF LATASHA KEBE</u>

PERSONALLY APPEARED before me, Latasha Kebe, the Defendant, who first being duly sworn, deposes and states that she has read Plaintiff's First Set of Interrogatories to Defendant Latasha Kebe and submitted the foregoing Responses. To the best of her knowledge, information, and belief, her responses to Plaintiff's First Set of Interrogatories to Defendant Latasha Kebe are true and correct.

By: _____
Latasha Kebe, Defendant

Sworn to and subscribed before me
me this 10th day of November, 2019.

_____
NOTARY PUBLIC
My Commission Expires: 05/09/2021

## CERTIFICATION PURSUANT TO FRCP RULE 26(g)(1)(B)

Pursuant to Rule 26(g)(1)(B) of the Federal Rules of Civil Procedure, the undersigned certifies that Defendant Kebe's Objections and Responses to Plaintiff's First Set of Interrogatories are: (i) consistent with the Federal Rules of Civil Procedure and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Respectfully submitted this 16th day of November, 2019.

*/s/Olga Izmaylova*
olga@silawatl.com
Georgia State Bar No. 666858

*/s/Sadeer Sabbak*
ssabbak@silawatl.com
Georgia State Bar No. 918493

SABBAK & IZMAYLOVA, P.C.       *Attorneys for Latasha Kebe*
1875 Old Alabama Road
Suite 760
Roswell, Georgia 30076
p. (404) 793-7773
f. (678) 878-4911

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2019, I electronically served the foregoing **Defendant Kebe's Objections and Responses to Plaintiff's First Set of Interrogatories to Defendant Latasha Kebe** upon Gary P. Adelman at g@adelmanmatz.com and upon Sarah M. Matz at sarah@adelmanmatz.com.

I further certify that on November 16, 2019, I sent via USPS mail the foregoing **Defendant Kebe's Objections and Responses to Plaintiff's First Set of Interrogatories to Defendant Latasha Kebe** to Adelman Matz P.C., 1173A Second Avenue, Suite 153, New York, New York 10065.

Respectfully submitted this 16th day of November, 2019.

*/s/Olga Izmaylova*
olga@silawatl.com
Georgia State Bar No. 666858

SABBAK & IZMAYLOVA, P.C.
1875 Old Alabama Road
Suite 760
Roswell, Georgia 30076
p. (404) 793-7773
f. (678) 878-4911