## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

BELCALIS MARLENIS ALMÁNZAR,

                           Plaintiff,

        v.                                                Case No. 1:19-cv-01301-WMR

LATASHA TRANSRINA KEBE and KEBE
STUDIOS LLC,
                           Defendants.

### PLAINTIFF'S OPPOSITION TO KEBE'S MOTIONS TO COMPEL

Plaintiff respectfully submits this opposition to the motions to compel (ECF

Nos. 82, 84) (the "Motions") filed by Defendant Latasha Transrina Kebe ("Kebe").

### I.        BACKGROUND

Plaintiff initially responded to the interrogatories and requests for the

production that are the subject of the Motions on August 17, 2020 (by agreement

of the parties). (ECF No. 83 ("Rog Br.") Ex. 2.) On September 1, Kebe's counsel

sent letters (dated August 31) outlining perceived deficiencies in these responses

(the "Discovery Letters"). (Rog Br. Ex. 3; ECF No. 85 ("RFP Br.") Ex. 3.)

The parties' counsel participated in a number of meet-and-confer

conferences, but the only conference that involved any meaningful discussion

about the adequacy of Plaintiff's responses and document productions occurred on

November 13, 2020 (the "Conference"). (Decl. of L. Moore in Support of

Plaintiff's Opposition to Kebe's Motions to Compel ("Moore Decl.") ¶ 4.) The

alleged deficiencies discussed during the Conference tracked the issues identified

in the Discovery Letters, and Plaintiff's counsel explained the categories of

information they were willing to supplement and those they were not. (*Id.* ¶ 5.)

Discovery in the case was delayed due to the pandemic.[1] The Plaintiff began

producing documents within a few days after the Court entered the protective

order, and Plaintiff has continued to supplement her production throughout

discovery (which closed on November 30). (*Id.* ¶ 3.) Plaintiff supplemented her

initial responses to Kebe's interrogatories and document requests on November 29

to reflect the discussions that had occurred during the Conference and information

obtained during the course of discovery. (Rog Br. Ex. 4; RFP Br. Ex. 5.)

On November 28, Kebe's counsel contacted the Court to seek permission to

file a motion to compel. The Court requested one- to two-page letters outlining the

disputed discovery issues by the close of business on November 30. The letter

submitted by Kebe's counsel with few exceptions did not provide any specificity

regarding Kebe's alleged deficiencies. (Rog Br. Ex. 5.) Because Kebe's counsel

---

[1] Additional information on this is set forth in Plaintiff's Motion to Compel.

2

had given no prior indication that they intended to file a motion to compel and did not identify in their letter to the Court the issues that would be the subject of their motion, Plaintiff's counsel asked the Court for additional time to meet and confer and attempt to resolve the issues. (Moore Decl. ¶ 8, Ex. A.) On December 1, the Court directed the parties to make a final effort to resolve any discovery disputes and provided the parties could file motions to compel on or after December 7.

On the same day, Plaintiff's counsel asked Kebe's counsel to provide an itemized list of their alleged deficiencies so they could properly respond, and the attorneys scheduled a meet-and-confer conference on Friday, December 4 at 1:00 to discuss the parties' respective lists. (Decl. of S. Matz in Support of Motion to Compel, ECF No. 97-11 ("Matz Decl.") ¶¶ 23-27.) Approximately thirty minutes before the scheduled call, Ms. Izmaylova sent a six-page chart of alleged deficiencies (the "Discovery Chart"). (Rog Br. Exs. 6-7.) The list contained numerous issues that had not previously been raised or discussed.

