**ATTACHMENT C**

**(Plaintiff's Factual Summary and Illustrative Case Law)**

## Factual Summary

Plaintiff is a Grammy award-winning musical artist and songwriter professionally known as "Cardi B." Since the release of her debut mixtape in 2015, Plaintiff's musical works have reached peak positions on charts in the United States and around the world and garnered her millions of fans. Out of the spotlight, she is a proud and loving mother of a young girl and has been recognized for her philanthropic endeavors.

Defendants host a celebrity gossip platform on social media under the moniker "unWinewithTashaK." By their own admission, Defendants publish sensational rumors about celebrities with no regard for their veracity. The more outrageous the gossip and high profile their target, the more likely it is to draw viewers to their accounts where they make money from advertising revenue.

In 2018, by their own admission, Defendants began intentionally targeting Plaintiff on their platforms. On September 19, 2018, Defendants published a video interview on YouTube with an individual named Starmarie Jones that has been viewed over four million times. In this interview, Jones falsely states that Plaintiff was a prostitute, that Plaintiff used cocaine, and that Plaintiff has herpes. Before

Defendants published the video, they were told explicitly that some of Jones's statements were not true. But instead of holding the video until they could investigate the claims, Defendants hastened the release of the video so it would have an opportunity to trend and they would make money before Jones's statements were debunked.

Plaintiff's prior counsel immediately demanded they take down the video. They refused. Instead, on September 21, 2018, despite having received this cease and desist letter and having information that contradicted Jones's statements, Defendants published a video in which Kebe stated that "everything that [Jones] said was accurate." Defendants claimed to have information supporting the veracity of Jones's defamatory statements. They have since acknowledged that was not true.

On February 28, 2019, Plaintiff's counsel sent Defendants a second demand to take down these videos and retract the defamatory statements. Instead of retracting, Defendants doubled down and have continued to publish many videos about Plaintiff. On October 2, 2020, Plaintiff's counsel sent Defendants' counsel a third letter outlining twenty additional defamatory statements that had been identified during discovery both pre-dating and post-dating the filing of this action.

All together, Defendants have falsely published that Plaintiff has herpes; that Plaintiff has HPV; that Plaintiff uses or has used cocaine; that Plaintiff engaged in a debasing act with a beer bottle; that Plaintiff committed infidelity; and that Plaintiff was or is a prostitute (the "Defamatory Statements"). The Defamatory Statements are patently false, and Defendants knew they were false when they published them. Defendants have nonetheless maintained their steadfast refusal to discontinue, remove, or retract the Defamatory Statements from their social media channels.

Kebe also previously asserted counterclaims for slander *per se* (Count I), assault (Count II), intentional infliction of emotional distress (Count III), punitive damages (Count IV), and expenses of litigation (Count V). Given Kebe's speculative allegations in support of her claims, Plaintiff filed a motion to dismiss for failure to state a claim. The Court denied the motion but warned Kebe "that if this is the best I get on a motion for summary judgment, the defense is going to lose. There's got to be specificity."

On November 23, 2020, on the eve of discovery closing, Kebe voluntarily dismissed here claim of slander *per se* because she lacked any evidence to support the claim. On July 8, 2021, after full briefing and argument, the Court granted

summary judgment on Kebe's remaining claims because she also lacked any evidence to support these claims.

## Relevant Rules, Regulations, Statutes, Ordinances, and Illustrative Case Law

### Counts I, II, and III: Defamation Claims

1.     A cause of action for defamation is provided for in O.C.G.A. § 51-5-1, *et seq*.

2.     Defamation requires four elements: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Stoploss Specialists, LLC v. Vericlaim, Inc.*, 340 F. Supp. 3d 1334, 1346 (N.D. Ga. 2018).

3.     Defamation arises where a statement is false and conveys a fact about a person instead of an opinion. "Whether the statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court." *Stoploss Specialists*, 340 F. Supp. 3d at 1347.

4.     Even when a statement is couched as an opinion, it still is actionable if the statement could reasonably be interpreted as implying defamatory facts about a person. *Id.* at 1347; *see also Gettner v. Fitzgerald*, 677 S.E.2d 149, 154 (Ga. Ct. App. 2009) (noting a defendant "cannot avoid liability solely by labeling the

[statement] an 'opinion'"); *Eidson v. Berry*, 415 S.E.2d 16, 17 (Ga. Ct. App. 1992)

("The pivotal questions are whether defendant Berry's statements can reasonably

be interpreted as stating or implying defamatory facts about plaintiff and, if so,

whether the defamatory assertions are capable of being proved false.").

5.      As to the second element of this claim, there are two types of

privilege: absolute and conditional. Statements subject to an absolute privilege—

e.g., certain statements made in court (*see* O.C.G.A. § 51-5-8)—generally cannot

support a defamation claim. *Stoploss Specialists*, 340 F. Supp. 3d at 1347.

