UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BELCALIS MARLENIS ALMÁNZAR,<br><br>                        Plaintiff,<br>v.<br><br>LATASHA TRANSRINA KEBE and KEBE STUDIOS LLC,<br><br>                        Defendants. | Case No. 1:19-cv-01301-WMR |

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION *IN LIMINE*__**

Plaintiff Belcalis Marlenis Almánzar ("Plaintiff") respectfully submits this response to the motion *in limine* filed by Defendants Latasha Kebe ("Kebe") and Kebe Studios LLC ("Kebe Studios") (collectively, "Defendants") (ECF No. 165).

**1.      Kebe Studios Being Formed as a Business Conduit for Illegal Activities.**

Defendants seek to prevent Plaintiff from introducing evidence or argument that Kebe Studios was formed for the purpose of conducting illegal activities, namely tax evasion. (Defs.' Mot. 2-3.) Contrary to Defendants' unfounded allegations, Plaintiff's counsel did not speculate, suggest, infer, or state in the Second Amended Complaint or in Kebe's deposition or in the Pretrial Order that

Defendants have committed tax evasion. It was Kebe's own husband who testified in his deposition that neither Kebe nor Kebe Studios have paid any taxes on income derived from the activities of Kebe and Kebe Studios that are the subject of this lawsuit. (11/29/20 Dep. of C. Kebe 42-50.) The failure to pay personal taxes and, relatedly, corporate taxes for Kebe Studios is directly relevant to demonstrating that Kebe and her husband have not treated the company as being separate from them as individuals. And, indeed, Kebe testified that there was no distinction between herself and her business. (11/19/20 Dep. of L. Kebe 86:19-24.) Kebe's husband testified to the same thing. (11/29/20 Dep. of C. Kebe 46:5-15.) Plaintiff does not intend to accuse Defendants of tax evasion, but otherwise, this motion should be denied as the testimony is relevant to other issues.

Moreover, to the extent Defendants' motion could be construed more broadly to encompass other evidence, it also should be denied. Plaintiff is entitled to argue that Kebe and Kebe Studios are one in the same—i.e., an alter ego—for purposes of being jointly and severally liable for the defamatory statements at issue, and the failure to pay either personal or corporate taxes is direct evidence that Kebe and her husband have not minded their corporate formalities and they have commingled personal and business income. Ensuring the clear separation of corporate and personal activity, particularly in the realm of finance, is one of the

most, if not the most important aspect of corporate formalities. There also is nothing improper whatsoever about Plaintiff eliciting testimony that Kebe Studios was formed only for the purpose of providing a corporate shield and serves no other independent function.

**2.     Kebe's Prior Arrests and Criminal History.**

Defendants seek to prevent Plaintiff from introducing evidence of Kebe's prior arrests and criminal history, noting that "[t]he general character of the parties, and especially their conduct in other transactions, are irrelevant matter." (Defs.' Mot. 3.) We agree and assume based on their position that Defendants will not seek to introduce "general character" evidence concerning Plaintiff or object to Plaintiff's motion *in limine* to exclude evidence concerning Plaintiff's pending criminal matter. (Pl.'s Mot. *in Limine* (ECF No. 163) 6-7.)

**3.     Evidence of Other Claims or Lawsuits.**

Defendants seek to prevent Plaintiff from introducing evidence concerning Kebe's receipt of other defamation claims from third parties. (Defs.' Mot. 3-4.) However, whether or not Defendants discontinued or retracted statements that they published in response to third-party claims, and under what circumstances, is directly relevant to Defendants' improper motives and actual malice in refusing to discontinue and retract their statements about Plaintiff. As an example, Defendants

posted graphic claims about a prominent Georgia pastor having an affair with another man. (11/30/20 Dep. of L. Kebe 225:11-26:19.) Defendants knew the story was false but published the story anyway because they found it "entertaining" and took issue with the pastor taking money from the community. (*Id.* 227:3-18.) As a result, according to Defendants, publishing the defamatory story was a "win/win." (*Id.* 227:18.) This evidence is relevant as to Defendants' credibility on the issue of actual malice and to demonstrate that Defendants are willing to publish false stories for personal and financial motives, including but not limited to spite and greed. *See* Fed. R. Evid. 404(a)(3) & (b)(2), 608. This motion should be denied.

