```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF GEORGIA
 2                             ATLANTA DIVISION


 3


 4   BELCALIS MARLENIS ALMÁNZAR,      )
                                      )
 5                   Plaintiff,       )
                v.                    )   CIVIL ACTION
 6                                    )   FILE NO. 1:19-CV-01301-WMR
     LATASHA TRANSRINA KEBE and       )
 7   KEBE STUDIOS LLC,                )
                                      )   JURY TRIAL
 8                   Defendants.      )
     _____)   VOLUME X OF X
 9


10


11   -------------------------------------------------------------


12          BEFORE THE HONORABLE WILLIAM M. RAY, II


13               TRANSCRIPT OF PROCEEDINGS


14                    JANUARY 25, 2022


15
     -------------------------------------------------------------
16


17

                  Proceedings recorded by mechanical stenography
18                 and computer-aided transcript produced by


19

                       WYNETTE C. BLATHERS, RMR, CRR
20                       Official Court Reporter
                          1714 U.S. Courthouse
21                      75 Ted Turner Drive, SW
                         Atlanta, Georgia  30303
22                          (404) 215-1547


23


24


25
```

```
1    APPEARANCES:

2    For the Plaintiff:        SARAH M. MATZ
                               Attorney at Law
3                              Adelman Matz, P.C.
                               1173A Second Avenue
4                              Suite 153
                               New York, New York  10065
5
                               LISA F. MOORE
6                              WILLIAM A. PEQUIGNOT
                               Attorney at Law
7                              Moore Pequignot, LLC
                               887 West Marietta Street
8                              Suite M-102
                               Atlanta, Georgia  30318
9
     For the Defendants:       OLGA IZMAYLOVA
10                             SADEER SABBAK
                               Attorneys at Law
11                             Sabbak & Izmaylova, LLP
                               1875 Old Alabama Road
12                             Suite 510
                               Roswell, Georgia  30076
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                        I N D E X
2
3                                                      PAGE
4    PLAINTIFF'S CLOSING ARGUMENT By Ms. Moore....................8
5    DEFENDANTS' CLOSING ARGUMENT By Ms. Izmaylova...............15
6    JURY CHARGE.................................................20
7    VERDICT....................................................33
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                     Tuesday Morning Session

 2                       January 25, 2022

 3                         9:45 a.m.

 4                          -  -  -

 5                   P R O C E E D I N G S

 6          COURTROOM SECURITY OFFICER:  All rise.  This Court is

 7   again in session.

 8          THE COURT:  Thank you, sir.

 9          COURTROOM SECURITY OFFICER:  Please be seated and

10   come to order.

11          THE COURT:  All right.  So let me make sure I

12   understand what the agreement is.  The way I understand it is,

13   is that the parties are going to stipulate the fees that the

14   plaintiff has incurred in this case to date.  Is the defendant

15   stipulating to the reasonableness of the fees as well or are

16   you just going to argue that they're not -- argue that issue?

17          MS. IZMAYLOVA:  We're stipulating to the amount.

18   We're just not stipulating to the fact that they should have

19   been awarded, you know, for purposes of appeal.

20          THE COURT:  Okay.  But that's a little different.  So

21   should have been awarded goes to the bad faith, stubbornly

22   litigious, unnecessary trouble and expense.  That decision has

23   been made.

24          MS. IZMAYLOVA:  Right.  I just wanted -- as long as

25   we're not waiving that issue for appeal, but we stipulate to
```

1   the amount that the plaintiff has, you know --

2           THE COURT:  And does the defendant intend to argue

3   that the amount of fees that is stipulated to was not the

4   reasonable fee that was necessary?

5           MS. IZMAYLOVA:  No, I don't intend to do that.

6           THE COURT:  Because if you do that, I mean, in all

7   honesty, really the plaintiff probably needs to put on

8   evidence about why that total amount of fee was necessary.

9           MS. IZMAYLOVA:  I don't intend to do that.

10          THE COURT:  Okay.  So you're just not going to waive

11  it for appeal?

12          MS. IZMAYLOVA:  Correct.

13          THE COURT:  Okay.  And then as far as punitive

14  damages are concerned, the parties are simply going to argue

15  that there will be no additional evidence to offer.  Is that

16  what I understand?

17          MS. MATZ:  Yeah.  What the plan was, is we did drop

18  the stipulation as to the amount and that they're reasonable,

19  the attorney's fees, we were going to read it into the record.

20  It will go to the jury like all the other stipulated facts,

21  and then I think the agreement was that nobody would do

22  opening arguments.  We would just do closing arguments, and

23  then let the jury go make a decision.

24          THE COURT:  Okay.  All right.  So are y'all ready to

25  do that, I mean, bring the jury in, have the stipulation read,

1  and then have closing argument?

2           MS. MATZ:  Yeah.

3           MS. IZMAYLOVA:  Yes.

4           MS. MOORE:  Uh-huh.

5           MS. MATZ:  And just to clarify, your Honor, I believe

6  you said 20 minutes for closings yesterday.  Did I hear that

7  right?

8           THE COURT:  That's right.

9           MS. MATZ:  Okay.  Thank you.  And will it be the same

10 format on our side where 20 minutes and we can reserve a

11 couple minutes for rebuttal?

12          THE COURT:  Okay.

13          MS. MATZ:  Okay.  Thank you.

14          THE COURT:  All right.  Thank you.  Do you want me to

15 read the stipulation or are you going to do it?

16          MS. MATZ:  I'm happy to do it or if your Honor

17 prefers to, it doesn't really matter to me.

18          THE COURT:  What would you --

19          MS. MATZ:  Why don't you just read it, if you don't

20 mind.

21          THE COURT:  All right.

22          COURTROOM SECURITY OFFICER:  All rise.

23          (Whereupon, the jurors entered the courtroom.)

24          COURTROOM SECURITY OFFICER:  Please be seated and

25 come to order.