Ms. Izmaylova did not attend the scheduled call on December 4, and Mr. Sabbak was not in his office when he dialed in and noted that he had not yet looked at the Discovery Chart or the updated list provided by Plaintiff's counsel outlining the remaining deficiencies in Kebe's production. (Matz Decl. ¶ 27.) As Plaintiff's counsel also had not had an opportunity to review and consider the Discovery

3

Chart they had just received, counsel on the call mutually agreed to reschedule the meet and confer over the weekend or the beginning of the following week. (*Id.*) Mr. Sabbak represented that he needed to speak with Ms. Izmaylova regarding the timing of the call but would let us know by the end of the day. (*Id.*)

That night, Ms. Izmaylova sent an email stating they would only agree to reschedule the conference if a list of conditions were satisfied, including some that had nothing to do with the parties' discovery disputes. (*Id.* ¶ 29, Ex. 12.) Plaintiff's counsel responded the next day and repeated the suggestion that the parties meet and confer in an attempt to resolve as many of the remaining disputes as possible without the Court's intervention. (*Id.*)

In her response, on December 5, Ms. Izmaylova acknowledged the Discovery Chart included issues being raised for the first time. (*Id.*) Nonetheless, she baselessly accused Plaintiff's counsel of being "unethical," telling "blatant lies," and committing "extortion" and stated flatly that there would be no further meet-and-confer conferences. (*Id.*) Despite the unwillingness of Kebe's counsel to meet and confer, Plaintiff further supplemented her responses and production on December 7 in an attempt to address the non-objectionable items listed in the Discovery Chart. (Rog Br. Ex. 8; RFP Br. Ex. 9.)

Kebe's counsel has continued to refuse to reschedule the meet-and-confer conference or answer calls from Plaintiff's counsel to discuss the discovery issues. (Matz Decl. ¶¶ 28-29.) In addition to refusing to meet and confer on issues that have never been the subject of any previous conference, the Motions also raise issues that were not previously raised at all—not in the Discovery Letters, not in the Conference, and not in the Discovery Chart.

## II.   ARGUMENT

### A.   The Motions Should Be Denied for Failing to Satisfy the Duty to Confer.

Before filing a motion to compel, a party must have "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a); *see also* Local Rule 37.1(A)(1). Providing a list of alleged deficiencies without having a conference about them is insufficient to satisfy this requirement. *See Moore v. Castro*, CV 317-002, at 2 (S.D. Ga. Feb. 1, 2018) ("[O]ne letter or discovery request, which simply demands that Defendant accede to every demand for information from Plaintiff, can hardly be considered to qualify as a good faith effort to confer and attempt to resolve a dispute."). And failing to satisfy the meet-and-confer requirement is alone a sufficient basis to deny a motion to compel. *See Holloman v. Mail-Well Corp.*, 443 F.3d 832, 844 (11th Cir. 2006) (affirming denial

of motion to compel due to failure to work with opposing counsel in good faith to resolve issues); *see also Haynes v. JPMorgan Chase Bank, N.A.*, 466 F. App'x 763, 765-66 (11th Cir. 2012) (per curiam) (same).

Kebe has not satisfied the duty to confer. The issues raised in the Motions include issues that were not identified in the Discovery Letters; issues that were raised by Kebe's counsel initially but were never the subject of any meaningful discussion during the Conference; issues Kebe's counsel agreed to narrow in the Discovery Letters and the Conference but they now inexplicably seek to broaden; issues they raised for the first in the Discovery Chart they sent on December 4, which have never been the subject of a meet and confer; and issues that were never raised and never discussed at all before Kebe filed the Motions. As explained in more detail in connection with each of the contested discovery responses, Kebe's requests to compel discovery for which Kebe's counsel has refused to engage in any meaningful meet and confer should be denied outright.

**B.     Kebe's Blanket Objections to Plaintiff's Responses Are Meritless.**

**1.     Plaintiff Has Not Asserted General Objections.**

Kebe argues that Plaintiff has asserted impermissible general objections. (ECF No. 83 ("Rog Br.") 6-7; ECF No. 85 ("RFP Br.") 5-6.) Kebe's counsel did not raise this issue in the Discovery Letters, the Conference, or the Discovery

Chart. (Moore Decl. ¶ 5.) The issue of "general objections" was raised for the first time (and only time) by Plaintiff's counsel in connection with Kebe's responses.