Conversely, statements that are only conditionally privileged are actionable if they

were spoken with malice. *Id.* at 1348; *see also* O.C.G.A. § 51-5-9 (statements are

actionable "if the privilege is used merely as a cloak for venting private malice");

*Atlanta Journal Co. v. Doyal*, 60 S.E.2d 802, 813 (Ga. Ct. App. 1950) ("The only

effect of privilege is to require the plaintiff to prove actual malice."). Georgia law

limits the conditional privilege to nine specific categories of speech. *See* O.C.G.A.

§ 51-5-7.

6.      As to the third element of this claim, the requisite level of fault

required to prove defamation depends on whether Plaintiff is deemed an all-

purpose or a limited-purpose public figure. *Gettner v. Fitzgerald*, 677 S.E.2d 149,

154 (Ga. Ct. App. 2009); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352

(1974) ("Absent clear evidence of general fame or notoriety in the community and pervasive involvement in ordering the affairs of society, an individual should not be deemed a public figure for all aspects of his life.").

7.    The Court has determined that Plaintiff is an all-purpose public figure and thus that she must demonstrate Kebe acted with actual malice. *Gettner*, 677 S.E.2d at 154.

8.    Actual malice exists where the defamatory statement was made with knowledge that it was false or with reckless disregard for whether it was true or false. *Hunt v. Liberty Lobby*, 720 F.2d 631, 642 (11th Cir. 1983) (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)).

9.    A defendant acts with reckless disregard for the truth "where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *see also Hunt*, 720 F.2d at 644 ("A publisher cannot feign ignorance or profess good faith when there are clear indications present which bring into question the truth or falsity of defamatory statements.") (quotation marks and citations omitted).

10.    Actual malice can be proven either through direct evidence, such as the defendant's testimony, circumstantial evidence, or a combination of both. *Id.* at 643; *see generally Herbert v. Lando*, 441 U.S. 153 (1979) (finding direct evidence

of editorial process admissible to prove actual malice).

11.     Refusing to retract defamatory statements supports a finding of actual malice. *See Augusta Chronicle Pub. Co v. Arrington*, 157 S.E. 394, 396 (Ga. Ct. App. 1931) (finding refusal to retract supported finding of actual malice); *see also Golden Bear Distrib. Sys. of Texas, Inc. v. Chase Revel, Inc.*, 708 F.2d 944, 950 (5th Cir. 1983) (same), *abrogated on other grounds by Hiller v. Mfrs. Prod. Research Grp. of N. Am., Inc.*, 59 F.3d 1514, 1520-21 (5th Cir. 1995).

12.     Continuing to repeat defamatory statements with knowledge of their falsity further supports a finding of actual malice. *See S. Bell Tel. and Tel. Co. v. Coastal Transmission Serv., Inc.*, 307 S.E.2d 83, 88 (Ga. Ct. App. 1983) (affirming finding of punitive damages for defamatory statements where the defendant continued to distribute them with knowledge of their falsity).

13.     The categories of defamation *per se* under Georgia law include "imputing to another a crime punishable by law" or "charging a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society." O.C.G.A. § 51-5-4; *Cottrell v. Smith*, 788 S.E.2d 772, 780-81 (Ga. 2016) (categories apply both to slander and libel).

14.     In evaluating whether a statement is defamatory *per se*, "courts consider their natural and obvious meanings and look to the plain import of the

words." *Stoploss Specialists*, 340 F. Supp. 3d at 1351 (punctuation and citation omitted).

15.     The Defamatory Statements squarely fall within the following categories:

- The Defamatory Statements that Plaintiff engaged in prostitution impute to Plaintiff a crime punishable by law. *See* O.C.G.A. § 16-6-9; *see also Munson v. Gaylord Broad. Co.*, 491 So. 2d 780, 782 (La. Ct. App. 1986).

- Defamatory Statements that Plaintiff has herpes and HPV charge Plaintiff with having a contagious disorder.

- Defamatory Statements that Plaintiff used cocaine impute to Plaintiff a crime punishable by law. *See* O.C.G.A. § 16-13-20, et sq.; *see also Narcisse v. Turner Indus. Grp.*, LLC, No. 11-2659, at 11 (E.D. La. Apr. 30, 2012).

- Defamatory Statements about Plaintiff use of a beer bottle charge Plaintiff with being guilty of a debasing act that may exclude her from society.

- Defamatory Statements that Plaintiff committed infidelity impute to Plaintiff a crime punishable by law. *See* O.C.G.A. § 16-6-19; *see also*

*City of Fairbanks v. Rice*, 20 P.3d 1097, 1107 (Alaska 2000).

16.    Plaintiff has sought injunctive relief. The Georgia Supreme Court has recognized that enjoining the statements found to be defamatory is an appropriate remedy for continuing and repetitive defamatory statements. *Retail Credit Co. v. Russell*, 218 S.E.2d 54, 62-63 (Ga. 1975); *see also generally* Eugene Volokh, *Anti-Libel Injunctions*, 168 U. Pa. L. Rev. 73 (2019) (surveying the law and explaining the constitutionality of targeted injunctions); Doug Rendleman, *The Defamation Injunction Meets the Prior Restraint Doctrine*, 56 San Diego L. Rev. 615 (2019) (same).