**4.      Discussions or Offers Regarding Possible Compromise.**

Defendants seek to exclude evidence concerning any offers of compromise between the parties. Rule 408 prohibits the use of offers of compromise for the purpose of proving liability or to impeach prior inconsistent statements but permits the use of this evidence for other purposes. *See* Fed. R. Evid. 408. Defendants have not cited any specific documents on Plaintiff's exhibit list that are the subject of this motion or in any way explained their precise concern about how those documents could be used. This motion is not sufficiently particularized and thus should be denied.

The only document that Plaintiff has identified on her exhibit list that they

could even arguably be referring to is CARDI_000374-A and 000375-A. In this email from Kebe to Plaintiff's counsel, which is not marked as a settlement communication and does not reference settlement at all, Kebe admits, "I honestly have no idea if those things were true about [Plaintiff]," and indicated that she would take the videos down. Defendants then took down the videos that contained the defamatory statements, but then re-posted them only a couple days later ***even though she admitted to not knowing for sure whether the statements were true***. Even assuming *arguendo* that Rule 408 applies (as noted above, the email was not labeled as a settlement communication nor was any settlement referenced or discussed at all), Plaintiff can still use this correspondence "for another purpose" other than proving the validity of Plaintiff's claims. *See* Fed R. Evid. 408(b).

**5.      Kebe's Counterclaims.**

Defendants seek to exclude evidence and argument concerning Kebe's dismissed counterclaims. (Defs.' Mot. 5.) We agree, and Defendants should likewise be precluded from objecting to Plaintiff's motion *in limine* to exclude this same evidence, including the over 117 exhibits on their exhibit list that relate solely to these claims. (Pl.'s Mot. *in Limine* 3-6.) However, Defendants have not referenced a single exhibit on Plaintiff's exhibit list that is subject to this motion. To the extent Defendants are seeking to exclude any of Plaintiff's exhibits on this

5

basis, this motion should be denied because it is not sufficiently particularized.

**6.     Evidence Pertaining to Starmarie Jones.**

Defendants seek to exclude the following evidence concerning Starmarie Jones (a) her social media posts and interactions, (b) her prior arrests and criminal history, and (c) the judgment and injunction that Plaintiff obtained against her regarding the same defamatory statements at issue here. For the following reasons, this motion should be denied.

As for the first category, we agree that certain of the social media posts and direct messages by Starmarie Jones should be excluded, and Defendants should likewise be precluded from objecting to Plaintiff's motion *in limine* on this ground. (Pl.'s Mot. *in Limine* 7-8.) However, we cannot appropriately respond to this motion as to any other documents because Defendants have not identified the exhibits that are the subject of their motion. For example, to the extent this motion is intended to exclude posts and messages by others regarding Jones, it improperly seeks to exclude relevant evidence. Specifically, posts and messages from others debunking Jones's statement that Defendants were aware of when they published the defamatory statements are directly relevant to show actual malice.

Similarly, as to the second category, Jones's criminal history that was known to Defendants when they published the defamatory statements also is relevant to

whether it was reasonable for Defendants to believe Jones when publishing those statements, as this Court aptly noted both during the hearing on Plaintiff's motion for summary judgment Motion and in its Order on that motion. (*See* Order on Pl.'s Mot. for Summ. J. 18 (recognizing that "whether Jones was a reliable source" and "whether it was reasonable for Kebe to rely on [her] representations" are questions that the jury will need to resolve).) Kebe has admitted that she knew Jones "had quite a criminal past" before she published the defamatory statements by Jones (11/19/20 Dep. of L. Kebe 201:9-13), which is directly relevant to actual malice.

      Finally, as to the third category, the judgment and injunction that Plaintiff obtained against Jones regarding many of the same defamatory statements at issue in this case is plainly relevant to this matter. It would be prejudicial to Plaintiff for the jury to believe that she brought claims against Defendants while not bringing claims against Jones, possibly suggesting that this lawsuit was improperly motivated or that the liability of Jones remains unresolved or incorrectly assume that those claims have been resolved in favor of Jones. The alleged prejudice claimed by Defendants in their motion can readily be addressed with a limiting instruction that makes clear to the jury that the judgment and injunction in that other case cannot be used to find liability in this case.