1          THE COURT:  All right.  Good morning, ladies and

2    gentlemen.  Thanks for being back with us today.  So there's

3    been a little bit of change in the posture of today's

4    activities.  The parties have agreed to waive opening

5    statements.  There also will be no additional evidence to

6    offer except for a stipulation, and I'm going to read the

7    stipulation.  And if you'll recall from the jury instructions

8    I gave you during the -- at the start of trial, a stipulated

9    fact is to be accepted by you as fact and applied as a

10   decision having been made as to that particular issue.

11          So I'm going to read the stipulated fact, and then

12   we're going proceed to closing arguments or the only argument,

13   the arguments on the punitive damages issue and the attorney's

14   fees issue.  The parties will receive each 20 minutes to make

15   their argument to you.  The plaintiff will have the right to

16   both open and close the closing argument or the argument on

17   these two issues.

18          The stipulated fact that I referred to was this:  The

19   plaintiff, Belcalis Marlenis Almánzar, and Defendants Latasha

20   Transrina Kebe and Kebe Studios LLC by and through their

21   attorneys respectfully submit these additional facts that are

22   agreed upon and may be admitted into evidence.

23          Plaintiff and defendants each rely on and may utilize

24   these facts as part of their case, and the fact is as follows:

25   Plaintiff's attorney's fees and expenses in this action

1  through January 25, 2022, are $1,338,753.47 and are

2  reasonable.

3        So that is the stipulation.  It is stipulation

4  No. 54.  There have been, I guess, 53 other stipulated facts.

5  This document that I read from -- and I paraphrased it a

6  little to make it more fit the situation that we're in.  This

7  document will be sent out with you to have with you during

8  your jury deliberations on these issues, and I'll present that

9  back to the clerk.

10       Is the plaintiff ready to begin her statement?

11       MS. MOORE:  Yes, your Honor.

12       THE COURT:  Thank you.

13       MS. MOORE:  Just one second, your Honor, to get

14  situated.

15       (Brief Pause.)

16       MS. MOORE:  Good morning, members of the jury.  I

17  want to thank you again for your dedication, your patience,

18  your careful attention to all of the evidence.  We know what a

19  tremendous sacrifice it is to be away from your families and

20  your lives, and so we're very grateful.  Thank you for taking

21  this as seriously as you have.

22       John Adams once said that trial by jury is the life

23  and liberty of our society, the heart and lungs of our

24  society, and I believe that.  And today plaintiff is going to

25  ask you to go back into the jury room one last time to

1  deliberate about the appropriate amount of punitive damages

2  and the award of attorney's fees to my client, and we ask you

3  to breathe oxygen, the importance of telling the truth, back

4  into our society.

5        You've seen an overwhelming amount of evidence

6  concerning the nature and egregiousness of the defendants'

7  conduct, the defendants' intentional conduct.

8        (Whereupon, a video recording was played.)

9        MS. MOORE:  Each of the defamatory statements that

10  the defendants have repeated over and over and over about my

11  client are vile and reprehensible.  And as you've heard them

12  say many times stridently in this classroom, they intend to

13  continue publishing these statements about my client.  And

14  even if there's an order saying they can't use my client's

15  name in connection with those defamatory statements, they're

16  going to say this rapper.  They're going to continue doing

17  this because they know that everybody that views their

18  platforms will know who they're talking about.

19        The defendants have admittedly repeated that their

20  motives are for profit and spite.  They want to monetize

21  defamatory lies because it's good for their business.  That's

22  just a few examples.

23        Tasha testified that she hashtags my client so when

24  people searching Instagram specifically look for my client,

25  this would come up, which helps drive people to the

1    defendant's Instagram, YouTube, and platforms in general.  She

2    admitted that one of the reasons she dropped the Starmarie

3    Jones interview was to get ratings, to make it go viral before

4    it was debunked, even though she knew some of what was being

5    said was false.

6          She admitted that sometimes she used hashtags like

7    cold sore B or herpes B or Cardi B, even if she's not talking

8    about my client, to drive traffic to the site.  And as we all

9    recall, in a video she said she wanted the money.  She has an

10   agency that's watching, and they want to see certain numbers

11   every month and they are in a business to generate ratings as

12   well as money.  And she wasn't going to pull the videos down

13   in part because she wanted to continue to get ratings and ad

14   revenue.

15         In addition to greed, Tasha admitted that she

16   published these statements for spite.  She knowingly published

17   these defamatory lies about my client to get a reaction, to

18   get back at her for filing the lawsuit, to upset her.  You've

19   heard her say that she has a vendetta against my client.  She

20   stated she doesn't like the bitch and knows it upsets our

21   client when she hashtags her herpes B.  She does it

22   intentionally over and over and over again just to traumatize

23   and torture my client, to get a reaction out of my client so

24   that's good for her clicks and views.

25         As you recall, Tasha admitted repeatedly during this

1  trial that these statements were intentionally directed to my

2  client.  She purposefully targeted her over and over and over

3  again so these messages would notify her and force her to see

4  the defamatory statements, force her to see these disgusting

5  videos again and again and again, to upset her, to irritate

6  her, to provoke a reaction.

7           Obviously, you've known since Day 1 of this trial,

8  this behavior is reprehensible.  It goes beyond the bounds of

9  any civilized society.  And in terms of the extent and

10  duration of the defendant's wrongdoing, it has been an

11  unrelenting and intentional campaign to break my client, all

12  because of greed and spite, post after post after post, video

13  after video after video.

14           And with respect to the likelihood of recurrence, the

15  defendants have made it very clear they will keep doing this

16  until they are forced to stop.  They've made it very clear

17  that they think defaming my client is a profitable business,

18  and they will never stop until they are forced.

19           Tasha admitted that she did all of these things with

20  malicious intent, that she knowingly published all these false

21  and defamatory statements about my client, disgusting,

22  despicable statements with malicious intent, and the

23  defendants have been greatly enriched by their conduct.

24           As everyone in this courtroom has witnessed, there

25  are aggravating circumstances that have warranted the

1   imposition of punitive damages, and you agree.  We have

2   conclusively proven that defendant's actions have shown

3   willful misconduct, malice, wantonness, an entire lack of

4   care.  They don't care what they've done to Cardi.  They don't

5   care what they've done to Cardi's family.  They certainly

6   don't care what they've done and will do to Cardi's children.