Plaintiff has not, in contrast to Kebe, asserted impermissible general objections. Aside from Plaintiff's objections to Kebe's definitions and instructions, which apply with equal force to all of Kebe's discovery requests and are the proper subject of a general objection, Plaintiff has asserted specific objections to each request. To the extent Kebe is challenging the specificity of Plaintiff's objections, that is an issue that is properly addressed in connection with each discovery request and should have been discussed in a meet and confer. Whenever Kebe's counsel has sought clarification of any of Plaintiff's specific objections, that clarification has been provided. Kebe's objections to specific requests are addressed below.

### 2. Plaintiff Has Not Failed to Produce a Privilege Log.

Kebe claims that Plaintiff has refused to produce a privilege log. (Rog Br. 7-8; RFP Br. 6-7.) That is not the case. Aside from communications between the parties and their attorneys of record, which both parties have justifiably not produced a privilege log for because it would be unreasonably burdensome, Plaintiff's counsel has acknowledged the need to produce a privilege log for any privileged documents being withheld. Plaintiff has not produced a privilege log because she is not withholding any privileged documents.

Kebe's objection to Plaintiff's reservation of the right to designate documents as privileged fails for the same reason. (RFP Br. 8.) Plaintiff is not currently withholding documents that Plaintiff has agreed to produce based on privilege. There are no documents to compel the production of in response to the Motions, and that was made clear to Kebe's counsel whenever they asked.

### 3.   Plaintiff Did Not Improperly Object to Kebe's Defined Term.

Kebe argues without any basis that Plaintiff improperly objected to her definition of "Plaintiff" in her discovery requests to include "present and former employees, servants, agents, attorneys, partners, associates, investigators, representatives, accountants, contractors, financial advisors, distributors, and any other person(s) acting, or purporting to act, on her behalf." (Rog Br. 8-9; RFP Br. 8-9.) It should go without saying that Plaintiff is not required to answer discovery requests on behalf of persons other than herself as this definition would require. *See* Fed. R. Civ. P. 33 (b)(1)(A) ("The interrogatories must be answered by the party to whom they are directed."); Fed. R. Civ. P. 34(a)(1) (requiring production of documents only to those "in the responding party's possession, custody, or control"). Including this litany of unidentified persons as the subject matter of each discovery request renders them all hopelessly vague and overbroad. Plaintiff properly objected to this definition.

8

### 4.    Plaintiff Identification of Folders Complies with Rule 34.

Kebe argues without any legal basis that listing documents by volumes instead of Bates numbers is impermissible. (RFP Br. 7.) Plaintiff's counsel disclosed their intent to refer to volume numbers *before* the responses were supplemented to include them, and Kebe's counsel agreed with this approach. (Moore Decl. ¶ 7.) They should not be permitted to object now. Also, each volume produced by Plaintiff contains a relatively small number of documents, and similar documents were grouped together to make them easier to locate. Kebe does not cite a single example where it has been burdensome for her to locate a document. Plaintiff's responses adequately identify the location of responsive documents.[2]

## C.    Kebe's Specific Requests for Supplementation Should Be Denied.

It is Kebe's burden to state the information being sought with sufficient specificity and show that the requested information is relevant to the claims and defenses in this action.[3] *Fed. Trade Comm'n v. Actavis, Inc. (In re Androgel Antitrust Litig.)*, No. 1:09-CV-955-TWT, at 7 (N.D. Ga. May 11, 2015); *see also*

---

[2] Kebe also seeks verification of Plaintiff's initial interrogatory responses. (Rog Br. 8). The supplemental responses expanded on prior answers and have been verified. In any event, Plaintiff provided Kebe with this verification and this issue is moot.

[3] Kebe cannot provide this specificity for the first time in her reply. *See Rindfleisch v. Gentiva Health Servs., Inc.*, 22 F. Supp. 3d 1295, 1301 (N.D. Ga. 2014).