### Count IV: Invasion of Privacy - False Light

17.    *Ass'n Servs., Inc. v. Smith*, 249 Ga. App. 629, 633 (Ga. Ct. App. 2001) (punctuation and citations omitted):

> Publicity which places plaintiff in a false light in the public eye is another of the four torts that make up the general tort of invasion of privacy. In a false light case, the interest protected is clearly that of reputation, with the same overtones of mental distress as in defamation. Essentially, to establish a claim of false light, a plaintiff must establish the existence of false publicity that depicts the plaintiff as something or someone which she is not. Next, the plaintiff must demonstrate that the false light in which she was placed would be highly offensive to a reasonable person.

### Count V: Intentional Infliction of Emotional Distress

18.    A claim for intentional infliction of emotional distress has four

elements: "(1) intentional or reckless conduct (2) which is extreme and outrageous and (3) caused the emotional distress (4) which is severe." *Pyle v. City of Cedartown*, 524 S.E.2d 7, 9 (Ga. Ct. App. 1999) (citation omitted).

19.     "Whether a claim rises to the requisite level of outrageousness and egregiousness is a question of law to be determined by the court." *Fields v. Atlanta Indep. Sch. Sys.*, 916 F. Supp. 2d 1348, 1374 (N.D. Ga. 2013).

20.     Extreme and outrageous conduct can be established through a singularly outrageous act or "a sustained course of aggravated conduct aimed directly at a plaintiff." *Tapley v. Collins*, 41 F. Supp. 2d 1366, 1382 (S.D. Ga. 1999), *rev'd in part on other grounds*, 211 F.3d 1210 (11th Cir. 2000); *Woodruff v. Miller*, 307 S.E.2d 176, 178 (N.C. Ct. App. 1983) (finding actionable conduct based on "persistent plan to disturb, humiliate, harass, and ruin plaintiff for no purpose but defendant's own spiteful satisfaction").

### *Damages (including Counts VI and VII)*

21.     Plaintiff seeks damages that are inferred under Georgia law from the Defamatory Statements. O.C.G.A. § 51-5-4(a)(1)-(2).

22.     Plaintiff also seeks damages for pain and suffering. The measure is the enlightened conscience of fair and impartial jurors. Questions of whether, how much, and how long Plaintiff has suffered or will suffer are for the jury to decide.

Georgia Suggested Pattern Jury Instructions for Civil Cases (5th ed.) § 66.501(a) (including cited cases).

23.    Plaintiff also seeks $5,980.37 for her treatment expenses from a clinical psychologist. O.C.G.A. § 51-12-7. As to medical expenses, such as hospital, doctor, and medicine bills, the amount of the damage would be the reasonable value of such expense as was reasonably necessary. Georgia Suggested Pattern Jury Instructions for Civil Cases (5th ed.) § 66.040 (including cited cases).

24.    Plaintiff also seeks punitive damages, which may be awarded where the defendant's actions show willful misconduct, malice, fraud, wantonness, oppression, or entire want of care that would raise the presumption of conscious indifference to consequences. O.C.G.A. § 51-12.5.1(b). Punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant. O.C.G.A. § 51-12.5.1(c).

25.    Willful repetition of an intentional tort will support an award of punitive damages. *Paine v. Nations*, 641 S.E.2d 180, 183-84 (Ga. Ct. App. 2006).

26.    Punitive damages in excess of the statutory limit of $250,000 may be awarded if it is found that a defendant in this case acted, or failed to act, with a specific intent to cause harm. O.C.G.A. § 51-12.5.1(f). A party possesses specific intent to cause harm when that party desires to cause the consequences of its act or

believes that the consequences are substantially certain to result from it. Georgia

Suggested Pattern Jury Instructions for Civil Cases (5th ed.) § 66.711 (including

cited cases). The jury may find such intent, or the absence of it, upon consideration

of the words, conduct, demeanor, motive, and all the other circumstances

connected with the alleged act and may presume a person of sound mind and

discretion intends the natural and probable consequences of his act. Georgia

Suggested Pattern Jury Instructions for Civil Cases (5th ed.) § 66.712 (including

cited cases).

27.     Plaintiff also seeks the legal fees and expenses that she has incurred in

this action. The jury may award expenses of litigation where the plaintiff has

specially pleaded them and where the defendant has acted in bad faith, has been

stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense.

O.C.G.A. § 13-6-11.

28.     "Every intentional tort invokes a species of bad faith and entitles a

person so wronged to recover the expenses of litigation including attorney fees

[pursuant to O.C.G.A. § 13-6-11]." *Bunch v. Byington*, 664 S.E.2d 842, 848 (Ga.

Ct. App. 2008) (punctuation and citations omitted).

29.     Plaintiff has incurred at least $827,000 in legal fees and expenses

through August 2021. Plaintiff continues to incur additional fees and expenses.

30.     Joint tortfeasors are jointly and severally liable for the full amount of damages when they acted in concert to commit the tortious acts. *Fed. Deposit Ins. Corp. v. Loudermilk*, 826 S.E.2d 116, 126-27 (Ga. 2019).

31.     The preceding citations are illustrative only; Plaintiffs incorporate by reference and may rely on other authorities identified in their summary judgment briefing, their pretrial brief(s), their motion(s) *in limine*.