**7.     Personal Experiences or Beliefs of Plaintiff's Counsel.**

Defendants seek to exclude arguments from Plaintiff's counsel about their personal experiences or beliefs. We agree with the general principle, and that it applies equally to Defendants' attorneys. However, this motion should be denied to the extent Defendants are suggesting that Plaintiff's counsel cannot argue that the jury should draw certain conclusions from the evidence. *U.S. v. Bernal-Benitez*, 594 F.3d 1303, 1315-16 (11th Cir. 2010).

**8.     Lawyer as Witness.**

Defendants seek to exclude any testimony from Plaintiff's attorneys, citing Rule 3.7 of the Georgia Rules of Professional Conduct. As an initial matter, there is no basis whatsoever to prohibit the undersigned counsel from providing testimony that "relates to the nature and value of legal services rendered in the case" in support of Plaintiff's attorneys' fee claim. *See* Rule 3.7(a)(2) of Ga. Rules of Prof'l Conduct; *see also* Cmt. 3 ("Paragraph (a) (2) recognizes that where the testimony concerns the extent and value of legal services rendered in the action in which the testimony is offered, permitting the lawyers to testify avoids the need for a second trial with new counsel to resolve that issue.").

Defendants specifically reference two other categories of possible testimony: (1) testimony from attorney Lisa Moore regarding the alleged medical records and

(2) testimony from attorney Sarah Matz regarding the results of a Google search she conducted during Kebe's deposition. As to the medical records, Ms. Moore's testimony would only be necessary as to authentication and only to the extent not already addressed by the Certificate of Authenticity for the records. Addressing this potential testimony at this point is therefore premature because it is unclear whether the limited authentication testimony could reasonably be contested. *See* Rule 3.7(a)(1) of Ga. Rules of Prof'l Conduct (identifying testimony on uncontested issues as an exception). Likewise, as to the second category, Ms. Matz conducted a Google search during the deposition using the same search terms Kebe testified to using as part of her supposed investigation into whether or not a video of a woman committing a debasing act with a beer bottle actually depicted Plaintiff. The parties can dispute whether these search results would have been the same or similar at the time Kebe conducted her search, but there is no reasonable contested issue concerning the authenticity of those search results. This motion should be denied.

**9.     Proving the Contents of Writings, Recordings, or Photographs.**

Defendants seek to prohibit Plaintiff from asking Kebe about statements she made in her videos and social media posts without playing the videos or showing the posts in their entirety. (Defs.' Mot. 8-10.) Defendants' motion is governed by

Rule 106, which provides:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time.

Fed. R. Evid. 106. Rule 106 only applies when a written or recorded statement is admitted into evidence or in limited circumstances when a document is used in such a way that is "tantamount" to introduction of the document itself. *U.S. v. Ramirez-Perez*, 166 F.3d 1106, 1113 (11th Cir. 1999).

Importantly, as explained by the Eleventh Circuit:

> Rule 106 "does not automatically make the entire document admissible" once one portion has been introduced. Rather, Rule 106 "permits introduction only of additional material that is relevant and is necessary to qualify, explain, or place into context the portion already introduced."

*United States v. Santos*, 947 F.3d 711, 730 (11th Cir. 2020) (citations omitted). It would be Defendants' burden to show in each instance that the use of a statement invokes Rule 106 and, if it does, that additional portions of the video or social media post are necessary to qualify, explain, or place such statement into context *United States v. Umbach*, No. 16-11588, at 30-31 (11th Cir. Aug. 30, 2017).

Defendants are seeking to bypass their burden altogether by mandating that Plaintiff show the jury dozens of entire videos (most of which are longer than an hour) and social media posts whenever Defendants' defamatory statements are

raised. This gets things exactly backwards. Defendants must first demonstrate that Rule 106 applies to the elicited testimony (i.e., that the line of questioning is "tantamount" to introducing the document) and that certain portions (i.e., not the entire lengthy videos) are necessary to provide context. Furthermore, Rule 106 only addresses the timing of this evidence. Even if Defendants cannot satisfy this burden, they could still introduce other portions of these documents on cross-examination or their own direct examination of the witness.