7   They are completely remorseless.  They don't care.

8           As you know, punitive damages are not awarded to my

9   client, but they are awarded solely to punish and to deter.

10  We respectfully urge you to impose a significant punitive

11  damages award on the defendants to punish them for this

12  atrocious conduct and equally importantly to deter them from

13  ever doing it again.

14          Given how strident they have been about their intent

15  to keep spreading malicious and false lies about my client, I

16  submit to you that it will require a very significant award to

17  make them cease this unlawful conduct.

18          As you know, my client is also seeking to recover the

19  attorney's fees that she's had to incur in this three-year

20  battle to get the defendants to stop.  And you'll note on this

21  timeline, and as you've heard the testimony in trial, my

22  client put them on notice the very day Tasha did a promo for

23  the Starmarie Jones interview, the very day she said these

24  things that Starmarie Jones is going to say in this interview

25  that you're going to publish are not true, and the defendants

1    knowingly published it anyway.

2          On the next day, the very next day, September 19th,

3    2018, a former law firm for my client sends the first demand

4    for retraction.  I think Tasha said she wiped her ass with it,

5    or at least that's what she told her viewers or lied to her

6    viewers about.  But if you continue down the timeline -- Tom,

7    can you bring up the next year?  Notwithstanding the first

8    demand for retraction, notwithstanding the second demand for

9    retraction, notwithstanding the fact that we filed a lawsuit

10   in federal court, the defendants continued on and on and on

11   and on even though they knew all these things were provably

12   false.

13         Tom, can you put up the next year, please.  We

14   provided the negative test results.  Didn't matter.  They kept

15   publishing these disgusting lies about my client, that she had

16   herpes, that she had HPV.  Our law firm, even after the filing

17   of the lawsuit, sent a third demand for retraction.  Why?  Why

18   did we do that after we filed a lawsuit?  Because they

19   continued to publish more videos, dozens of videos, dozens of

20   posts with these disgusting and defamatory statements.  And

21   they didn't, excuse my language, give a fuck.  They just kept

22   doing it.

23         So as you know -- and, Tom, can you show the next

24   year, please.  It continued all through 2021.  And, Tom, will

25   you move to 2022, please.  And here we are.  All of these

1   things are still up, all the posts, all the videos.

2          And as you know, the attorney's fees that are now

3   north, far north of a million dollars, none of them would have

4   been necessary if the defendants had just stopped when they

5   got notice from my client in the comments or when she DM'd

6   them directly.  All the clients had to do was click a button,

7   literally click a button and take it down, but no.  Instead,

8   my client has had to be brought to her knees, suffered ungodly

9   emotional distress, was extremely suicidal, has had to spend a

10  fortune on multiple law firms, all because the defendants

11  wouldn't stop.

12         We ask that you award every penny that our client has

13  to incur unnecessarily in attorney's fees.  This never should

14  have had to happen.  You should not have had to be here.  The

15  defendants could have stopped this immediately, but they

16  didn't.  And apparently they won't until they're forced to.

17         When you answer -- when you go back in the jury room

18  and you answer the question of what is the right amount of

19  punitive damages, I'm going to suggest to you that you might

20  consider the answer to be akin to the volume on a Zoom meeting

21  or how loud the music is in your car.  The level of the volume

22  will depend on who's in the room.

23         You may have somebody that has sensitive ears that

24  hears right away.  Okay.  Maybe the volume doesn't have to be

25  that loud.  You may be somebody like my sweet elderly mother.

1   She has an inoperable skull-based tumor.  She's deaf.  I could
2   turn the music up very loud, and she would still barely hear
3   it.  Or you could have somebody in a room that has seven sets
4   of headphones on that refuses to hear no matter what.  How
5   astronomically high does that number have to be to make the
6   defendants hear that this is absolutely unacceptable behavior,
7   that it has no place in civilized society?
8          If the number is small, then only the people in the
9   courtroom will hear it, and the defendants will certainly not
10  stop.  If the number is large, the message of your verdict
11  will be heard beyond the walls of this honorable courtroom,
12  and it just might deter someone else like the defendants from
13  targeting a young person who's suffering in silence, who may
14  not have a million dollars plus to bankroll a lawsuit.  It may
15  prevent someone like a young mother from considering ending
16  her life.
17         Only with a truly large number will your message be
18  heard across the nation that this monetization of lies is
19  unacceptable.  Only with a very significant number will the
20  defendants hear you.
21         Your Honor, I'm going to reserve the rest of my time
22  for after the defendants, please.
23         THE COURT:  Thank you.  Ms. Izmaylova.
24         MS. IZMAYLOVA:  Thank you.  Good morning, ladies and
25  gentlemen.  I just have a couple of brief comments to make.

1  I've already said everything I need to say yesterday.  While

2  the defense may disagree with the verdict, we do respect your

3  verdict.  We thank you for your service.  I just wanted to

4  make a couple of points.

5        The video that was just played, please do recall that

6  that video is not available to the public.  It was taken down

7  within 24 hours of being made.  As my client testified, she

8  told you she was not proud of that video and did remove it

9  within 24 hours of making it.  So just keep that in mind when

10 you go back to deliberate.

11       Also when you go to deliberate, please keep in mind

12 that the plaintiff's injury was -- has been made whole by your

13 award of compensatory damages on yesterday, and Judge Ray will

14 charge you on that law.

15       And the last thing I would like for you to keep in

16 mind is that the amount of punitive damages should be

17 proportional to my client's ability to pay those punitive

18 damages.  So if you'd just keep those things in mind when you

19 go to deliberate, that is all that we ask.  Thank you.

20       MS. MOORE:  The defendants have published dozens and

21 dozens of defamatory statements and literally dozens and

22 dozens and dozens of videos.  They've pulled one down?  They

23 must be very proud of all the others that everyone in the

24 world can continue to see today, that my client can see, that

25 her family can see, that the parents of her children's friends

1   can see, that the members of her church can see, that her

2   sponsors can see, that everybody can see and retweet and

3   share.  Your client must be very proud of those.