*Steel Erectors, Inc. v. Aim Steel Int'l, Inc.*, CV 415-208, at 9 n.5 (S.D. Ga. Jan. 4, 2016) ("Speculation should never bait a relevancy hook . . . ."); *Comm Net, Inc. v. EMS, Inc.*, No. 8:12CV336, at 2 (D. Neb. Jan. 16, 2014) ("Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case.") (quotation marks and citation omitted). Simply alleging without factual support "that 'Counsel is withholding discovery material' is not a sufficient reason to compel discovery." *Upshaw v. McLaughlin*, No. 5:15-CV-395, at 3 (M.D. Ga. Jan. 31, 2017) (citation omitted).

**Interrogatory No. 1 (Contact Information for Plaintiff)**

Kebe has not met her burden to show the information sought—namely, Plaintiff's physical addresses, telephone numbers, and email addresses—is relevant. Given Plaintiff's celebrity stature, protecting the confidentiality of this information is particularly important. Kebe has yet to explain why she needs this information or to make any attempt to tailor this interrogatory to meet her supposed need. This request for supplementation should be denied.

**Interrogatory No. 2 (Social Media Followers)**

As Plaintiff made clear in her response, and her counsel explained during the Conference, Plaintiff does not have information regarding the number of followers

on her social media accounts for past dates, and her staff also does not maintain this information. She cannot provide information she does not have within her possession, custody, or control. As for her current number of followers, Plaintiff objected because those figures change daily and are public information equally accessible to Kebe. There is no justification for requiring Plaintiff to supplement this information continuously when Kebe already has access to it. Acknowledging this, Kebe withdrew her request for current followers in the Discovery Letters. (Rog Br. Ex. 3.) This request for supplementation should be denied.

**Interrogatory No. 4 (Lost Earnings)**

As explicitly stated in Plaintiff's response, "Plaintiff is not contending that she has suffered a loss of earnings that could be quantified as a monetary figure as a result of Defendants' conduct prior to the date of this interrogatory response." Since Plaintiff is not currently claiming lost earnings, there is no information being withheld in response to this interrogatory. Plaintiff reserved the right to supplement this interrogatory due to Kebe's ongoing campaign of harassment. But until that happens (if it ever happens), there is nothing for the Court to resolve. This request for supplementation should be denied.

**Interrogatory No. 5 (Itemization of Damages)**

Kebe has not satisfied her duty to confer regarding this interrogatory. The issue she raises with the adequacy of Plaintiff's response was not included in the Discovery Chart. Instead, Kebe's counsel complained about the damages not being "broken down by each type of damages she is seeking, for every count." (Rog Br. Ex. 6.) Plaintiff supplemented her response to address this complaint. (*Id.* Ex. 8.)

Kebe now contends that Plaintiff's response does not adequately describe her damages. Most of the damages sought by Plaintiff are general damages that are inferred under the law or are left to the enlightened conscience of the jurors. (*Id.*) These damages are not capable of being "described" other than to state the entirety of facts supporting Plaintiff's case. The only special damages sought by Plaintiff (other than legal fees and expenses) are damages incurred for psychological therapy necessitated by Kebe's actions. (*Id.*) For this category of damages, Plaintiff cited specific documents in her production that describe the nature of her diagnosis from a mental health professional. Plaintiff has adequately responded to this interrogatory, and this request for supplementation should be denied.

**Interrogatory No. 6 (Information for Specific Witnesses)**

Kebe argues that Plaintiff has improperly limited the scope of communications subject to this interrogatory. (Rog Br. 16.) Kebe's deficiency

letter expressly clarified this interrogatory as seeking correspondence "starting August 1, 2018, until Plaintiff filed the foregoing lawsuit." (Rog Br. Ex. 3.) Plaintiff relied on this clarification in her supplemental responses.

Kebe inexplicably seeks to broaden this request to include communications that occurred during the pendency of this lawsuit. There was never any conversation during the Conference about broadening the prior clarification. (Moore Decl. ¶ 6.) Exactly the opposite occurred; Plaintiff's counsel explained they were applying the same limitation to Kebe's corresponding document requests (discussed below) and Kebe's counsel agreed with this approach. (*Id*.) Kebe's unilateral broadening of her demand in the Discovery Chart does not, as Kebe argues, corroborate any conversation about this topic (Rog Br. 16), especially given the refusal of Kebe's counsel to participate in a meet and confer. In fact, Kebe's counsel expressly noted that their attempt to broaden the prior clarification was as a result of Plaintiff's "most recent discovery production," which was made on November 30 and more than two weeks after the Conference. (Rog Br. Ex. 6; *see also* Matz Decl. ¶ 29, Ex. 12 (acknowledging new issues were added to chart.)