In addition, requiring Plaintiff to play each of the hours-long videos that contain the defamatory statements in their entirety whenever such statements are referenced will result in an arduous presentation of evidence, will severely hamper Plaintiff's ability to present her case, and will significantly and unnecessarily extend the length of the trial and needlessly burden the parties, this Court, and the jury. Plaintiff should be permitted to put on her case in the way she fits, and then Defendants can put on their case in the way they see fit. There is simply no basis for addressing these issues in advance as a motion *in limine*. In fact, we are extremely concerned given defense counsel's unreasonable refusal to stipulate to dozens of statements publicly made by Defendants in their own videos that defense counsel are attempting to make this trial as lengthy, confusing, and vexing to the jury as possible and in the process waste precious judicial resources. This motion

should be denied.

**10.    Medical Opinion by Lay Witness.**

Defendants seek to preclude Plaintiff from testifying "regarding the cause of her psychological diagnosis and treatment with Dr. Sherry Blake" and "the results of her medical screenings." (Defs.' Mot. 10-11.) The Federal Rules of Evidence do not preclude Plaintiff from testifying about her symptoms and the cause of those symptoms that gave rise to her diagnosis by a mental health professional. *See* Fed. R. Evid. 701. Plaintiff is also clearly allowed to testify to the fact that she went and got tested at the UCLA Medical Center, the aliases she used in connection with the tests to protect her privacy (see below), and the results of those tests. This motion should be denied.

**11.    Introduction of Medical Records.**

Defendants seek to exclude the medical records produced at CARDI_000146-149, CARDI_000231, and CARDI_000774-777. (Defs.' Mot. 11-12.) (CARDI_000146-149 are redacted copies of CARDI_000774-777.)

*First*, Defendants argue that Plaintiff cannot rely on the medical records because they are under the names Elizabeth Chambers and Bonnie Crown. These are aliases used by Plaintiff to protect the privacy of medical test results. She is entitled to explain that to the jury.

*Second*, Defendants argue that the records are incomplete, but they are not. We have previously explained this to Defendants' counsel (and the certification we provided to Defendants pursuant to Fed. R. Evid. 902(11) confirms this). The entirety of the medical records were provided to Defendants the very day they were provided to Plaintiff's counsel by UCLA. The fact that no other records exist, which has been confirmed multiple times with Dr. Grisales and her team at UCLA, in no way negates or is grounds for exclusion of the complete records that were timely produced.

*Third*, they argue that these records cannot be authenticated. But Plaintiff has provided Defendants with a certification pursuant to Fed. R. Evid. 902(11). It should also be noted that Defendants' attorneys had every opportunity to depose Plaintiff and ask her about these records, or issue a subpoena to UCLA, or depose Dr. Grisales or a custodian of records at UCLA. They did none of those things and now should not be heard to complain about their own failure to prosecute diligently the defense of this case.

This motion should be denied.

**12.  Reference to Motion *in Limine*.**

Defendants seek to exclude any reference to this motion *in limine*. We agree that the parties should not reference their respective motions *in limine*.

Dated: November 2, 2021				Respectfully submitted,

/s/ Lisa F. Moore
Lisa F. Moore (Bar No. 419633)
W. Andrew Pequignot (Bar No. 424546)
MOORE PEQUIGNOT LLC
887 West Marietta Street, Suite M-102
Atlanta, Georgia 30318
Telephone: (404) 748-9596
E-mail: lisa@themoorefirm.com
E-mail: andrew@themoorefirm.com

Sarah M. Matz (admitted *pro hac vice*)
Gary P. Adelman (admitted *pro hac vice*)
ADELMAN MATZ P.C.
1173A Second Avenue, Suite 153
New York, New York 10065
Telephone: (646) 650-2207
E-mail: sarah@adelmanmatz.com
E-mail: g@adelmanmatz.com

*Attorneys for Plaintiff*

## CERTIFICATION AS TO FONT

In accordance with Local Rule 7.1(D), the undersigned certifies that the foregoing document was prepared with Times New Roman 14, a font and point selection approved by the Court in Local Rule 5.1(C).

Dated: November 2, 2021

                                      /s/ Lisa F. Moore
                                      Lisa F. Moore

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| BELCALIS MARLENIS ALMÁNZAR,<br><br>Plaintiff,<br>v.<br><br>LATASHA TRANSRINA KEBE and KEBE STUDIOS LLC,<br><br>Defendants. | Case No. 1:19-cv-01301-WMR |

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2021, I electronically filed the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all of the attorneys of record

/s/ Lisa F. Moore
Lisa F. Moore