4          As I mentioned earlier, punitives are to punish and

5   to deter the defendants, not to compensate the plaintiff.  We

6   respectfully submit that given the entirety of all the

7   evidence you've heard over the past two weeks, the videos, the

8   documents, the testimony of my client, the testimony of

9   Dr. Sherry Blake, the remorselessness of the defendants,

10  who've already told you they fully intend to keep doing this,

11  we call for nothing less than a unanimous and significant

12  punitive damages award.

13         That will send a powerful message to other trolls on

14  the internet that it is not acceptable or lawful to monetize

15  defamation, that this conduct is absolutely unacceptable, and

16  it will not be tolerated.

17         We ask that you award our client all of her

18  attorney's fees that she needlessly had to incur.  We thank

19  you for analyzing the evidence so carefully and holding the

20  defendants liable.

21         Today is an important day.  You, the jury, have sent

22  a resounding message that facts matter, that spreading

23  malicious provably false lies about someone else is not okay

24  regardless of the level of your professional success.  Please

25  let the answer to the question of punitive damages punish and

1  deter these defendants for once and for all.  Thank you very

2  much.

3          THE COURT:  Jennifer, do you have the verdict?

4          MS. IZMAYLOVA:  I have one, your Honor.

5          THE COURT:  If counsel will approach?  Ms. Moore?

6          (Whereupon, a bench conference was held between the

7  Court and counsel.)

8          THE COURT:  **So you said something in your closing**

9  **which isn't true.  You said --**

10          MS. MOORE:  What?

11          THE COURT:  Let me get it.  I wrote it down, and I

12  read it in the transcript as well.  You said punitive damages

13  are not awarded to my client --

14          MS. MOORE:  Not awarded to compensate my client.

15          THE COURT:  That's not what you said.

16          MS. MOORE:  Oh, my God, your Honor.  That's the line

17  in my message --

18          THE COURT:  That's not what I heard, and that's not

19  what the transcript says.

20          MS. MOORE:  Okay.

21          MS. IZMAYLOVA:  I don't recall exactly what she said.

22          THE COURT:  Let me finish.  You said punitive damages

23  are not awarded to my client, but they are awarded solely to

24  punish and to deter.  So I'm going to have to correct any

25  misapprehension that the jury may have that the punitive

1   damages that are awarded based on their finding of specific

2   intent are awarded to the plaintiff just so that it's clear.

3         MS. MOORE:  I just want to let you and Ms. Izmaylova

4   know that literally the line says not to compensate my --

5         THE COURT:  But you didn't say that.

6         MS. MOORE:  It must have been like exhaustion or I

7   just missed a word.  It's not intentional, your Honor.

8         THE COURT:  I'm not accusing you at all.  I just --

9         MS. MOORE:  I assure you that it's not intentional.

10        MS. IZMAYLOVA:  I understand.  Okay.

11        MS. MOORE:  Thank you, your Honor.

12        MS. IZMAYLOVA:  Thank you.

13        (Whereupon, the following proceedings continued in

14   open court.)

15        THE COURT:  Ladies and gentlemen, I want to clarify

16   something just to make sure that you understand that if there

17   is an award of punitive damages, those damages do go to the

18   plaintiff because you found specific intent to commit harm in

19   your jury verdict.  And if you'll remember, that question was

20   asked as to each defendant.  Then the damages all will go to

21   the defendant.

22        Back in maybe the late eighties the Georgia

23   legislature adopted a law that capped the amount of punitive

24   damages that could be awarded to an individual, part of a tort

25   reform act, but specifically excepted or eliminated any cap if

1   there was specific intent to find harm.

2          Under the law if there wasn't specific intent to find

3   harm, after a certain amount, any award of punitive damages

4   would go to the state or it may have been some other

5   procedural mechanism where a large portion would go to the

6   state treasury.  That's not the case here because you found

7   specific intent to commit harm on each of the defendants'

8   behalf.  So I just want to make sure that that was clear to

9   you as you consider the decision that is before you.

10          Just a second.  So I don't have a great deal of

11   additional law to give you, and what law I'm going to give you

12   you should consider it in the context of all the other law

13   that you were given yesterday and in the context of the

14   decisions that you have made.

15          In your verdict yesterday you decided that punitive

16   damages were to be allowed.  Next you must determine the

17   appropriate amount of punitive damages, if any, to award.  In

18   doing so you should consider all of the evidence in the first

19   phase of the trial plus any evidence admitted in this phase or

20   second phase of the trial.  You should also bear in mind that

21   the plaintiff's injury has been made whole by your award of

22   compensatory damages.

23          The sole purpose of punitive damages is to punish,

24   penalize or deter a defendant, and the amount you award should

25   reflect that purpose only.  The measure of punitive damages is

1  your enlightened conscience as an impartial juror.

2          In considering the amount of punitive damages, you

3  may consider the following factors:  The nature and

4  egregiousness or reprehensibility of the defendants' conduct,

5  the extent and duration of the defendants' wrongdoing, and the

6  likelihood of its reoccurrence, the intent of the defendant in

7  committing the wrong, the profitability of the defendants'

8  wrongdoing, and the amount of the compensatory damages that

9  you have already awarded.

10         In making your award you should consider the degree

11  of reprehensibility of the defendants' wrongdoing.  You should

12  consider all of the evidence, both aggravating and mitigating,

13  to decide how much punishment the defendant or defendants

14  deserve.

15         In assessing reprehensibility you may consider

16  whether the harm caused was physical as opposed to economic,

17  whether the conduct showed an indifference to or a reckless

18  disregard of the health and safety of others, whether the

19  target of the conduct had financial vulnerability, whether the

20  conduct involved repeated actions or was an isolated incident,

21  and whether the harm was a result of intentional malice,

22  trickery or deceit.

23         Any award you make should be both reasonable and just

24  in light of your previous award of damages, the conduct of --

25  and circumstances of the defendant, and the purpose of

1  punitive damages.

2         You have decided to -- you have also decided to award

3  plaintiff her attorney's fees and expenses.  Keep in mind the

4  instruction that you were given yesterday about the award of

5  attorney's fees and expenses.  You should determine from the

6  evidence now the amount of the attorney's fees and other

7  expenses that you will award.