Kebe also points out that the year provided for when Plaintiff first met Skeemo Holmes, 2016, is inaccurate. (Rog Br. 16.) This is the first time Kebe's counsel has raised this issue. It is a typo. Instead, it should read 2010. Plaintiff will

supplement to correct this. Had Kebe's counsel simply brought this to Plaintiff's attention, it could have been corrected sooner.[4]

Kebe also argues that this response is incomplete with respect to Rashad Haughton. (Rog Br. 16-17.) Haughton is an alleged witness originally identified by Kebe. As noted in her response, Plaintiff does not know him or have any personal knowledge regarding his contact information. Plaintiff's counsel investigated his whereabouts to serve him with a subpoena but were unable to confirm the accuracy of the information. Unconfirmed information possessed solely by Plaintiff's counsel does not equate to personal knowledge that is attributable to Plaintiff.

Kebe also objects to Plaintiff referencing documents in response to this interrogatory as causing her to "search for, and respond to, her own interrogatories." (Rog Br. 17.) That is not the case. Kebe sought the same communications in her document requests. Plaintiff's responses to those requests, which are cited in Plaintiff's interrogatory responses, provide the precise location of those communications in Plaintiff's document production. The burden of "describing" these communications, as requested in this interrogatory, is the same for either party. *See* Fed. R. Civ. P. 33(d).

---

[4] Apparently this is the issue that Kebe's counsel believed warranted an accusation to the Court that Plaintiff had committed perjury. (Rog. Br. Ex. 5, p. 3.) A typo.

For these reasons, this request for supplementation should be denied.

**Interrogatory No. 7 (Identity of Persons with Personal Knowledge)**

Kebe claims this response is incomplete because it does not include "tons of names of people" referenced in Plaintiff's document production. (Rog Br. 18.) Kebe does not name any of them. Plaintiff cannot reasonably respond without more specificity. The time and place for that specificity was in a meet and confer regarding this interrogatory, which never occurred. Just because a person's name appears in a document produced in this case does not mean that person has personal knowledge relevant to the claims and defenses in this action.

Kebe also objects to the timing of these disclosures. (*Id*.) The first three identified witnesses were provided in Plaintiff's initial disclosures. Kebe already was aware of the other witnesses. One is her husband (Cheickna Kebe), another is the subject of Interrogatory No. 6 (Tope Solaja), and another is someone who provided Kebe with false stories (Shawna Leakes). The remaining witness is Plaintiff's therapist, who was previously identified in Plaintiff's document production. Kebe cannot reasonably claim to have been surprised by any of these witnesses. In addition, Kebe complains that Plaintiff has not provided contact information for the identified witnesses. (Rog Br. 18.) Once again, that is not the

case. Plaintiff provided the contact information she has for each witness in this response or in response to Interrogatory No. 6.

For these reasons, this request for supplementation should be denied.

**Interrogatory No. 8 (Other Lawsuits)**

Kebe has not sustained her burden to demonstrate the information sought—namely, a description of every lawsuit in which Plaintiff has ever been involved—is relevant to the claims and defenses in this case. Plaintiff has made clear from her initial responses that there is no relevance to this information, and after months of discovery, Kebe has yet to provide a single explanation as to why she needs this information or make any attempt whatsoever to tailor this interrogatory to meet her supposed need. This request for supplementation should be denied.