8         You will be sent a verdict form, pretty short

9  compared to the one you had yesterday.  The verdict form has

10 two sections.  One section is punitive damages and the other

11 one is litigation expenses, and it reads as follows:  As to

12 the plaintiff's claim for punitive damages, we, the jury,

13 award the following punitive damages.  There's two sections of

14 the verdict form.  The first section reads as follows:  As to

15 Defendant Latasha Kebe, we assess the amount of blank as

16 punitive damages, which is separate from punitive damages

17 awarded against Defendant Kebe Studios LLC.  You would write

18 in what, if any, amount of punitive damages you award against

19 Defendant Latasha Kebe.

20        Then the second section of the first section overall

21 reads:  As to Defendant Kebe Studios LLC, we assess the amount

22 of blank as punitive damages with separate -- which is

23 separate from any punitive damages against Defendant Latasha

24 Kebe.

25        The second section of the overall second section of

1   the verdict form is titled -- is entitled "Litigation

2   Expenses" and reads as follows:  As to plaintiff's claim for

3   litigation expenses, we award the amount of blank.  So in that

4   blank you would fill in the amount of attorney's fees, if any,

5   that you would award.  And then it says against blank

6   Defendant Latasha Kebe and/or blank Defendant Kebe Studios.

7           And these two little blanks that exist for the named

8   Defendant Latasha Kebe and the blank before Defendant Kebe

9   Studios, if you intend to award attorney's fees against any

10  defendant, then you would so indicate by checking the blank

11  before the identification of that defendant.  So that's why

12  there are the two little blanks there, for you to either check

13  or X before to indicate that you have decided to award

14  attorneys' fees against that defendant.

15          The amount of the attorney's fees, if any, would be

16  the amount that you fill into the larger blank, and this award

17  would be an award that if you so shall make that award, would

18  be paid potentially jointly by the parties or individually if

19  you only check one or the other.  And, of course, if you check

20  neither name, then neither defendant will owe attorney's fees

21  in this case.

22          So the decision is yours.  It's no different from

23  yesterday.  You should make this decision keeping in mind all

24  the instructions that the Court has given you.  If you have

25  any questions for me, then use the same process as yesterday

1  to write your question out and send it out with the court

2  security officer.  No one will stray very far from the

3  courtroom, so we'll be available to you as soon as you need

4  us.  If and when you have a verdict as to these issues, then

5  let the court security officer know, and we will return to the

6  courtroom to receive your verdict.

7            All right.  You can go back to the jury room.  Thank

8  you.

9            COURTROOM SECURITY OFFICER:  All rise.

10           (Whereupon, the jurors exited the courtroom.)

11           COURTROOM SECURITY OFFICER:  Please be seated and

12  come to order.

13           THE COURT:  All right.  Any exception or objection

14  from the plaintiff as to the instructions given to the jury on

15  the second phase of trial?

16           MS. MOORE:  No, your Honor.

17           THE COURT:  Any exceptions or objection from the

18  defendant as to the instructions given to the jury in this

19  second phase of the trial?

20           MS. IZMAYLOVA:  No, your Honor.

21           THE COURT:  All right.  So we just need to gather the

22  one stipulation that the parties have agreed to and then send

23  to the jury, which I guess they still possess whatever

24  evidence we sent yesterday, the additional jury instruction

25  and verdict forms.  I would ask if y'all would stay close by.

1   Would rather guess we'd have a decision probably quickly.

2           MR. SABBAK:  Thank you, Judge.

3           THE COURT:  I do want to talk about one more thing,

4   though, so that we don't have to do this afterwards -- you can

5   go ahead and take that out to them.  So I had mentioned

6   yesterday -- and I'm not asking for a decision, by the way,

7   today.  But, you know, I've tried to reconcile in my mind the

8   jury's decision as to the medical expenses.  It had been

9   roughly three years, maybe four, since this activity began

10  that the plaintiff filed her lawsuit about, and the only

11  testimony that we've really received that I can recall is

12  approximately $10,000 in medical expenses, which included

13  accompanying travel expenses that were certainly recoverable

14  as part of that.

15          We don't have any evidence in record of the -- of any

16  mortality table that would show what the plaintiff's life

17  expectancy would be that the jury could use to try to

18  calculate the expenses that she would continue potentially to

19  incur as she deals with what she has described in this case as

20  being trauma from the slander and defamation involved here.

21          It may be very well that the jury can use its common

22  sense to try to determine her life expectancy because we do

23  know what her age is roughly as she testified to that.  But

24  whether or not the jury could forecast $250,000 of future

25  medical expense to me is somewhat questionable based on the

1  evidence.

2        I spent a little bit of time this morning considering

3  the issue of remittitur on that issue.  You know, a lot of the

4  Eleventh Circuit law on remittitur is going to come from the

5  Fifth Circuit because a lot of it was created before the

6  creation of the Eleventh Circuit, and so I've looked at a few

7  law review articles on that this morning.

8        It seems that the Court has the authority to order

9  remittitur in whole or in part of the whole case or individual

10 issues.  I have never -- I didn't look at the articles for

11 purposes of the whole case.  If remittitur were appropriate,

12 it would in my mind be something to talk about as it relates

13 simply to the medical expenses.  There is some case law, maybe

14 not in the Eleventh Circuit, but some case law that -- or

15 maybe not case law, maybe law review discussion about whether

16 or not the appellate courts can add -- can order remittitur or

17 not themselves.  I don't really have the answer to that

18 question about whether the appellate courts can do it.

19        Obviously, if this case goes on appeal and the

20 appellate court believes from the evidence that was presented

21 that the award of $250,000 was not supported by the evidence

22 or any reasonable interpretation of the evidence that the jury

23 had before it and there was no such procedure in the Eleventh

24 Circuit to order remittitur, the Eleventh Circuit, of course,

25 could create that law by simply saying so.