**Interrogatory No. 10 (Communications with "Media")**

Plaintiff objected to this interrogatory as overly broad and vague for seeking all communications concerning Kebe or this lawsuit with "any and all media outlets, newspapers, reporters, bloggers, media personalities, and celebrities." In response, the Discovery Letters expressly clarified this interrogatory as seeking "interviews or other communications Plaintiff has had with the media regarding the claims in this lawsuit or regarding Ms. Kebe, starting on August 1, 2018, until present day." (Rog Br. Ex. 3.) Plaintiff maintained her vagueness objection as to

16

"media" in the context of an interrogatory seeking all communications concerning Kebe or this lawsuit because it does not reasonably define the persons subject to this request. After all, in the digital age, anyone posting information online might consider themselves part of the media. Plaintiff limited the information provided to traditional media—i.e., print, radio, or television—because that was the extent to which she could reasonably interpret the undefined term.

Kebe's specific issue with this response appears to be Plaintiff's exclusion of communications with "bloggers." (Rog. Br. 21.) But it was Kebe who removed "bloggers" from the scope of this request in the Discovery Letters, and Plaintiff has relied on this clarification in her supplemental responses. Even assuming it were proper for Kebe to change her mind and subsequently broaden this request, as she now argues, the term "bloggers" remains undefined and is not subject to reasonable interpretation. Kebe is not using the term as it was originally understood to refer to someone who writes an online journal or diary of a person's thoughts. *See, e.g.*, https://wordpress.org/support/article/introduction-to-blogging/.[5] She is using the term to include herself, someone who posts videos about celebrities on YouTube and other social media platforms. We still do not know whom she intends to be covered by this term other than people identified in Interrogatory No. 6, and the

---

[5] WordPress is one of the most popular blogging platforms.

communications with those individuals are already responsive to that request. For these reasons, this request for supplementation should be denied.

**Interrogatory No. 11 ("Content")**

This interrogatory was not raised in the Discover Letters, in the Conference, or in the Discovery Chart, or obviously in the subsequent meet and confer that never occurred. (Moore Decl. ¶ 5.) Kebe has not satisfied her duty to confer regarding this interrogatory. As for the substance of the interrogatory, it is worded so broadly as to include every privileged communication and item of work product created in connection with this case. In response, Plaintiff attempted to strike a balance by agreeing to produce non-privileged Content that references Plaintiff's allegations or claims that have been identified, which we assume (without any clarification from Kebe's counsel) is what this interrogatory is really seeking.

For these reasons, this request for supplementation should be denied.

**Document Request No. 4 (Prospective Business Opportunities)**

Kebe did not raise an objection to the form of Plaintiff's response to this request in the Discovery Letters, and it was not raised during the Conference. (*Id.* ¶ 5.) Furthermore, Plaintiff has made clear that she is not seeking damages for lost business opportunities, and thus, the documents sought by this request are entirely

irrelevant. Kebe has not satisfied her burden to demonstrate the relevance of this information and the request to compel further production should be denied.

### Document Request Nos. 5, 6, 7, 12, 16, and 28 (Allegations in Complaint)

Kebe did not raise an objection to the form of Plaintiff's response to this request in the Discovery Letters, and it was not raised during the Conference. (*Id.* ¶ 5.) Kebe also did not raise the issue in the Discovery Chart or claim that Plaintiff's production of responsive documents was incomplete. (Rog Br. Ex. 6.) In any event, Plaintiff has produced all of the documents Plaintiff intends to rely on to support each of the allegations subject to these requests as expressly indicated in the response. Kebe has failed to state with specificity the documents that it claims Plaintiff is withholding and this request to compel should be denied.

### Document Request No. 14 (Mental Health Records)

Kebe did not raise an objection to the form of Plaintiff's response to this request in the Discovery Letters, and it was not raised during the Conference. (Moore Decl. ¶ 5.) Kebe argues that Plaintiff's production of mental health records is incomplete. (RFP Br. 14-15.) Plaintiff is not withholding documents. There are no notes from the therapy sessions, and all of the communications concerning these sessions were produced. This request to compel should be denied.