1    The Eleventh Circuit could also potentially, if they

2  thought that that was the case, simply strike that award

3  altogether, and then it would be lost.  So I guess my point in

4  saying this is I mentioned it yesterday.  I do have some

5  questions about it.  I certainly have reached no conclusion

6  about whether concretely there is no -- there is not

7  sufficient evidence for the jury to have rendered that verdict

8  and that number.

9    And even if I felt that that was the case, whether or

10  not I would make a decision myself upon a motion for new trial

11  on that issue to order remittitur -- and, of course, I can

12  assure you that I'm not going to order a new trial on the

13  issue very easily because this is a very long trial.  And if

14  we had a new trial on the amount of medical expenses that was

15  incurred by the plaintiff, it certainly would not serve

16  judicial economy for anyone.  I mean, the Court, I'm going to

17  be here trying cases no matter what, but both sides would be

18  paying potentially large sums of money, maybe not equal to

19  what we've gone through so far.  But there will be some of it

20  that will be recreated.

21    So I guess what I'm saying this:  Is I encourage the

22  parties, much like you have agreed today, to streamline the

23  consideration of punitive damages and attorney's fees for the

24  jury, to also talk about a way to resolve this particular

25  issue prior to the entry of any judgment by the Court in a way

1   that allows that issue to maximize your own resources to avoid

2   another trial should the trial court order one or should the

3   appellate court order one as well.

4           So understand this -- and this is maybe more for the

5   parties than for the lawyers that I'm sure understand it -- I

6   don't have the power to ever say that an amount is what it

7   should be.  In other words, if I felt $250,000 was not

8   supported by the evidence, I could not pick the amount without

9   the consent of the parties generally.  And perhaps the

10  plaintiff ultimately controls that amount because the

11  plaintiff is the one that would be experiencing a reduction in

12  that amount.

13          Federal courts, I do not believe, have the authority

14  to have additur, which is adding to a verdict, although some

15  state courts do.  In federal court I think it would be found

16  to violate Seventh Amendment considerations for a trial by

17  jury on these issues.  But the additur is not something that

18  anyone has argued or I've even thought about anyway.  It's

19  just remittitur.  So I can't just pick an amount, I guess is

20  my point, and say this is the way it's going to be.  If it

21  ever came to that, whether I decided on my own or whether the

22  Court of Appeals decided for me, we're probably talking about

23  a new trial on that point.

24          But the parties could resolve it by agreement, if you

25  were so able to agree as to if an amount is going to be

1  awarded for future medical expenses, that this would be the

2  amount it's going to be, I think y'all can basically settle

3  that part of the case.

4          I'm not forcing anybody to settle the case.  I'm just

5  saying you ought to talk about it as you decide these issues

6  going forward, and if you could come to an agreement as to

7  that amount, you could do that in a way that doesn't waive any

8  of your rights to appeal otherwise, just like you did with the

9  attorney's fees issues.  We agree that this amount is

10 reasonable, but we're not waiving our right to contend that

11 the jury got it wrong when they found that the defendant was

12 responsible and/or responsible for attorney's fees.

13         So I'm just throwing that issue out there.  I'd like

14 y'all to think about it.  You know, I'm certainly not someone

15 who willy nilly disturbs a jury's decision, so I'm not trying

16 to forecast that I would do it on my own.  It might be the

17 appellate courts that would do it, but I think it is proper

18 for me to have talked about it because I don't think there was

19 really anyone in here that expected the attorneys -- the

20 medical expenses number to be anything close to what it was,

21 at least that's my opinion.  All right.  So we'll stand in

22 recess.  Do you have something to --

23         MS. IZMAYLOVA:  I just have a quick question.  When

24 would you like to, like, I guess, know if we can make --

25         THE COURT:  Y'all can just talk whenever y'all -- you

1  know, if y'all reach an agreement on it before I enter the

2  verdict in this case, then let me know.

3          MS. IZMAYLOVA:  Okay.

4          THE COURT:  I mean, the verdict has been filed, but a

5  judgment has not been filed.  And I'm not sure when I will

6  file the judgment.  It won't be today or tomorrow, but it will

7  be soon.  Now, I want the parties to file within 30 days of

8  today's date any briefing you wish to file on the issue of an

9  injunction, which is one of the remaining issues in this case.

10 I will likely schedule towards the end of February, early part

11 of March, a hearing likely by Zoom, on the issue of an

12 injunction.

13          Obviously, any injunction that might issue in this

14 case would be requested by the plaintiff, so I would ask

15 that -- well, really let me just back up and say this:  Each

16 of you should submit with your briefing within 30 days of

17 today's date any proposed order as it relates to an

18 injunction.  I'll have a lot to consider there.  Deciding

19 whether there should be an injunction is the first decision,

20 and if injunction is issued, the breadth of it, duration of

21 it, you know, is another.

22          So you both may have -- you both may have ideas about

23 what the appropriateness under the rules are as well as, you

24 know, the definition to give to what would be prohibitive if

25 that is ordered by the Court.

1            All right.  So stand close by, and I think we'll have

2  a verdict soon.  Thank you.

3            COURTROOM SECURITY OFFICER:  All rise.  Court stands

4  in recess.

5            (Whereupon, a recess was taken from 10:30 a.m. until

6  11:30 a.m.)

7            COURTROOM SECURITY OFFICER:  All rise.  This court is

8  again in session.

9            THE COURT:  Thank you, sir.

10            COURTROOM SECURITY OFFICER:  Please be seated and

11  come to order.

12            THE COURT:  What note are we on?  7?

13            COURTROOM DEPUTY:  Yes.

14            THE COURT:  All right.  So we received a note that

15  you should now have from the jury, which will be marked as

16  Court's Exhibit 7.  The note reads as follows:  With regard to

17  punitive damages being reasonable and proportionate to the

18  ability of the defendants to pay, are we allowed any

19  additional information to inform our decision?

20            I have written a reply that says, there can be no new

21  evidence introduced for your consideration.  Plaintiff okay

22  with that?