19

**Document Request No. 18 (Statements on Social Media Platforms)**

Kebe did not raise an objection to the form of Plaintiff's response to this request in the Discovery Letters, and it was not raised during the Conference. (Moore Decl. ¶ 5.) Kebe's counsel brought up this alleged deficiency in Plaintiff's production for the first time in the Discovery Chart, which they refused to meet and confer about. Their complaint seems to be that Plaintiff made social media posts about Kebe's counterclaims that have not been produced. (RFP Br. 15-16.) To the extent any such posts were identified, they have been produced. There are no documents being withheld and this request to compel should be denied.

**Document Request No. 19 (Communications with "Media")**

Kebe's complaint with Plaintiff's response to this request mirror her complaint with Plaintiff's response to Interrogatory No. 10, and for the same reasons, this request to compel should be denied.

**Document Request No. 20 (Instagram Data Download)**

Kebe did not raise an objection to the form of Plaintiff's response to this request in the Discovery Letters, and it was not raised during the Conference. (Moore Decl. ¶ 5.) Kebe claims she is entitled to all of the data associated with Plaintiff's Instagram account. (RFP Br. 17-19.) Some of that data, such as Plaintiff's posts, is public information. Other data in that download, such as

Plaintiff's private search history, device information (including IP addresses), and direct messages through the platform, are not. Kebe appears to be seeking this data for the direct messages. (*Id*. at 18.)

A private message through Instagram is indistinguishable from a private email. Kebe's request is the equivalent of asking for the production of a person's entire email account. It is not reasonable to request every email in an email account, and it is likewise not reasonable to require the review and production of every private message Plaintiff has made through Instagram regardless of its relevance to this case. Plaintiff's counsel has searched the messages with each of the persons Kebe has identified in her discovery requests and produced communications as set forth in Plaintiff's discovery responses. Plaintiff's counsel also has offered to meet and confer regarding a narrowing of this request, which Kebe's counsel has refused. Kebe's request to compel should be denied.

**Document No. 25 (Tax Returns)**

Kebe did not raise an objection to the form of Plaintiff's response to this request in the Discovery Letters, and it was not raised during the Conference. (Moore Decl. ¶ 5.) Also, Kebe sought Plaintiff's tax returns *only* if Plaintiff alleged "that any of the claims set forth in your Amended Complaint resulted in lost

wages." As noted elsewhere, Plaintiff has explicitly disclaimed lost wages. For this reason alone, Plaintiff should not be compelled to produce her tax returns.

Even if Kebe were permitted to rewrite this document request, courts have recognized a federal policy limiting the disclosure of tax returns to situations where the information is necessary prove the claims or defenses and is not readily obtainable from other sources. *See Eglin Fed. Credit Union v. Cantor, Fitzgerald Secs. Corp.*, 91 F.R.D. 414, 416-17 (N.D. Ga. 1981); *see also Coach, Inc. v. Hubert Keller, Inc.*, 911 F. Supp. 2d 1303, 1307 (S.D. Ga. 2012) (noting courts require "clear and compelling showing" to require production of tax returns). Kebe has not satisfied either requirement.

Aside from lost earnings, which Plaintiff is not seeking, Kebe alleges Plaintiff's tax returns are relevant to Kebe's counterclaim for punitive damages. But Plaintiff's general worth is not reasonably in dispute, and Kebe has made no effort whatsoever to explore any alternative that would avoid the production of highly personal information in the tax returns that has no bearing on the issues in this case. In addition, Plaintiff's counsel offered to meet and confer regarding this request to explore alternatives and Kebe's counsel has refused.

Also, when a request for tax returns is based on a punitive damages claim, courts have required the party seeking the information to make an evidentiary

showing that a factual basis exists for the punitive damages claim before ordering production. *See Coach*, 911 F. Supp. 2d at 1310. Kebe has not made that showing (and for the reasons set forth in Plaintiff's pending motion for summary judgment, she cannot make that showing).

For all these reasons, this request to compel should be denied.

**Document Request No. 26 (Documents Supporting Damages)**

Kebe did not raise an objection to the form of Plaintiff's response to this request in the Discovery Letters, and it was not raised during the Conference. (Moore Decl. ¶ 5.)  Putting that aside, Plaintiff has produced the documents she intends to rely upon in support of her claims for damages. There are no documents being withheld and this request to compel should be denied.