23            MS. MATZ:  Yes, your Honor.

24            THE COURT:  Defendant okay?

25            MS. IZMAYLOVA:  Yes, your Honor.

```
1              THE COURT:  Okay.  So my note back to the jury will
2    be marked as Court's Exhibit 8.  All right.  Thank you.
3              MS. IZMAYLOVA:  Thank you.
4              MS. MATZ:  Thank you, your Honor.
5              MR. SABBAK:  Thank you, Judge.
6              MS. MOORE:  Thank you, your Honor.
7              COURTROOM SECURITY OFFICER:  All rise.  This Court
8    stands in recess.
9              (Whereupon, a recess was taken from 11:30 a.m. until
10   12:27 p.m.)
11             COURTROOM SECURITY OFFICER:  All rise.  This Court is
12   again in session.
13             THE COURT:  All right.  You can bring the jury back.
14             COURTROOM SECURITY OFFICER:  Please be seated and
15   come to order.
16             THE COURT:  Before they come in, if you'll just hold
17   the door for a second, let me just have the -- I want the
18   record to go ahead and reflect what I understand is an
19   agreement between the plaintiff and the defendant, and that is
20   that when the Court enters a judgment in this case, the amount
21   of the medical expenses will be reduced from $250,000 as
22   returned by the jury to $25,000.  The parties have stipulated
23   as to that amount as being the correct amount for the
24   judgment.
25             That does not waive the defendants' right to appeal
```

1   the fact that the jury decided that the defendant was

2   responsible for any of the counts included in the complaint

3   but merely that should the courts uphold that decision of

4   liability, that the amount of liability for medical expenses,

5   past and future, is $25,000.  Is that the agreement the

6   defendant has made?

7          MS. MOORE:  That is, your Honor.

8          MS. IZMAYLOVA:  That is correct, your Honor.

9          THE COURT:  All right.  Thank you.

10         (Whereupon, the jurors entered the courtroom.)

11         COURTROOM SECURITY OFFICER:  All rise.  Please be

12  seated and come to order.

13         THE COURT:  Mr. Dorsey, has the jury reached a

14  unanimous verdict as to the issue of punitive damages and

15  attorney's fees?

16         THE JUROR:  Yes, sir.

17         THE COURT:  All right.  If you could give the court

18  security officer the verdict.  All right.  So this verdict on

19  the issue of punitive damages and litigation expenses is

20  returned today at 12:30 on the 25th day of January, 2022.

21         As to plaintiff's claim for punitive damages, we, the

22  jury, award the following punitive damages:  As to Defendant

23  Latasha Kebe, we assess the amount of $1 million as punitive

24  damages, which is separate from any punitive damages against

25  Defendant Kebe Studios LLC.

1          As to Defendant Kebe Studios LLC, we assess the

2    amount of $500,000 as punitive damages, which is separate from

3    any punitive damages against Defendant Latasha Kebe.

4          Litigation expenses.  As to plaintiff's claim for

5    litigation expenses, we award the amount of 1,338 -- excuse

6    me.  Let me start over -- the amount of $1,338,753.47 against

7    Defendant Latasha Kebe and Defendant Kebe Studios LLC.

8          So say we all, signed and dated the 25th day of

9    January, 2022, by the foreperson of the jury.  All right.

10   Ms. Lee, if you could publish the verdict form.

11          (Complies.)

12          Any objection to the form of the verdict from the

13   plaintiff?

14          MS. MATZ:  No, your Honor.

15          THE COURT:  Any objection about the form of the

16   verdict from the defendant?

17          MS. IZMAYLOVA:  No, your Honor.

18          THE COURT:  Any further inquiry asked of the jury

19   from the defendant?

20          MS. IZMAYLOVA:  If you would poll the jury, your

21   Honor.

22          THE COURT:  All right.  Ladies and gentlemen, I'm

23   going to go through the same procedure that I did yesterday.

24   I'm going to ask you if you agree with the verdict both in the

25   jury room and in court and whether you still agree.

```
1              Juror No. 2, Ms. Lewis.  Ms. Lewis, is the verdict
2    announced today in court, was that the unanimous verdict of
3    the jury in the jury room?
4              THE JUROR:  Yes, sir.
5              THE COURT:  Was that your verdict?
6              THE JUROR:  Yes, sir.
7              THE COURT:  Does it remain your verdict?
8              THE JUROR:  Yes, sir.
9              THE COURT:  Juror No. 9, Mr. Dorsey.  Mr. Dorsey, was
10   the verdict as announced today in court the unanimous verdict
11   of the jury in the jury room?
12             THE JUROR:  Yes, sir.
13             THE COURT:  Was it your verdict?
14             THE JUROR:  Yes, sir.
15             THE COURT:  Does it remain your verdict?
16             THE JUROR:  Yes, sir.
17             THE COURT:  Juror No. 13, Mr. Dukes, didn't skip you
18   this time.  Mr. Dukes, is the verdict as announced today in
19   court, was that the unanimous verdict of the jury in the jury
20   room?
21             THE JUROR:  Yes, sir.
22             THE COURT:  Was it your verdict?
23             THE JUROR:  Yes, sir.
24             THE COURT:  Does it remain your verdict?
25             THE JUROR:  Yes, sir.
```

```
1              THE COURT:  Juror No. 14, Ms. Kopanski.
2   Ms. Kopanski, was the verdict as announced in court today the
3   unanimous verdict of the jury in the jury room?
4              THE JUROR:  Yes, sir.
5              THE COURT:  Was it your verdict?
6              THE JUROR:  Yes, sir.
7              THE COURT:  Does it remain your verdict?
8              THE JUROR:  Yes, sir.
9              THE COURT:  Juror No. 17 -- and I skipped 16, but
10  I'll come back to you.  17, Ms. Garcia.  Ms. Garcia, was the
11  verdict as announced in court today the unanimous verdict of
12  the jury in the jury room?
13             THE JUROR:  Yes, sir.
14             THE COURT:  Was it your verdict?
15             THE JUROR:  Yes, sir.
16             THE COURT:  Does it remain your verdict?
17             THE JUROR:  Yes, sir.
18             THE COURT:  Juror No. 16, Ms. Rodriguez, was the
19  verdict as announced today in court the unanimous verdict of
20  the jury in the jury room?
21             THE JUROR:  Yes, sir.
22             THE COURT:  Was it your verdict?
23             THE JUROR:  Yes, sir.
24             THE COURT:  Does it remain your verdict?
25             THE JUROR:  Yes, sir.
```

1              THE COURT:  Ms. O Bearden, No. 20, was the verdict as

2    announced in court today the unanimous verdict of the jury in

3    the jury room?