**Document Request No. 27 (Documents That Form the Basis of Claims)**

Kebe did not raise an objection to the form of Plaintiff's response to this request in the Discovery Letters, and it was not raised during the Conference. (*Id.* ¶ 5.)  Putting that aside, Plaintiff has produced the correspondence and unprivileged documents that form the basis of her claims. There are no documents being withheld and this request to compel should be denied.

**Document Request Nos. 35, 38, 41, 44, and 47 (Communications with Witnesses)**

Kebe's complaint with Plaintiff's response to this request mirrors her complaint with the time limitation adopted in Plaintiff's response to Interrogatory No. 6, and for the same reasons, this request to compel should be denied.

**Document Request Nos. 36, 37, 39, 40, 42, 43, 45, 46, 48, 49 (Agreements Involving the Exchange of Consideration)**

Kebe did not previously raise any objection to the form of these responses. (*Id*. ¶ 5.) Kebe also has failed to state with specificity the documents that it claims Plaintiff is withholding. Plaintiff did not identify any responsive documents, as stated in her responses. This request to compel should be denied.

**D.   Plaintiff Should Be Awarded Her Fees for Responding to the Motions.**

For the reasons stated above, the Motions should be denied in their entirety, and pursuant to Rule 37, this Court should award Plaintiff her attorneys' fees because the Motions were not substantially justified. Fed. R. Civ. P. 37(a)(5)(B). Kebe's complaints are not grounded in law or fact but instead rely on mere speculation about information that could help her case. She also has refused to meet and confer regarding many of her complaints despite her counsel's certification. Plaintiff should not have to shoulder the expense of responding to Kebe's catchall motions that have not been targeted in the slightest to issues

24

reasonably in dispute. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011) (affirming award of attorneys' fees).

Even if the Court grants some portion the Motions, the Court should award Plaintiff the portion of her fees attributable to the portions that are denied. Fed. R. Civ. P. 37(a)(5)(C). The Court also should deny Kebe's request for fees because, as explained above, Kebe "filed the motion before attempting in good faith to obtain the disclosure or discovery without court action" and Plaintiff's responses were "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(i).

## III.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court deny the Motions and award Plaintiff her fees for responding to them.

Dated: January 15, 2021                  Respectfully submitted,

/s/ W. Andrew Pequignot
Lisa F. Moore (Bar No. 419633)
W. Andrew Pequignot (Bar No. 424546)
MOORE PEQUIGNOT LLC
887 West Marietta Street, Suite M-102
Atlanta, Georgia 30318
Telephone: (404) 748-9596
E-mail: lisa@themoorefirm.com
E-mail: andrew@themoorefirm.com

Sarah M. Matz (admitted *pro hac vice*)
Gary P. Adelman (admitted *pro hac vice*)
ADELMAN MATZ P.C.
1173A Second Avenue, Suite 153

New York, New York 10065
Telephone: (646) 650-2207
E-mail: sarah@adelmanmatz.com
E-mail: g@adelmanmatz.com

*Attorneys for Plaintiff*

## CERTIFICATION AS TO FONT

In accordance with Local Rule 7.1(D), the undersigned certifies that the foregoing document was prepared with Times New Roman 14, a font and point selection approved by the Court in Local Rule 5.1(C).

Dated: January 15, 2021

/s/ W. Andrew Pequignot
W. Andrew Pequignot

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

BELCALIS MARLENIS ALMÁNZAR,

                       Plaintiff,

     v.

LATASHA TRANSRINA KEBE and KEBE
STUDIOS LLC,

                      Defendants.

Case No. 1:19-cv-01301-WMR

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2021, I electronically filed the foregoing

PLAINTIFF'S OPPOSITION TO KEBE'S MOTIONS TO COMPEL with the

Clerk of the Court using the CM/ECF system, which will automatically send email

notification of such filing to all of the attorneys of record

                             /s/ W. Andrew Pequignot
                             W. Andrew Pequignot