4              THE JUROR:  Yes, your Honor.

5              THE COURT:  Was it your verdict?

6              THE JUROR:  Yes, sir.

7              THE COURT:  Does it remain your verdict?

8              THE JUROR:  Yes, sir.

9              THE COURT:  Juror No. 24, Mr. Sapp, was the verdict

10   as announced in court today the unanimous verdict of the jury

11   in the jury room?

12             THE JUROR:  That's right.

13             THE COURT:  Was it your verdict?

14             THE JUROR:  Yes, sir.

15             THE COURT:  Does it remain your verdict?

16             THE JUROR:  Yes, sir.

17             THE COURT:  All right, ladies and gentlemen.  So that

18   concludes your service in this trial.  I'm going to come back

19   in the back in a moment and answer any questions you might

20   have.  I know some of you are hungry and probably ready to

21   leave after two plus weeks with us.

22             So as you leave the courthouse today or as you leave

23   the jury deliberation room today, you are released from any of

24   the restrictions you had about researching about anything

25   related to this case, about speaking about the case with

1    anyone.  That's totally up to you.  You can't be required and

2    are not required to talk to anyone, but you're able to if you

3    wish.

4         You know, as you make decisions as to what you might

5    say to anyone who wishes to speak with you, whether they're

6    the lawyers in this case or any third party, I'd just ask that

7    you keep in mind the confidentiality generally of the jury

8    room.  I'm not requiring you.  I don't know that I legally

9    can, but I'm not requiring you not to talk about what other

10   people may have said, specifically as it can be identified as

11   to that person.  But, I mean, if you would just think about it

12   from your own perspective, if you had said things during the

13   jury deliberation room that you would rather remain private,

14   you would probably appreciate if your fellow jurors did the

15   same for you.

16        But I'm not imposing any restriction on you.  You can

17   talk about the case as you see fit with whomever or however

18   how long you wish.  But, in any event, I appreciate your

19   service.  You know, many times trials that we have are just

20   not interesting.  That can't be said about this one.  This was

21   a very interesting case, and so hopefully not only the

22   educational civics dedication that you showed by being a part

23   of the case has been something that has been beneficial and

24   appreciated by you, but, you know, obviously the subject

25   matter has been something that I know has probably kept your

```
 1   interest.
 2            But if you'll go with the -- you would go with
 3   security to your jury deliberation room, I'll be in there in a
 4   moment.  I won't hold you up.  If you don't have any
 5   questions, I'll let you go at that point in time.  On behalf
 6   of the federal district court in Atlanta, I appreciate your
 7   time.
 8            COURTROOM SECURITY OFFICER:  All rise.
 9            (Whereupon, the jurors exited the courtroom.)
10            COURTROOM SECURITY OFFICER:  Please be seated and
11   come to order.
12            THE COURT:  Anything further from the plaintiff this
13   afternoon?
14            MS. MOORE:  No, your Honor.  Thank you.
15            THE COURT:  Anything further from the defendant?
16            MS. IZMAYLOVA:  No, your Honor.
17            THE COURT:  So I think I had said 30 days file your
18   motions and/or your positions as it relates to issues of
19   injunction that are still before the Court.  I want to say
20   this to the defendants:
21            You have -- you know, this is a very substantial
22   verdict that has been rendered against you, and your ability
23   to satisfy it is independent of the fact that it exists.  I
24   would just caution you, not knowing what may have been -- what
25   may have been transcribed -- what may have transpired before
```

1  today or what actions you may have taken, but I would caution

2  you about any alterations of your finances or changes to your

3  finances in any attempt to try to make the judgment less

4  collectible than it is.

5          Under Georgia law efforts to do that can constitute

6  fraud and can subject you to an additional tort claim and/or

7  lawsuit, much less an effort that could be brought in this

8  court to enforce the judgment as it is to set aside things

9  that you -- action that you may engage.  And given that both

10  of you, at least tangentially, are involved in this case, by

11  transferring assets, if that were to happen -- and I have no

12  information to suggest that you would do that, but defendants

13  sometimes do -- into the names of third parties, could subject

14  them to also possible tort actions in the future.

15          Ms. Moore, did you have something else?

16          MS. MOORE:  Yes, your Honor, I did.  I just wanted to

17  thank your entire staff for their hospitality and for keeping

18  us moving in a pandemic and helping us all feel safe.  So

19  thank you.  We're very grateful for your staff and Ricky and

20  Jennifer and Andrew and Wynette.  So thank you.

21          THE COURT:  All right.  Thank you, ma'am.  Anything

22  else, ma'am?

23          MS. IZMAYLOVA:  No.  That's it.  Thank you.

24          THE COURT:  All right.  Good day.

25          COURTROOM SECURITY OFFICER:  All rise.  Court stands

1  adjourned.

2          (Whereupon, the proceedings were adjourned at 12:40

3  p.m.)

4                              -  -  -

```
1                      REPORTERS CERTIFICATE

2

3

4          I, Wynette C. Blathers, Official Court Reporter for

5  the United States District Court for the Northern District of

6  Georgia, with offices at Atlanta, do hereby certify:

7          That I reported on the Stenograph machine the

8  proceedings held in open court on January 25, 2022, in the

9  matter of BELCALIS MARLENIS ALMÁNZAR v. LATASHA TRANSRINA KEBE

10 and KEBE STUDIOS LLC, Case No. 1:19-CV-01301-WMR; that said

11 proceedings in connection with the hearing were reduced to

12 typewritten form by me; and that the foregoing transcript

13 (Volume X of X, Pages 1 through 41) is a true and accurate

14 record of the proceedings.

15         This the 27th day of February, 2022.

16

17

18

19                             _____

20                        /s/ Wynette C. Blathers, RMR, CRR
                               Official Court Reporter

21

22

23

24

25
```